# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **MISSOURI PRIMATE FOUNDATION, et al.,** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> **PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al.,** ) <br> ) <br> **Defendants.** ) | Case No. 4:16-cv-02163 |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

Defendants People for the Ethical Treatment of Animals, Inc. ("PETA") and Angela Scott a/k/a Angela G. Cagnasso ("Scott") (collectively, "Defendants"), pursuant to Local Rule 7-4.01, respectfully submit this Memorandum in Support of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim.

### I.  BACKGROUND OF PETA AND SCOTT'S NOTICE OF INTENT TO SUE

In adopting the Endangered Species Act (ESA), "Congress intended endangered species to be afforded the highest of priorities." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 174 (1978). The statute is, as a result, "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation," *id.* at 180, and "afford[s] first priority to the declared national policy of saving endangered species," *id.* at 185. All chimpanzees, including those held in captivity, are listed as endangered. 50 C.F.R. § 17.11(h); 80 Fed. Reg. 34500-01 (June 16, 2015).

Under the ESA, it is unlawful to "take" endangered species, 16 U.S.C. § 1538(a)(1)(B), or to "possess" any endangered species that has been unlawfully taken, *id.* § 1538(a)(1)(D). "Take" is defined to include "harass" and "harm." *Id.* § 1532(19). To encourage and facilitate

vigorous enforcement of these protections, Congress explicitly empowered private citizens to file suit "to enjoin any person" from violating the ESA or its implementing regulations. 16 U.S.C. § 1540(g)(1)(A). Prior to commencing a citizen suit, however, the alleged violator and the government must be provided with sixty days' written notice. *Id.* § 1540(g)(2)(A).

Pursuant to the notice requirement, on November 2, 2016, PETA and Scott mailed to Plaintiffs, the Secretary of the Department of the Interior, and the Director of the Fish & Wildlife Service (FWS), a notice of intent to sue for the unlawful "take" of sixteen chimpanzees at MPF by holding one chimpanzee in isolation, and denying the chimpanzees the complex and sanitary environments they require. [ECF #1-1; "Notice."] Each recipient received the Notice on or before November 12. Accordingly, PETA and Scott could not file any citizen suit on the basis of the Notice before January 12, 2017. Yet on December 30, 2016, Plaintiffs filed their Complaint.

## II.  ADDITIONAL JURISDICTIONAL FACTS

In their Notice, PETA and Scott contended that sixteen specifically named chimpanzees were held at MPF (*see* Notice at 1, 5-6), including Joey, owned by Plaintiff Sawyer, and Allie and Chloe, owned by Jane Does 1 and 2, respectively (*id*. at 1). "[P]laintiff, Jane Doe 1, prior owner of chimpanzee Allie," voluntarily dismissed her claims against PETA and Scott [ECF #9] because, upon information and belief, she transferred ownership and possession of Allie to an accredited sanctuary after learning of the Notice.[1] (Declaration of Jared Goodman, attached hereto as Exhibit A, ¶ 4.) Upon information and belief, Joey is no longer held at MPF because

---

[1] Jane Doe 2 cannot proceed under a pseudonym. A party must disclose her name in her pleadings, Fed. R. Civ. P. 10(a), or demonstrate that she "has a substantial privacy right which outweighs the customary constitutionally-embedded presumption of openness in judicial proceedings," *In re Ashley Madison Customer Data Sec. Breach Litig.*, No. 2669, 2016 WL 1366616, at *1 (E.D. Mo. Apr. 6, 2016). There is no legitimate basis to proceed anonymously in this ESA case.

2

Sawyer absconded with him after receiving the Notice and transferred him to an unknown location. (*Id.* ¶ 5.) Upon information and belief, MPF transferred three additional chimpanzees to another facility after receiving the Notice. (*Id.* ¶ 3.) In sum, Plaintiffs are believed to have transferred five of the sixteen named chimpanzees following Defendants' Notice. However, they provide no information as to the location or conditions of the four apparently transferred chimpanzees still subject to the suit following Jane Doe 1's dismissal with respect to chimpanzee Allie. Plaintiffs took these actions in response to the Notice (*id.* ¶ 6)—then sued PETA and Scott for defamation and a finding that the treatment of chimpanzees at MPF does not violate the ESA.

## III. ARGUMENT

### A. Count I for Declaratory Action Must Be Dismissed for Lack of Subject Matter Jurisdiction.

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a claim based on a lack of subject matter jurisdiction. The purpose of a Rule 12(b)(1) motion is to allow the Court to address the "threshold question" of jurisdiction, as "judicial economy demands that the issue be decided at the outset rather than deferring it until trial." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). The burden of proving subject matter jurisdiction rests on the plaintiff. *Riley v. United States*, 486 F.3d 1030, 1032 (8th Cir. 2007).

Plaintiffs' claim for declaratory relief does not present a justiciable controversy that is ripe for judicial determination, and thus this Court should dismiss the Complaint for lack of subject matter jurisdiction.

#### 1. Plaintiffs' claim is not ripe.

Ripeness is an issue of subject matter jurisdiction, *Dakota, Minnesota & E. R.R. Corp. v. S. Dakota*, 362 F.3d 512, 520 (8th Cir. 2004), and is therefore properly analyzed under Rule 12(b)(1). The district court may consider matters outside the pleadings in ruling on a Rule

12(b)(1) motion. *Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir. 1993). "If the defendant thinks the court lacks jurisdiction, the proper course is to request an evidentiary hearing on the issue. The motion may be supported with affidavits or other documents. If necessary, the district court can hold a hearing at which witnesses may testify." *Osborn*, 918 F.2d at 730 (internal citations omitted). If the Court requires further factual information to rule on this motion, Defendants respectfully request an evidentiary hearing. *See id*.

Plaintiffs seek relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides for declaratory relief in "a case of actual controversy." *Pub. Water Supply Dist. No. 10 of Cass County, Mo. v. City of Peculiar, Mo.*, 345 F.3d 570, 572 (8th Cir. 2003). This limitation, and prudential considerations of avoiding premature adjudication, require that claims be ripe. *Id.* at 572–73 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). To establish ripeness, Plaintiffs must prove "both 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Id.* at 149 (quoting *Abbott Labs.*, 387 U.S. at 149).

### a. Plaintiffs' claim for declaratory relief is not fit for judicial decision.

"Whether a case is 'fit' depends on whether it would benefit from further factual development. The case is more likely to be ripe if it poses a purely legal question and is not contingent on future possibilities." *Id.* (citations omitted). "There must be a concrete dispute" and the "plaintiff must seek 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076, 1081 (8th Cir. 2012) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241 (1937)). Plaintiffs' claim is not ripe because "a declaratory judgment cannot be issued to resolve a disputed question of fact that is a determinative issue." *Maryland Enter., L.L.C. v. United States*, 91 Fed. Cl. 511, 529-30 (2010) (citation omitted); *see also Empire Indem. Ins. Co. v. Specialized*

4

*Foster Care Servs., Inc.*, 908 F. Supp. 483, 485 (N.D. Ohio 1995) (declining "to exercise jurisdiction over a declaratory judgment action regarding insurance coverage when the facts giving rise to the insurance coverage dispute are themselves in dispute"). This Court has held that where a "[p]laintiff has made a material change . . . after the lawsuit was filed" and "has not sought leave to amend its complaint to narrow the scope of its claim," it will "decline[ ] to hear an action requiring such an advisory opinion." *Rexam, Inc. v. Mueller*, No. 4:05CV868-DJS, 2005 WL 2491458, at *2 (E.D. Mo. Oct. 7, 2005).

This case depends entirely on further factual development. Whether there has been a violation of "the ESA take prohibition" is, on its face, unsuitable for declaratory judgment because it "is a question that cannot be answered until the Court has undertaken a fact-intensive inquiry." *Seattle Audubon v. Sutherland*, No. CV06-1608MJP, 2007 WL 1300964, at *12 (W.D. Wash. May 1, 2007). Additionally, there appear to have been many substantial factual developments following the Notice that would have a significant bearing on Plaintiffs' claims. In their Complaint, Plaintiffs ask this Court to declare that the conditions in which the chimpanzees are held do not violate the ESA, yet they deny that even the chimpanzees identified in the Notice are at the facility. [ECF #1 "Compl." ¶¶ 15-17]; *see* Section II, *supra*. The parties also dispute the conditions in which the chimpanzees are held, the veterinary care they receive, and the effect of those conditions on their physical and physiological well-being—all of which are central to this fact-intensive inquiry. Accordingly, Plaintiffs' claim is not fit for judicial decision.

### b. Plaintiffs would suffer no hardship in waiting to defend a potential lawsuit.

To establish hardship to satisfy this prong, "'[a]bstract injury is not enough. It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct.'" *Pub. Water Supply*, 345 F.3d at 573 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). "[A] case is not ripe if the plaintiff makes no

5

showing that the injury is direct, immediate, or certain to occur." *Id.* Plaintiffs have failed to even allege that they have sustained or are immediately in danger of sustaining a direct injury, or, in fact, in danger of sustaining *any* injury at *any* time. [Compl. ¶¶ 1-17.] "Presumably, plaintiffs would prefer to have the issue adjudicated now, but the general desire to obtain speedy resolution of a dispute is not unique to plaintiffs' position" and "fail[s] to demonstrate hardship." *Nichols v. MMIC Ins. Inc.*, 68 F. Supp. 3d 1067, 1081 (D.S.D. 2014).

Although "[t]he precise line between ripe actions and premature actions is not an easy one to draw . . . [t]his case, however, is clearly not ripe because the threat of injury is not 'certainly impending,' there is no hardship to the [Plaintiffs] in denying review, and the development of additional facts would focus the dispute." *Pub. Water Supply*, 345 F.3d at 574.

**2. There is No Legitimate Basis for the Court to Exercise Jurisdiction Over Plaintiffs' Declaratory Judgment Claim.**

Even if the Court should find Plaintiffs' claim for declaratory relief to be ripe, it should decline to exercise jurisdiction over the claim. District courts have "unique and substantial discretion" "in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 286 (1995). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose," dismissal is appropriate. *Id.* at 288.

Where there is no "parallel" state court action pending, the court's discretion "is to be exercised according to a six-factor test that [the Eighth] Circuit has adopted," only three of which are relevant where there are no state claims at issue:

(1) whether the declaratory judgment sought "will serve a useful purpose in clarifying and settling the legal relations in issue";
(2) whether the declaratory judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the . . . proceeding"; . . .

6

(6) "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'. . . ."

*Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 968 (8th Cir. 2013). All three of these factors weigh strongly against the Court's exercise of jurisdiction over this claim.

### a. A declaratory judgment would serve no useful purpose, nor would it terminate and afford relief from any uncertainty, insecurity, or controversy.

"The 'useful purpose' served by the declaratory judgment action is the clarification of legal duties for the future, rather than the past harm a coercive . . . action is aimed at redressing." *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004). This factor "weighs heavily in favor of dismissing [a] declaratory judgment suit" where "[t]he only 'useful purpose' the[] declaratory-judgment actions could serve is an ultimate determination of liability on an already-accrued . . . claim." *Id.*

A declaratory judgment in this action would do nothing but serve as a determination of Plaintiffs' liability to Defendants' already accrued claims of ESA violations. There are no legal relations at issue between the parties, nor is there uncertainty as to their rights respective of each other. Plaintiffs allege no injury while the 60-day Notice period continued, or thereafter, "and at the time they filed their Complaint, even the 'uncertainty' of awaiting suit on past behavior would have extended less than two weeks." *AmSouth Bank*, 386 F.3d at 786. "[T]he threat of suit, however immediate, is not by itself sufficient for the invocation of the federal power to issue a declaratory judgment." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002).

### b. Plaintiffs attempt to use their declaratory judgment action merely as a device for procedural fencing.

"[T]he Declaratory Judgment Act 'is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse.'" *Hyatt Int'l*, 302 F.3d at 712 (citation omitted); *In re IPDN Corp.*, 352 B.R. 870, 878–79 (Bankr. E.D. Mo. 2006) ("[I]n determining whether to exercise jurisdiction of a

7

declaratory judgment action, courts have considered if the declaratory remedy is being used 'for tactical advantage by litigants.'"). While this factor is generally considered within the context of forum shopping, *Lexington Ins. Co.*, 721 F.3d at 968, this Court has noted the impropriety of putative defendants using declaratory judgment actions in a manner that "further[s] none of the goals of the Declaratory Judgment Act" and "represent[s] only a race to the courthouse," *Koch Eng'g Co. v. Monsanto Co.*, 621 F. Supp. 1204, 1207 (E.D. Mo. 1985); *see also NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 523 (6th Cir. 2000) (allowing such actions could "encourage forum shopping, races to the courthouse, needless litigation occasioning waste of judicial resources, delay in the resolution of controversies, and misuse of judicial process to harass an opponent").

Plaintiffs' motivation in racing to the courthouse is, in part, evident on the face of the Complaint, as they seek attorney fees and costs for "prosecuting this action, pursuant to Endangered Species Act, 16 U.S.C. §1540(g)(4)." [Compl. at 5 (Prayer for Relief)]. The ESA allows for an award of attorney's fees to a citizen plaintiff who prevails *in enjoining a violation of the ESA* in a suit "brought pursuant to" the citizen-suit provision, 16 U.S.C. § 1540(g)(4), but far more rigorous standards apply for fee awards to prevailing defendants. *Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers*, 26 F.3d 842, 849 (8th Cir. 1994) (applying standard of *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) to civil rights claim); *see, e.g., Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1095 (9th Cir. 1999) (applying *Christiansburg* standard to ESA case). As discussed *infra*, Plaintiffs' claim is not merely outside the scope of that provision; it is antithetical to the purpose of the ESA's enforcement statute. Although this is not a classic case of "forum shopping," Plaintiffs have nonetheless raced to the courthouse in an attempt to gain an improper procedural advantage of a fee-award provision to which they are not entitled as the alleged violators and putative defendants in an ESA action.

Moreover, courts will consider the timing of the declaratory lawsuit in relation to existing

negotiations in determining whether the lawsuit was filed for procedural fencing. *See AmSouth Bank*, 386 F.3d at 789 (collecting cases). The very purpose of the ESA's 60-day notice requirement is to "give[] the alleged violator 'an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit.'" *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 650 (9th Cir. 2015) (quoting *Hallstrom v. Tillamook Cty.,* 493 U.S. 20, 29 (1989)). It also "provides an opportunity for settlement or other resolution of a dispute without litigation." *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998). Notwithstanding this clear purpose, Plaintiffs ignored the 60-day window, failed to substantively respond to the Notice, and materially changed circumstances following receipt of the Notice, with no discussion prior to filing suit.

Indeed, district courts have found that "[w]hen a declaratory judgment action is filed 'within the response period provided in a recent cease-and desist letter,' it may be found that the plaintiff acted in bad faith." *Internet Transaction Sols., Inc. v. Intel Corp.*, No. 2:06-CV-035, 2006 WL 1281654, at *7 (S.D. Ohio May 8, 2006) (citation omitted). Specifically with regard to a 60-day notice period, in *Sealco Int'l, Inc. v. Control De Deschechos Industriales Y Monitoreo Ambiental, S.A.*, No. 3:99-CV-2915-H, 2000 WL 380251, at *5 (N.D. Tex. Apr. 13, 2000), the court declined jurisdiction where the plaintiff sought a declaration that it had done nothing to subject it to liability just prior to the expiration of a 60-day notice period, finding "most salient" "the inequitable result" from letting the plaintiffs circumvent the purpose of the notice requirement "to gain precedence in time and forum selection."

Because a coercive action by PETA and Scott would encompass all of the issues in this declaratory judgment action, refine the issues to be decided, and provide a better avenue for developing the claims with greater potential remedies available to the court, a declaratory judgment is unnecessary and unjustified. *See generally AmSouth Bank*, 386 F.3d at 788.

9

Plaintiffs' claim for declaratory relief is transparently a race to the courthouse and mere procedural fencing because it necessarily contemplates a determination of the issues raised by PETA and Scott in their Notice, the Complaint was filed less than two weeks before the conclusion of the notice period, Plaintiffs made no attempt to resolve the issues raised in the Notice, and, as discussed further below, their remaining claims are not even sufficiently pled. Accordingly, the Court should decline to exercise jurisdiction over Count I.

**B.     Count II for Injunctive Relief Must Be Dismissed for Failure to State a Claim.**

Dismissal of an action serves to eliminate those "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). While the Court must accept the allegations contained in Plaintiffs' Complaint as true and draw all reasonable inferences in their favor, to avoid dismissal under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). Count II of Plaintiffs' pleading does not meet the standard required to survive a motion to dismiss.

In Count II, Plaintiffs ask the Court to enjoin Defendants from "filing any action against Plaintiffs based on or arising from any issues" raised in the Notice. [Compl. at 6 (Prayer for Relief).] A plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiffs must plead sufficient facts to support each of these elements in order to survive

dismissal. *See, e.g., Eves v. LePage*, 842 F.3d 133, 145 (1st Cir. 2016); *Steinbuch v. Cutler* 518 F. 3d 580, 591 (8th Cir. 2008).

The issuing of an injunction prohibiting a party from instituting litigation should be carefully approached, because "access to the Courts is one of the cherished freedoms of our system of government." *See Ex parte Tyler,* 70 F.R.D. 456, 457 (E.D. Mo. 1975). The Eighth Circuit reserves the issuance of injunctions barring the filing of a lawsuit to "extreme cases involving multiple, frivolous filings." *Mousel v. Knutson Mortg. Corp.,* 823 F. Supp. 658, 664 (D. Minn. 1993) (denying injunctive relief where the party "has not made multiple, frivolous filings in this Court") (citing *In re Tyler*, 839 F.2d 1290 (8th Cir. 1988) (limiting the frequency with which inmate could file lawsuits after filing 113 in two years)); *see also Meredith v. John Deere Plow Co. of Moline, Ill.*, 261 F.2d 121, 124 (8th Cir. 1958) (injunction is appropriate where, "[f]or a period of eight years, [appellant] has been subjecting appellee to the annoyance, burden and expense of a continuing series of lawsuits, instituted by him pro se, all of which have been predicated on the [same] theory and claim").

In this case, Plaintiffs have failed to plead the essential factors for establishing the right to an injunction. Rather, Plaintiffs baldly assert that the Court has the authority to fashion a remedy under 16 U.S.C. § 1540(g)(5) and 28 U.S.C. § 2202. Because Plaintiffs are not entitled to a declaratory judgment for the reasons set out in Count I, they are likewise not entitled to an injunction to enforce any judgment in Count I or to prevent Defendants from filing an action under the ESA. Simply put, a statutorily authorized affirmative ESA action is the appropriate proceeding in which to determine the facts presented here.

Moreover, Plaintiffs have not alleged "multiple, frivolous filings" or any facts suggesting that injunctive relief may be appropriate. In fact, the public interest would be best served by permitting the Court to evaluate the merits of Defendants' case in Defendants' own action. There

is also no irreparable harm to Plaintiffs—or in fact any harm at all—in permitting this Court to hear Defendants' ESA action when it is filed, instead of spending resources in the instant case attempting to "fit a square peg into a round hole" by adjudicating an ill-defined ESA "take" claim packaged inside a request for an injunction. *See* Sections III(A)(2)(a) and III(C).

**C.     Plaintiffs' Claims for Declaratory and Injunctive Relief Are Not Authorized Under the ESA.**

The ESA authorizes particular actions for the enforcement of the Act. 16 U.S.C. § 1540. Specifically, the ESA authorizes the U.S. Attorney General and citizen suits to pursue an injunction against any person "who is alleged to be in violation" of the Act or its implementing regulations. *Id.*[2] It also authorizes federal civil penalties and criminal enforcement; inspections, searches, seizures, and arrests by federal agencies; and forfeiture. *Id.* The common denominator of each authorized action is the furtherance of the purpose of the Act—to conserve endangered and threatened species—and each fulfills that purpose either by punishing or preventing violations of the Act or by mandating that federal agencies follow their legal duty to comply with the Act for the conservation of species. Not one of the suits or other legal actions authorized by the ESA is an open door for alleged ESA violators to preemptively seek the courts' imprimatur on their conduct and prevent citizen suits that are *actually authorized* by the Act.

Likewise, the language of the notice requirement provides further evidence that the claims put forth by Plaintiffs are not authorized by the ESA. Under the citizen-suit provision, no action can be commenced "prior to sixty days after written notice of the violation has been given to the Secretary, and to any *alleged violator* of any such provision or regulation." *Id.* § 1540(g)(2)(A)(i) (emphasis added). The provision is included in the ESA to allow for robust enforcement of the

---

[2] The Act also authorizes citizen suits against the Secretaries of the Interior and Commerce to apply certain statutory prohibitions or to perform mandatory duties. 16 U.S.C. § 1540(g)(1).

Act—not defensive strikes by alleged violators hoping to prevent such enforcement. There is no allegation that PETA or Scott has violated the ESA, and Plaintiffs therefore have no claim under the Act.[3]

## D. Count III for Defamation Must Be Dismissed for Failure to State a Claim.

In order to meet the burden for making a prima facie defamation case, federal law requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8. A complaint may not contain only "labels and conclusions"—a "formulaic recitation of the elements of a cause of action" is not sufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, while "federal courts require only notice pleading, a plaintiff must still plead the substantive requirements of state law." *See King v. Union Station Holdings*, LLC, No. 4:12CV696SNLJ, 2012 WL 5351598, at *4 (E.D. Mo. Oct. 30, 2012).

Plaintiffs do not sufficiently plead a defamation claim under Missouri law—the "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation." *Overcast v. Billings Mutual Insurance Company,* 11 S.W.3d 62, 70 (Mo. 2000) (en banc). Plaintiffs fail to state a claim because their Complaint fails to plead each of these elements, consists entirely of legal conclusions, and does not provide appropriate facts on which to base the conclusions that allegedly entitle them to relief.

First, Plaintiffs fail to explain *which statements are allegedly defamatory*. Under Missouri

---

[3] Even if the ESA authorized Plaintiffs' suit, they failed to provide the requisite notice of intent to sue, *id*. § 1540(g)(2)(B)(i), necessitating dismissal, *Am. Rivers, Inc. v. U.S. Army Corps of Engineers*, No. CIV.04-3188 PAM/RLE, 2004 WL 2905281, at *3 (D. Minn. Dec. 10, 2004) (ESA's notice requirement is jurisdictional and "strictly construe[d]") (citations omitted). Plaintiffs cannot piggyback their claims on Defendants' compliance with the notice requirement, as the notice "must adequately inform [the recipient] of the exact grievances against it," *id*. (citation omitted), and Plaintiffs did not inform Defendants of *any* "grievances" before filing suit.

13

law, a plaintiff must plead "the specific words or statements alleged to be libelous." *Missouri Church of Scientology v. Adams*, 543 S.W.2d 776, 777 (Mo. 1976) (holding that attaching five articles as exhibits and incorporating them by reference does not state a claim); *see also King*, 2012 WL 5351598, at *3 (collecting cases). Here, Plaintiffs provide absolutely no certainty as to what is being charged and ask this Court and PETA to comb through their seven pages of Exhibits and guess as to what statements it complains of.[4] This is insufficient even for a prima facie case of defamation.

Second, the individual Plaintiffs' defamation claims must be dismissed because no statements identify them. *See Klein v. Victor*, 903 F. Supp. 1327, 1334 (E.D. Mo. 1995) ("In order for words to be actionable they must refer to the plaintiff and be understood by others as referring to the plaintiff."). Although Plaintiffs allege that PETA's statements defame them, the alleged statements appended to Plaintiffs' Complaint discuss only the Missouri Primate Foundation. None of the individually named Plaintiffs appear in these statements, and Plaintiffs have not otherwise suggested that PETA has ever said anything about them. While Plaintiffs state that PETA's alleged statements "have identified the Plaintiffs," *including the Jane Doe plaintiffs*, this is merely a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, is clearly baseless, and cannot withstand a motion to dismiss.

Third, Plaintiffs have suffered no actual harm to their reputation or otherwise because of PETA's alleged statements. Proof of actual reputational harm is a prerequisite for a defamation action to survive a motion to dismiss. *King*, 2012 WL 5351598, at *5 (citing *Cockram v.*

---

[4] As discussed above, Plaintiffs changed the circumstances after the statements in question were made and, due to their failure to identify the allegedly defamatory statements, it is completely unclear if they are based on any statements of fact that were true at the time the notice letter was sent and prior to the changes. Indeed, the only things specifically refuted by Plaintiffs relate to the number and identity of chimpanzees at the facility at the time of filing. [Compl. ¶¶ 15-17].

*Genesco, Inc.*, 680 F.3d. 1046, 1053–54 (8th Cir. 2012); *Kenney v. Wal–Mart Stores, Inc.,* 100 S.W.3d 809, 817 (Mo. 2003)). In order to demonstrate actual damages, Plaintiffs must show that Defendants' defamatory statements caused a quantifiable professional or personal injury. *Id.* In the present case, Plaintiffs have made no allegations as to how their reputation has been damaged by any statements of PETA. They cite no examples of any kind, and instead allege only the conclusory statement that the statements "have damaged Plaintiffs' reputation" without any factual support, and provide no way for this Court, or PETA, to ascertain how any of PETA's statements allegedly caused them to suffer any actual losses.[5]

## VI. CONCLUSION

For the reasons set forth above, Defendants respectfully requests that this Court grant their Motion to Dismiss, enter an order dismissing Counts I-III of the Complaint with prejudice, and grant such other and further relief as this Court deems just and proper.

---

[5] Even if Plaintiffs adequately pled the elements of a defamation claim, the exhibits attached to the Complaint contain only true statements, *see* Mo. Const. art. I, § 8; *Henry v. Halliburton*, 690 S.W.2d 775, 780 (Mo. 1985) (en banc), and non-factual statements that represent PETA's opinion, *Nigro v. St. Joseph Med. Ctr.*, 371 S.W.3d 808, 818 (Mo. Ct. App. 2012), and are therefore non-actionable.

Respectfully submitted,

POLSINELLI PC

By: /s/James P. Martin
   JAMES P. MARTIN (#50170)
   MARISSA L. CURRAN (#61943)
   100 S. Fourth Street, Suite 1000
   St. Louis, MO 63102
   314.889.8000
   Fax No: 314.231.1776
   jmartin@polsinelli.com

   JARED S. GOODMAN (#1011876DC)
   (*Pro hac vice* admission pending)
   2154 W. Sunset Blvd.
   Los Angeles, CA 90032
   323.210.2266
   Fax No: 213.484.1648
   jaredg@petaf.org

ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

I hereby certify that on **February 28, 2017**, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to the following:

Kurtis B. Reeg and Lynn Lehnert
8000 Maryland, Suite 640
St. Louis, MO 63105
(314) 446-3350
Fax No. (314) 446-3360
kreeg@goldbergsegalla.com
llehnert@goldbergsegalla.com

ATTORNEYS FOR PLAINTIFFS

        /s/James P. Martin