UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:16-cv-02163 |
| | ) |
| PEOPLE FOR THE ETHICAL | ) |
| TREATMENT OF ANIMALS, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
AND FAILURE TO STATE A CLAIM**

Defendants People for the Ethical Treatment of Animals, Inc. ("PETA") and Angela Scott (collectively, "Defendants"), pursuant to Local Rule 7-4.01(C), respectfully submit this Reply in Support of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim [ECF #11].

**I.       PLAINTIFFS FAIL TO ADEQUATELY PLEAD THEIR INJUNCTION CLAIM**

As discussed in Defendants' Memorandum in Support of Defendants' Motion to Dismiss [ECF #12; "Motion"], Plaintiffs have not established the right to an injunction. (Motion at 10-11.)

Plaintiffs fail to respond to the fact that "[t]he Eighth Circuit reserves the issuance of injunctions barring the filing of a lawsuit to 'extreme cases involving multiple, frivolous filings'" (Motion at 11). There is nothing "extreme" about Defendants' intent to ultimately file their claims, which are expressly authorized by the ESA and will be the only claims Defendants have

ever asserted against Plaintiffs. Plaintiffs have not even come close to alleging what would be required for this extraordinary relief barring Defendants from bringing their ESA claims.

Moreover, Plaintiffs have not even pled the essential factors that they must demonstrate to obtain a permanent injunction. *See Brown v. City of Ferguson, Missouri*, No. 4:15CV00831 ERW, 2015 WL 8313796, at *5 (E.D. Mo. Dec. 9, 2015) (quoting the requirements set forth by the Supreme Court in the course of dismissing plaintiff's claim for injunctive relief). Plaintiffs still do not point to any irreparable injury they have allegedly suffered, as required. Because they allege no irreparable injury, they also do not allege that remedies available at law are inadequate to compensate for that injury, as required. *Id.* Plaintiffs' only claimed "hardship" is Defendants' intent to file a citizen suit for which they had provided proper notice, and that would allow Defendants to pursue their claims in an appropriate manner instead of being confined to the contours of Plaintiffs' inarticulate, ill-defined, and legally and factually incomplete Complaint. This purported "hardship" clearly does not satisfy Plaintiffs' "burden of proving the need for an injunction." *Id.* Finally, Plaintiffs' sole argument in support of the requirement that it would be within the public interest to issue an injunction is the false allegation that Defendants' claims would be "exactly the same action" and would involve "the exact same" issues.[1] In short, Plaintiffs have failed to allege the first two requirements to state a claim for injunctive relief, and their allegations regarding the third and fourth requirements, on their face, do not approach sufficiency. Plaintiffs cite no case law in support of their assertion that they have sufficiently pleaded these essential elements, nor in support of the necessary implication of their argument—

---

[1] *See* Section III.B, *supra* (further discussion that Plaintiffs' claims are not authorized by the ESA and that a coercive claim would not involve identical issues).

that a party should never be permitted to file its coercive claims after a putative defendant files a declaratory judgment action.

Plaintiffs also allege that Defendants argue "in circular fashion that Plaintiffs have failed to state a claim for an injunction, so that since they are not entitled to a declaratory judgment, they are also not entitled to an injunction." [ECF #17 "Opp." at 11.] Plaintiffs misstate Defendants' motion and simply miss the point. Plaintiffs' request for injunctive relief is premised entirely on their assertion that their claim for declaratory relief may be properly heard in this matter. [ECF #1; "Compl." ¶¶ 21-22.] As Defendants explained in their motion, because Plaintiffs are not entitled to declaratory relief, they are likewise not entitled to ancillary injunctive relief to prevent Defendants from filing their ESA claims. (Motion at 11.)

In sum, Plaintiffs are asking the Court to enjoin Defendants from filing their ESA claims while at the same time asking the Court to rule on their potential ESA liability—a transparent, inadequately pleaded, and unsupported tactical move to try to prevent PETA and Ms. Scott from alleging the basic facts that give rise to an actually ripe dispute. Accordingly, Plaintiffs' Count II for injunctive relief must be dismissed.

## II. PLAINTIFFS FAIL TO ADEQUATELY PLEAD THEIR DEFAMATION CLAIM

Plaintiffs still fail to establish: (1) that they identified any allegedly defamatory statements; (2) that they suffered a quantifiable injury; and (3) that the statements identified each of the plaintiffs bringing the claim, each of which is required to state a *prima facie* case of defamation. *Overcast v. Billings Mutual Insurance Co.,* 11 S.W.3d 62, 70 (Mo. 2000) (en banc); Motion at 13. Accordingly, Plaintiffs' defamation claim must be dismissed for failure to state a claim.

First, regarding Plaintiffs' irrefutable failure to identify the specific words or statements about which they complain, Plaintiffs merely state that "PETA complains about combing through" three appended exhibits and claim in a conclusory fashion that the statements about which they complain are "obvious." Even setting aside that the statements complained of are not "obvious"—which is only exacerbated by the fact that Plaintiffs made material changes to the circumstances at the facility, which they acknowledge (Opp. at 9-10)—Plaintiffs do not even attempt to respond to PETA's citation to established law that attaching articles as exhibits and incorporating them by reference, just as Plaintiffs did here, does not sufficiently identify the statements at issue, and therefore does not state a claim for defamation. (Motion at 13-14.)

Second, Plaintiffs respond to their failure to allege an actual, quantifiable injury, as required, by repeating that they "have alleged reputational harm and expenditure of attorneys' fees and costs." (Opp. at 11.) But they do not allege a single fact as to how their respective reputations have been damaged by any statements made by PETA, and Plaintiffs' bare recitation of "reputational harm" is insufficient as a matter of law. Motion at 14-15; *see, e.g., King v. Union Station Holdings, LLC*, No. 4:12CV696SNLJ, 2012 WL 5351598, at *4 (E.D. Mo. Oct. 30, 2012) (holding that an allegation of "pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, loss of enjoyment of life, damage to reputation" fails to allege any actual reputational harm and dismissing defamation claim for failure to allege damages). Additionally, attorneys' fees spent on pursuing a baseless defamation claim clearly cannot serve as the basis of an injury caused by the allegedly defamatory statements. Accepting Plaintiffs' argument would negate the injury requirement entirely, because it would be fulfilled in every defamation claim ever brought.

Finally, regarding Plaintiffs' failure to allege that the allegedly defamatory statements identified each of them (Motion at 14), Plaintiffs state that "Jane Doe 1 has been dismissed." (Opp. at 11 n.3.) Plaintiffs fail to refute that the statements do not identify Plaintiffs Sawyer or Jane Doe 2, who have not dismissed their claims.

Accordingly, Plaintiffs have not satisfied the pleading requirements for a defamation claim because they have not identified the statements they complain of or any actual injury, and their claim must therefore be dismissed. Plaintiffs Sawyer's and Jane Doe 2's claims must be dismissed for the additional reason that not a single statement appended to the Complaint identifies either of them.

## III. PLAINTIFFS ARE NOT ENTITLED TO DECLARATORY RELIEF

### A. The ESA Does Not Authorize Preemptive Suits by Alleged Violators

Plaintiffs are correct that the ESA expressly authorizes declaratory judgments; however, it does not authorize "declaratory judgments such as these." (Opp. at 2.) As demonstrated by the language and context of the statute Plaintiffs purportedly rely upon—"Penalties and Enforcement," 16 U.S.C. § 1540—and the cases they cite, the ESA authorizes particular actions *for the enforcement of the Act*. (Motion at 12-13.) It does not allow for anticipatory suits by alleged violators of the law—whether framed as being brought pursuant to the ESA or the Declaratory Judgment Act—against a potential plaintiff who gives written notice of the violation pursuant to the ESA's citizen-suit provision. Plaintiffs do not cite to a single example of an alleged violator purporting to sue in this manner in the Act's 44-year history, among the more

than 700 published decisions citing to the citizen-suit provision alone, and Defendants are unable to find any.[2]

Plaintiffs cite to *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 244 (1937), an insurance-contract dispute, for the proposition that "[i]t is the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative." (Opp. at 1-2.) Yet the *Aetna* Court preceded that line by explaining that "[w]hether the District Court may entertain such a suit by the insurer . . . is for the Congress to determine." *Aetna*, 300 U.S. at 244. Unlike the absence of any federal statute governing the contract dispute at issue in *Aetna*, here, Congress set forth in specific detail the manner in which the ESA may be enforced. (Motion at 12-13.) The ESA and its regulations "shall be enforced by the Secretary, the Secretary of the Treasury, or the Secretary of the Department in which the Coast Guard is operating, or all such Secretaries," 16 U.S.C. § 1540(e)(1); violations may be enjoined by the Attorney General of the United States, *id.* § 1540(e)(6); and a person may commence a citizen suit in three specific circumstances:

> (A) to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), *who is alleged to be in violation* of any provision of this chapter or regulation issued under the authority thereof; or (B) to compel the Secretary to apply, pursuant to [certain provisions] with respect to the taking of any resident endangered species or threatened species within any State; or (C) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary.

*Id.* § 1540(g)(1). Accordingly, Congress *did* determine what suits are authorized by the ESA, and Plaintiffs' claim for a declaration of non-violation is not so authorized.

---

[2] Plaintiffs' citation to unrelated cases in which PETA has sought authorized declaratory relief over the last seventeen years (Opp. at 3 n.1) is entirely irrelevant, and merely part of its inexplicable attempt to turn briefing on its unripe claim into a referendum on the Declaratory Judgment Act.

While the citizen-suit provision further provides that this injunctive relief "shall not restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any standard or limitation or to seek any other relief (including relief against the Secretary or a State agency)," 16 U.S.C. § 1540(g)(5), this savings clause reserves the Court's common law authority to grant appropriate equitable relief, *Pac. Rivers Council v. Shepard*, No. 03:11-CV-442-HU, 2012 WL 950032, at *5 (D. Or. Mar. 20, 2012), and is intended to allow for enforcement of substantive rights arising under *other* statutes, independent of those created by the ESA, *see, e.g., Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 10 n.31 (1981). It does not allow for a party that fails to satisfy the detailed enforcement mechanism of a statute to circumvent it by bringing a claim pursuant to a different statute. *Id.*[3]

Plaintiffs' Supplemental Memorandum [ECF #18-1] only *highlights* the impropriety of their claim. Plaintiffs attempt to rely on *Bennett v. Spear*, 520 U.S. 154 (1997), a case in which the plaintiffs were "seeking to prevent application of environmental restrictions rather than to implement them," *id.* at 165. But *Bennett* was not an anticipatory defensive lawsuit, and it was expressly authorized by the ESA. The petitioners specifically alleged, after sending statutorily required notice, that the government violated the ESA by designating a critical habitat without taking into consideration the economic impact of the designation, which is a "categorical *requirement*" of § 1533 of the statute. *Id.* at 172. The Court held that the claim was reviewable under § 1540(g)(1)(C), which specifically authorizes suit against the Secretary for the failure to

---

[3] It is clearly not PETA and Ms. Scott's expressly authorized ESA claims following the required statutory notice that would "thwart[] the clear provisions of the ESA" (Opp. at 3), but Plaintiffs' action, which was not "rightly filed" (Opp. at 4) pursuant to any action authorized or envisioned under the Act.

7

perform a nondiscretionary duty under § 1533. *Id.* at 173. In fact, in so holding, the Court rejected the petitioners' attempt to rely on § 1540(g)(1)(A), upon which Plaintiffs attempt to rely here, because it "is a means by which private parties *may enforce the substantive provisions of the ESA against regulated parties*." *Id.* at 173 (emphasis added).

As Plaintiffs note in citing *Aetna*, it is the nature of the claim, not the plaintiff, that is the relevant consideration. The *Bennett* Court stated that while "the citizen-suit provision does favor environmentalists" enforcing the ESA against a private violator, it does not limit enforcement to them, and "the 'any person' formulation applies to all the causes of action authorized by § 1540(g)—not only to actions against private violators of environmental restrictions, and not only to actions against the Secretary asserting underenforcement under § 1533, but also to actions against the Secretary asserting overenforcement under § 1533." *Id.* at 166. Unlike the petitioners' claim in *Bennett*, which fell squarely within these authorized causes of action, Plaintiffs' claim is none of the above.[4]

### B. Plaintiffs' Action is Not Ripe for Review

Even assuming *arguendo* that an alleged violator of the ESA can seek a declaration of non-liability, Plaintiffs' claim is not ripe because it is not fit for judicial review and they allege no cognizable hardship.

---

[4] To the extent that Plaintiffs attempt to base their claim on Defendants' ability to sue following *Defendants'* notice of intent to sue, Plaintiffs filed suit prior to the completion of the statutory 60-day notice period, and their claim must be dismissed. *See Am. Rivers, Inc. v. U.S. Army Corps of Engineers*, No. CIV.04-3188 PAM/RLE, 2004 WL 2905281, at *3 (D. Minn. Dec. 10, 2004) (holding that the ESA's "sixty day notice requirement is jurisdictional"); *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 31, 33 (1989) (holding that where a party suing under a citizen suit provision "fails to meet the notice and 60–day delay requirements . . . , the district court must dismiss the action as barred by the terms of the statute").

First, Plaintiffs' claim is not fit for judicial review. Unlike the matters in which PETA and other plaintiffs have sought declaratory relief against an alleged violator of the ESA (Opp. at 3, 9), Plaintiffs have changed circumstances following the notice (Motion at 2-3, 5), and they fail to even allege in their Complaint what facts are at issue and what they are asking the Court to declare is not an ESA violation—instead, they merely refer to Defendants' notice letter, including facts that are no longer at issue because of the relocation of at least five of the sixteen chimpanzees previously held at the facility (Compl. ¶¶ 13-17). PETA has never used a declaratory judgment action to try to file a case not contemplated by the statute, or to attempt to evade the citizen-suit provision's notice requirement.

Additionally, Plaintiffs' assertion that any coercive action would involve "the exact same issues" (Opp. at 10), notwithstanding these changed circumstances, is unfounded. In their Complaint, Plaintiffs fail to include all of the pertinent issues PETA and Ms. Scott raised in their notice letter, fail to include sufficient detail even as to what conditions they ask the Court to declare do not violate the ESA, and attempt to foreclose Defendants' well-pleaded claims that would be based on the actual existing facts. *See also* Section III.C., *infra*.

Moreover, Plaintiffs fail in their attempt to distinguish *Rexam, Inc. v. Mueller*, No. 4:05CV868-DJS, 2005 WL 2491458 (E.D. Mo. Oct. 7, 2005), on the ground that three of the five transferred chimpanzees were moved shortly before they filed their Complaint. (Opp. at 9-10.) First, the relocation of chimpanzee Joey following Defendants' notice letter—which addressed his solitary confinement first and at length—and likely after the Complaint was filed, is itself a "material change," regardless of the percentage of chimpanzees at the facility that he represents. Second, *Rexam* did not involve a claim for which a party was required to give pre-suit notice. Plaintiffs' argument—that the three chimpanzees who were transferred 50 days after the 60-day

9

notice letter was sent, but only a week prior to filing suit, do not qualify as a "material change" —is disingenuous and a distinction without a difference. Their claim relies *exclusively* on the notice letter and their allegations deny facts included in the notice letter in light of these subsequent transfers (Compl. ¶¶ 14-17). Third, Plaintiff Casey's declaration that the transfer of the three chimpanzees "was the result of negotiations and discussions that were initiated well before the receipt of" the notice (ECF #17-1) is irrelevant—each of the chimpanzees was transferred after receipt of the notice and Casey has not even alleged that these specific transfers would have occurred at this time irrespective of the notice. Indeed, the fact that these discussions were initiated "well before" receipt of the notice strongly suggests that PETA and Ms. Scott's notice was the catalyst for the ultimate decision to transfer the chimpanzees.

Plaintiffs have also failed to allege any hardship that would support the ripeness of their claim. As Plaintiffs acknowledge, they must establish an injury that is "certainly impending," but they merely allege "that their chimpanzees will be removed from their care" (Opp. at 8) and that Defendants intended to sue (Opp. at 9). As discussed in Defendants' Motion, the mere threat of litigation is an insufficient injury and fails to demonstrate hardship. (Motion at 6-7.) Moreover, the speculative and contingent removal of chimpanzees—which would occur only after Defendants file their coercive claims, succeed on the merits, and the Court enjoins the Plaintiffs and agrees with Defendants that the appropriate remedy is removing the chimpanzees from the facility and transferring them to an accredited sanctuary—does not place Plaintiffs "immediately in danger of sustaining some direct injury" *Pub. Water Supply Dist. No. 10 of Cass County, Mo. v. City of Peculiar, Mo.*, 345 F.3d 570, 573 (8th Cir. 2003) (citation omitted).

### C. The Court Should Decline to Exercise Jurisdiction

First, Plaintiffs fail to refute that Defendants' injury and claim have already accrued and that Plaintiffs have made material changes to the facts giving rise to the claim, and therefore a declaratory judgment would serve "no useful purpose" in clarifying any future legal relations between the parties. (Motion at 7.) In purported support for their argument that their claim would serve any useful purpose, Plaintiffs cite to *PETA v. Miami Seaquarium*, 189 F. Supp. 3d 1327 (S.D. Fla. 2016), and *Kuehl v. Sellner*, 161 F. Supp. 3d 678 (N.D. Iowa 2016)—two cases properly brought against alleged violators of the ESA pursuant to the citizen-suit provision—and allege that "the only difference here is a reversal of roles." (Opp. at 5.) Yet the pertinent distinction is not simply "a reversal of roles"; rather, in *PETA* and *Kuehl*, the declaratory relief sought was incidental and pursuant to "the traditional common law authority of the district courts to craft appropriate injunctive and equitable relief," *Defs. of Wildlife v. Norton*, 239 F. Supp. 2d 9, 23 (D.D.C. 2002), *vacated in part*, 89 F. App'x 273 (D.C. Cir. 2004), *and order superseded*, No. 1:00CV02996 GK, 2004 WL 6243379 (D.D.C. Apr. 29, 2004), ancillary to a statutorily-authorized claim, *see also Aransas Project v. Shaw*, 835 F. Supp. 2d 251, 272 (S.D. Tex. 2011) ("[T]he Court's authority to enforce the provisions of the ESA is broad. Thus, if Defendants are found to have violated the provisions of the ESA, the Court can impose affirmative obligations upon Defendants to ensure their compliance with federal law."). Thus, the plaintiffs in *PETA* and *Kuehl* were not required, as Plaintiffs are here, to persuade the Court to exercise jurisdiction over an anticipatory declaratory action pursuant to the Eighth Circuit's six-factor test. *See Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 968 (8th Cir. 2013). Plaintiffs' claim for declaratory relief would serve no useful purpose in this case.

Second, the only "uncertainty, insecurity, and controversy" Plaintiffs allege is a likelihood that Defendants will eventually file their properly noticed lawsuit. (Opp. 5-6.) Plaintiffs state that "the ESA does not give PETA *bridled* authority to sue who, what, when, where, and why it chooses" (Opp. at 6 (emphasis added)), but that is precisely what the citizen-suit provision of the ESA does—it gives Defendants bridled authority to pursue enforcement of alleged violations following the requisite notice and pursuant to the detailed enforcement mechanisms of the statute. Plaintiffs fail to refute that the "the threat of suit, however immediate, is not by itself sufficient for the invocation of the federal power to issue a declaratory judgment." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002); Motion at 7.

Finally, Plaintiffs' lawsuit was apparently filed to attempt to obtain a tactical advantage in any dispute regarding the care of chimpanzees at Missouri Primate Foundation ("MPF"). Plaintiffs fail to refute that they have filed this claim in a manner that "further[s] none of the goals of the Declaratory Judgment Act" and "represent[s] only a race to the courthouse" (Motion at 8.)[5]

Plaintiffs attempt to distinguish *Internet Transaction Sols., Inc. v. Intel Corp.*, No. 2:06-CV-035, 2006 WL 1281654 (S.D. Ohio May 8, 2006), and *Sealco Int'l, Inc. v. Control De Deschechos Industriales Y Monitoreo Ambiental, S.A.*, No. 3:99-CV-2915-H, 2000 WL 380251 (N.D. Tex. Apr. 13, 2000), on the ground that forum selection was at issue. Not only do Defendants themselves note this in their brief (Motion at 9), but Plaintiffs miss the point. Defendants cited these cases for the proposition, to which Plaintiffs do not respond, that courts

---

[5] Contrary to Plaintiffs' claims that Defendants omitted language to misrepresent this factor (Opp. at 8), Defendants made it very clear why the claim for declaratory relief should be dismissed even though it did not represent traditional procedural fencing (Motion at 7-10), and Plaintiffs even recognize this elsewhere in their brief (Opp. at 6).

12

have found bad faith where a party has sued before expiration of a response or notice period, and that it would be inequitable to allow a recipient of the notice to circumvent the purpose of the notice period by allowing them to sue when and where they please. Instead, Plaintiffs attempt to rely on *Express Scripts, Inc. v. Intel Corp.*, No. 4:09CV00796 ERW, 2010 WL 9586916 (E.D. Mo. Mar. 3, 2010), which was a patent dispute that did not involve a statutorily required notice period and in which there was no indication of changed circumstances between Intel's cease and desist letter and prior to ESI's filing suit. The Court noted that notwithstanding "a general policy of in favor of [sic] settlements, ESI [was] under no obligation to negotiate with Intel if it has concluded that it has the right to use" the marks Intel complained of. *Id.* at *6. The issues were concrete and prepared to be settled by the Court. Here, however, Plaintiffs made material changes without so much as informing Defendants of them. The information that Plaintiffs Sawyer and Jane Doe 1 relocated their chimpanzees who were held at MPF and that three additional chimpanzees were relocated from MPF is vital to the determination of which parties to sue, and the claims to raise, in any eventual litigation.

Plaintiffs' claim for a declaration that they are not violating the ESA—which was filed after the Plaintiffs took measures in response to Defendants' allegations that they were violating the ESA—is so threadbare that it fails to identify the chimpanzees remaining at the facility or a single specific fact that it asks the Court to consider, while it is also so over-inclusive that it asks the Court to declare lawful *all* of the "housing, care and treatment of the chimpanzees housed at the Missouri Primate Foundation." (Compl. at 5 (Count I, Prayer for Relief.)) The filing of this ill-defined claim is not authorized by the ESA, is not ripe for judicial review, was a transparent race to the courthouse, serves no useful purpose nor resolves any cognizable uncertainty, and is a waste of judicial resources.

13

Plaintiffs' removal of five of the sixteen chimpanzees at MPF is a material factual development that has a substantial impact on any claim alleging their take in violation of the ESA. Defendants intend to file appropriately pled claims, of which Plaintiffs have had adequate statutory notice, that accurately reflect these factual developments, that chimpanzees are highly intelligent and social animals with complex needs, and Plaintiffs' apparent inability to meet those needs. Rather than race to the courthouse, Defendants continue to evaluate the scope of the forthcoming claims in light of the changes at the facility, and their well-pled claims will eliminate the hypothetical issues and outdated facts on which Plaintiffs rely and ask this Court to rule, and will present specific issues alleged to constitute a take and a full and accurate picture of the facts that support a finding that MPF is violating the ESA.

## CONCLUSION

For the reasons set forth above and in Defendants' Memorandum in Support of Their Motion to Dismiss, Defendants respectfully request that this Court grant their Motion to Dismiss, enter an order dismissing Counts I-III of the Complaint with prejudice, and grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: /s/Jared S. Goodman
    JARED S. GOODMAN (#1011876DC)
    (Admitted *pro hac vice*)
    2154 W. Sunset Blvd.
    Los Angeles, CA 90032
    323.210.2266
    Fax No: 213.484.1648
    jaredg@petaf.org

    POLSINELLI PC
    JAMES P. MARTIN (#50170)
    MARISSA L. CURRAN (#61943)
    100 S. Fourth Street, Suite 1000
    St. Louis, MO 63102
    314.889.8000
    Fax No: 314.231.1776
    jmartin@polsinelli.com

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

      I hereby certify that on **April 10, 2017**, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to the following:

Kurtis B. Reeg and Lynn Lehnert
8000 Maryland, Suite 640
St. Louis, MO 63105
(314) 446-3350
Fax No. (314) 446-3360
kreeg@goldbergsegalla.com
llehnert@goldbergsegalla.com

ATTORNEYS FOR PLAINTIFFS

                                         /s/Jared S. Goodman