UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MISSOURI PRIMATE FOUNDATION, | ) | |
| CONNIE BRAUN CASEY, individually, | ) | |
| ANDREW SAWYER, individually, | ) | |
| and JANE DOE 2, | ) | |
| | ) | |
|     Plaintiffs and Counterclaim | ) | |
|                       Defendants | ) | |
| | ) | |
| vs. | ) | No. 4:16-cv-02163 |
| | ) | |
| PEOPLE FOR THE ETHICAL | ) | |
| TREATMENT OF ANIMALS, INC. and | ) | |
| ANGELA SCOTT a/k/a ANGELA | ) | |
| G. CAGNASSO, individually, | ) | |
| | ) | |
|     Defendants and Counterclaim | ) | |
|                       Plaintiffs. | ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS/COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**

Plaintiffs/Counterclaim Defendants Missouri Primate Foundation, Connie Braun Casey, Andrew Sawyer and Jane Doe 2 ("Plaintiffs" or "Counterclaim Defendants") submit the following memorandum in support of their Motion to Dismiss.

### I.    Introduction

Defendants/Counterclaim Plaintiffs' ("Defendants" or "Counterclaim Plaintiffs") filed a Counterclaim against Plaintiffs asserting a litany of alleged deficiencies related to the conditions under which Plaintiffs hold 16 chimpanzees. Defendants' complaints range from allegations that the enclosures are unsanitary to claims that the chimpanzees lack appropriate enrichment items. [Doc. 23, ¶4]. Defendants allege that these conditions "harm" and "harass" the chimpanzees in violation of the Endangered Species Act's ("ESA") "take" prohibition. [Doc. 23, ¶4].

Defendants allegations are largely based on claims that Plaintiffs have failed to comply with the Animal Welfare Act ("AWA") and not on any provisions of the ESA. Accordingly, Plaintiffs bring this motion to dismiss as Defendants do not have standing to bring and have failed to properly state those claims.

## II. Standard of Review

### a. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for lack of subject matter jurisdiction. Whether a plaintiff has standing to sue is the threshold question in every federal case. *Steger v. Franco. Inc.*, 228 F.3d 889, 892 (8th Cir. 2000). The burden of proving subject matter jurisdiction falls on the plaintiff. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). Motions for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) generally take one of two forms: 1) a "facial attack" on the sufficiency of the allegation of subject matter jurisdiction in the complaint; or 2) a "factual attack" on the underlying facts upon which subject matter jurisdiction is allegedly based. *Rector v. State Farm Mut. Ins. Co.*, 392 F. Supp. 2d 1069, 1071 (W.D. Mo. 2005). Where a defendant mounts a "factual attack" on the plaintiff's complaint, "the court considers matters outside the pleadings and the non-moving party does not have the benefit of 12(b)(6) safeguards" in that the court may not presume the factual allegations in the plaintiff's complaint are true. *Id*.

### b. Motion to Dismiss for Failure to State a Claim.

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. This standard requires more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*. Where the allegations show on the face of the complaint there is some insurmountable bar to relief, dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate. *Parnes v. Gateway 2000*, Inc., 122 F.3d 539, 546 (8th Cir. 1997).

### III. Discussion

#### A. Defendants lack standing and cannot state a claim to pursue enforcement of alleged violations of the Animal Welfare Act.

Defendants' ESA "take" allegations all address the conditions in which certain chimpanzees are held and claim that those conditions amount to "harm" or an attempt to "harass" the chimpanzees.. Specifically, Defendants allege that the conditions "fail to adequately fulfill" any of the "critical" needs established by the United States Department of Agriculture ("USDA"). [Doc. 23, ¶43]. However, the Fish and Wildlife Service ESA regulation that defines "harass" as part of "take," excludes from the definition of "harass" "generally accepted animal husbandry practices that meet or exceed the minimum standards for facilities and care under the Animal Welfare Act." 50 C.F.R. §17.3. Further, the USDA has exclusive jurisdiction and authority over the enforcement of the Animal Welfare Act ("AWA"). Similarly, Defendants' "harm" claims are based on alleged violations of the AWA that are within the exclusive jurisdiction of the USDA.

### 1. Citizen enforcement of the AWA.

No authority supports an ESA Section 9 "taking" claim involving animals in captivity pursuant to a USDA APHIS license issued under the AWA. Congress plainly did not intend for all animals who happen to be among ESA-listed species to be subject to ESA "take" prohibitions based on their captivity. The Department of Interior, United States Fish and Wildlife Service ("FWS"), the agency tasked with implementing the ESA, has specifically exempted captive wildlife from ESA "take" claims, as long as the animal's living conditions meet the AWA's requirements.

The purpose of the AWA is "(1) to insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment; [and] (2) to assure the humane treatment of animals during transportation in commerce." 7 U.S.C. §2131. "The AWA, unlike the ESA, does not have a citizen suit provision." *Graham v. San Antonio Zoological Soc'y*, 2017 WL 2533531, at *19 (W.D. Tex. June 8, 2017). Congress charged the USDA with enforcing the AWA, and in particular, issuing licenses to dealers and exhibitors of captive animals and setting standards for proper care and treatment of these animals. 7 U.S.C. § 2133, 2146.

FWS's take regulations defer to the AWA as implemented by USDA APHIS to ensure listed animals in captivity are held under the proper conditions. 50 C.F.R. §17.3 (excluding from the definition of "harass" animals held in captivity under the standards imposed by the AWA). This is necessary, reasoned the FWS, because any conditions of captivity would otherwise constitute "harassment" and therefore a "take," but it was not Congress's intention in passing the ESA to prescribe the specific conditions of animals lawfully held in captivity. *See* 63 Fed. Reg. at 48638. Defendants now seek to turn this common sense implementation of the ESA on its

head, claiming that alleged AWA violations can form the basis of an ESA "taking" lawsuit. The AWA does not authorize citizen suits to enforce its standards, and the ESA citizen suit provision cannot be used for that purpose either.

Courts have for decades dismissed complaints seeking to enforce AWA standards because of the lack of a citizen suit provision in that statute. *See Int'l Primate Prot. League v. Inst. for Behavioral Research, Inc*., 799 F.2d 934, 940 (4th Cir. 1986) ("The Act . . . does not imply any provision for lawsuits by private individuals as a complement to the authority of the Secretary of Agriculture"); *Moor-Jankowski v. Bd. of Trustees of New York Univ*., 1998 WL 474084 at *8 (S.D.N.Y. Aug. 10, 1998) ("Congress explicitly placed in the hands of the Secretary of Agriculture all investigative and enforcement authority for the AWA and its implementing regulations. *See* 7 U.S.C. §§ 2146, 2149. Nowhere does the AWA provide for private citizens, or whistleblowers in particular, to file private causes of action for violations of the statute or of any its implementing regulations promulgated by the Secretary."); *In Def. of Animals v. Cleveland Metroparks Zoo*, 785 F. Supp. 100, 103 (N.D. Ohio 1991) ("Plaintiffs could not state a cause of action under the AWA, since that statute does not provide for private suits to enforce its terms").

The AWA's standards are simply not intended to be enforced in citizen suits alleging inadequate conditions of captivity. *Animal Legal Def. Fund v. U.S. Dept. of Agric*., 789 F.3d 1206, 1225 (11th Cir. 2015) ("As long as USDA refuses to initiate a discretionary enforcement proceeding, the remedy ALDF and Lolita's legion of supporters seek lies not in the federal courts, but in the halls of Congress. Our democratically elected leaders alone have the authority to limit USDA's license-renewal discretion in this matter and to demand annual, substantive compliance with animal welfare standards.")

The plain language of the ESA evinces Congress's intent to preclude private citizens from seeking to enforce alleged AWA violations through the ESA's citizen suit provision. ESA §11(h) addresses "Coordination with other laws" and makes clear that the ESA's terms, including its citizen suit provision, do not impinge upon the USDA's administration of its laws and regulations:

> Nothing in this Act or any amendment made by this Act shall be construed as superseding or limiting in any manner the functions of the Secretary of Agriculture under any other law relating to prohibited or restricted importations or possession of animals and other articles and no proceeding or determination under this Act shall preclude any proceeding or be considered determinative of any issue of fact or law in any proceeding under any Act administered by the Secretary of Agriculture.

16 U.S.C. §1540(h).

The ESA by this language precludes the statute's generalized application to USDA-licensed possession of animals in deference to USDA APHIS's administration of its licensing regime. In other words, because USDA APHIS licenses and ensures possession of animals as compliant with the AWA's standards, the ESA's citizen suit provision cannot be used to gain factual or legal determinations that the AWA standards are being violated.

Instead, as to animals in captivity, the ESA applies administratively, and in coordination with USDA APHIS's authority to license possession of animals held in captivity. ESA §7(a)(1) requires that "[a]ll other Federal agencies shall, in consultation with and with the assistance of the [FWS], utilize their authorities in furtherance of the purposes of [the ESA] by carrying out

programs for the conservation of endangered species and threatened species listed pursuant to section 1533 of this title." 16 U.S.C. §1536(a)(1).

Similarly, ESA §7(a)(2) requires that each federal agency "in consultation with and with the assistance of the [FWS] insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical habitat]." 16 U.S.C. §1536(a)(2). The ESA §7 consultation regulations define "action" to mean "all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies in the United States or upon the high seas. Examples include, but are not limited to: (a) actions intended to conserve listed species or their habitat; (b) the promulgation of regulations; (c) the granting of licenses, contracts, leases, easements, rights-of-way, permits, or grants-in-aid; or (d) actions directly or indirectly causing modifications to the land, water, or air." 50 C.F.R. §402.02.

Thus, the ESA requires: (1) USDA APHIS to use its regulatory, licensing, inspection, and enforcement authorities under the AWA to ensure that individuals who possess listed captive animals employ animal husbandry practices that "conserv[e] . . . endangered species." 16 U.S.C. §1536(a)(1); and (2) USDA APHIS to consult with FWS regarding licensure of zoos and aquaria that possess and exhibit federally-listed endangered animals. 16 U.S.C. §1536(a)(2); 50 C.F.R. §402.02.

Accordingly, FWS implements the ESA with respect to animals lawfully held in captivity by consulting with APHIS, but it does not itself administer animal welfare standards. As FWS stated in its 1998 rulemaking: "[t]o evaluate facilities and care provided to [captive bred wildlife

permit] applicants, the Service will continue to consult with experts such as . . . [APHIS] which is charged with administering the Animal Welfare Act." 63 Fed. Reg. at 48636.

In sum, under the ESA and AWA and their respective regulations, it is the AWA administrative scheme which governs, and it is USDA APHIS which enforces the standards applicable to listed animals held in captivity. Allowing Defendants to use an ESA citizen suit to enforce AWA standards would ignore Congress's carefully structured legislative and administrative scheme.

### 2. Defendants have not alleged an actionable "harm."

Defendants' allegations of a "take" by "harm" fail for similar reasons. All Defendants' "harm" allegations concern the conditions in which the chimpanzees are held. The ESA states that it will not supersede or limit "in any manner the functions of the Secretary of Agriculture under any other law." 16 U.S.C. 1540(h). Any judicial finding that Defendants' conditions "harm" the chimpanzees would necessarily limit the functions of USDA APHIS to determine whether Defendants' conditions meet the standards for humane captivity.

Moreover, in excluding animals licensed under the AWA to be held in captivity, FWS intended to exclude such animals not just from "harass" but from "take" generally, as long as USDA APHIS licenses the facility as compliant with the AWA. "Since Congress chose not to prohibit the mere possession of lawfully-taken listed species in Section 9(a)(1) of the [ESA], the [FWS] believes that congressional intent supports the proposition that measures necessary for the proper care and maintenance of listed wildlife in captivity do not constitute "harassment" or `taking.'" 63 Fed. Reg. at 48636.

Defendants' "harm" allegations also fail because they do not allege an actual physical injury or death. 50 C.F.R. §17.3 is the FWS regulation defining "harm" and provides: "Harm in

the definition of 'take' in the Act means an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." In this rulemaking, FWS explained that this definition of "harm" sought to "preclude[] a taking where no actual injury is shown. " 46 Fed. Reg. 54748, 54749 (Nov. 4, 1981). In this case, Defendants have failed to offer any allegations of an actual injury, and therefore, their "harm" claims fail.

### B. The Allegations in the Counterclaim regarding Defendant Sawyer are Moot and Should Be Dismissed.

Prior to the filing of Defendants' Counterclaim, Defendants were advised and aware of the fact that the Chimpanzee also known as Joey had been transferred and relocated to another facility, and even so allege within their Counterclaim. [Doc. 23, ¶48]. Nevertheless, Defendants asserted claims regarding Plaintiffs Missouri Primate Foundation and Andrew Sawyer regarding that specific chimpanzee and its care and treatment at the Missouri Primate Foundation. At best, this is a ploy to seek discovery regarding the present whereabouts of that animal, information to which Defendants-Counterclaim Plaintiffs are not entitled.

Moreover, Plaintiff/Counterclaim Defendant Jane Doe 1 also transferred her chimpanzee from the Missouri Primate Foundation to Florida without complaint from PETA and Ms. Scott (presumably because they got what they were seeking).

Any alleged claims as to what occurred in the past regarding Jane Doe 1's and Mr. Sawyer's property at the Missouri Primate Foundation are moot and irrelevant and should be dismissed from this Counterclaim case.

Under Article III of the Constitution, federal courts have jurisdiction only over "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. An "actual controversy" must exist not only "at the time the complaint is filed," but through "all stages" of the litigation. *Alvarez v. Smith*, 558 U.S. 87, 92 (2009). A case becomes moot, and therefore no longer a "case" or "controversy" for purposes of Article III, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982). Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In order to have constitutional standing, a plaintiff must show 1) an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; 2) a causal connection between the injury and the conduct complained of; and 3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id*. at 560-561. The ESA contains a citizen-suit provision, allowing any person to commence a civil suit, however the relief in such a suit is limited to prospective injunctive relief. 16 U.S.C. §1540(g)(1).

In this case, Defendants have specifically alleged that 5 of the chimpanzees, including the only chimpanzees alleged to be owned by Plaintiff Jane Doe 1 and Plaintiff Sawyer, are no longer housed at the Missouri Primate Foundation. [Doc. 23, ¶¶45-48]. Accordingly, there can be no "case" or "controversy" involving Plaintiffs Jane Doe 1 and Sawyer as to the housing conditions at the Missouri Primate Foundation as Defendants can only seek prospective injunctive relief and the chimpanzees are no longer housed at the Missouri Primate Foundation. Any prospective relief would be purely speculative and call for conjecture that the chimpanzees may at some unknowable point in a possible contingent future be housed at the Missouri Primate

Foundation again. Similarly, any claims against related to the five chimpanzees no longer housed at the Missouri Primate Foundation are moot as any prospective injunctive relief would be moot as to those animals.

The resources of the Federal government are precious and limited. *Galvan v. Cameron Mut. Ins. Co.*, 831 F.2d 804, 805 (8th Cir. 1987). Accordingly, Federal courts are ones of limited jurisdiction and they restrain themselves to the determination of "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. In this case, Defendants have failed to establish standing as they have suffered no injury in fact to any constitutionally protected rights regarding the chimpanzees alleged to no longer be housed at the facility; and the Counterclaim should be dismissed as to those claims.

## IV. Conclusion

Based on the foregoing, Plaintiffs/Counterclaim Defendants Missouri Primate Foundation, Connie Braun Casey, Andrew Sawyer and Jane Doe 2 respectfully request this Court issue its order and judgment dismissing Defendants' Counterclaim and/or the claims directed at Plaintiff Andrew Sawyer and the chimpanzee Joey, and for such further relief as the court deems just and proper.

Respectfully submitted,

**GOLDBERG SEGALLA LLP**

By: /s/ Kurtis B. Reeg
Kurtis B. Reeg, MO Bar #27684
*kreeg@goldbergsegalla.com*
Lynn Lehnert, MO Bar #54546
*llehnert@goldbergsegalla.com*
8000 Maryland Suite 640
St. Louis, Missouri 63105
Telephone: 314-446-3350
Facsimile: 314-446-3360

*Attorneys for Plaintiffs/Counterclaim Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2017, I electronically served the foregoing through filing it with the United States District Court – Eastern District of Missouri by using the CM/ECF system.

/s/ Kurtis B. Reeg