UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **MISSOURI PRIMATE FOUNDATION, et al.,** Plaintiffs and Counterclaim Defendants; v. **PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al.,** Defendants and Counterclaim Plaintiffs. | Case No. 4:16-cv-02163 |

**COUNTERCLAIM PLAINTIFFS' MEMORANDUM IN OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION TO STRIKE**

**I.    Introduction and Legal Standard**

Plaintiffs and Counterclaim Defendants Missouri Primate Foundation ("MPF"), Connie Braun Casey, Andrew Sawyer, and Jane Doe 2 (collectively, "Counterclaim Defendants") have filed a Motion to Strike [ECF No. 27] and Memorandum in Support thereof [ECF No. 28; "Motion"]. The Motion identifies 15 paragraphs in Counterclaim Plaintiffs' People for the Ethical Treatment of Animals, Inc., and Angela Scott's (collectively "Counterclaimants") Counterclaim [ECF. No. 23, "Counterclaim," ¶¶ 40, 41, 51, 71, 77, 78, 79, 80, 81, 84, 86, 87, 120, 122, and 132] that Counterclaim Defendants allege must be stricken under Rule 12(f) as "immaterial and/or scandalous." Motion at 2. The paragraphs at issue are neither immaterial nor scandalous, but instead provide allegations highly relevant to Counterclaimants' claims and requests for relief and, at a minimum, important context to this matter.

"A motion to strike generally 'should be denied unless the challenged allegations have no

possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'" *Mark Andy, Inc. v. Cartonmaster Int'l (2012), Inc.*, No. 4:14-CV-986-SPM, 2014 WL 7140630, at *1 (E.D. Mo. Dec. 12, 2014) (citation omitted); *Gilbee v. RJW Transp., Inc.*, No. 1:10-CV-0060-SNLJ, 2010 WL 4974863, at *2 (E.D. Mo. Nov. 24, 2010) ("If there is any doubt whether the matter may raise an issue, the motion should be denied."); *Brown v. Davis*, No. 4:12CV00649 AGF, 2012 WL 3578730, at *2 (E.D. Mo. Aug. 20, 2012) (noting that "even where allegations are redundant or immaterial, they should be stricken only if prejudicial to the moving party"). "In determining a motion to strike, … [t]he Court 'must view the pleadings in the light most favorable to the pleader.'" *Certain Underwriters at Lloyd's, London Subscribing to Certificate No. IPSI 12559 v. SSDD, LLC*, No. 4:13-CV-193 CAS, 2013 WL 6801832, at *2 (E.D. Mo. Dec. 23, 2013) (citations omitted).

Motions to strike are generally held in low esteem by courts; the Eighth Circuit Court of Appeals noted that "striking a party's pleadings is an extreme measure, and, as a result, … 'motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted." *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (citation omitted). Because Counterclaim Defendants do not approach, much less meet, this heightened standard, the Motion should be denied.

## II. Discussion

### A. Substantial Tax Liens Assessed Against Casey

First, Counterclaim Defendants ask the court to strike two paragraphs identifying tax liens assessed against Counterclaim Defendant Casey by the Internal Revenue Service and the Missouri Department of Revenue, respectively. Counterclaim at ¶¶ 40 and 41; Motion at 2.

59729019.3

Counterclaim Defendants do not dispute the authenticity of the liens, or allege that they have been satisfied, but instead (1) refer twice to the fact that Counterclaimants have not provided the year(s) in which these liens were assessed and (2) argue that Counterclaimants "provide no context or explanation as to the purpose or relevance of the allegations." Motion at 3. Then, Counterclaim Defendants invite the Court to conclude that "there is no possible relation or connection between some date uncertain purported tax liens against [Counterclaim Defendant Casey] and any of [Counterclaimants'] claims." *Id.*

In reality, the defendant's financial condition is directly relevant in an Endangered Species Act lawsuit because it provides insight into whether the defendant can hire adequate staff, maintain enclosures, or otherwise provide appropriate care for the animals at the facility. *See Kuehl v. Sellner*, 161 F. Supp. 3d 678, 706 (N.D. Iowa 2016) ("Mr. Allen concluded that the Sellners do not have the financial resources to maintain a zoo in compliance with the Animal Welfare Act. There does not appear to be any money available to hire an adequate staff to care for the animals, nor is there money available for capital improvements to the facilities."). Counterclaimants have expressly alleged that "Counterclaim Defendants Casey and MPF lack the facilities, stability, support, knowledge, expertise, and funds necessary to care for chimpanzees by providing appropriate enrichment, nesting materials, sanitation, diet, veterinary care, medication, maintenance, and monitoring." Counterclaim at ¶ 42. Counterclaimants further detail how Casey and MPF have provided chimpanzees with or allowed them access to moldy food, made the chimpanzees to live in their own feces, and have otherwise forced the chimpanzees to live in unsanitary conditions, all in violation of the ESA. Counterclaim at ¶¶ 112-119. The liens against Casey, which are already a matter of public record, are therefore highly relevant because they prove that Casey and MPF do not have the resources necessary to care for

the highly intelligent and complex animals in their care.

To address Counterclaim Defendants' insinuations regarding the "date uncertainty" of the liens—and the somewhat dubious implication that Casey is somehow unaware of the substantial and current liens against her—attached as **Exhibit 1** are the liens themselves, which show that they are current. Moreover, Counterclaim Defendants' claim that the allegations in paragraphs 40 and 41 lack context or explanation as to relevance is flatly false, as evidenced, for example, by the two surrounding paragraphs. Counterclaim at ¶¶ 39, 42. Specifically, Casey's and MPF's inability to provide the chimpanzees with proper care is directly at issue in this lawsuit. To cite just one example, paragraph 39 provides, in part, that "the daily care of these endangered animals falls to Casey, who lacks the financial resources" to care for them. *Id.* at ¶ 39; *see also, e.g., id.* at ¶ 42 and ¶¶ 112-119. Accordingly, these liens have a direct "relation or logical connection to the subject matter of the controversy." *Mark Andy, Inc.*, 2014 WL 7140630, at *1.

Moreover, Counterclaim Defendants do not address their burden of showing how they will be "*significantly prejudiced*" by the inclusion of paragraphs 41 and 42, instead arguing only that the allegations are "immaterial," "scandalous," and "an attempt to cause embarrassment and harass." Given that these liens are already public records and this case will be tried by the Court—not a jury—it remains to be seen how Counterclaim Defendants could even articulate any prejudice argument in this case. Notwithstanding Counterclaim Defendants' claims to the contrary, because the paragraphs regarding Counterclaim Defendant Casey's tax liens are plainly relevant to her financial inability to provide proper care for the chimpanzees and Counterclaim Defendants have provided no evidence of prejudice, they should not be stricken.

B.  **AZA and GFAS Standards**

Counterclaim Defendants next ask the Court to strike certain[1] references to the guidance on proper care for chimpanzees provided by two recognized accreditation and certification bodies—(1) the Association of Zoos and Aquariums' ("AZA") Chimpanzee (*Pan troglodytes*) Care Manual (2010) ("AZA Manual") and (2) the Global Federation of Animal Sanctuaries' ("GFAS") Standards for Great Ape Sanctuaries (2010) ("GFAS Standards"). Counterclaim at ¶¶ 71, 79, 80, 81, 84, 86, 87, 120, 122, and 132; Motion at 3-5. Counterclaim Defendants argue that the AZA Manual and GFAS Standards "have no relation or logical connection to [Counterclaimants'] claims" because those standards are "related to the appropriate means to house animals in a zoo" and sanctuary, respectively. Motion at 4. But the corporate purpose of the bodies accredited by the AZA and GFAS are irrelevant to the reason for which these standards were cited—they provide detailed and expert guidance on the proper care of chimpanzees with regard to, among other things, habitat, living conditions, space, social interactions, diet, enrichment, and behavioral development. Counterclaim at ¶¶ 71, 77, 78, 79, 80, 81, 84, 86, 87, 120, 122, and 132. This guidance—developed by leading veterinary and husbandry experts—explains how to care for chimpanzees in a manner that does not cause them physical and psychological harm and is relevant to all chimpanzees, not just chimpanzees held captive specifically in a zoo or animal sanctuary.

Counterclaim Defendants further claim to be "significantly prejudiced" by the mere inclusion of the AZA Manual and GFAS Standards, which they argue are "not a source of legally enforceable standards" and "serve to only add confusion and complexity to [Counterclaimants']

---

[1] Counterclaim Defendants fail to ask the Court to strike paragraphs 85, 110, 111, 123, or 131, despite those paragraphs citing to the AZA Manual and the GFAS Standards. Counterclaim at ¶¶ 85, 110, 111, 123, and 131; *see generally* Motion.

5

claims." Motion at 4. Counterclaimants introduce these guides not as "legally enforceable standards," but as necessary context regarding generally accepted standards of caring for chimpanzees. This is specifically relevant to the lawsuit because, as alleged by Counterclaimants and conceded by Counterclaim Defendants, whether the conditions "'harass' the chimpanzees in violation of the Endangered Species Act's 'take' prohibition" is directly at issue. Motion at 1. In their brief in support of their motion to dismiss the Counterclaim, Counterclaim Defendants further acknowledge that "the Fish and Wildlife Service ESA regulation that defines 'harass' as part of 'take' excludes from the definition of 'harass' only '*generally accepted* animal husbandry practices that meet or exceed the minimum standards for facilities and care under the Animal Welfare Act'" that are not likely to result in injury. [ECF No. 30, at 3 (quoting 50 C.F.R. §17.3) (emphasis added)]. As neither the ESA nor the regulation provides further guidance on what practices are "generally accepted," Counterclaimants provided the standards set forth by preeminent recognized accreditation and certifications bodies. Accordingly, they are highly relevant to the Counterclaim and the standard for harassment that even Counterclaim Defendants recognize.

Counterclaimants also allege that the Counterclaim Defendants are violating the "take" prohibition found in the ESA by causing "harm" to the chimpanzees—depriving them of essential care and facilities required in order to meet their fundamental social, physical, and psychological needs [*id.* at ¶¶ 62-105]; confining them to a dangerous and unsanitary environment [*id.* at ¶¶ 106-19]; restricting them to a dangerously unhealthy diet [*id.* at ¶¶ 120-28]; and failing to provide them with adequate preventative and emergency veterinary care [*id.* at ¶¶ 129-33]. Through these actions, Counterclaim Defendants have actually injured—and therefore harmed—the chimps, within the meaning of 50 C.F.R. § 17.3. The standards set forth

6

in the Counterclaim are highly relevant because they help the Court understand the essential needs of the complex animals at issue in this litigation.

Counterclaim Defendants are not in any way prejudiced merely by their inclusion in the Counterclaim. They assert that these are a "confusing array of purported standards and conditions of care for chimpanzees, many of which are not even applicable to how [Counterclaim Defendants'] chimpanzees are housed, ... and require meticulous efforts to sort through," yet Counterclaimants identified the precise standards relevant to Counterclaim Defendants' holding of the chimpanzees at issue. Accordingly, the allegations should not be stricken.

### C. Opinion of Alan Cumming

Finally, Counterclaim Defendants ask the Court to strike the final few sentences of paragraph 51 of the Counterclaim, which provides the thoughts of actor Alan Cumming regarding his personal interactions with Tonka, one of the chimpanzees being held at MPF, and Mr. Cumming's concerns for the manner in which Tonka is being held. Counterclaim at ¶ 51; Motion at 4. Counterclaim Defendants' argument on this point is limited, and they claim only that Cumming's opinion is "immaterial" and the "allegations regarding the supposed opinions of Alan Cummings [sic] provide basis to conclude that his speculation is informed or based on any relevant or material information." Motion at 4. In reality, Alan Cumming is a longtime PETA supporter and collaborator, so—at a minimum—this allegation could further PETA's organizational standing in this matter. The allegations are also relevant to further demonstrate the complexity and social nature of the chimpanzees. Moreover, as noted, *supra*, in *Brown*, "even where allegations are redundant or immaterial, they should be stricken *only if prejudicial to the moving party*." 2012 WL 3578730, at *2 (emphasis added). Even if the allegations had been

7

59729019.3

immaterial or irrelevant—which Counterclaimants dispute—Counterclaim Defendants have failed to establish prejudice and paragraph 51 should not be stricken.

**III.     Conclusion**

For the reasons set forth above, Counterclaimants respectfully request that this Court deny Counterclaim Defendants' Motion to Strike in full.

    Respectfully submitted,

    POLSINELLI PC

    By: /s/ Kelly J. Muensterman
        JAMES P. MARTIN (#50170)
        MARISSA L. CURRAN (#61943)
        KELLY J. MUENSTERMAN (#66968)
        100 S. Fourth Street, Suite 1000
        St. Louis, MO 63102
        314.889.8000
        Fax No: 314.231.1776
        jmartin@polsinelli.com
        mcurran@polsinell.com
        kmuensterman@polsinelli.com

        JARED S. GOODMAN (#1011876DC)
        (Admitted *Pro Hac Vice*)
        2154 W. Sunset Blvd.
        Los Angeles, CA 90032
        323.210.2266
        Fax No: 213.484.1648
        jaredg@petaf.org

        *Attorneys for Defendants/*
        *Counterclaim Plaintiffs*

## CERTIFICATE OF SERVICE

  I hereby certify that on **August 7, 2017**, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to the following:

Kurtis B. Reeg and Lynn Lehnert
GOLDBERG SEGALLA LLP
8000 Maryland, Suite 640
St. Louis, MO 63105
(314) 446-3350
Fax No: (314) 446-3360
kreeg@goldbergsegalla.com
llehnert@goldbergsegalla.com

*Attorneys for Plaintiffs/
Counterclaim Defendants*

              /s/ Kelly J. Muensterman