IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PEOPLE FOR THE ETHICAL TREATMENT  *
 OF ANIMALS, INC.
                                  *
             Plaintiff
                                  *
     vs.                              CIVIL ACTION NO. MJG-17-2148
                                  *
TRI-STATE ZOOLOGICAL PARK OF
 WESTERN MARYLAND, INC., et al.  *

             Defendants           *

*      *      *      *      *      *      *      *      *

MEMORANDUM AND ORDER RE: MOTION TO DISMISS

The Court has before it Defendants' Motion to Dismiss

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6) [ECF No. 15] and the materials submitted relating

thereto.  The Court has conferred with counsel and finds that a

motions hearing is not necessary.

I.  BACKGROUND

    A. The Parties and the Claims

    Plaintiff People for the Ethical Treatment of Animals, Inc.

("PETA" or "Plaintiff"), a 501(c)(3) organization specializing

in animal protection, brings a citizen lawsuit alleging

violations of Section 11(g)(1)(A) of the Endangered Species Act

("ESA").  Defendants are Tri-State Zoological Park of Western

Maryland, Inc. ("Tri-State Zoo" or "Zoo"), Animal Park, Care &

Rescue, Inc. ("Animal Park"), and Robert L. Candy (together, "Defendants").[1]   The animals on whose behalf the action is brought are two ring-tailed lemurs, five tigers, and one lion.

Counts I and II of the Complaint assert the unlawful "take" and "possession" of protected species, respectively.  Among other requests, Plaintiff seeks declaratory and injunctive relief (1) enjoining Defendants from owning or possessing endangered or threatened species in the future and (2) transferring Defendants' ownership of the animals at issue to reputable wildlife sanctuaries for appropriate placement.  By the instant motion, Defendants seek dismissal of the Complaint for failure to state a claim.

## B. Statement of Facts[2]

Tri-State Zoo is a zoological park in Cumberland, Maryland that exhibits many species of animals.  Compl. ¶ 23, ECF No. 1. At issue in this case is the Zoo's treatment of two ring-tailed lemurs, five tigers, and one African lion.  Id. ¶¶ 3, 24. According to the Plaintiff, the Zoo has previously been subject to some administrative actions for failing to meet the requirements of care of animals under the Animal Welfare Act.

---

[1] Animal Park allegedly owns the animals that are at the subject of the action, and Robert Candy is an agent of Tri-State Zoo.
2 The "facts" stated herein are based on the Complaint and are not agreed upon by Defendants.

2

Id. ¶ 26.  Plaintiff alleges that the Zoo lacks the resources
and ability to adequately accommodate its animals and must rely
on inadequately trained volunteers to care for these animals.
Id. ¶ 27, 28.

Ring-tailed lemurs[3] are highly social animals
that require the opportunity to socialize with
other lemurs to maintain their physical and
psychological health.  Id. ¶ 30-31.  Plaintiff
alleges that although the two ring-tailed lemurs
are housed in the same enclosure, "a single companion is not an
adequate social group for these highly social animals."  Id. ¶
35.  Additionally, ring-tailed lemurs require "extensive,
varied, and well-planned environmental enrichment," which
Defendants allegedly do not provide.  Id. ¶ 37, 40.  Moreover,
these lemurs must be housed in sanitary spaces with temperatures
between 64.4 and 78.8 degrees Fahrenheit, and Defendants
allegedly do not provide them with adequate heating in winter or
sanitary spaces in which to live.  Id. ¶¶ 43, 46, 47.

Tigers "require large, environmentally rich, natural spaces
that allow them to express a wide range of behaviors."  Id. ¶
51.  Defendants allegedly deny these tigers appropriate housing

---

[3] The Court has provided an image of a ring-tailed lemur for
illustrative purposes.  This is not a photograph of the actual
lemurs at issue.

3

and adequate enrichment by "confining them to a pit . . . with
adjacent dens," providing them only "a small tub of water and
bowling balls" or a "tire" for enrichment, failing to clean and
evaluate the enclosures, failing to provide access to clean
pools, and failing to provide them appropriate shelter from the
elements. Id. ¶¶ 53-58. Additionally, tigers require specific
social conditions that Defendants have failed to provide (i.e.,
by inappropriately housing sibling female tigers in the same
enclosure as a related sexually mature male tiger), which may
lead to physical or psychological injury. Id. ¶¶ 62, 64.
Moreover, tigers require adequate nutrition and water, and
Defendants have allegedly failed to provide "adequately
implemented nutrition protocols." Id. ¶ 72. Defendants also
allegedly fail to keep the enclosures clean from animal and food
waste. Id. ¶ 72. Finally, Plaintiff alleges that Defendants
harm and harass the tigers by granting members of the public
"access to the 'off-exhibit' areas of the enclosures and
facilitating direct contact with adult tigers," resulting in
increased psychological stress for the animals. Id. ¶ 75, 77.

Lions are highly social, live in prides, and require
enriching environments that "provide sufficient cover to
facilitate hunting and denning." Id. ¶ 83. The lion at the
Tri-State Zoo is confined to a barren enclosure in social

4

isolation with no visual privacy from the public.  Id. ¶ 88.

She is allegedly denied a veterinary-approved diet and fresh

water.  Id. ¶ 93.  Her enclosure does not have adequate shade,

which "exposes her to many associated ailments, including

overheating, serious eye problems, and blindness."  Id. ¶ 96.

Moreover, Plaintiff alleges that Defendants fail to timely

remove animal and food waste from her enclosure.  Id. ¶ 98.

Finally, members of the public are granted access to her primary

enclosure, "allowing members of the public to make physical

contact with her," which is allegedly harmful to her physical

and psychological health.  Id. ¶ 105.  Plaintiff also alleges

that Defendants failed to provide adequate veterinary care for

their exotic cats, which led to the death of another lion in

Tri-State Zoo in 2016.  Id. ¶ 106-08.

     PETA brings this suit "on its own behalf to protect its

programs."  Id. ¶ 111.  Plaintiff states that Defendants

"directly frustrate PETA's mission to eliminate the abuse and

neglect of animals for entertainment" and "falsely present[]

themselves as a refuge for abandoned and unwanted endangered and

threatened animals."  Id. ¶¶ 112-13.  PETA allegedly has been

"forced to divert resources in order to counteract the public

impression that Tri-State Zoo's practices are consistent with

the ESA and animal welfare." Id. ¶ 115. This has "impaired

PETA's ability to advance its mission." Id. ¶ 118.


II.  LEGAL STANDARD

A motion to dismiss filed pursuant to Federal Rule of Civil

Procedure 12(b)(6) tests the legal sufficiency of a complaint.

A complaint need only contain "'a short and plain statement of

the claim showing that the pleader is entitled to relief,' in

order to 'give the defendant fair notice of what the . . . claim

is and the grounds upon which it rests.'" Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007) (alteration in original)

(citations omitted).  When evaluating a 12(b)(6) motion to

dismiss, a plaintiff's well-pleaded allegations are accepted as

true and the complaint is viewed in the light most favorable to

the plaintiff.  However, conclusory statements or "a formulaic

recitation of the elements of a cause of action will not

[suffice]." Id.  A complaint must allege sufficient facts "to

cross 'the line between possibility and plausibility of

entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186,

193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim

is "'a context-specific task that requires the reviewing court

to draw on its judicial experience and common sense.'" Id.

6

(quoting Twombly, 550 U.S. at 557). Thus, if "the well-pleaded facts [contained within a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (alteration in original)).

III.   DISCUSSION

Plaintiff brings this action under the Endangered Species Act ("ESA") claiming that Defendants have violated the ESA by improperly "taking" the animals at issue. Defendants contend that the ESA is inapplicable to the instant case because it does not apply to animals that are held in captivity. Rather, Defendants argue, the Animal Welfare Act ("AWA") preempts, supersedes, or nullifies an action brought under the ESA. Defendants further argue that even if the action could be brought under the ESA, the Plaintiff has not alleged facts sufficient to state a claim that Defendants have engaged in a "take" of a threatened or endangered species, and that any relief Plaintiff requests is speculative and conjectural.

The Court will first address the statutory backgrounds of the ESA and AWA and the applicability of these statutes to this action. Next, the Court will determine whether PETA has stated

7

a plausible claim for its action to proceed and for a remedy
from Defendants.

### A. The Statutes: the ESA and the AWA

#### i. The Endangered Species Act ("ESA")

The ESA, at 16 U.S.C. 1531 et seq., was enacted in 1973 in
part to "provide a means whereby the ecosystems upon which
endangered species and threatened species depend may be
conserved, to provide a program for the conservation of such
endangered species and threatened species, and to take such
steps as may be appropriate to achieve the purposes of [certain
international] treaties and conventions."   16 U.S.C. § 1531.
The ESA makes it the federal government's policy to "seek to
conserve endangered species and threatened species."   Id.

The ESA prohibits the "take" of any endangered species or
threatened species,[4] subject to exceptions inapplicable herein.[5]
Id. § 1538(a)(1)(B); 50 C.F.R. § 17.21(c).   Under the ESA, the

---

[4] The ESA defines an "endangered species" as "any species which
is in danger of extinction," 16 U.S.C. § 1532(6), and a
"threatened species" as "any species which is likely to become
an endangered species within the foreseeable future," id. §
1532(20).   The animals at issue in this case are listed as
either "endangered" or "threatened" under the Endangered Species
Act.   50 C.F.R. §§ 17.11(h), 17.40(r).
[5] For example, an individual or entity may be granted a permit
from the Secretary of the Interior to "take" any of these
animals under 16 U.S.C. § 1539(a)(1), but Tri-State Zoo does not
possess such a permit.

term "take" is defined to include to "harass, harm, pursue,

hunt, shoot, wound, kill, trap, capture, or collect, or to

attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

The ESA also makes it unlawful to "possess" any endangered

species or threatened species that has been unlawfully taken,

except in circumstances inapplicable to the instant case. 16

U.S.C. § 1538(a)(1)(D); 50 C.F.R. §§ 17.21(d).

The ESA allows citizens to bring suit to enjoin "any person

. . . who is alleged to be in violation" of the "take"

provisions of the statute or of a regulation promulgated under

the statute. 16 U.S.C. § 1540(g)(1)(A).

### ii.  The Animal Welfare Act ("AWA")

The AWA, at 7 U.S.C. § 2131, was enacted in 1966 in part to

"to insure that animals intended for use in research facilities

or for exhibition purposes or for use as pets are provided

humane care and treatment." 7 U.S.C. § 2131.  Congress found

that it was essential to regulate "the transportation, purchase,

sale, housing, care, handling, and treatment of animals by

carriers or by persons or organizations engaged in using them

for research or experimental purposes or for exhibition purposes

or holding them for sale as pets or for any such purpose or

use." Id.

The provisions of the statute, including mandates for proper care and treatment of animals, are enforced by the Secretary of Agriculture and carried out by the Animal and Plant Health Inspection Service ("APHIS").   7 U.S.C. § 2146.   Unlike the ESA, no claim can be asserted by citizens under the AWA.

### iii. Applicability of ESA or AWA to the Instant Case

Defendants rely primarily upon a district court decision from the Southern District of Florida, People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium, 189 F. Supp. 3d 1327 (S.D. Fla. 2016), to contend that the Animal Welfare Act ("AWA") preempts, supersedes, or nullifies an action brought under the ESA for this type of case.   Specifically, Defendants contend that once an animal is lawfully in captivity and "brought under the auspices of the [AWA] as administered by the USDA-APHIS," then the animal may no longer be subject to a "take" under the ESA.   Def.'s Mot. at 4-5, ECF No. 15-1. Therefore, they argue, it would follow that the treatment of these animals could only be remedied under the administrative process established by the AWA, as administered by the APHIS.

In Miami Seaquarium, PETA argued that the conditions of an orca whale's confinement amounted to a "take" under the ESA. 189 F. Supp. 3d at 1332.   When discussing the relationship

10

between the ESA and AWA, the Florida court noted that although

the two statutes deal with similar subjects (specifically, "the

protection of animals from people"), the AWA is "sharply focused

on the 'humane treatment' of captive animals used for exhibition

and research," while the ESA promotes the congressional

objective of "protection of endangered species from habitat

destruction and predation." Id. at 1352. The Miami Seaquarium

court was skeptical about the ESA's applicability to the case,

reasoning that Congress's various amendments to the ESA have not

expanded the definition of "take" to include the humane

treatment of captive endangered species, and instead left that

responsibility to "the Secretary of Agriculture under the

authority granted by the AWA and his delegee, APHIS." Id. at

1354. The Miami Seaquarium court stated that accepting the

Plaintiff's position would "bring the ESA into conflict with the

AWA" by displacing the APHIS's technical expertise and replacing

it with a federal trial judge's untrained judgment. Id. at

1354-55. Ultimately, the Miami Seaquarium court did not

actually hold that the AWA preempted or nullified the ESA for

animals in captivity, but rested its decision on a factual

finding that the orca whale's confinement conditions did not

amount to a "take" under the ESA. Id. at 1355.

Defendants request that this Court go further than Miami

11

Seaquarium and hold that "once an animal is in captivity and
subject to the supervision and oversight of APHIS under the
Animal Welfare Act, then it is impossible to 'take' such an
animal under the Endangered Species Act."   Def.'s Mot. at 12,
ECF No. 15-1.   The Court does not agree with Defendants in this
regard.

Other district courts have addressed the issue of "take" of
captive animals and have come to different conclusions than the
court in Miami Seaquarium.   For example, a district court of the
Western District of Texas explained that although there is some
overlap between the ESA and AWA, there was no merit to the
defendant zoo's argument that "when APHIS determines that there
is no AWA violation, there is no ESA take liability."   Graham v.
San Antonio Zoological Soc'y, 261 F. Supp. 3d 711, 743-44 (W.D.
Tex. 2017)(internal citations omitted).   When an ESA action is
brought, the defendant zoo's compliance with the AWA's
substantive standards for generally accepted animal husbandry
practices precludes liability only if the Zoo actually complies
with the AWA.   In other words, there is no automatic preemption
of the ESA by the AWA, and the court "must independently assess
the Zoo's animal husbandry practices under the AWA."   Id. at
744.   And in Kuehl v. Sellner, 161 F. Supp. 3d 678, 718 (N.D.
Iowa 2016), the Northern District of Iowa found that the care of

12

certain lemurs and tigers housed by defendant constituted a

"take" under the ESA, without addressing whether the ESA was in

any way preempted or superseded by the AWA.

Most important is the Fourth Circuit decision in Hill v.

Coggins, 867 F.3d 499 (4th Cir. 2017).  The Hill court vacated

and remanded the district court's determination that the

defendant zoo did not commit an unlawful "taking" of four

grizzly bears, explaining that the district court had premised

its finding on incorrect legal analysis.  Specifically, the

Fourth Circuit explained that one of the enumerated exclusions

under the definition of "harass" can only be interpreted to

excuse animal husbandry practices that are both (1) generally

accepted and (2) AWA compliant.[6]  Id. at 509.  The district court

erred by only considering the latter and not the former, and its

erroneous interpretation "makes it so that the first enumerated

exclusion is necessarily satisfied whenever a defendant complies

with the Secretary of Agriculture-administered AWA."  Id. at

510.  To accept the district court's interpretation of the

---

[6] Regulation 50 C.F.R. § 17.3 states: "This definition [of
harass], when applied to captive wildlife, does not include
generally accepted:
(1) Animal husbandry practices that meet or exceed the minimum
standards for facilities and care under the Animal Welfare Act,
(2) Breeding procedures, or
(3) Provisions of veterinary care for confining, tranquilizing,
or anesthetizing, when such practices, procedures, or provisions
are not likely to result in injury to the wildlife."

exception would be a "protection-narrowing, Secretary of Agriculture-centered outcome," which is "in tension with what the Supreme Court has explained Congress had in mind in enacting the ESA: a 'broad purpose to protect endangered and threatened wildlife,' which was to be advanced in large part through 'broad administrative and interpretive power [delegated] to the Secretary [of the Interior].'"   Id. at 510.

Defendants argue that Hill is inapposite to the instant case because the majority opinion was strictly about regulatory interpretation and could have reached a different conclusion had the defendants in the Hill case made an argument that the ESA was inapplicable altogether. Def.'s Supp. Mem. at 3, ECF No. 18. Defendants seize upon a footnote in the decision to argue that the Fourth Circuit intended to "clear[ly] signal[] here that the Court did in fact have additional questions about the overall enforceability of the Act when it comes into conflict with the Animal Welfare Act." Def.'s Supp. Mem. at 3, ECF No. 18.[7]

The Court does not accept Defendants' contention. Although the Fourth Circuit did not explicitly address the question of

---

7 The footnote states: "Although the Zoo has complained about the clarity of the first enumerated exclusion, we note that it does not challenge the validity of this exclusion or any other feature of 50 C.F.R. § 17.3. Thus, this is strictly a case about regulatory interpretation." Hill, 867 F.3d at 509 n. 4.

14

whether the AWA preempts or nullifies the ESA for captive
animals, its reasoning in this decision forecloses that
conclusion.  Indeed, the Hill decision made it clear that
compliance with the AWA would not be sufficient to avoid ESA
"take" liability under the 50 C.F.R. § 17.3 exception, and
remanded the case back to the district court for further
proceedings.  Id.

The Court holds that the ESA and AWA do not pursue
conflicting objectives.  Rather, the ESA provides for separate
and heightened protections for the subset of captive animals
that are threatened or endangered.  Defendants' proposed
interpretation of the ESA and AWA would be inconsistent with the
Hill decision.

Accordingly, the Court will not grant Defendants' motion to
dismiss on the argument that the ESA is inapplicable to this
case.

B. Existence of a "Take"

Defendants also argue that the Complaint fails to allege
sufficient facts to state a plausible claim that Defendants have
harmed or harassed the subject animals in a manner that
constitutes a "take" under the ESA.  Def.'s Mot. at 13-15, ECF
No. 15-1.  Defendants' contention appears to be that Plaintiff's

15

allegations are based on "mere conjecture and preference" or based on "alleged past citations or violations." Id. Defendants do not, and cannot in the present context, rebut Plaintiff's allegations regarding how the animals are treated or held.

The ESA prohibits the "take" of any endangered species or threatened species, or the "possession" of an animal that has been unlawfully taken. 16 U.S.C. § 1538(a)(1)(B); 50 C.F.R. § 17.21(c); 16 U.S.C. § 1538(a)(1)(D); 50 C.F.R. §§ 17.21(d). The term "take" is defined to include to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

The terms "harass" and "take" are defined in regulations. "Harass" means "an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." 50 C.F.R. § 17.3. When applied to captive animals, this definition does not include "generally accepted . . . [a]nimal husbandry practices that meet or exceed the minimum standards for facilities and care under the Animal Welfare Act." Id. "Harm" means "an act which actually kills or injures wildlife." Id. "Such act may include

16

significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering."   Id.

Because the term "take" includes both "harass" and "harm," at this stage Plaintiff will have stated a claim if it can meet the requirements of the less demanding standard of "harass." Hill, 867 F.3d at 511 (4th Cir. 2017).   The Court finds that the facts stated in the Complaint, summarized at supra Section I.B., are sufficient to state a plausible claim that Defendants have harassed the subject animals.

In sum, according to the Complaint, the alleged animals are not housed in the proper social setting (Compl. ¶ 30-31, 35 (ring-tailed lemurs), id. ¶¶ 62, 64 (tigers), id. ¶ 84 (lion)), are not provided adequate environmental enrichment (id. ¶ 37, 40 (ring-tailed lemurs), id. ¶ 51, 54-58 (tigers); id. ¶ 83, 88 (lion)), are not housed in sanitary spaces with adequate protection from the elements and inclement weather (id. ¶¶ 46, 45, 47 (ring-tailed lemurs); id. ¶ 72 (tigers), id. ¶ 96, 98 (lion)), are not provided adequate nutrition and water (id. ¶ 67 (tigers), id. ¶ 93 (lion)), are forced to interact with the public in a way that increases their physical and psychological stress (id. ¶ 75, 77 (tigers), id. ¶ 105 (lion)), and are not

17

provided adequate veterinary care (id. 106-08 (lion)).

Taken as true, these facts would constitute acts or omissions which "create[] the likelihood of injury" to the subject animals by "significantly disrupt[ing] normal behavioral patterns [including] . . . breeding, feeding, or sheltering." 50 C.F.R. § 17.3.  Even if these allegations do not establish present harm, they suffice to assert a plausible claim that the actions would lead to future injury.  See Animal Welfare Inst. v. Beech Ridge Energy LLC, 675 F. Supp. 2d 540, 561 (D. Md. 2009), amended, No. 09-1519 (RWT), 2010 WL 11484179 (D. Md. Jan. 26, 2010) (explaining that Congress intended the term "take" to be interpreted broadly and may include claims of future injury). Thus, Plaintiff has presented a plausible claim that the animals have been harassed under the ESA regulations.

Other district courts have found allegations similar to those presented by Plaintiff to be sufficient to survive a motion to dismiss or to deny a defendant's motion for summary judgment.  See, e.g., Kuehl, 161 F. Supp. 3d at 713, 718 (finding that Defendants violated the ESA by denying their lemurs and tigers proper social settings, appropriate environmental enrichment plans, adequate sanitation, and adequate veterinary care); Graham, 261 F. Supp. 3d at 751 (finding genuine issues of material fact precluding summary

18

judgment regarding whether an Asian elephant's lack of shelter from the sun and the composition of soil substrate in her enclosure constituted harassment under the ESA).

Accordingly, Defendants' motion to dismiss on this basis will be denied.

### C. Plaintiff's Requested Relief

Plaintiff seeks an injunction preventing Defendants from owning or possessing endangered or threatened species in the future and transferring Defendants' ownership of the animals at issue to reputable wildlife sanctuaries for appropriate placement. Defendants argue the requested relief is not within the power of this Court to grant and that the Plaintiff lacks standing because it has not shown that it can obtain any relief from the Court. Def.'s Mot. at 14, ECF No. 15-1.

The Court does not agree with Defendants. The ESA expressly allows citizen suits to obtain injunctions against actions prohibited by the statute. 16 U.S.C. § 1540. There is no limit in the statute regarding the type of injunction that may be sought, which is consistent with Congress's intention to afford broad and heightened protections to endangered and threatened species. See, e.g., Tennessee Valley Auth. v. Hill, 437 U.S. 153, 174 (1978) ("examination of the language, history,

19

and structure of the legislation under review here indicates
beyond doubt that Congress intended endangered species to be
afforded the highest of priorities."); Babbitt v. Sweet Home
Chapter of Communities for a Great Oregon, 515 U.S. 687, 700
(1995) (noting "Congress' clear expression of the ESA's broad
purpose to protect endangered and threatened wildlife").

    Moreover, the relief that Plaintiff seeks is not without
precedent.  The Kuehl court issued an Order (1) requiring the
defendant to transfer lemurs and tigers in their possession to
an appropriate facility licensed by the USDA and capable of
meeting the needs of the endangered species, and (2) enjoining
the defendants from acquiring any additional animals on the
endangered species list, without first demonstrating an ability
to care for the animals and receiving Court approval.  Kuehl,
161 F. Supp. 3d at 719.

    The ESA allows the issuance of injunctions, and absent
statutory limitations, the Court has the equitable power to
grant an injunction providing complete relief in light of the
statutory purpose of the ESA.  See Weinberger v. Romero-Barcelo,
456 U.S. 305, 313 (1982) ("the comprehensiveness of [the
court's] equitable jurisdiction is not to be denied or limited
in the absence of a clear and valid legislative command.  Unless
a statute in so many words, or by a necessary and inescapable

inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied") (internal citations omitted).

There is no question that should the Plaintiff prevail in this case, the Court could issue appropriate relief. Thus, Plaintiff does not lack standing to proceed due to any absence of possible relief.


IV.   CONCLUSION

For the foregoing reasons:

1. Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [ECF No. 15] is DENIED.


SO ORDERED, this Tuesday, January 16, 2018.


_____/s/_____

Marvin J. Garbis
United States District Judge
