## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

MISSOURI PRIMATE FOUNDATION,   )
et al.   )
   )
   Plaintiffs/Counterclaim Defendants,   )
   )
   v.   )     Case No. 4:16 CV 2163 CDP
   )
PEOPLE FOR THE ETHICAL   )
TREATMENT OF ANIMALS, INC., et al.   )
   )
   Defendants/Counterclaim Plaintiffs.   )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of counterclaim defendants

Missouri Primate Foundation, et al. (referred to collectively as MPF) to dismiss the

counterclaim filed by counterclaim plaintiffs People for the Ethical Treatment of

Animals, et al. (referred to collectively as PETA). The PETA counterclaim alleges

that MPF holds chimpanzees in conditions that "harm" and "harass" the

chimpanzees, thus violating the "take" prohibition of the Endangered Species Act

(ESA).

In the motion to dismiss, MPF argues that the Animal Welfare Act (AWA)

and not the ESA regulates the chimpanzees' living conditions and the AWA does

not provide for the filing of private lawsuits. Because I conclude that the

counterclaim states a claim for relief under the ESA, I will deny the motion to dismiss.

## **Factual and Procedural Background**

The Missouri Primate Foundation is a private, nonprofit corporation located in Festus, Missouri.  Other counterclaim defendants are Connie Braun Casey, president and founder of MPF, Andrew Sawyer, owner of a chimpanzee named Joey, and Vito Stramaeglia, owner of a chimpanzee named Chloe.  Both Joey and Chloe, as well as other chimpanzees, are alleged to be or have been housed at the MPF facility.  Counterclaim plaintiffs are People for the Ethical Treatment of Animals, Inc., a nationwide nonprofit organization focused on animals' rights, and Angela Scott, who previously worked as a volunteer at the Missouri Primate Foundation.[1]

The counterclaim alleges that MPF and the individual counterclaim defendants are in violation of the "take" prohibition of the ESA.  The counterclaim seeks 1) a declaratory judgment that counterclaim defendants have violated and continue to violate the ESA; 2) to enjoin counterclaim defendants from continuing to violate the ESA and from possessing chimpanzees in the future; and, 3) to transfer ownership of the chimpanzees to an accredited sanctuary.

---

[1] MPF, Casey, Sawyer and two Doe plaintiffs originally filed this case as a declaratory judgment suit against PETA and Scott.  Earlier in this case, I concluded that the ESA did not provide a basis for subject-matter judgment for a defensive case like plaintiffs were attempting to bring, and so dismissed their complaint.  [ECF docket # 40].  The only claims remaining are in the counterclaim.

PETA's counterclaim alleges that MPF: fails to meet the chimps' fundamental social, physical, and psychological needs; confines them to a dangerous and unsanitary environment; restricts them to a dangerously unhealthy diet; and fails to provide them with adequate preventative and emergency veterinary care.  PETA contends that MPF has failed to comply with even minimal animal-husbandry requirements established by the United States Department of Agriculture (USDA), which administers the Animal Welfare Act.  The counterclaim states that MPF's actions cause the chimpanzees psychological harm, prevent them from carrying out their natural behaviors, and expose them to a significant risk of physical illness and injury.

In the motion to dismiss, MPF argues that PETA's counterclaim is based on allegations that they failed to comply with the Animal Welfare Act, not the Endangered Species Act.  Because the AWA does not provide for the filing of private lawsuits, MPF argues that PETA and Scott lack standing to bring a suit under the ESA based upon alleged violations of the AWA at a facility licensed pursuant to the AWA.  The motion also argues that the counterclaim does not adequately state a claim that the chimpanzees were "harmed" because it does not allege an actual physical injury or death.  Finally, it argues that the claims against Sawyer must be dismissed as moot since it is uncontested that Joey has been moved from the MPF facility.

## Discussion

The Animal Welfare Act, at 7 U.S.C. § 2131, was enacted in 1966 in part to "to insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment." 7 U.S.C. § 2131. The provisions of the statute, including mandates for proper care and treatment of animals, are enforced by the Secretary of Agriculture and carried out by the Animal and Plant Health Inspection Service (APHIS). 7 U.S.C. § 2146. "Unlike the ESA, no claim can be asserted by citizens under the AWA." *People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Maryland, Inc.*, No. CV MJG-17-2148, 2018 WL 434229, at *4 (D. Md. Jan. 16, 2018).

Section 9 of the Endangered Species Act prohibits the "take" of any endangered species. 16 U.S.C. § 1538(a)(1)(B). The term "take" is broadly defined to mean "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). The regulations promulgated under the ESA define "[h]arass" as "an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." 50 C.F.R. § 17.3. This regulatory definition, when applied to captive wildlife, has an exception

for generally accepted animal husbandry practices that meet or exceed the minimum standards for facilities and care under the AWA. *Id.* The ESA allows citizens to bring suit to enjoin "any person ... who is alleged to be in violation" of the "take" provisions of the statute or of a regulation promulgated under the statute. 16 U.S.C. § 1540(g)(1)(A).

In the motion to dismiss, MPF contends that because the chimpanzees at its facility were lawfully in captivity and under the auspices of the AWA as administered by the USDA-APHIS, the chimpanzees cannot be subject to a "take" under the ESA. They further argue that PETA and Scott lack standing as the AWA preempts or supersedes the ESA as to animals held at USDA licensed facilities. Because the AWA does not allow citizen suits, they argue, the case must be dismissed.

Standing is a jurisdictional issue and, therefore, motions to dismiss for lack of standing are subject to Fed. R. Civ. P. 12(b)(1) (dismissal for lack of subject-matter jurisdiction). *See A.J. ex rel. Dixon v. UNUM,* 696 F.3d 788, 789 (8th Cir. 2012) (per curiam). Standing is the threshold question in every federal case, and, in ruling on a motion to dismiss for lack of subject-matter jurisdiction, a court must view the allegations in the complaint in the light most favorable to the plaintiffs. *Tarsney v. O'Keefe,* 225 F.3d 929, 934 (8th Cir. 2000).

The standing challenge here is easily dealt with. As the Fourth Circuit Court of Appeals held last year in a very similar case, allegations that plaintiffs have a strong interest in viewing animals in living conditions that do not violate the ESA and who show that they would go visit the animals if the animals' conditions were improved have shown injury in fact. *Hill v. Coggins,* 867 F.3d 499, 505-506 (4th Cir. 2017), *cert. denied* No. 17-865, 2018 WL 942505 (U. S. Feb. 20, 2018). Here, as in *Hill*, that injury is traceable to counterclaim defendants and it is likely to be redressed by a favorable decision in this case, and so they have standing to bring this case. *See Spokeo, Inc. v. Robins,* 136 S.Ct. 1540 (2016). To the extent MPF's standing argument is based on an argument that the AWA somehow deprives them of standing under the ESA, that is really an argument that the case fails to state a claim on which relief can be granted, which I will now discuss.[2]

The purpose of a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., is to test the legal sufficiency of the complaint. When considering a 12(b)(6) motion, the court assumes that the factual allegations in the complaint are true, and construes them in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 566 U.S. 662 (2009).

---

[2] MPF does not challenge the organizational standing of PETA; rather, MPF argues lack of standing based on the AWA's lack of a citizen suit remedy. In any event, PETA has been held to have standing in cases very similar to this one. *See e.g., PETA v. Miami Seaquarium*, 189 F. Supp. 3d 1327 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1142 (11th Cir. 2018).

MPF argues that claims for violations of the ESA cannot be brought as to captive animals housed in facilities that are otherwise regulated by the Animal Welfare Act. Several recent cases have rejected very similar arguments. For example, in *Hill,* cited above, the defendants had argued that no claim could be brought related to a zoo's treatment of grizzly bears because of the regulatory exception contained in 50 C.F.R. § 17.3 for generally accepted animal husbandry practices that meet or exceed the minimum standards for facilities and care under the AWA. The trial court had found that plaintiffs could not prevail because the zoo met the minimum standards of the AWA. *Hill*, 867 F.3d at 504. But the Fourth Circuit reversed, holding that the regulatory exception could apply only if the practices were *both* generally accepted and AWA compliant. *Id* at 509. Here, PETA has alleged that MPF houses the chimpanzees in conditions that are neither compliant with AWA minimum standards,[3] nor compliant with generally accepted animal husbandry practices.

A district court in the Western District of Texas explained that although there is some overlap between the ESA and AWA, there is no automatic preemption of the ESA by the AWA. *Graham v. San Antonio Zoological Soc'y*, 261 F. Supp. 3d 711, 743-44 (W.D. Tex. 2017). Moreover, the *Graham* court found that in the context of a suit filed pursuant to the ESA, the court "must

---

[3] The counterclaim alleges that MPF has been cited for violations several times by USDA inspectors.

independently assess the Zoo's animal husbandry practices under the AWA." *Id.* And in *Kuehl v. Sellner*, 161 F. Supp. 3d 678, 718 (N.D. Iowa 2016), the Northern District of Iowa found that the care of certain lemurs and tigers housed by defendant constituted a "take" under the ESA, without specifically addressing whether the ESA was in any way preempted or superseded by the AWA.

Recently, in *Tri-State Zoological Park, supra*, the court addressed very similar issues as those presented here. *Tri-State* was a suit brought by PETA against a zoo in Maryland, alleging that the defendant's poor maintenance of protected animals constitutes an unlawful "take" and "possession" proscribed by the ESA. 2018 WL 434229 at *1. The zoo moved to dismiss PETA's complaint for failure to state a claim. Like the MPF here, the *Tri-State* defendant argued that the AWA supersedes or nullifies any action brought under the ESA, and that animals regulated under the AWA are not subject to a "take" under the ESA. *Id.*, at *4. Also similar to the MPF defendants here, the *Tri-State* defendant asserted that any alleged mistreatment of protected animals could only be remedied by the administrative process established by the AWA, as administered by the USDA. *Id*. In rejecting these arguments, the *Tri-State* court found that "the ESA and AWA do not pursue conflicting objectives. Rather, the ESA provides for separate and heightened protections for the subset of captive animals that are threatened or

endangered." *Id.* at *6. Therefore, reasoning that the ESA was applicable to the case, the court denied Tri-State's motion to dismiss the ESA claim. *Id.* at *7.

Likewise, I do not find the ESA is inapplicable to this case or preempted by the AWA. MPF has not cited any contrary authority. The only cases cited by counterclaim defendants involved suits brought under the AWA, not the ESA, in which claims were dismissed because of the lack of a citizen suit provision under the AWA. Because I find the ESA and AWA are complementary and do not conflict, I conclude that the ESA protects captive endangered animals from an unauthorized take whether or not the alleged violator is an AWA licensed entity.

MPF also argues that the counterclaim fails to allege sufficient facts to state a plausible claim that they have harmed the chimpanzees in a manner that constitutes a "take" under the ESA. Specifically, they claim the "harm" allegations fail because they do not allege an actual physical injury or death. The regulations promulgated under the ESA have defined "harm" under the taking definition above to include any act that "actually kills or injures wildlife," including actions that "significantly impair[ ] essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3. Some support for MPF's argument is found in *People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 879 F.3d 1142 (11th Cir. 2018), which affirmed a grant of summary judgment to the defendant because the injuries PETA had shown to the Seaquarium's captive whale

did not pose a threat of serious harm. Even that case, however, stopped short of holding that the AWA precluded any taking suit as to captive animals under the ESA. The district court had defined "harm" or "harassment" to require conduct that "gravely threatens or has the potential to gravely threaten the animal's survival." *People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 189 F. Supp. 3d 1327, 1355 (S. D. Fla. 2016). While the exact contours of "serious harm" as required by the Eleventh Circuit are not clear, at least one court has concluded that harms not unlike those alleged here are sufficient. *See People for Ethical Treatment of Animals, Inc. v. Wildlife in Need and Wildlife in Deed, Inc.,* 4:17-CV-00186-RLY-DML, 2018 WL 828461 (S. D. Ind. Feb. 12, 2018)(without deciding whether the 11th Circuit standard is correct, finding that declawing captive "Big Cats" meets that standard and should be preliminarily enjoined).

PETA has alleged that conditions at the MPF have deprived the chimpanzees of adequate social groups, space, and psychological stimulation, putting them at risk of and causing physical and psychological injury, such as deteriorated cardiovascular and musculoskeletal health, stress, anxiety and depression. The counterclaim also alleges that the chimpanzees were denied a sanitary environment, proper ventilation, a healthy diet, and adequate veterinary care.

These allegations are sufficient at this stage of the case; whether PETA will be able to prove sufficiently serious harm is a matter that must be left for proof at trial.

In their remaining argument, counterclaim defendants argue that the claims against Sawyer are moot and should be dismissed because the chimpanzee known as Joey was transferred and relocated to another facility.  A case will become "moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (quotation and internal quotation marks omitted). "'[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Id.* at 307-08 (quoting *Ellis v. Railway Clerks*, 466 U.S. 435, 442 (1984)).

Although it is undisputed that Joey is not currently housed at the MPF, the counterclaim alleges Sawyer holds Joey in conditions that constitute a "take" and that he possesses an unlawfully taken chimpanzee.  The counterclaim seeks a declaratory judgment that Sawyer violated and continues to violate the ESA. Although Sawyer voluntarily transferred Joey, the transfer does not render the case moot as it is unknown whether his current conditions are in violation of the ESA or whether his transfer was merely temporary.  The "voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case

is dismissed." *Knox*, 567 U.S. at 307 (citation omitted); *see also Jager v. Douglas County Sch. Dist.*, 862 F.2d 824, 833 (11th Cir. 1989) (finding voluntary cessation of conduct before complaint was filed did not render case moot). A party claiming mootness faces a heavy burden to meet the stringent mootness test and must "show[] that 'the challenged conduct cannot reasonably be expected to start up again.'" *Ctr. for Special Needs Admin., Inc., v. Olson*, 676 F.3d 688, 697 (8th Cir. 2012) (quoting *Lankford v. Sherman,* 451 F.3d 496, 503 (8th Cir. 2006)). I will deny the motion as to all counterclaim defendants.

## Motion to Strike

Counterclaim defendants have also moved to strike certain allegations in the counterclaim, including allegations that state and federal tax liens have been filed against Casey. They also ask me to strike allegations discussing the Association of Zoos and Aquariums Chimpanzee Care Manual and Global Federation of Animal Sanctuaries, as well as statements made by the actor Alan Cummings regarding one of the chimpanzees housed at MPF.

Under Fed. R. Civ. P. 12(f), a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Motions to strike, however, are not favored and are infrequently granted, because they propose a drastic remedy. *BJC Health Sys. v. Columbia Cas. Co*., 478 F.3d 908, 917 (8th Cir. 2007) ("[Striking a party's pleading . . . is an extreme and disfavored

measure."); *Stanbury Law Firm, P.A. v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000). Although a district court has broad discretion in deciding whether to grant a motion to strike, a matter should not be stricken unless it clearly can have no possible bearing on the subject matter of the litigation. 2 James Moore, et al., Moore's Federal Practice § 12.37 [3] (3d ed. 2008).

I conclude that the language complained of here is not so redundant, impertinent, or scandalous as to warrant the extreme measure of striking. I will deny the counterclaim defendants' motion to strike under Rule 12(f).

**IT IS HEREBY ORDERED** that counterclaim defendants' motion to dismiss [29] is **DENIED**.

**IT IS FURTHER ORDERED** that counterclaim defendants' motion to strike [27] is **DENIED**.

**IT IS FURTHER ORDERED** that because this case is currently stayed so counterclaim defendants may obtain new counsel, they are granted additional time, up to and including **June 4, 2018** in which to file their answers to the counterclaim.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this  22nd day of March, 2018.

13