UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) |
| v. | ) ) |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) ) |
| Defendants and Counterclaim Plaintiffs. | ) ) ) |

Case No. 4:16-cv-02163

**MEMORANDUM IN SUPPORT OF COUNTERCLAIM PLAINTIFFS' MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**

One of the central issues in this case is whether the treatment and conditions of confinement of chimpanzees by Counterclaim Defendants Missouri Primate Foundation ("MPF"), Connie Braun Casey ("Casey"), and Andrew Sawyer ("Sawyer") (collectively, "Defendants") violate the Endangered Species Act ("ESA"). In an apparent attempt to evade judicial scrutiny, Defendants removed at least six of the subject chimpanzees in anticipation, and/or during the pendency, of this litigation. This left enormous gaps in the evidence that the Counterclaim Plaintiffs, People for the Ethical Treatment of Animals, Inc. and Angela Scott a/k/a Angela G. Cagnasso (together, "Plaintiffs"), need to prove their case. Defendants' concealment and attempt to shield the conditions of the subject chimpanzees from discovery also significantly increases Plaintiffs' burdens in pursuing discovery from non-parties in other jurisdictions where the despoiled chimpanzees may now reside. Sanctions are warranted to right this wrong, punish

1

Defendants' disregard for the judicial process, and deter others from engaging in the same misconduct.

## FACTUAL AND PROCEDURAL BACKGROUND

In relevant part, on or before November 12, 2016, Defendants received Plaintiffs' notice of violation and intent to file suit pursuant to Section 11(g)(2)(A)(i) of the ESA, for keeping chimpanzees at MPF in conditions that constitute an unlawful "take" of these endangered animals. [ECF No. 1-1; "Notice"]. During the mandatory 60-day waiting period between Plaintiffs' service of the Notice and filing suit, Casey and MPF removed three of the subject chimpanzees to another facility—despite being fully aware of the need to preserve this evidence for the impending ESA litigation. [ECF No. 31 at ¶ 46]. Defendants then preemptively sued Plaintiffs on December 30, 2016, for: (1) a declaration that they are not in violation of the ESA; (2) an injunction barring Plaintiffs from filing the ESA claims outlined in their Notice; and (3) defamation for statements published on PETA's website [ECF No. 1].[1]

Sometime after receiving the Notice, Sawyer also removed the chimpanzee Joey from MPF, where Joey had previously been held, and transferred him to an unknown location. [ECF No. 31, ¶ 48]. Lest there be any doubt that this was an attempt to evade judicial scrutiny, Sawyer then argued that removing Joey mooted the claim against him. [ECF No. 30, at 9 ("alleged claims as to what occurred in the past regarding . . . Mr. Sawyer's property" at MPF "are moot and irrelevant[.]")]. This Court made short shrift of that argument, noting: "the transfer does not

---

[1] Defendants' claims have since been dismissed and Plaintiffs' ESA counterclaims against Defendants are the only remaining claims in this case. [ECF No. 56]. In addition, a default has been entered against MPF. [ECF No. 61]. Because the Court has not yet entered a final judgment against MPF, MPF is still included in the present motion. If the Court enters final judgment against MPF before ruling on the present motion, this will moot Plaintiffs' request for sanctions against MPF.

render the case moot as it is unknown . . . whether [Joey's] transfer was merely temporary." [ECF No. 56, at 3, 11]. Moreover, it is unknown whether the transfer did anything at all to remedy the unlawful "take" under ESA. While the character and quality of the evidence regarding the "take" has undeniably been altered as a result of the spoliation, it has not mooted the issue of whether a "take" took place in the past and continues to date.

Alarmed by Defendants' subterfuge, Plaintiffs' counsel wrote to (then) counsel for Defendants, Kurtis B. Reeg, on July 18, 2017. *See* Exhibit A to Declaration of Jared Goodman (June 4, 2018) ("Goodman Decl."; submitted herewith). Citing the applicable law, Plaintiffs' counsel reminded Mr. Reeg of his clients' duty to preserve evidence and alerting him that the chimpanzees "were, and continue to be, evidence in this lawsuit, and their unilateral transport to other facilities—and any similar future transports—effectively prevents Plaintiffs from obtaining key evidence needed to support their claims" in the pending litigation." *Id.* Plaintiffs also sought assurances that Defendants "will not transport, transfer, or otherwise relocate any" of the other chimpanzees "without prior written approval of the Court or unless and until the parties reach a settlement regarding their transfer to a reputable sanctuary." *Id.* On July 20, 2017, Mr. Reeg responded, in part: "While we appreciate your thoughts regarding preservation, my clients and I think we know what our preservation obligations are and that we have complied with the same." *See* Exhibit B to Goodman Decl.

Notwithstanding Plaintiffs' explicit warnings and Defendants' counsel's assurances, one week later, Casey and MPF apparently removed two more chimpanzees from MPF.[2] In all, at least six[3] of the fifteen[4] subject chimpanzees were despoiled since Plaintiffs' Notice.

## CENTRALITY OF THE SPOLIATED EVIDENCE

It seems almost too obvious to state that the conditions of the chimpanzees and the manner in which they are confined and treated are central to Plaintiffs' claims. Among other things, Plaintiffs allege that "MPF and Casey hold the chimpanzees in barren and unsanitary enclosures in which they are inhumanely deprived of the social contact, physical space, and environmental enrichment necessary to engage in species-typical behaviors such as foraging, nest-building, climbing, play, tool use, and socializing that are crucial to their well-being." [ECF No. 23, ¶ 4]. Moreover, the subject animals "are denied an adequate diet and regular veterinary care" and, as a result "exhibit physical and behavioral evidence of distress and psychological harm." [*Id.*]. With respect to Sawyer, Plaintiffs alleged that he "knowingly placed Joey in these conditions and in solitary confinement for years." [*Id.*] These conditions "harass" the chimpanzees in violation of the ESA's "take" prohibition "by causing them psychological harm, preventing them from carrying out their natural behaviors, and exposing them to a significant risk of physical illness and injury." [*Id.*]

---

[2] This is inferred from records subpoenaed from veterinarian Dr. Doug Pernikoff, a former board member of MPF. They show that on or around July 27, 2017, Pernikoff examined two subject chimpanzees prior to their transfer to a Michigan facility. *See* Exhibit C to Goodman Decl.

[3] Due to the intervening discovery stay, Plaintiffs have not yet been able to conduct discovery to confirm the whereabouts of the remaining chimpanzees that are the subject of Plaintiffs' claims.

[4] The initial suit involved sixteen chimpanzees. However, Jane Doe 1 (the owner of the sixteenth chimpanzee) dismissed her claim without objection and Plaintiffs did not assert any claims against her.

The removal of six of the fifteen chimpanzees from MPF's facility creates enormous (and largely irretrievable) gaps in the evidence the Plaintiffs need to prove these claims at trial. Even to the extent that some limited evidence may still be gathered through onerous third party discovery, the costs and burdens on Plaintiffs to obtain such discovery have been significantly increased.[5]

## LEGAL STANDARD

Spoliation refers to the "'destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Claredi Corp. v. SeeBeyond Technology Corp.*, No. 4-04-CV-01304 RWS, 2010 WL 11579710, at *2 (E.D. Mo. March 8, 2010), *report and recommendation adopted in relevant part*, No. 4:04 CV 1304 RWS, 2010 WL 11579799 (E.D. Mo. Mar. 31, 2010) (quoting *Silvestri v. General Motors,* 271 F.3d 583 (4th Cir. 2001)). If spoliation occurs, "A court's inherent power includes the discretionary 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *E.g., Process Controls Intern., Inc. v. Emerson Process Management*, No. 4:10CV645 CDP, 2011 WL 5006220, at *5 (E.D. Mo. Oct. 20, 2011) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45 (1991)). "This inherent power reaches conduct both before and during litigation as long as that conduct abuses the judicial process in some manner." *Stevenson v. Union Pacific R. Co.*, 354 F.3d 739, 751 (8th Cir. 2004).

Appropriate sanctions for spoliation include entry of default judgment, an adverse inference that the spoliated evidence would have been unfavorable to the position of the offending party, exclusion of evidence, and the imposition of the prejudiced party's attorney's

---

[5] For example, Plaintiffs have expended substantial resources in a (thus far futile) attempt to get discovery from DeYoung Family Zoo in Wallace, Michigan, where some of the despoiled chimpanzees are believed to be held. *See* Exhibit D to Goodman Decl.

5

fees or other monetary sanction. *See, e.g., Ameriwood Industries, Inc. v. Liberman*, No. 4:06CV524-DJS, 2007 WL 5110313, at *1 (E.D. Mo. July 3, 2007) (granting motion for sanctions, striking defendant's answer and counterclaim, and entering default judgment for plaintiff where defendant's "intentional actions evidence a serious disregard for the judicial process and prejudice[d]" plaintiff).

## ARGUMENT

**I.     Defendants' Intentional Removal of the Chimpanzees Violated Their Duty to Preserve Relevant Evidence and Amounts to Bad Faith**

"The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation." *See, e.g., Fidelity Nat. Title Ins. Co. v. Captiva Lake Inv., LLC*, No. 4:10-CV-1890 CEJ, 2015 WL 94560, at *2 (E.D. Mo., Jan. 7, 2015). There can be no question that the chimpanzees constituted key evidence in this case and that their removal was in bad faith, as Defendants knew or should have known as of the date they received the Notice, that they had a duty to preserve this evidence for Plaintiffs' use in litigation.

A finding of "bad faith" spoliation is warranted when property is despoiled in circumstances when the offending party "had general knowledge" that the property "would be important to any litigation" in the future. *See Stevenson*, 354 F.3d at 748 (holding that prelitigation destruction of tapes was in bad faith, warranting sanctions for spoliation). The Eighth Circuit's test for determining "bad faith" is clearly met here, because Defendants were on notice that the chimpanzees were at issue in Plaintiffs' impending (and subsequently filed) ESA claims. Instead of complying with their duty to take reasonable steps to preserve all relevant evidence, Defendants disposed of key property that they knew would be material evidence in this case, including even after Plaintiffs' explicit reminder of their preservation obligations. This conduct is sufficient to meet the "bad faith" standard under *Stevenson* and its progeny. *See also,*

6

*e.g., Sentis Group, Inc. v. Shell Oil Co.*, 763 F.3d 919, 924 (8th Cir. 2014) (intentional (versus negligent) nature of ongoing and systematic suppression of evidence warranted finding of "bad faith" and termination sanction); *Claredi Corp.*, 2010 WL 11579710 at *11 (party's conduct in being willful or at least grossly negligent in implementing its preservation obligations met the "bad faith" standard set forth in *Stevenson*); *Am. Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc.,* No. 1:11-CV-19 CEJ, 2012 WL 2992627, at *4 (E.D. Mo. July 20, 2012) (inferring from the timing of destruction of evidence that it was done with the intent to deprive opposing party of the use of the evidence in litigation).

MPF's and Casey's attempt to couch the removal of at least three of the subject chimpanzees as an allegedly routine business transaction does not exculpate them under these circumstances. [ECF Nos. 17-1 at ¶ 3 and 31 at ¶ 46].[6] The decision in *Stevenson* is again instructive. There, the defendant railroad destroyed a voice tape "pursuant to its routine policy." *Stevenson*, 354 F.3d at 748. The Eighth Circuit still held that a finding of bad faith was warranted because the railroad "had general knowledge that such tapes would be important to any litigation over an accident that resulted in serious injury or death." *Id.* Another factor weighing heavily in support of a finding of bad faith was that the tape was "the only contemporaneous recording of conversations at the time of the accident," which "will always be highly relevant to potential litigation over the accident." *Id.* The prelitigation destruction of the voice tape "in this

---

[6] Beyond her self-serving assertion, Casey thus far disclosed no records to support her characterization of the transaction, for example, correspondence reflecting the date(s) and contents of these alleged negotiations. If such evidence existed, it was subject to Casey's Rule 26 disclosure obligation. It may be inferred from the absence of any records evidencing the alleged negotiations, that the transfer of the subject animals was anything but a "routine" business transaction.

7

combination of circumstances, ***though done pursuant to a routine retention policy***," supported the district court's finding of bad faith. *Id.* (emphasis added).

Likewise, here, the unique and irreplaceable evidentiary value of the despoiled chimpanzees and the specific conditions and circumstances under which they were held in alleged violation of the ESA, coupled with Defendants' certain knowledge of their importance to Plaintiffs' impending (and/or pending) lawsuit, supports a finding that Defendants' intentional removal of the subject chimpanzees—no matter how "routine" the transfers are alleged to be or when discussion of their potential removal began—meets the bad faith test articulated in *Stevenson*.

## II.     Plaintiffs Have Been Prejudiced by Defendants' Spoliation of the Evidence

There also is no question that Plaintiffs have been prejudiced (indeed, irreparably prejudiced) by Defendants' conduct of removing the chimpanzees from the conditions at issue in this litigation. Courts have found prejudice where, as here, the despoiled evidence was both relevant and unavailable from other sources. *See, e.g., Stevenson,* 354 F.3d at 748 (noting that destruction of evidence for which there is no duplicate "renders its loss prejudicial"). For example, in *Stevenson,* a railroad company destroyed tapes that had been recorded at the time of an accident. *Stevenson,* 354 F.3d at 743. The Eighth Circuit found the destruction of the tapes prejudicial because they were "the only recording of conversations . . . contemporaneous with the accident"—even though there was no indication that they contained "smoking-gun" evidence and the fact they were destroyed before litigation was initiated. *Id.* at 748.

The court in *Liberman* also found prejudice where defendants permanently deleted files from hard drives after litigation had begun and plaintiff had requested images of the hard drives. 2007 WL 5110313 at *6. The court found prejudice due to "the fact that plaintiff cannot show

8

what information and documents were destroyed[.]" *Id.* at *7; *see also, e.g., Claredi Corp.*, 2010 WL 11579710 at * 13 (finding prejudice because of "widespread" gaps in the evidence due to offending party's spoliation); *Coral Group, Inc. v. Shell Oil Co.*, 286 F.R.D. 426, 442 (W.D. Mo. Sept. 30, 2012) (because no "alternate sources" for the destroyed evidence existed, destruction "irreparably prejudiced" the opposing party).

Likewise, here, the despoiled chimpanzees constitute unique, irreplaceable evidence in the case. Their absence creates widespread gaps in the evidence Plaintiffs need to prove their case with respect to each of the chimpanzees at issue. Plaintiffs will never be able to determine the exact conditions under which these particular chimpanzees had been confined and will never know just how many improper conditions of confinement were irretrievably obliterated as a result of the removal. This is the essence of prejudice.

### III.     Default is an Appropriate Sanction

In evaluating what sanctions are appropriate to remedy spoliation, courts look at the culpability of the offending party and the timing of the actions that caused the evidence to become unavailable. *See Stevenson,* 354 F.3d at 748. In choosing among the available sanctions, the Court is "not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Chrysler Corp. v. Carey,* 186 F.3d 1016, 1022 (8th Cir. 1999). A sanction should be sufficient to remedy the prejudice caused to the moving party, i.e., to restore "the lack of integrity in the case being presented to the [factfinder]." *Id.* It should also serve "to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.* (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643 (1976)).

When a litigant acts in bad faith and intentionally despoils evidence, thereby prejudicing the opposing party, the court "may strike pleadings or render default judgment against a party." *Liberman*, 2007 WL 5110313, at *5 (citing *Menz v. New Holland N. Am., Inc.,* 440 F.3d 1002, 1006-07 (8th Cir 2006) (quoting *Stevenson,* 354 F.3d at 746, 748)).

Defendants' intentional, bad faith spoliation of the subject chimpanzees amply meets the standard for the most severe sanction of striking Defendants' pleadings and rendering a default judgment against them. *See, e.g., Sentis Group*, 763 F.3d at 927 (upholding district court's termination sanction against litigant who acted in bad faith by intentionally spoliating evidence and, as a result, the opposing party "could not obtain a fair trial without the missing information"). For example, in *Liberman*, 2007 WL 5110313, at *5, the court held that a judgment of default was warranted after the intentional deletion of relevant electronic files after the court ordered the production of a hard drive containing the information. As the court noted, "an entry of default judgment may be the only sanction sufficient to right the wrongs committed during the discovery process." *Id.*

Similarly, the court in *Garrett v. Albright*, No. 4:06-CV-4137NKL, 2008 WL 681766, at *7 (W.D. Mo. March 6, 2008), pointed out that lesser sanctions such as payment of fees associated with discovery abuses "seems more appropriate when evidence is eventually produced after a party has delayed or confused the discovery process without just cause but has not actually destroyed evidence after being ordered by the Court to produce it." Where, as here, the evidence "has now disappeared" due to the offending party's intentional conduct, it is appropriate to strike that party's pleadings and enter a default judgment against it, "[a]s "punishment" for the abuse. *Id.*; *see also, e.g., Moyers v. Ford Motor Co.,* 941 F. Supp. 883, 885 (E.D. Mo. 1996) (holding that plaintiff was prejudiced by defendant's failure to preserve seatbelt

10

in products liability action and lesser sanction than summary judgment for defendant would be inadequate); *Coral Group, Inc. v. Shell Oil Co.*, 286 F.R.D. 426, 443 (W.D. Mo. 2012) (entering termination sanction since destruction of evidence deprived defendants of the ability to receive a fair trial and the prejudice caused to the defendant "cannot be cured by a lesser sanction" like striking evidence or issuing an adverse instruction).

## IV.     Alternative and/or Additional Sanctions are Available

To the extent the Court decides not to impose a terminating default sanction on one or more of the Defendants at this time, lesser alternative sanctions are still warranted. Defendants should at least be deemed to have admitted Plaintiffs' allegations ***with respect to each of the despoiled chimpanzees***.[7] *See generally Garrett v. Terminal R. Ass'n of St. Louis*, 259 S.W.2d 807, 812 (Mo. 1953) (noting "the rule that where a party to a suit has been guilty of spoliation of documentary evidence, he is held thereby to admit the truth of the allegation of the opposite party).

Although it would not restore Plaintiffs to the *status quo ante,* another potential lesser sanction is an adverse inference that the despoiled chimpanzees were (and are) treated and confined in violation of the ESA, and thereby put Defendants to the burden of refuting this inference. The Eighth Circuit has upheld the imposition of an adverse inference where the offending party "knew or should have known" destruction of the evidence was improper. *Dillon v. Nissan Motor Co., Ltd.,* 986 F.2d 263, 266 (8th Cir. 1993) (upholding adverse inference instruction based on plaintiffs' failure to preserve automobile involved in collision).

---

[7] This would still result in a default judgment against Sawyer, but not against Casey and MPF, because not all of their subject chimpanzees were removed.

Regardless of whether the Court imposes terminating or lesser sanctions for Defendants' conduct, Plaintiffs request, in addition, that Defendants should be ordered to pay the attorneys' fees and costs incurred by Plaintiffs in connection with this motion for sanctions and to cover the increased costs associated with obtaining the lesser available evidence relating to the despoiled chimpanzees from third parties. *See Process Controls,* 2011 WL 5006220, at *9 (awarding fees for costs associated with litigating motion for sanctions where offending party acted in bad faith in destroying documents). Such additional sanctions are appropriate "to send a message" to Defendants "and other litigants that the duty to preserve relevant evidence . . . is not to be taken lightly." *Claredi Corp.*, 2010 WL 11579710, at *15 (awarding movant its attorney's fees and expenses in prosecuting spoliation motion).[8]

## CONCLUSION

Declining to impose sanctions would give *carte blanche* to similarly situated ESA defendants (and, indeed, the Defendants in this case) to evade judicial scrutiny by removing all subject animals to third party facilities, regardless of those facilities' ability to provide care for them consistent with their legal obligations. After litigation has concluded without consequences for their abusive conduct, defendants (like Defendants here), would be free to retrieve the subject animals and resume their unlawful treatment of the animals, making a mockery of the ESA's citizen suit provision, which is intended to allow plaintiffs "to vindicate Congressional policy of the highest priority and advance the public interest." *Kuehl v. Sellner*, 887 F.3d 845, 855 (8th Cir. 2018).

---

[8] Plaintiffs request that they be granted 14 days from the entry of the order on this motion in which to submit their proposed request for attorney's fees and expenses incurred in the motion for sanctions, and 14 days from the entry of final judgment against Casey and Sawyer, to submit their proposed request for attorney's fees and expenses incurred in taking third party discovery relating to the despoiled animals.

This Court should send a clear and forceful message that such gamesmanship will not be tolerated.

For all of these reasons, Plaintiffs request that the Court enter an Order, in the form submitted herewith, granting Plaintiffs' motion in all respect.

Dated:   June 4, 2018                                Respectfully submitted,

/s/ Martina Bernstein
MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

JARED S. GOODMAN (#1011876DC)
(Admitted *pro hac vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90032
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/*
*Counterclaim Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2018, the foregoing (i) Memorandum in Support of Counterclaim Plaintiffs' Motion for Sanctions for Spoliation of Evidence; (ii) [Proposed] Order; and (iii) Declaration of Jared Goodman were electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to the following:

Geordie Duckler, geordied@animallawpractice.com
*Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

Brian Klar, bklar@lawsaintlouis.com
Daniel T. Batten, dbatten@lawsaintlouis.com
*Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

And by regular mail on the following:

Missouri Primate Foundation
c/o Connie Braun Casey
12338 State Rd. CC
Festus, MO 63028

Vito Stramaeglia
ICS
832 Jones Creek Rd.
Dickson, TN 37055

/s/ Jared Goodman