UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MISSOURI PRIMATE FOUNDATION, et al., | ) | |
|---|---|---|
| | ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-02163 |
| | ) | |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) | |
| | ) | |
| Defendants and Counterclaim Plaintiffs. | ) ) | |

**MEMODANDUM IN SUPPORT OF COUNTERCLAIM PLAINTIFFS'
MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Counterclaim Plaintiffs People for the Ethical Treatment of Animals, Inc. ("PETA") and Angela Scott a/k/a Angela G. Cagnasso (together with PETA, the "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 55(b) and Local Rule 7-4.01, move for the entry of default judgment against Counterclaim Defendant Missouri Primate Foundation ("MPF"), including permanent injunctive relief and attorney's fees. Additionally, for the reasons demonstrated below, in light of the unique facts of this case and based on legal and equitable principles, Counterclaim Defendant Connie Braun Casey ("Casey") should be estopped from refuting the facts that MPF is now deemed to have admitted. At all relevant times, MPF operated as Casey's alter ego and instrumentality. Therefore, Casey should not be permitted to now assert defenses that MPF has been precluded from asserting due to its default.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 2, 2016, pursuant to Section 11(g)(2)(A)(i) of the Endangered Species Act ("ESA"), Plaintiffs mailed to MPF, Casey, Andrew Sawyer, Jane Does 1 and 2 (collectively, "Defendants"), the Secretary of the Interior, and the Director of the U.S. Fish and Wildlife Service a notice of violation and intent to file suit for the unlawful "take" of chimpanzees at MPF [ECF No. 1-1; "Notice"]. Each recipient received the Notice on or before November 12, 2016. Pursuant to the 60-day notice requirement, Plaintiffs could not file any citizen suit on the basis of the Notice before January 12, 2017.

**Defendants' Spoliation of Evidence**

In an apparent attempt to evade liability under the ESA, Casey and MPF caused three chimpanzees that were the subject of the Notice to be removed to another facility—despite the fact that they were fully aware at the time of the need to preserve evidence for the impending ESA litigation [ECF #31 at ¶ 46]. Defendants then preemptively sued Plaintiffs on December 30, 2016,

for: (1) a declaration that they are not in violation of the ESA; (2) an injunction to enjoin Plaintiffs from filing the ESA claims outlined in their Notice; and (3) defamation for statements published on PETA's website [ECF No. 1].

At some time after receiving the Notice and prior to February 2, 2017, Defendant Sawyer also removed chimpanzee Joey from MPF, where Joey was being held indefinitely, and transferred him to an unknown location in apparently a similar attempt to evade liability. [ECF #31, ¶ 48]. Then, on February 9, 2017, Jane Doe 1 voluntarily dismissed her claims [ECF Nos. 8-10] because she removed chimpanzee Allie from MPF [ECF No. 31 at ¶ 46], where Allie was being held indefinitely. Upon information and belief, Jane Doe 1 transferred ownership and possession of Allie to an accredited sanctuary after learning of the Notice [*see* ECF No. 12].

Alarmed by the Defendants' subterfuge, counsel to Plaintiffs wrote to (then) counsel for Defendants, Kurtis B. Reeg, on July 18, 2017: The chimpanzees are critical evidence in this lawsuit, and their unilateral removal from MPF—and any similar future removals—effectively prevents Plaintiffs from obtaining key evidence in the pending litigation. Plaintiffs sought Mr. Reeg's "assurance that Plaintiffs will not transport, transfer, or otherwise relocate any other of the eleven (11) chimpanzees currently held at Missouri Primate Foundation without prior written approval of the Court or unless and until the parties reach a settlement regarding their transfer to a reputable sanctuary." Letter from Jared Goodman, PETA Foundation, to Kurtis Reeg, Goldberg Segalla (July 18, 2017) [ECF No. 67-3]. On July 20, 2017, Mr. Reeg responded, in part: "While we appreciate your thoughts regarding preservation, my clients and I think we know what our preservation obligations are and that we have complied with the same." Letter from Kurtis Reeg, Goldberg Segalla, to Jared Goodman, PETA Foundation (July 20, 2017) [ECF No. 67-4]. Yet, a week after Mr. Reeg's response, Casey and MPF apparently caused two additional chimpanzees

to be removed from MPF. Records subpoenaed from veterinarian Dr. Doug Pernikoff, a former board member of MPF, show that on or around July 27, 2017, he examined the two chimpanzees prior to their transfer to a Michigan facility. Dr. Doug Pernikoff, Clarkson-Wilson Veterinary Clinic, Excerpts of Records Produced (Mar. 26, 2018) [ECF No. 67-5].

In all, seven of the sixteen chimpanzees held at the facility of Defendants MPF and Casey were transferred elsewhere following Plaintiffs' Notice.

**Defendant MPF's Default**

After spoliating critical evidence, MPF was "administratively dissolved and revoked" by the Missouri Secretary of State as of January 3, 2018, for failure to submit its annual registration statement [ECF No. 49-1, at 5-6].[1]

On February 26, 2018, counsel for Counterclaim Defendants moved to withdraw [ECF No. 44]. The Court granted the motion following a hearing on March 12, 2018, and ordered that the case be stayed until May 1, 2018, and that if no counsel entered an appearance for Defendants by that time, "they will be deemed to be representing themselves." [ECF Nos. 51-52]. MPF did not retain new counsel by May 1, 2018. On May 8, 2018, Plaintiffs moved for an entry of default [ECF No. 59], which the clerk entered on May 15 [ECF No. 61]. On May 17, new counsel entered an appearance solely on behalf of Casey [ECF. Nos. 62-65].

**Missouri Primate Foundation's History**

"Missouri Primate Foundation" has long operated as a chimpanzee holding facility with no apparent delineation between its operation as a "doing business as" moniker for Casey, a registered

---

[1] Under Missouri law, dissolution does not "[a]bate or suspend a proceeding pending by or against the corporation on the effective date of dissolution." Mo. Rev. Stat. § 351.476(2)(6).

fictitious name, or a corporation. Filings from the Missouri Secretary of State make this abundantly clear:[2]

- "Missouri Primate Foundation," located at 12338 Hwy CC, in Festus, Mo., was first registered as a fictitious name by Defendant Casey (then Braun) and James Casey in their individual capacities, at that same address, on March 8, 1996. *See* State of Mo., Registration of Fictitious Name, No. X00300823 (Mar. 8, 1996) [ECF No. 67-7].

- On September 2, 2009, "Missouri Primate Foundation" was registered again as a fictitious name, this time by only Casey (then Braun), at the same address. *See* State of Mo., Registration of Fictitious Name, No. X00997779 (Sept. 2, 2009) [ECF No. 67-8].

- On October 16, 2009, the initial fictitious name registration expired when it was not renewed. *See* State of Mo., Notice of Expiration for a Fictitious Name Registration, No. X00300823 (Oct. 16, 2009) [ECF No. 67-9].

- Then, on September 13, 2010, Casey incorporated MPF at the same address as "a sanctuary for chimpanzees and other animals in need of a forever home." *See* State of Mo., Articles and Certificate of Incorporation, No. N01085070 (Sept. 13, 2010) [ECF No. 67-10].

---

[2] The Court may consider evidence outside of Plaintiffs' well-pleaded claims in considering this motion. *See Walker v. Innovative Concept Sols. Int'l, Inc.*, 6 F. Supp. 3d 52, 54 (D.D.C. 2013) (denying motion for default judgment without prejudice where plaintiff failed to provide evidence regarding, inter alia, defendant's corporate status and registered agent, and where the court itself referred to state database for corporate information); *see generally* Fed. R. Civ. P. 55(b)(2) (the court may conduct hearings to "establish the truth of any allegation by evidence" or "investigate any other matter"); *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 500 (5th Cir. 2015) (considering plaintiff's evidence that "simply added factual details that fleshed out his claim").

- On December 16, 2014, the subsequent fictitious name registration expired when it was not renewed. *See* State of Mo., Notice of Expiration for a Fictitious Name Registration, No. X00997779 (Dec. 16, 2014) [ECF No. 67-11].

- As of January 3, 2018, MPF was administratively dissolved or for its failure to submit the required annual registration statement. [ECF No. 49-1, at 5-6]

Moreover, Defendants admit that Casey was the president of MPF, operates the facility, and is responsible for feeding the chimpanzees, sanitation of the enclosures, and husbandry. [ECF Nos. 23 ¶ 26 and 31 ¶ 26.] Defendants further admit that chimpanzees as old as "approximately thirty-five to thirty-six years of age" were "born at MFP" [sic] [*see, e.g.,* ECF Nos. 23 ¶ 55 and 31 ¶ 55], evidencing that Casey herself operated what she considered to be the Missouri Primate Foundation before it had even been registered as a fictitious name with the State of Missouri.

## ARGUMENT

### I. A Default Judgment Against MPF Is Warranted

A default judgment is appropriately entered against MPF for its failure to obtain counsel in this matter. Federal Rule of Civil Procedure 55(a) provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." *Canal Ins. Co. v. Ashmore*, 61 F.3d 15, 17 (8th Cir. 1995) (affirming entry of default judgment against defendant whose attorney withdrew for failure to retain new counsel or arrange to proceed without counsel). The Eighth Circuit has noted that a subsequent default judgment for failure to defend "is appropriate if the conduct is willful, contumacious or intentional." *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996).

"It is settled law that a corporation may be represented only by licensed counsel," *Carr Enterprises, Inc. v. United States*, 698 F.2d 952, 953 (8th Cir. 1983), and "entry of a default

judgment is appropriate where a defendant corporation fails to comply with a court order to retain counsel," *Schoemehl v. All-Tech Sec., Inc.*, No. 4:06CV1556 CAS, 2007 WL 1464379, at *2 (E.D. Mo. May 17, 2007) (citations omitted).

There can be no question that MPF has failed to defend itself by not retaining counsel. Therefore, the clerk properly entered a default against MPF. Because MPF is a corporate entity, a default judgment must therefore follow, *Schoemel*, 2007 WL at *2, and, indeed, is all the more necessary in this case because the timeline makes clear that MPF's conduct was "willful, contumacious or intentional," *Ackra Direct Mktg. Corp.*, 86 F.3d at 857. Following the submission of Defendants' motion for its prior counsel to withdraw, this Court ordered a hearing to discuss "several deficiencies in the motion to withdraw that must be addressed," which "all counterclaim defendants and an officer or director of Missouri Primate Foundation" were required to attend. [ECF No. 48.] Casey attended the hearing on this motion in both her individual capacity and in her capacity as president of MPF.[3] At the hearing, the Court informed Casey that failure to retain counsel for MPF would result in a default. Following the hearing, the Court not only granted Defendants' motion, but stayed the case for seven weeks to allow them to find new counsel. [ECF No. 52.] Notwithstanding having ample time to find replacement counsel and being clearly warned of the consequences of proceeding without counsel, MPF has not retained counsel to represent its interests in this litigation.

---

[3] MPF had, by this time, been administratively dissolved. The corporate entity was dissolved as of January 3, 2018, and Defendants first informed Plaintiffs and the Court of this fact in their Amended Motion to Withdraw. [ECF Nos. 49 ¶ 5, 49-1.]

**II.     Given the Admitted Facts of the Complaint, a Default Judgment Against MPF Is Supported by the Allegations of the Complaint.**

"After default has been entered, the defendant is deemed to have admitted all well pleaded factual allegations in the complaint." *Acuity Ins. Co. v. Jones*, No. 4:11CV2041 AGF, 2013 WL 1192764, at *1 (E.D. Mo. Mar. 22, 2013) (citing *Marshall v. Baggett,* 616 F.3d 849, 852 (8th Cir. 2010)). However, "a party in default does not admit mere conclusions of law." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2688 at 63 (3d ed.1998)). Accordingly, "before the Court may enter a default judgment setting forth the declaration Plaintiff seeks, it must be satisfied, on the basis of the sufficiency of the complaint and the substantive merits of Plaintiff's claim, that 'the unchallenged facts constitute a legitimate cause of action.'" *Acuity Ins. Co.*, 2013 WL 1192764, at *1 (quoting *Murray,* 595 F.3d at 871 (internal quotation omitted)).

While the Eighth Circuit has not further defined the "sufficient basis" standard, this Court's precedent demonstrates that it is akin to the standard necessary to survive a motion to dismiss under Rule 12(b)(6). *See, e.g., Missey v. Watson Acquisition Grp., LLC*, No. 4:10CV01788 AGF, 2011 WL 864901, at *1 (E.D. Mo. Mar. 10, 2011). Other jurisdictions have explicitly adopted this standard, including comparing a motion for default judgment to "a reverse motion to dismiss for failure to state a claim." *See also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015); *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (allegations must be "sufficient to satisfy the low threshold of Rule 8"); *Silvers v. Iredell Cty. Dep't of Soc. Servs.*, No. 515CV00083RLVDCK, 2016 WL 427953, at *5 (W.D.N.C. Feb. 3, 2016), *aff'd,* 669 F. App'x 182 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 815, 196 L. Ed. 2d 600 (2017).

This Court has already decided, following a full briefing on this issue, that Plaintiffs' claims meet that standard.[4] On March 22, 2018, this Court concluded that Plaintiffs "state[] a claim for relief under the ESA" and denied Defendants' motion to dismiss in its entirety. [ECF No. 56.] Specifically, this Court found that Plaintiffs have standing to pursue their claims, *id.* at 6, and that they have sufficiently alleged "that conditions at the MPF have deprived the chimpanzees of adequate social groups, space, and psychological stimulation, putting them at risk of and causing physical and psychological injury," and "that the chimpanzees were denied a sanitary environment, proper ventilation, a healthy diet, and adequate veterinary care," *id.* at 10-11.

Accordingly, at a minimum, Plaintiffs' "unchallenged facts constitute a legitimate cause of action," and the Court may enter a default judgment in their favor.

## III. Plaintiffs Are Entitled to Injunctive Relief

The ESA specifically empowers private citizens to file suit "to enjoin any person … who is alleged to be in violation of any provision" of the statute or its implementing regulations, 16 U.S.C. § 1540(g)(1)(A), after the citizen provides the alleged violator and the government with sixty days' written notice, *id.* § 1540(g)(2)(A). Congress declared that "[t]he district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce any such provision or regulation." *Id.* at § 1540(g)(1).

The "obvious purpose" of the ESA's citizen suit provision is "to encourage enforcement by so-called 'private attorneys general.'" *Bennett v. Spear*, 520 U.S. 154, 165 (1997); *see also Fox*

---

[4] On July 20, 2017, Defendants moved to dismiss Plaintiffs' claims pursuant to Rules 12(b)(1) and (6). [ECF Nos. 29-30.] Plaintiffs opposed Defendants' motion on August 7, 2017 [ECF No. 36], on August 15, 2017, filed a supplemental authority from the Fourth Circuit further undermining Defendants' motion [ECF Nos. 37-39], and on January 30, 2018, filed a supplemental authority from the District of Maryland that denied a motion to dismiss that raised identical arguments as Defendants [ECF Nos. 41-43].

9

*v. Vice*, 563 U.S. 826, 832–33 (2011) (noting that a private attorney general provision is to allow citizens to "vindicat[e] a policy that Congress considered of the highest priority"). In allowing for citizen suits, "Clearly Congress . . . intended to encourage the participation of 'public interest' groups in resolving complex technical questions and important and difficult questions of statutory interpretation, and in monitoring the prompt implementation of the Act." *Sierra Club v. Gorsuch*, 672 F.2d 33, 38 (D.C. Cir. 1982) (regarding the Clean Air Act), *rev'd sub nom. on other grounds Ruckelshaus v. Sierra Club*, 463 U.S. 680 (1983). The *sole* mechanism that Congress provided for citizens to enforce the ESA and vindicate this critical priority with respect to private violators is via injunction pursuant to the citizen suit provision, 16 U.S.C. § 1540(g)(1)(A).

In *Kuehl v. Sellner*, 161 F. Supp. 3d 678, 718 (N.D. Iowa 2016), *aff'd*, 887 F.3d 845 (8th Cir. 2018), following a bench trial, the court concluded that "the social isolation, lack of environmental enrichment, and inadequate sanitation" provided to lemurs and the failure to provide adequate veterinary care and sanitation to tigers constituted an unlawful "take" under the ESA. The court noted that the defendants "violations are pervasive, long-standing, and ongoing," and to prevent further violation, held that the plaintiffs were entitled to a declaratory judgment and injunctive relief. *Id.* (citing *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 193 (1978); *Friends of the Earth v. U.S. Navy*, 841 F.2d 927, 933 (9th Cir.1988)). The court ordered that the animals be transferred to an appropriate facility that is not only licensed, but "is capable of meeting the needs of the endangered species," and enjoined the defendants "from acquiring any additional animals on the endangered species list, without first demonstrating an ability to care for the animals and receiving Court approval." *Id.* The court's decision was upheld by the Eight Circuit. *Kuehl v. Sellner*, 887 F.3d 845, 853-54 (8th Cir. 2018).

Accordingly, as a result of MPF's default, Plaintiffs are entitled to the injunctive relief they seek: enjoining MPF from continuing to violate the ESA and its regulations with respect to chimpanzees and from owning or possessing any chimpanzees in the future, and the placement of any chimpanzees that were owned by MPF (or, as discussed below, by Casey) at the time of the Notice at wildlife sanctuaries that are accredited by the Global Federation of Animal Sanctuaries. [ECF No. 23, Claims for Relief.].

## IV. Plaintiffs Are Entitled to Attorney's Fees and Costs

Consistent with the citizen suit provision's "obvious purpose … to encourage enforcement by so-called 'private attorneys general,'" *Bennett*, 520 U.S. at 165, Congress provided that the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4); *see also Metro. Washington Coal. for Clean Air v. D.C.*, 639 F.2d 802, 804 (D.C. Cir. 1981) ("[t]he attorneys' fee feature was offered as an inducement to citizen-suits, which Congress deemed necessary" to aid enforcement of the Clean Air Act).

As the Eighth Circuit explained:

> The Supreme Court has explained that when individual citizens act as "private attorneys general" to enforce important Congressional objectives, successful plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968); *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560 (1986). We adopted this reasoning in *Fowler v. Schwarzwalder*, 498 F.2d 143, 145 (8th Cir. 1974), when we explained that "absent compelling circumstances, a plaintiff who acts as a 'private attorney general' in seeking to vindicate Congressional policy of the highest priority and advance the public interest should not be forced to bear the costs of litigation. Indeed, few aggrieved parties would have the financial resources to pay such fees."

*Kuehl,* 887 F.3d 845, 855 (parallel citations omitted).

In *Kuehl*, the district court denied plaintiffs' request for attorney's fees in reliance on factors set forth by the Eight Circuit in *Martin v. Arkansas Blue Cross and Blue Shield*, 299 F.3d

966 (8th Cir. 2002). *Kuehl v. Sellner*, No. C14-2034, 2016 WL 3582085, at *3 (N.D. Iowa June 28, 2016), *aff'd*, 887 F.3d 845 (8th Cir. 2018). The relevant factors are: "(1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; … and (5) the relative merits of the parties' positions." The court found, following the bench trial, that the defendants had not acted in bad faith and their position was not frivolous.

These factors strongly favor the award of attorney's fees here. Defendants' affirmative claims against Plaintiffs were brought in bad faith and were frivolous. The purpose of the ESA's 60-day notice requirement is to "give[] the alleged violator 'an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit.'" *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 650 (9th Cir. 2015) (quoting *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 29 (1989)). It also "provides an opportunity for settlement or other resolution of a dispute without litigation." *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998). Notwithstanding this clear purpose, Defendants failed to substantively respond to the Notice, removed chimpanzees to evade the jurisdiction of this Court in the impending litigation, and then filed claims against the Plaintiffs that were not authorized or even adequately pleaded. *See generally Internet Transaction Sols., Inc. v. Intel Corp.*, No. 2:06-CV-035, 2006 WL 1281654, at *7 (S.D. Ohio May 8, 2006) ("When a declaratory judgment action is filed 'within the response period provided in a recent cease-and desist letter,' it may be found that the plaintiff acted in bad faith.").

After Defendants filed their baseless claims and Plaintiffs warned that removing chimpanzees constitutes the spoliation of evidence and will cause substantial prejudice, two

additional chimpanzees were removed.[5] In a futile attempt to reduce liability for MPF, MPF was "administratively dissolved" when Casey chose not to submit its annual registration statement. MPF then elected to default following its former counsel's withdrawal.

In sum, MPF has acted in bad faith by spoliating evidence, bringing patently unsupported and inadequately pleaded claims, and then abandoning its defense. Additionally, an award of attorney fees against MPF will serve the salutary purpose of deterring future ESA defendants from engaging in similar inequitable conduct that wastes the resources of the courts and of citizens seeking compliance with the ESA. Accordingly, attorney's fees and costs are appropriately awarded to Plaintiffs. Plaintiffs hereby request the opportunity to submit further briefing substantiating their fees and costs should the Court determine that they will be awarded.

## V.     As the Alter Ego of MPF, Casey Should Be Estopped from Disputing the Facts Deemed Admitted by MPF.

Casey wholly owned and controlled MPF from its inception and at all relevant times prior to default, Casey and MPF shared a common interest and spoke with a single voice with respect to the legal issues raised in this case. As the alter ego of MPF who deliberately chose to waive MPF's right to defend itself in this action, Casey is barred by principles of *res judicata* from relitigating the issues on which she allowed MPF to default.

While generally courts will not enter a default judgment against one defendant while co-defendants who are jointly and severally liable, or otherwise similarly situated, remain, due to the risk of inconsistent judgments, *Angelo Iafrate Const., LLC v. Potashnick Const., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004), "the grant of default judgment may in some cases preclude surviving

---

[5] Plaintiffs filed their Motion for Sanctions for Spoliation of Evidence, for relief from Defendants' spoliation and which provides additional grounds for relief against Casey, concurrently herewith. [ECF Nos. 66-67]

13

defendants from contesting the claims within the default judgment as to the defaulting parties,"

*Robinson Mech. Contractors Inc. v. PTC Grp. Holdings Corp.*, No. 1:15-CV-77 SNLJ, 2017 WL 3839702, at *3 (E.D. Mo. Sept. 1, 2017). Where the remaining party is precluded from litigating the defaulting defendant's liability, there is no possibility of inconsistent results. *Id.*

> In the Eighth Circuit, four requirements must be found for res judicata to apply: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involved the same cause of action; and (4) both suits involved the same parties or their privies." *Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir. 1983). "The party against whom res judicata is to be used, however, must have had 'a full and fair opportunity to investigate and litigate the matter concluded,' *id.,* or have been in privity with a party that had such an opportunity." *Envtl. Dynamics, Inc. v. Robert Tyer & Associates, Inc.*, 929 F. Supp. 1212, 1243 (N.D. Iowa 1996) (*quoting Lovell,* 719 F.2d at 1376).

*Id.*

For purposes of this analysis, a default judgment constitutes a final judgment on the merits. *Id.* at *4 (quoting *Kapp v. Naturelle, Inc.*, 611 F.2d 703, 707 (8th Cir. 1979)). Additionally, privity "may be found when the defendants from both suits 'have a close relationship, bordering on near identity.'" *Id.* (quoting *Robbins v. Dist. Court of Worth County, Iowa*, 592 F.2d 1015, 1017 (8th Cir. 1979)).

The doctrine of *res judicata* bars Casey from further litigating the conditions and care of the chimpanzees at issue in this case. First, as a matter of law, MPF's default judgment, when entered, will be a final judgment on the merits. Second, this Court has jurisdiction to hear Plaintiffs' claims. [*See generally* ECF No. 56.] Third, Plaintiffs' claims involve the same causes of action against Defendants MPF and Casey—violation of the ESA in relation to the care provided to the chimpanzees at the facility. [ECF No. 23.]

Finally, with respect to the fourth factor, MPF and Casey are not only privies, but they are indistinguishable. MPF is the instrumentality and alter ego of Casey. Casey has long operated "Missouri Primate Foundation" as a chimpanzee holding facility with no apparent delineation

14

between its operation as "doing business as" moniker for Casey, a registered fictitious name, or a corporation. *See* Missouri Primate Foundation's History, *supra*.

Casey caused MPF, together with herself, to initiate these proceedings by asserting claims against Plaintiffs through common counsel. She had full knowledge of the claims against MPF, the right and opportunity to defend MPF, and chose to do so as long as it suited her purposes. She was informed of the consequences of a default at this Court's hearing on their counsel's motion to withdraw, which Casey attended as MPF's corporate representative. Casey elected to dissolve MPF and leave MPF unrepresented only after their claims against Plaintiffs were dismissed, and MPF's own liabilities to Plaintiffs became obvious.

The decision in *Robinson* is instructive on this issue. In that case, plaintiff sued Seamless, who was dissolved, and PTC, its parent corporation. Like Casey, PTC "retained the power to arrange for [the dissolved entity] to defend itself by hiring counsel." *Id.* at *5. Like Casey, PTC "had the right and opportunity to defend" the dissolved entity in the litigation and "was aware of potential preclusive issues, but still chose not to defend [the entity]." *Id.* Like Casey, PTC had "full knowledge" of the action against the dissolved entity, corporation, and "could have elected to defend" the entity. *Id.* However, in *Robinson*, as in the present case, the dissolved entity "has not appeared nor appointed anyone to do so," and PTC was precluded from relitigating Seamless's liability even as it established the predicate for PTC's own liability. *Id.*

To allow Casey to write her defense in this case on a blank slate would disregard the fact that for all intents and purposes, Casey controls MPF, and MPF has no will or existence of its own. After using MPF to file baseless claims, to submit a meritless motion to dismiss, and to spoliate key evidence, Casey should be estopped from refuting the dispositive admissions in the Complaint upon which the default judgment against MPF rests. Given these circumstances, Casey should not

now "be allowed to 'stand back and allow a judgment to be taken setting" the relief against MPF "without similarly being bound by the judgment." *Id.* (quoting *Drill South, Inc. v. International Fidelity Ins. Co.*, 234 F.3d 1232, 1236 (11th Cir. 2000)).

In sum, no risk of inconsistent judgment exists here, because Casey is precluded from disputing the facts upon which the judgment against MPF rests.[6]

## CONCLUSION

MPF is deemed to have admitted all well pleaded factual allegations in the complaint, and this Court has already determined that Plaintiffs' unchallenged facts state a claim to support the entry of default judgment. Moreover, Defendant Casey controlled MPF from its inception, including long prior to its incorporation. As the alter ego of MPF who used MPF to join her in filing baseless claims, submitting a meritless motion to dismiss, and spoliating key evidence, and then deliberately caused MPF to default in this action, Casey must be precluded from relitigating MPF's dispositive admissions. Accordingly, Plaintiffs should be granted the injunctive relief and awarded the costs they seek, specifically authorized by the ESA, with respect their claims against both MPF and Casey.

Dated: June 4, 2018　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Jared S. Goodman
　　　　　　　　　　　　　　　　　　　　JARED S. GOODMAN (#1011876DC)
　　　　　　　　　　　　　　　　　　　　(Admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　PETA Foundation
　　　　　　　　　　　　　　　　　　　　2154 W. Sunset Blvd.
　　　　　　　　　　　　　　　　　　　　Los Angeles, CA 90032
　　　　　　　　　　　　　　　　　　　　323.210.2266
　　　　　　　　　　　　　　　　　　　　Fax No: 213.484.1648
　　　　　　　　　　　　　　　　　　　　jaredg@petaf.org

---

[6] As a matter of procedure, after the Court rules in response to this motion that as a matter of law and equity, Casey is estopped from refuting facts deemed admitted by her instrumentality MPF, Plaintiffs will seek a default judgment against Casey if the Court does not enter one sua sponte.

MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/
Counterclaim Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on June 4, 2018, the foregoing Memorandum in Support of Counterclaim Plaintiffs' Motion for Entry of Default Judgment was served by electronic mail and regular mail as follows:

Geordie Duckler, geordied@animallawpractice.com
*Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

Brian Klar, bklar@lawsaintlouis.com
Daniel T. Batten, dbatten@lawsaintlouis.com
*Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

Missouri Primate Foundation
c/o Connie Braun Casey
12338 State Rd. CC
Festus, MO 63028

Vito Stramaeglia
ICS
832 Jones Creek Rd.
Dickson, TN 37055

/s/ Jared S. Goodman