UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MISSOURI PRIMATE FOUNDATION, et al., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiffs and Counterclaim Defendants, | ) |  |
|  | ) |  |
| v. | ) | Case No. 4:16-cv-02163 |
|  | ) |  |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) |  |
|  | ) |  |
| Defendants and Counterclaim Plaintiffs. | ) |  |

**REPLY TO COUNTERCLAIM DEFENDANT SAWYER IN
FURTHER SUPPORT OF COUNTERCLAIM PLAINTIFFS'
MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**

Counterclaim Defendant Sawyer attempts three futile arguments to avoid sanctions for spoliation of evidence. First, he claims that no spoliation occurred because the chimpanzee Joey was not "destroyed" but merely moved away from Missouri Primate Foundation ("MPF"). [ECF No. 70, at 2.] In other words, Sawyer wants a free pass for altering and hiding evidence, as long as some of it still exists in **some other form at some other location**. Second, Sawyer argues that he did not remove Joey from his then-existing conditions in order hide those conditions from the eyes of the Counterclaim Plaintiffs ("Plaintiffs") or the Court. [*Id.* at 3.] This is belied by Sawyer's own conduct in using Joey's removal precisely for that purpose, arguing that Plaintiffs' claims against him were mooted by the removal. Third, Sawyer argues that Plaintiffs failed to prove that he knew Joey would be relevant to their claims when he removed Joey. [*Id.*] This misperceives Plaintiffs' burden in this motion. Plaintiffs only have to demonstrate that Sawyer "should have known" that Joey would be relevant. Since Joey was mentioned twenty (20) times,

1

by name, in Plaintiffs' Notice letter, Sawyer's professed ignorance about Joey's relevance to the upcoming lawsuit does not withstand even the mildest scrutiny.

**I.      Joey's Removal Caused the Loss of Key Evidence, and Erected Barriers to Plaintiffs' Ability to Obtain Other Key Evidence, about Joey's Conditions**

Sawyer has cited no case, and we are not aware of any, that requires the complete destruction (as opposed to transfer or sale or other type of removal) of evidence, in order for spoliation to occur. Indeed, there is precedent to the contrary. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 780 (2d Cir. 1999) (affirming the imposition of sanctions for evidence spoliation in a case hinging on the over-inflation of tires where plaintiff sold the tire mounting machine and air compressor used and so "defendants' experts had no way to determine the condition of the machines when they were in [plaintiff's] shop at the time of the accident").

The fact that Joey is still alive **somewhere** does not "cure" or "restore" the evidence of Joey's conditions and treatment **at MPF** that was irretrievably lost as a result of Joey's transfer. Sawyer does not argue otherwise; he merely offers, as a consolation, that Joey can be inspected and evaluated someplace else where he is being kept by somebody else under some other conditions. That is scant substitute for Plaintiffs' ability to gather evidence of Joey's conditions and treatment at MPF, which is critical to Plaintiffs' claims.

In another case involving tigers allegedly held in violation of the Endangered Species Act ("ESA"), *PETA v. Dade City Wild Things, Inc.*, which Plaintiffs specifically cited to Defendants' former counsel [ECF No. 67-3, at 2 n.1], the United States District Court for the Middle District of Florida considered the ESA plaintiffs' argument that they would suffer irreparable harm if the defendants were to remove the subject animals from the facility where they were kept, in alleged violations of the ESA. *See* Order, PETA v. Dade City Wild Things, Inc., No. 8:16-cv-2899-T-36AAS (M.D. Fla. July 13, 2017) (ECF No. 69; attached hereto as Exhibit A). When it appeared

that the defendants planned to transfer the subject animals from their facility in Florida to Oklahoma during the pendency of the lawsuit, the court therefore entered a preservation order to preserve the plaintiffs' ability to inspect the subject animals in their original Florida location. *Id.* Unfortunately, here, the irreparable harm has already happened and no preservation order can make the Plaintiffs whole.

It comes with ill grace for Sawyer to argue that Plaintiffs have not been prejudiced because they can still inspect Joey under other conditions at another location. [*See* ECF No. 67, at 9.] It should go without saying that whether an unlawful "take" occurred at MPF is extremely difficult to prove by showing Joey's conditions and treatment by others at another facility. Presumably, Sawyer will be the first to argue at trial that those conditions have no bearing on the conditions that existed while Joey was at MPF. Adding insult to injury, Sawyer omits to inform the Court that as of the date he filed his brief, he continued to conceal Joey's whereabouts from Plaintiffs. It is a mystery to Plaintiffs how they should supposedly be able to evaluate Joey without knowing where he is located and who has custody of him.

Even though the Court ordered the Defendants to provide initial disclosures by May 18 [ECF No. 54, at 2] and to respond to Plaintiffs' outstanding discovery by May 31 [ECF No. 52, at 2], Sawyer disregarded both deadlines[1] and thus far refused to identify Joey's custodian and location. Even though the discovery stay in this case was lifted as of May 1, Sawyer's removal of Joey to an undisclosed location thus far has allowed him to thwart all attempts by Plaintiffs to gather any evidence about Joey's current treatment and conditions.

---

[1] On March 9, 2018, Defendants' former counsel served initial disclosures that, without question, fail to satisfy Defendants' requirements of Federal Rule of Civil Procedure 26(a)(1) and Local Rule 26-3.01. Sawyer did not supplement those disclosures, even following the appearance of replacement counsel, notwithstanding the Court's order.

## II.     The Record Supports a Finding of Intentional Spoliation

There is ample basis to infer that Joey's removal from MPF was done for the purpose of evading judicial scrutiny. Most incriminating is the fact that Sawyer used it to argue (albeit unsuccessfully) that Plaintiffs' claims against him were mooted as a result of the removal. [ECF No. 30, at 9]. This, coupled with the timing of the removal following receipt of the Notice letter, after Joey had been held at Missouri Primate Foundation for years, gives rise to the assumption that it was directly intended to thwart Plaintiffs' ability to prove their claims. Sawyer's silence here is particularly telling: He has not proffered any evidence to rebut that assumption, for example, by demonstrating more benign motives, such as financial considerations or dissatisfaction with MPF's care of Joey. Nothing in the record suggests a motive **other than** evading judicial scrutiny.

Moreover, if it had not been Sawyer's intention to avoid Plaintiffs' "reach and inquiry" as he now claims, he could have notified Plaintiffs to allow a timely inspection of Joey before he was removed from MPF to preserve evidence (for example, allowing Plaintiffs to take video and photographs of Joey in his enclosure at MPF) before that evidence was irretrievably lost due to Joey's transfer, contacted Plaintiffs to seek their consent for Joey's removal from MPF, or sought the Court's permission to remove evidence critical to the counterclaim against him. Instead, after receiving Plaintiffs' Notice, Sawyer simply denied in his unfounded complaint "that Joey is housed at the facilities of" MPF. [ECF No. 1, at 5.]

Sawyer's intent to suppress evidence is also supported by the fact that he missed two Court ordered deadlines that would have required him to disclose Joey's current location. If and when Sawyer finally complies with his long-overdue discovery obligations, it remains to be seen what additional barriers and burdens the removal has created to Plaintiffs' ability to inspect Joey

4

at his current location—but it certainly won't restore Plaintiffs to the *status quo ante* with respect to the alleged unlawful conditions under which Joey was kept at MPF.

### III. Sawyer Had Ample Notice of Joey's Relevance

There also is ample evidence that Sawyer had notice that Joey, and the conditions under which he was confined at MPF, were relevant to Plaintiffs' ESA claims. In their Notice, Plaintiffs mentioned Joey by name **twenty times**. [ECF No. 1-1.] Demonstrating his awareness that Joey was relevant to Plaintiffs' upcoming lawsuit, Sawyer himself sought a declaratory judgment against Plaintiffs that Joey's conditions of confinement did not violate the ESA, specifically mentioning Joey by name three times in his action against Plaintiffs. [ECF No. 1 ¶ 13; ¶ 13a; ¶ 15.] Sawyer's protests that he had no notice of Joey's relevance to Plaintiffs' claims does not withstand even the mildest scrutiny. *Fidelity Nat. Title Ins. Co. v. Captiva Lake Inv., LLC*, No. 4:10-CV-1890 CEJ, 2015 WL 94560, at *2 (E.D. Mo., Jan. 7, 2015) ("The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation.").

A finding of bad faith spoliation is clearly warranted where, as here, evidence is altered and removed (despoiled) in circumstances when the offending party knew, or should have known, that preserving the evidence intact would be important to litigation in the future. The fact that **to this day**, Joey is kept at an undisclosed location under unknown conditions only buttresses the conclusion that Sawyer's intent all along was to suppress key evidence and to erect barriers to judicial scrutiny regarding Joey's past and present conditions of confinement.

### IV. Conclusion

For all of these reasons, and for the reasons stated in Plaintiffs' opening memorandum, Plaintiffs submit that their motion should be granted in all respects.

Dated: June 12, 2018

Respectfully submitted,

/s/ Martina Bernstein
MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

JARED S. GOODMAN (#1011876DC)
(Admitted *pro hac vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90032
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/
Counterclaim Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that on June 12, 2018, the foregoing Reply to Counterclaim Defendant Sawyer in Further Support of Counterclaim Plaintiffs' Motion for Sanctions for Spoliation of Evidence was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to the following:

    Geordie Duckler, geordied@animallawpractice.com
    *Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

    Brian Klar, bklar@lawsaintlouis.com
    Daniel T. Batten, dbatten@lawsaintlouis.com
    *Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

And was served by regular mail on the following:

Missouri Primate Foundation
c/o Connie Braun Casey
12338 State Rd. CC
Festus, MO 63028

Vito Stramaeglia
ICS
832 Jones Creek Rd.
Dickson, TN 37055

                                                  /s/ Jared S. Goodman