UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) |
| v. | ) ) ) |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) ) |
| Defendants and Counterclaim Plaintiffs. | ) ) |

Case No. 4:16-cv-02163

**MEMORANDUM IN SUPPORT OF COUNTERCLAIM PLAINTIFFS' MOTION TO COMPEL INSPECTION, OR, IN THE ALTERNATIVE, FOR ENTRY OF DEFAULT AGAINST COUNTERCLAIM DEFENDANT SAWYER**

This motion has its genesis in the fact that Counterclaim Defendant Andrew Sawyer ("Sawyer") absconded with key evidence—a chimpanzee named Joey—after he learned that Counterclaim Plaintiffs ("Plaintiffs") intended to sue him for keeping Joey under conditions that violate the Endangered Species Act ("ESA"). After Sawyer first sued Plaintiffs asking for this Court to declare that the conditions in which Joey was held did not violate the ESA, he now claims that forcing him to reveal where he hid Joey violates his Fifth Amendment right against self-incrimination.

Of course, had Sawyer not improperly spoliated the evidence in the first place, he would not now be called upon to "testify" about its location. Sawyer's flawed logic calls to mind the man who kills his parents and then pleads for mercy on the ground that he is an orphan. The Court should reject Sawyer's attempt to profit from his self-inflicted predicament.

1

Accordingly, Plaintiffs respectfully request, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, that the Court order Sawyer to produce Joey at the site where he is currently held and to afford Plaintiffs and their experts a full and fair opportunity to discover whether Joey's conditions of confinement are in compliance with the ESA. Alternatively, if the Court finds there is a substantial risk of self-incrimination if Sawyer is compelled to produce Joey, the Court should use its inherent power to remedy the severe prejudice caused by Sawyer's invocation of the privilege. By first causing the spoliation of Joey, and then refusing to disclose his whereabouts, Sawyer obliterated Plaintiffs' ability to get a fair trial on the merits of their claims against him. The only adequate remedy to make Plaintiffs whole under these circumstances is to strike Sawyer's pleadings, deem Plaintiffs' allegations against Sawyer admitted, and enter a default judgment against him.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' case against Sawyer centers around the issue of whether Joey is, and has been, confined under conditions that violate the ESA. In relevant part, in November 2016, Sawyer received Plaintiffs' notice of violation and intent to file suit pursuant to Section 11(g)(2)(A)(i) of the ESA, for keeping Joey at the facilities of Missouri Primate Foundation ("MPF") in conditions that violate the ESA. [ECF No. 1-1; "Notice".] During the mandatory 60-day waiting period between Plaintiffs' service of the Notice and filing suit, Sawyer improperly despoiled Joey by transferring him from MPF to a secret location. [ECF Nos. 68, 69.]

Sawyer then preemptively sued Plaintiffs in December 2016 for, among other things, a declaration that the manner in which Joey was kept did not violate the ESA. [ECF No. 1.] Subsequently, Sawyer also moved to dismiss Plaintiffs' ESA counterclaims against him, arguing, among other things, that those claims were moot because Joey was no longer at MPF. [ECF No.

30, at 9.] This Court rejected the argument, noting, in part: "the transfer does not render the case moot as it is unknown **whether his current conditions are in violation of the ESA** or whether [Joey's] transfer was merely temporary." [ECF No. 56, at 11 (emphasis added).] As the Court's reasoning makes clear, Joey's "current conditions"—wherever he may be located—are pivotal to Plaintiffs' claims against Sawyer. However, Sawyer has thwarted Plaintiffs' attempts to discover those conditions.

To date, Plaintiffs have not even been able to serve a notice pursuant to Rule 34(a)(2) upon Sawyer, requesting entry onto "designated land" to inspect Joey, because Sawyer claims his Fifth Amendment rights would be imperiled if he is forced to disclose the address of that "designated land" where Joey is presently confined.

## II. ARGUMENT

### A. Revealing Joey's Location Does Not Implicate the Fifth Amendment

1. *Producing Joey for inspection is not a "testimonial communication."*

The Fifth Amendment privilege applies only to compelled, testimonial communication; it does not prevent the disclosure of all types of potentially incriminating evidence. *Fisher v. United States*, 425 U.S. 391, 408 (1976). A "testimonial communication" is usually a verbal or written statement, but it may also include an act. *See Doe v. United States,* 487 U.S. 201, 209 (1988). Whether a statement or act, the testimonial communication "**must itself**, explicitly or implicitly, relate a factual assertion or disclose information" that incriminates. *Id.* at 210 (emphasis added). "This requirement removes from the Fifth Amendment's protection a myriad of compelled acts that, **while leading to the discovery of incriminating evidence, do not themselves make an incriminating factual assertion**." *U.S. v. Sweets*, 526 F.3d 122, 127 (4th Cir. 2007) (emphasis added) (collecting cases involving field sobriety test, breathalyzer test,

giving a blood sample, voice exemplar or handwriting exemplar, among other things); *Schmerber v. California*, 384 U.S. 757, 764 (1966) (A "compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate" the privilege.).

Sawyer cannot show that the statement "Joey is at such and such an address" would itself disclose incriminating information. Even assuming *arguendo* that the inspection may possibly lead to the discovery of incriminating evidence, disclosing the address, by itself, does not make any incriminating factual assertion.

The decision in *Sweets* is instructive on this issue. There, defendant Sweets was compelled to "produce" another person, Long, by disclosing his location. *Sweets,* 526 F.3d at 127-28. The court held that testifying where Long was located at most admitted that Sweets knew Long, or that he knew Long's location. But neither admission substantially incriminated Sweets: "Because the police already knew that Sweets knew Long and possibly knew his location . . . the act of production itself add[ed] little or nothing to the sum total of the government's information so as to form the basis of a Fifth Amendment claim." *Id.* (internal quotations and citations omitted).

Likewise, here, the only "testimonial" admission that could be inferred from Sawyer's statement that "Joey is located at such and such an address" is that he knows Joey and where Joey is located. But that is neither a new nor an incriminating revelation. Because the disclosure adds little or nothing to the sum total of testimonial information that could form the basis of a Fifth Amendment claim, the claim fails.

2. *Sawyer's privilege claim is speculative and belied by his own conduct.*

Even if disclosing Joey's location could be viewed as incriminatory testimony (and it cannot), Sawyer's Fifth Amendment claim still fails. To sustain the privilege, the proponent must

show that the risk of prosecution is substantial and real, and not merely fanciful. *Zicarelli v. New Jersey State Comm'n of Investigation*, 406 U.S. 472, 478 (1972); *Marchetti v. United States*, 390 U.S. 39, 53 (1968). The assertion of the privilege must be a "substantial and real" expression of the "hazards of incrimination." *Capitol Prod. Corp. v. Hernon*, 457 F.2d 541, 542-43 (8th Cir. 1972); *Construction Industry Laborers Pension Fund v. Wellington Concrete, LLC*, No. 4:15-CV-804 CAS, 2018 WL 2717909, at *2–3 (E.D. Mo. June 6, 2018) (overruling privilege objection where the proponent "has simply not established that he faces a real danger of incrimination").

As the Eighth Circuit reminds us, the mere "say-so" of the proponent does not of itself establish the hazard of self-incrimination. *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)). For example, in *Travelers Commercial Cas. Co. v. Sielfleisch Roofing, Inc.*, No. 4:12 CV 1550 DDN, 2013 WL 1899557, at *6 (E.D. Mo. May 7, 2013), litigants refused to produce financial records but "offer[ed] no explanation other than they might be held liable in the future for unpaid taxes." The court noted that "[s]uch is a clearly speculative prospect" and held that they "have not satisfied their burden of establishing a legally sufficient basis for successfully invoking the Fifth Amendment as a bar" to producing these documents. *Id.*

Sawyer's conclusory assertions of fear of criminal prosecution is moreover belied by the fact that he is the one who initiated these proceedings against the Plaintiffs. Demonstrating no fear of the hazards he presently asserts, in December 2016, Sawyer sought a declaration from the Court that his treatment of Joey did not violate the ESA. Having asked the Court to make such a determination, it strains credulity that he has a valid fear of criminal prosecution if the location (and conditions) of Joey's confinement are revealed in discovery.

5

**B. Plaintiffs are Entitled to Relief from Sawyer's Self-Inflicted Fifth Amendment Conundrum**

1. *If Sawyer's privilege claim is sustained, Sawyer must bear the consequences flowing from the prejudice he has caused to Plaintiffs' right to a fair trial.*

Had Sawyer left Joey at MPF where he was located at the time Plaintiffs served their Notice, there would be no need now for Plaintiffs to ask, and for Sawyer to now "testify," about Joey's present location. Sawyer's basis for invoking the Fifth Amendment arises solely out of Sawyer's (voluntary) decision to despoil the evidence in the first place. It is therefore difficult to sympathize with Sawyer's concerns about now being "compelled" to reveal where the evidence is hidden. The Court should not allow Sawyer to profit from his spoliation and to continue to keep the despoiled evidence hidden by invoking the Fifth Amendment privilege.

In the event the Court nevertheless finds that the Fifth Amendment applies under these circumstances, the Court should use its inherent authority to protect Plaintiffs from the egregious prejudice that Sawyer has caused by using the Fifth Amendment to shield the despoiled evidence from discovery.

When a civil litigant retreats behind the cloak of the privilege, he or she potentially deprives the adverse party "of a source of information that might conceivably be determinative in a search for the truth." *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994). This is precisely what would happen if Sawyer's privilege claim is sustained. Trial courts are therefore charged with ensuring that a party does not invoke the privilege in a manner that gains an unfair advantage over opposing parties by obstructing discovery. *See id.* at 190–94; *accord DIRECT TV, Inc. v. Crespin*, 224 Fed. App'x. 741, 756 (10th Cir. 2007) ("Sanctions may be appropriate where a litigant has sought to use the Fifth Amendment to abuse or obstruct the discovery

process"); *Sperber v. Elwell*, No. CV 13-768(AET)(LHG), 2014 WL 12621964, at *9 (D.N.J. June 26, 2014) (same).

Generally, any prejudice resulting from invoking the Fifth Amendment in a civil case should be borne by the invoking party. *Graystone*, 25 F.3d at 187. While litigants "unquestionably may assert a Fifth Amendment privilege in this civil case and refuse to reveal information properly the subject of the privilege, . . . they may have to accept certain bad consequences that flow from that action." *Mid-America's Process Service v. Ellison*, 767 F.2d 684, 686 (10th Cir. 1985).

The question then, is, what appropriate "bad consequences" must Sawyer accept as a result of his decision to continue hiding despoiled evidence behind the cloak of the Fifth Amendment? As shown below, since Sawyer's invoking of the privilege would preclude all meaningful discovery about the present conditions of Joey's confinement, only a terminating sanction will suffice.

> 2. *A terminating sanctions is the only adequate remedy if Sawyer's privilege claim is sustained.*

In civil cases, many courts have allowed the factfinder to infer that evidence shielded from discovery due to a party's invocation of the privilege was unfavorable to that party. However, it is clear that such "lesser" sanctions would not suffice under the circumstances of this case.

As the Eighth Circuit has acknowledged,

> Although the privilege applies in both civil and criminal proceedings, the Supreme Court has viewed the assertion of the privilege differently depending on whether a civil or criminal proceeding is involved. In criminal proceedings, the prosecution is prohibited from commenting on the accused's silence, and the trial court is forbidden from instructing the jury that the defendant's invocation of the privilege may be used in the jury's consideration of the guilt or innocence of the defendant. *Griffin v. California,* 380 U.S. 609, 615 (1965). By contrast, the

7

> Supreme Court in *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976), stated "that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."

*Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co*., 819 F.2d 1471, 1480 (8th Cir. 1987) (parallel citations omitted); *see also LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 390 (7th Cir. 1995) ("The rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own"). Each time the Fifth Amendment is invoked, the fact finder may infer from the proponent's failure to answer that the answer would have been unfavorable. *See, e.g., U.S. v. Dinwiddie*, 885 F.Supp. 1286, 1293 (W.D. Mo. 1995) (where witness invoked the privilege to refuse to answer whether she thinks it appropriate to shoot a doctor legally performing abortions, the court "draws the strong inference that [the witness] does believe that such conduct is appropriate"); *Malibu Media, LLC v. Tashiro*, No. 1:13-CV-00205-WTL, 2015 WL 2371597 (S.D. Ind. May 18, 2015), *report and recommendation adopted*, No. 1:13-CV-205-WTL-MJD, 2015 WL 3649359 (S.D. Ind. June 11, 2015) (because witness refused to answer whether he downloaded movies from an unauthorized site, the Court inferred from his silence that the witness "did in fact" download movies from an unauthorized site, in violation of copyright laws).

However, such "lesser" adverse inference relief may not suffice to restore a level playing field in this case. This is so because Plaintiffs have no alternate means to discover Joey's current conditions if Sawyer's privilege claim is sustained. "Although an adverse inference may be drawn against a party who invokes the Fifth Amendment privilege and refuses to testify in a civil proceeding, that silence alone is insufficient to support an adverse decision." *Koester v. American Republic Investments, Inc.*, 11 F.3d 818, 823–24 (8th Cir. 1993).

Because adverse inferences alone may be insufficient to establish Plaintiffs' *prima facie* right for prospective injunctive relief (resting on the allegation that Joey's present conditions violate the ESA), it is essential for Plaintiffs to obtain meaningful discovery about how Joey is presently kept. However, if Sawyer's privilege claim is sustained, this will effectively preclude all such discovery. Therefore, nothing less than a terminating sanction is required to remedy the prejudice caused by Sawyer's invoking of the Fifth Amendment privilege.

For example, in *General Dynamics*, 481 F.2d at 1213–14, the Eighth Circuit concluded that a party "effectively deprive[d]" the opponent "of an opportunity to litigate its civil claim by his conscious disregard of the duty imposed upon a litigant to respond in discovery wherever practical" by refusing to answer "many questions wholly devoid of incriminatory potential." *Id.* The party's obstructionist tactics justified dismissal of his counterclaim and the striking of his affirmative defenses. *Id.*

Similarly, in *Serafino v. Hasbro, Inc.,* 82 F.3d 515 (1st Cir. 1996), the First Circuit held that a district court's terminating sanction was proper where the litigant's assertion of the Fifth Amendment privilege resulted in the opponents being unable to obtain information central to their case—information which could not be obtained from any other source. The First Circuit pointed out that in a civil case, one party's assertion of his constitutional right "should not obliterate another party's right to a fair proceeding." *Id.* at 518. But this is precisely what Sawyer has done.

By first spoliating key evidence and then asserting the Fifth Amendment privilege to prevent Plaintiffs' access to that evidence, Sawyer has deliberately and completely eviscerated Plaintiffs' ability to obtain a fair trial. As previously demonstrated, the requested discovery, which Sawyer refused to allow on Fifth Amendment grounds, is essential to Plaintiffs' claims,

and there exists no effective substitute. If the privilege claim is upheld, the only adequate remedy is to enter a default against Sawyer.

### III. CONCLUSION

For all of these reasons, the Court should grant Plaintiffs' motion by (1) ordering an inspection of Joey at the site where he is presently confined and awarding Plaintiffs' their fees in costs in having to bring this motion; or, in the alternative (2) striking Sawyer's pleadings, deeming the allegations in Plaintiffs' complaint against him admitted, and entering a default judgment in favor of Plaintiffs and against Sawyer.

Dated: June 18, 2018

Respectfully submitted,

/s/ Martina Bernstein
MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

JARED S. GOODMAN (#1011876DC)
(Admitted *pro hac vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90032
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/
Counterclaim Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that on June 18, 2018, the foregoing Memorandum in Support of Counterclaim Plaintiffs' Motion to Compel Inspection, Or, in The Alternative, For Entry of Default Against Counterclaim Defendant Sawyer was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to the following:

    Brian Klar, bklar@lawsaintlouis.com
    Daniel T. Batten, dbatten@lawsaintlouis.com
    *Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

    Geordie Duckler, geordied@animallawpractice.com
    *Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

    Patrick Hanley, p.hanley@att.net
    *Attorney for Plaintiff/Counterclaim Defendant Vito Stramaeglia*

And was served by regular mail on the following:

Missouri Primate Foundation
c/o Connie Braun Casey
12338 State Rd. CC
Festus, MO 63028

                                                /s/ Jared S. Goodman