Geordie Duckler, OSB #873780
9397 SW Locust St.
Tigard, Oregon 97223
Telephone: (503) 546-8052
Facsimile: (503) 241-5553
geordied@animallawpractice.com
Attorney for Plaintiff and Counter-Defendant Andrew Sawyer

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et. al., <br><br>Plaintiffs and Counter-Defendants, <br><br>vs. <br><br>PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et. al., <br><br>Defendant and Counter-Plaintiff. | Case no. 4:16 CV 2163 CDP <br><br><br>DEFENDANT ANDREW SAWYER'S OPPOSITION TO COUNTERCLAIM PLAINTIFF'S MOTION TO COMPEL INSPECTION, OR, IN THE ALTERNATIVE, FOR ENTRY OF DEFAULT |

Plaintiff and Counter-Defendant Andrew Sawyer ("Counter-Defendant Sawyer"), by and through counsel, hereby opposes Defendant and Counter-Plaintiff's Motion To Compel Inspection, Or, In The Alternative, For Entry Of Default as follows:

Once all the unhelpful and unnecessary rhetoric is removed ("Sawyer absconded with key evidence", "Sawyer improperly despoiled Joey", etc.), Counter-Plaintiff PETA's actual position in its motion comes down to this: that the procedural benefits it gets as a civil litigant to discover evidence about another litigant's compliance with 16 U.S.C. Section 1540(g)(1)(A) takes priority over a citizen's constitutional rights under the 5th and 14th Amendments to the U.S. Constitution and under Article 1, Section 19 of the Missouri Constitution against self-incrimination. That position is wrong.

1

As the Court is well aware, there are numerous instances in civil matters where the criminal liability of a party might manifest, and accusations by activist organizations under the Endangered Species Act, 16 U.S.C. Section 1540 et. seq., against other private citizens form a classic example. In those high profile "animal rights" cases, state or federal prosecutors are almost always closely monitoring the developments in the civil proceedings in then contemplating, preparing, investigating, and seeking the imposition of parallel criminal charges under 16 U.S.C. Section 1540(b)(1) – charges which carry the possibility of criminal penalties of up to $50,000 and imprisonment in a federal prison facility for up to a year.

Those intensely serious consequences make the decision about whether to invoke the right against self-incrimination critical to a defendant at every stage in an ESA civil action, and the discovery stage presents an especial vulnerability to the defendant in that information demanded of them in the civil proceeding which they then voluntarily provide is almost guaranteed to later be used against them in some fashion in a separate yet related criminal case. The lengthy five year statute of limitations on such crimes per 18 U.S.C. Section 3282 places the government in the unique position of having plenty of time (and the assistance of the animal rights organization in the active civil proceeding) to take full advantage of all fruits of the civil discovery process provided to then develop, use, and themselves obtain potentially incriminating information to be used later.

Under the Fifth and Fourteenth Amendments, nevertheless, a person may not be compelled to give testimony in *any* proceeding, civil or criminal, formal or informal, before administrative, legislative or judicial bodies, when that person's answers may tend to incriminate him or her in future criminal proceedings. Lefkowitz v. Cunningham, 431 US 801, 804-805 (1977) (privilege available in civil proceedings where the testimony might later subject the

2

witness to criminal prosecution); United States v. Balsys, 524 U.S. 666, 672 (1998); Kastigar v. United States, 406 U.S. 441, 444-445 (1972); McCarthy v. Arndstein, 266 U.S. 34, 40 (1924). Over a century of federal appellate opinions emphatically affirm that the privilege "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." Lefkowitz v. Cunningham, *supra*.

Moreover, the scope of the privilege is in no way limited to only questions that narrowly concern the ultimate issue out of which criminal liability might flow. The Supreme Court has held that the privilege is to be construed liberally "in favor of the right it was intended to secure." Hoffman v. United States, 341 US 479, 486 (1951). The Hoffman decision makes it very clear that the scope of the privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." Id.

Additionally, the privilege against self-incrimination is not limited to testimony or verbal responses to questioning, but also applies to requests for production of documents. In United States v. Hubbell, 530 U.S. 27 (2000), the Court reaffirmed the "act of production" doctrine. An individual can unquestionably invoke the Fifth Amendment privilege when compelled to turn over documents that are incriminating or that may lead to inculpating evidence if the act of producing the documents themselves implies assertions of fact. It is not merely the fact that the compelled documents may contain incriminating evidence that justifies invocation of the privilege. Rather, it is the testimonial nature of production of potentially inculpatory documents that triggers the privilege because by complying with the order to produce, the individual is effectively admitting that the documents exist, were in his or her possession or control, and were authentic. Id. at 37. See also United States v. Doe, 465 US 605, 612-613 (1984) (distinguishing

between the contents of the records, which are not privileged, and the act of producing the records which was a privileged act.)

Coming close on the heels of Counter-Plaintiff PETA's latest aggressive motion, for sanctions for the claimed "spoliation" of evidence, Counter-Plaintiff PETA's discovery demands on Counter-Defendant Sawyer, including its counsel's insistent and strident exhortations that he is to immediately identify the location where the chimp Joey is currently being kept, comprise a serious threat that, in describing locations to inspect, Counter-Defendant Sawyer must provide Counter-Plaintiff PETA – and by undeniable extension, the federal government – a specific and accurate "inventory of a source of potentially incriminating evidence" and the "functional equivalent of the preparation of an answer to either a detailed written interrogatory or a series of oral questions at a discovery deposition", all of which have been deemed protected by the constitutional privilege in United States v. Hubbell, 530 U.S. 27, 41-42.

In essence, PETA coercing Sawyer, through the threat of civil sanction or civil discovery violation, to reveal facts about Sawyer's placement of the chimp Joey and the conditions of that placement (and then of course once he opens the door a crack by divulging that location, to have the barricades fall further in being demanded to then explain the timing, communications, persons involved, motivations, supporting documents, and a thousand other details of the move to and from the location and of the animal's disposition), makes it unquestionably necessary for Counter-Defendant Sawyer to thereby have to make extensive use of "the contents of his own mind' in that identification as to location, and make it certain that doing so would then provide a prosecutor with a "lead to incriminating evidence," and/or "a link in the chain of evidence needed to prosecute." Hubbell, supra, at 42 (quoting Doe v. United States, 487 US 201 (1988) and Hoffman v. United States, 341 US 479 (1951) and Curcio v. United States, 354 U.S. 118,

4

128 (1957)). Such is prohibited and protected from occurring once invocation is made.

In its motion, Counter-Plaintiff PETA intimates, but does not come right out and overtly proclaim, that Counter-Defendant Sawyer has supposedly "waived" his constitutional rights against self-incrimination by the fact that he had previously filed a preemptive civil suit against it to restrain exactly this type of formal inquiry and prosecution. Counter-Plaintiff PETA limits itself to the convenient vagary of implication alone ("Sawyer's privilege claim is belied by his own conduct") likely because it knows full well that an actual and true waiver of the constitutional privilege takes far more than the potential criminal defendant simply petitioning a civil court to enjoin another party's threats of a future suit.

In general, the Fifth Amendment privilege against self-incrimination is waived for the matters to which the witness actually "testifies", and the scope of the waiver is determined by the scope of relevant cross-examination on just that testimony. United States v. Musk, 719 F3d 962 (8th Cir 2013). Counter-Defendant Sawyer here has not "testified" on anything in this case, and the initial pleadings in the case filed with him as one of a group of plaintiffs and counter defendants neither constitutes "testimony" directly, nor can be jurisprudentially translated *into* the functional equivalent of Counter-Defendant Sawyer's testimony under oath on the topic of the chimp Joey's location and conditions of care.

For any citizen to waive their Fifth Amendment right against self-incrimination, that waiver must unquestionably be knowing, intelligent and voluntary, i.e. made with full awareness of both the nature of the right being abandoned and the particular consequences of the decision to abandon it. United States v. Castro-Higuero, 473 F3d 880 (8th Cir 2007). Not a whit of logic allows the filing of an injunction to stop perceived prosecution to somehow equate with that definition of waiver. Waiver of such an important privilege is recognized only in the most

compelling of circumstances (see, In re Blan, 239 BR 385 (Bankr WD Ark 1999), and no such compulsion is available from the mere filing of initial pleadings here at all.

Finally, because the privilege against self-incrimination is a right of constitutional magnitude, courts acknowledge that "the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." United States v. Seifert, 648 F.2d 557, 561-62 (9th Cir. 1980). Counter-Defendant Sawyer certainly recognizes and accepts that this Court has discretion in fashioning an appropriate remedy in response to his invocation of the privilege in this action. SEC v. Colello, 139 F.3d 674, 677 (9th Cir. 1998); Wehling v. Columbia Broadcasting System, 608 F.2d 1084, 1089 (5th Cir. 1979). Counter-Defendant Sawyer points out that in determining a response to invocation of the privilege, however, the interest of one party's right against self-incrimination is simply *weighed* against the other party's right to a fair proceeding, and that the factors for consideration of such a test involve a mutually important balance to be struck.

In such an assessment of competing interests, courts standardly weigh (1) the importance of the information sought; (2) whether there are alternative means to obtain the information; and, (3) whether there are remedies less drastic than outright dismissal of the action. Serafino v. Hasbro, Inc., 83 F.3d 515, 518-19 (1st Cir. 1996). Assuming, *arguendo*, that at least Counter-Plaintiff PETA believes inspection of the site where the chimp Joey is to be "important", then as to the second factor, nothing in this case prevents Counter-Plaintiff PETA from using the same investigatory powers of subpoena and witness interview that every civil litigant has available to it in an active case to discern information held by others – so alternative means certainly exist. It is instructive to be reminded that Counter-Plaintiff PETA is the one that filed the counterclaim a year ago, back on June 23, 2017, and not only presumably had information then already

supporting its suspicions of the chimp Joey's care at that time (assuming that it had a legitimate good faith independent factual basis to even assert the counterclaim as was required of it to have), but has the burden of proof currently to prove its counterclaims without demanding that the only proof come from Counter-Defendant Sawyer alone.

As to the third factor cited out of <u>Serafino v. Hasbro, Inc.</u> above, whether there are remedies less drastic than outright dismissal of the action, if there is to be any unfavorable consequence to Counter-Defendant Sawyer for asserting his valuable and traditional constitutional rights, he at least suggests that the remedy be the least drastic, and standard and fairly unexceptional, one of simply allowing Counter-Plaintiff PETA to make an adverse inference to the jury at trial.

An adverse inference that the location or conditions in or under which Joey is kept are inferred to be in violation of 16 U.S.C. Section 1540 et. seq. accomplishes the balancing goal of protecting Counter Plaintiff PETA from unfair and unnecessary prejudice in its civil claims without eviscerating Counter Defendant Sawyer's constitutional rights to protect himself. Of course, courts have also consistently held "that an adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer." <u>Doe ex rel. Rudy-Glanzer v. Glanzer</u>, 232 F.3d 1258, 1265 (9th Cir. 2000). Counter Plaintiff PETA knows that will not get to prevail in the case simply from being handed such an inference and presenting a case on the inference alone, and thus almost certainly has asked for the unreasonable and unwarranted "terminating sanctions" reward instead as a means of circumventing and evading the obligations (and severe problems) imposed on it of actually having the "independent evidence" of a violation of 16 U.S.C. Section 1540 et. seq required to win.

For all of the reasons stated, Counter-Defendant Sawyer respectfully submits that the pending motion to compel an inspection be denied in the face of a validly asserted constitutional right against self-incrimination to be protected from disclosing information about and connected to such a "compelled" inspection.

DATED: June 25, 2018 GEORDIE DUCKLER, P.C.

By: *s/ Geordie Duckler*
Geordie Duckler, OSB #873780
Attorney for Plaintiff and Counter-Defendant Andrew Sawyer

Geordie Duckler, OSB #873780
9397 SW Locust St.
Tigard, Oregon 97223
Telephone: (503) 546-8052
geordied@animallawpractice.com
Attorney for Plaintiff and Counter-Defendant Andrew Sawyer

Geordie Duckler, OSB #873780
9397 SW Locust St.
Tigard, Oregon 97223
Telephone: (503) 546-8052
Facsimile: (503) 241-5553
geordied@animallawpractice.com
Attorney for Plaintiff/Counter-Defendant
Andrew Sawyer

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et. al., <br><br> Plaintiffs and Counter-Defendants, <br><br> vs. <br><br> PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et. al., <br><br> Defendants and Counter-Plaintiffs. | Case no. 4:16 CV 2163 CDP <br><br> NOTICE OF SERVICE OF DEFENDANT ANDREW SAWYER'S OPPOSITION TO COUNTERCLAIM PLAINTIFF'S MOTION TO COMPEL INSPECTION, OR, IN THE ALTERNATIVE, FOR ENTRY OF DEFAULT |

I hereby certify that DEFENDANT ANDREW SAWYER'S OPPOSITION TO COUNTERCLAIM PLAINTIFF'S MOTION TO COMPEL INSPECTION, OR, IN THE ALTERNATIVE, FOR ENTRY OF DEFAULT was electronically filed with the Clerk of the Court using the CM/ECF system on June 25, 2018, by which notification of such filing was electronically sent and served to the following:

Brian D. Klar, bklar@lawsaintlouis.com
Daniel T. Batten, dbatten@lawsaintlouis.com
    *Attorneys for Plaintiffs/Counter-Defendants*
    *Connie Braun Casey and Missouri Primate Foundation*

1

Martina Bernstein, MartinaB@petaf.org
Marissa Lauren Curran, mcurran@polsineli.com
Jared S. Goodman, JaredG@petaf.org
James P. Martin, jmartin@polsinelli.com
Kelly J. Muensterman, kmuensterman@polsinelli.com
    *Attorneys for Defendants/Counter-Claimants*
    *People for the Ethical Treatment of Animals, Inc.*
    *and Angela Scott*

And was served by U.S. Mail on June 25, 2018, on the following:

Missouri Primate Foundation
c/o Connie Braun Casey
12338 State Rd. CC
Festus, MO 63028

Vito Stramaeglia
ICS 832 Jones Creek Rd
Dickson, TN 37055

Patrick Hanley
214 E. Fourth St
Covington, KY 41011
    *Attorney for Plaintiff and*
    *Counter-Defendant Vito Stramaeglia*
    *and who was assigned on June 13, 2018,*
    *after the above-referenced document was filed.*


DATED: June 25, 2018                        GEORDIE DUCKLER, P.C.

                                                  By: _____
                                                  Geordie Duckler, OSB #873780
                                                  Attorney for Plaintiff/Counter-Defendant
                                                  Andrew Sawyer


Geordie Duckler, OSB #873780
9397 SW Locust St.
Tigard, Oregon 97223
Telephone: (503) 546-8052
geordied@animallawpractice.com
Attorney for Plaintiff /Counter-Defendant
Andrew Sawyer