UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MISSOURI PRIMATE FOUNDATION, et al., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiffs and Counterclaim Defendants, | ) ) |  |
|  | ) |  |
| v. | ) | Case No. 4:16-cv-02163 |
|  | ) |  |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) |  |
|  | ) |  |
| Defendants and Counterclaim Plaintiffs. | ) ) |  |

**REPLY MEMORANDUM IN SUPPORT OF COUNTERCLAIM PLAINTIFFS' MOTION TO COMPEL INSPECTION, OR, IN THE ALTERNATIVE, FOR ENTRY OF DEFAULT AGAINST COUNTERCLAIM DEFENDANT SAWYER**

I. INTRODUCTION

While Sawyer flails away at multiple strawmen of his own creation, he neglects to establish the basic premise on which his opposition to this motion rests: a valid Fifth Amendment privilege. To state the obvious, there is no constitutional right to destroy or conceal evidence. *See Segura v. United States,* 468 U.S. 796, 816 (1984) (allegation that defendant had a constitutional right to destroy evidence "defies both logic and common sense"). Asking Sawyer to reveal where he has secreted Joey does not implicate the Fifth Amendment. Therefore, Plaintiffs' motion to compel Joey's inspection should be granted.

Even if the Court, out of an abundance of caution, allowed Sawyer to assert the privilege under these questionable circumstances, the Court is empowered to fashion a remedy for the prejudice this will cause to Plaintiffs. The policy of resolving lawsuits on their merits must yield where, as here, a party's intentional misconduct has prevented the fair adjudication of the case.

1

By first absconding with key evidence and then continuing to hide its location on Fifth Amendment grounds, Sawyer has prevented Plaintiffs from having their case decided on the merits. Nothing short of striking Sawyer's pleadings and entering a default against him will remedy this prejudice.

## II. ARGUMENT

### A. Sawyer's Brief Aims at Three Strawmen

*1. The relief Plaintiffs seek does not infringe on Sawyer's constitutional rights*

Sawyer sets up his first strawman by claiming it is Plaintiffs' "actual position" that discovery in civil litigation "takes priority . . . over a citizen's constitutional rights[.]" [ECF No. 85, at 1] Not so. Rather, Plaintiffs argue that the Fifth Amendment does not apply at all; and even if it does, certain consequences flow from Sawyer's assertion of the privilege. [ECF No. 84, at 3-9]. Because the relief Plaintiffs seek does not infringe on Sawyer's constitutional rights in any way, his arguments miss the mark.

*2. The relief Plaintiffs seek is not premised on a finding of "waiver"*

Sawyer insists that he did not waive the privilege when he filed a declaratory judgment action asking for an injunction and a declaration that Joey's conditions meet the requirements of the ESA. [ECF No. 85, at 4-5]. This strawman argument ignores the one Plaintiffs actually made—that Sawyer's conduct belies his purported fear of criminal prosecution. Given that Sawyer himself asked the Court to scrutinize how Joey was kept, even before Plaintiffs filed the pending claims,[1] his purported fear of the consequences of such scrutiny is simply not credible. [ECF No. 84, at 5] Tellingly, Sawyer does not refute the correctness of *that* argument.

---

[1] In an apparent attempt to misrepresent the nature of his claim, Sawyer alleges that his suit was only to "restrain" Plaintiffs and he only "petition[ed] a civil court to enjoin" Plaintiffs from filing their ESA claims. In fact, Sawyer also sought declaratory relief and asserted a claim for alleged

2

### 3. *Plaintiffs do not seek testimonial evidence*

Because Sawyer cannot show that the statement "Joey is at such and such an address" would itself disclose incriminating information, he erects a third strawman argument: he should not be compelled to reveal where he has hidden Joey because it is the *supposed* equivalent of having to answer "a detailed written interrogatory or a series of oral questions at a discovery deposition" and will lead to "being demanded to then explain the timing, communications, persons involved, motivations, supporting documents, and a thousand other details of the move to and from the location and of the animal's disposition." [ECF No. 85, at 4]. This false equivalency should not detain the Court long.

An inspection of Joey is not even remotely identical to asking Sawyer to provide testimonial evidence. Whether or not Sawyer must, in the future, respond to certain oral or written questions to explain "a thousand" details regarding Joey's transfer and conditions, as Sawyer speculates, is simply not an issue in *this* motion.

### B. There is No Constitutional Right to Conceal Evidence

The thrust of Sawyer's argument is that revealing the location where Joey is being held would "by undeniable extension" provide to "the federal government . . . a specific and accurate 'inventory of a source of potentially incriminating evidence.'" [ECF No. 85, at4]. If Sawyer is taken at his word, he apparently concealed Joey with the intent of preventing not just Plaintiffs, but federal prosecutors, from locating Joey and from using him (and the conditions of his confinement) as evidence in future proceedings. The ramifications of this conclusion are clear: concealing evidence under these circumstances. Sawyer not only spoliated evidence, he

---

defamation, both of which put the conditions in which Joey is held directly at issue. [ECF No. 1, at 3-5, 7.]

obstructed justice. 18 U.S.C. § 1512(c)(1) makes it a crime to "corruptly . . . conceal[]. . . [an] object, or attempt[] to do so, with the intent to impair the object's . . . availability for use in an official proceeding." *See, e.g., U.S. v. Danhach*, 815 F.3d 228, 232, 237 (5th Cir. 2016) (upholding conviction for aiding and abetting obstruction of justice where accomplice hid video recorder hard drive and attempted to conceal ledgers with evidentiary value from law enforcement); *United States v. Stanley*, 533 F. App'x 325, 329 (4th Cir. 2013) (sustaining conviction where defendant attempted to conceal his laptop "in order to impair its availability for use in an official proceeding").

When Plaintiffs served their Notice of Intent to Sue, Sawyer not only foresaw that the Plaintiffs would file civil litigation but—according to his Fifth Amendment argument—apparently also anticipated that federal prosecutors might institute proceedings in which Joey's condition and location might be material. Sawyer then deliberately concealed the evidence in order to avoid having to comply with a request for its production in such anticipated civil and criminal proceedings. This is the essence of obstructing justice and tampering with the evidence, and it is the height of cynicism for Sawyer to now attempt to reap the "benefits" of his unlawful conduct by invoking the protections of the United States Constitution.

To state the obvious, there is no constitutional right to destroy or conceal existing evidence. *See Segura v. United States,* 468 U.S. 796, 816 (1984) (allegation that defendant had a constitutional right to destroy evidence "defies both logic and common sense"); *Marcus Borges v. Connie Gipson, Warden, California State Prison Corcoran*, No. CV 12-8157-CAS E, 2013 WL 6240423, at *13 (C.D. Cal. Dec. 2, 2013), *aff'd sub nom. Borges v. Davey*, 656 F. App'x 303 (9th Cir. 2016) ("Petitioner did not have any constitutional right to destroy previously created evidence"). The Constitution does not "compel the unedifying spectacle of law enforcement

4

officers naively standing by while the evidence of a criminal offense is being flushed down a toilet." *Defino Martone v. United States,* 396 F.2d 229, 232 (1st Cir. 1968).

> Though a person ordinarily may refuse to prepare or produce any evidence that is self-incriminating, *see, e.g., Andresen v. Maryland,* 427 U.S. 463, 475, 96 S.Ct. 2737, 2745–46, 49 L.Ed.2d 627 (1976), that privilege in no way suggests that the person may take affirmative action to destroy evidence—even evidence that he himself has created—once he is aware that authorities are searching for it (or something like it). That act of affirmative misconduct, undertaken with the intent of hindering an extant investigation, is the paradigmatic example of an obstruction of justice.

*U.S. v. Feldman*, 83 F.3d 9, 14 (1st Cir. 1996). "There is simply no constitutional right to destroy evidence." *Id.*

In short, Sawyer's argument that he has the unfettered right to keep spoliated evidence concealed does not withstand scrutiny. To hold otherwise would turn ESA notice letters into an invitation to thwart the judicial process. Any would-be defendant who receives notice would have 60 days unfettered opportunities "to flush the evidence down the toilet," or as Sawyer did here, secrete it away. Wisely, the law does not permit such an absurd result.

### C. Sawyer Has Not Properly Invoked the Fifth Amendment Privilege

*1. Sawyer failed to personally assert the privilege*

Even assuming that Sawyer were allowed to affirmatively conceal Joey with the intent of hindering future legal proceedings and then assert the Fifth Amendment, he neglected to do one critical thing in response to this motion: actually invoke the Fifth Amendment privilege. It is beyond cavil that "the Fifth Amendment is a personal privilege." *Couch v. United States,* 409 U.S. 322, 328 (1973). Because it is a personal privilege, it "does not permit an attorney to plead that his client might be incriminated by his testimony." *In re Grand Jury Proceedings-Gordon*, 722 F.2d 303, 308 (6th Cir. 1983); *see also United States v. Schmidt,* 816 F.2d 1477, 1481 n. 3 (10th Cir. 1987).

5

Relying solely on counsel's arguments, Sawyer did not submit a declaration invoking his personal privilege against self-incrimination under the Fifth Amendment. Indeed, even his attorney seems vague about what, if anything, his client does or would assert. At most, the brief establishes in the abstract that some grounds may exist in theory under unspecified circumstances, in response to some unspecified discovery requested in hypothetical ESA cases. But nothing addresses the actual circumstances of this particular case, and the particular request at issue, let alone reflect a valid invocation by Sawyer himself, personally asserting the privilege.

    2. *Sawyer provides no evidence of a substantial and real risk of prosecution*

As a related matter, Sawyer fails to meet the threshold requirement to show that the risk of prosecution that *he personally* allegedly fears is substantial and real, and not merely fanciful. *Zicarelli v. New Jersey State Comm'n of Investigation*, 406 U.S. 472, 478 (1972); *Marchetti v. United States*, 390 U.S. 39, 53 (1968). Counsel cavalierly assumes that the "Court is aware" that "there are numerous instances in civil matters where the criminal liability of a party might manifest, and accusations by activist organizations under the [ESA], against other private citizens form a classic example" of cases that "state or federal prosecutors are almost always closely monitoring"—but clearly, neither Sawyer nor his counsel know of such alleged cases, because they identified none. [ECF No. 85, at 2]. The fact that Sawyer's alleged fear of prosecution *rests solely on what the Court may (or may not)* know about unidentified "matters" exposes Sawyer's Fifth Amendment claim as a sham. Sawyer has no real reason to fear prosecution, as required to sustain the Fifth Amendment privilege. He merely uses it as a pretext to obstruct Plaintiffs' right to full and fair discovery.

    **D. Sawyer Agrees That Plaintiffs are Entitled to an Appropriate Remedy**

Sawyer agrees with Plaintiffs on one key issue: if Sawyer establishes a valid Fifth Amendment privilege, "this Court has discretion in fashioning an appropriate remedy in response to his invocation of the privilege in this action." [ECF No. 85, at 6]. Sawyer and Plaintiffs also agree that in determining an appropriate remedy, the Court should weigh these three factors: (1) the importance of the information sought; (2) whether there are alternative means to obtain the information; and (3) whether there are remedies less drastic than a terminating sanction. [*Id.* (citing *Serafino v. Hasbro, Inc*., 83 F.3d 515, 518-19 (1st Cir. 1996))]." These factors unquestionably support the relief Plaintiffs request in this motion.

As to the first factor, Sawyer does not, and cannot, dispute, that the information is important, and this factor needs no additional discussion here.

As to the second factor, Sawyer claims that alternative means exist to obtain the information because Plaintiffs can subpoena witnesses "to discern information held by others." [ECF No. 85, at 6]. The argument is disingenuous. Since Sawyer has effectively despoiled Joey, Plaintiffs know of no witnesses that could describe the conditions of Joey or his undisclosed hiding place. Tellingly, beyond his conclusory assertion that information may be obtained from other sources, Sawyer fails to identify any witness or document from whom that information supposedly could be obtained.

Furthermore, limiting Plaintiffs' evidence to the uncorroborated and self-serving descriptions of any potential witnesses in cahoots with Sawyer about what they allegedly saw when *they* were allowed to visit Joey in his hiding place is unfairly prejudicial to Plaintiffs. This is particularly true in this case, where the defendants have abused the judicial process by despoiling and corrupting the integrity of the evidence. For example, documents produced by

Sawyer's co-defendant Connie Casey—that purport to describe the veterinary care and enrichment that Joey and the other chimpanzees received in the past—turned out to be forgeries.[2]

Finally, it is abundantly clear that short of entering a default against Sawyer, there simply are no remedies that will cure the prejudice caused by Sawyer's refusal to disclose where he hid the evidence. The policy of resolving lawsuits on their merits must yield where, as here, a party has intentionally prevented the fair adjudication of the case. By deliberately concealing Joey and then hiding behind the Fifth Amendment privilege, Sawyer has obliterated Plaintiffs' ability to have their case decided on the merits. Accordingly, an entry of a default is the only means of effectively remedying the prejudice caused by Sawyer's conduct. *See, e.g., Carlucci v. Piper Aircraft Corp.*, 102 F.R.D. 472, 486 (S.D. Fla. 1984) ("By deliberately destroying documents, the defendant has eliminated the plaintiffs' right to have their cases decided on the merits. Accordingly, the entry of a default is the only means of effectively sanctioning the defendant and remedying the wrong."); *FCA Construction Company, LLC v. Durchslag*, No. CV 09-3700 (ADM/AJB), 2012 WL 13018606 (D. Minn. Sept. 11, 2012), *report and recommendation*

---

[2] Exhibit A, Written Program of Veterinary Care (purportedly signed by Dr. Doug Pernikoff, produced by Casey); Exhibit B, Environmental Enrichment Program (purportedly signed by Dr. Doug Pernikoff, produced by Casey); Exhibit C, June 27, 2018 Deposition of Dr. Doug Pernikoff, at 28-29, 31-32, 234 (stating that he never signed, and is not aware of the existence of, any Written Program of Veterinary Care; "that's not my signature"); *id.* at 233-34 (Dr. Pernikoff has no knowledge why somebody would forge his signature and he finds it concerning that his signature has been forged on what appears to be an official USDA document); *id.* at 237-238 (confirming that he "did not complete or sign any enclosed Program of Veterinary Care"); *id.* at 168-170 (providing a sample of his actual signature underneath the forged signature on the Written Program of Veterinary Care); *id.* at 164-65, 317 (testifying that the signature on the Environmental Enrichment Program "does not look" like his, and he has "never seen" the document); *id.* at 239 (agreeing that documents produced by Casey could "create a misimpression for the agency to think that" he was the attending veterinarian, while in truth, he was not); *id.* at 239 (agreeing that providing certain documents to the USDA would mislead the USDA into believing erroneously that he had signed off on a Program of Veterinary Care when in fact he hadn't); *id.* p. 248 (agreeing that the only written program of veterinary care he saw "was signed by somebody purporting to put [his] signature on the document").

*adopted,* No. CV 09-3700 (ADM/AJB), 2012 WL 13018607 (D. Minn. Oct. 10, 2012) (defendant's failure to provide meaningful substantive discovery has impaired plaintiff's ability to determine the factual merits of this claim. "Without meaningful discovery, the case cannot proceed. In this situation, striking the defendant's answer is warranted").

Dated:   July 2, 2018                                Respectfully submitted,

/s/ Martina Bernstein
MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

JARED S. GOODMAN (#1011876DC)
(Admitted *pro hac vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90032
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/
Counterclaim Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that on July 2, 2018, the foregoing Reply Memorandum in Support of Counterclaim Plaintiffs' Motion to Compel Inspection, Or, in The Alternative, For Entry of Default Against Counterclaim Defendant Sawyer was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to the following:

    Brian Klar, bklar@lawsaintlouis.com
    Daniel T. Batten, dbatten@lawsaintlouis.com
    *Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

    Geordie Duckler, geordied@animallawpractice.com
    *Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

    Patrick Hanley, p.hanley@att.net
    *Attorney for Plaintiff/Counterclaim Defendant Vito Stramaeglia*

    And was served by regular mail on the following:

    Missouri Primate Foundation
    c/o Connie Braun Casey
    12338 State Rd. CC
    Festus, MO 63028


                                              /s/ Martina Bernstein