UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) |
| v. | ) Case No. 4:16-cv-02163 ) |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) ) |
| Defendants and Counterclaim Plaintiffs. | ) ) |

**MEMORANDUM IN SUPPORT OF COUNTERCLAIM PLAINTIFFS'
SECOND MOTION FOR AN ORDER COMPELLING DISCOVERY AGAINST
<u>COUNTERCLAIM DEFENDANT CONNIE BRAUN CASEY</u>**

Pursuant to Rules 26, 33, 36, and 37 of the Federal Rules of Civil Procedure, Counterclaim Plaintiffs, People for the Ethical Treatment of Animals, Inc. and Angela Scott a/k/a Angela G. Cagnasso (together, "Plaintiffs") seek an order compelling Counterclaim Defendant Connie Braun Casey ("Casey") to provide certain discovery, as set forth specifically herein.

**I.     CASEY'S INADEQUATE RESPONSES TO PLAINTIFFS' FIRST REQUESTS FOR ADMISSION**

**A.  Factual Background**

On June 20, 2018, Casey served Objections and Responses to Counterclaim Plaintiffs' First Requests for Admission to Counterclaim Defendant Connie Braun Casey ("First RFA Responses," Exhibit A to Declaration of Martina Bernstein ("Bernstein Decl.")) Among other things, Casey was asked to admit that the failures to meet certain needs of chimpanzees cause "'harass[ment]' and/or 'harm' as those terms are used in 16 U.S.C. § 1532(19) and defined by 50 C.F.R. § 17.3." Casey objected to all such requests on the ground that the request "seeks a legal

conclusion," and, to the extent that a response is required, Casey stated that she "is without sufficient knowledge or information to admit or deny this Request, and therefore denies same." (First RFA Responses, Nos. 1-14.)

Plaintiffs also sought admissions that certain behaviors are typical of chimpanzees, to which Casey objected in the same boilerplate fashion as calling for a "legal conclusion" or, claiming in the alternative that she "is without sufficient knowledge or information to admit or deny this Request, and therefore denies same." (*Id.*, Nos. 15-21.)

Plaintiffs also sought admissions that when chimpanzees do not have the opportunity to engage in certain activities, it "significantly disrupts or impairs their normal behavioral patterns." Casey responded with the same boilerplate objection that the requests call for a "legal conclusion" or, claiming in the alternative that she "is without sufficient knowledge or information to admit or deny this Request, and therefore denies same." (*Id.,* Nos. 22-28.)

Plaintiffs also sought an admission that "[t]he inability of captive chimpanzees to seek privacy from humans or other animals can lead to stress, anxiety, and risk of injury," to which Casey responded with the same boilerplate objection that the requests call for a "legal conclusion" or, claiming in the alternative that she "is without sufficient knowledge or information to admit or deny this Request, and therefore denies same." (*Id.*, No. 37.)

On July 6, at noon, Plaintiffs' counsel Martina Bernstein and Jared Goodman conferred by telephone with Casey's counsel Dan Batten, in an attempt to gain compliance with Casey's obligations under Rule 36 and to avoid the need for Court intervention. (Bernstein Decl. ¶ 3.) In the conference, Plaintiffs' counsel pointed out the specific deficiencies set forth in sections I.B, C, and D below and the requirements of Rule 36, but during counsels' telephone conference to

address these issues, Casey's counsel still declined to agree to correct these deficiencies. *Id.* For the reasons discussed below, Casey's objections are without merit, and her responses improper.

### B. Casey's Boilerplate Denials Based On Insufficient Information Are Improper

Casey denied Request Nos. 1-28 and 37 on the ground that she "is without sufficient knowledge or information." However, the law is clear: "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny **only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny**." Fed. R. Civ. P. 36 (emphasis added); *see also Certified Enters., Inc. v. United States*, No. 4:17-CV-202 SNLJ, 2017 WL 4778558, at *2 (E.D. Mo. Oct. 23, 2017). Casey did not state that she made a reasonable inquiry or that she cannot readily obtain information sufficient to admit or deny these requests. Therefore, her denials are insufficient as a matter of law.

Casey's claimed lack of knowledge is concerning for an additional reason: licensees such as Casey "who maintain wild or exotic animals" are required by the bare minimum standards of the Animal Welfare Act regulations "to demonstrate adequate . . . knowledge of the species they maintain." 9 C.F.R. § 2.131(a). If Casey is indeed ignorant about the requested matters and is unable to "readily obtain" information to admit or deny these requests, it would provide compelling grounds for this Court to conclude that Casey is not qualified to possess the chimpanzees at issue in this case and cannot adequately care for them consistent with the Endangered Species Act. For this additional reason, Casey should be required to respond in accordance with the requirements of Rule 36. *See Certified Enters.,* at *2 (compelling party who failed to state "they lack knowledge after making reasonable inquiry" to respond in accordance with the requirements of Rule 36, and noting evidence indicating the party's apparent

3

"familiarity" with matters as to which they claimed to have insufficient information in responding to requests for admission).

### C. Casey's Boilerplate Objections to Requests Nos. 15-28 and 37 Are Baseless and Should Be Overruled

It is beyond cavil that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts." Fed. R. Civ. P. 36(a)(1)(a). Plaintiffs' requests concerning whether certain behaviors are typical of chimpanzees (Nos. 15-21), whether certain conditions disrupt chimpanzees' normal behavior patterns (Nos. 22-28), and whether certain conditions can lead to stress (No. 37), plainly fall within the scope of "facts" contemplated by Rule 36(a)(1)(A). Casey's boilerplate objections that these requests call for a "legal conclusion" do not withstand even the mildest scrutiny. Therefore, the objections should be overruled and Casey should be compelled to provide substantive responses to these requests.

### D. Casey's Boilerplate Objections to Requests Nos. 1-14 Are Baseless and Should Be Overruled

It is equally clear that a party may serve requests relating to "the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(a). Plaintiffs' requests Nos. 1-14 therefore properly ask Casey to apply the law to the facts, by asking her to admit that certain factual conditions cause "'harass[ment]' and/or 'harm' as those terms are used in" certain statutes and regulations. The decision in *Moore v. City of Ferguson, Missouri,* No. 4:14-CV-1443 SNLJ, 2016 WL 3141244, at *2 (E.D. Mo. June 6, 2016), is directly on point here. The defendants in that case objected to a request asking them to admit that a certain report "contains the findings of a legally authorized investigation for purposes of Fed. R. Evid. 803(8)," on the ground that it called for a legal conclusion. The court disagreed, noting that findings in reports

were "facts" and the request properly asked defendants to apply the law to those facts by asking whether the investigation that led to those findings was "legally authorized" for purposes of Fed. R. Evid. 803(8). *Id.*

In *Morley v. Square, Inc.*, No. 4:10CV2243 SNLJ, 2016 WL 123118, at *3 (E.D. Mo. Jan. 11, 2016), the court also held that requests to admit that certain persons "owed fiduciary duties to one another" were permissible because they "do not seek admission of legal conclusions unrelated to the facts of this case. They properly seek to clarify the defendants' legal theories as applied to this case." Therefore, the Court compelled defendants to respond to these requests.

Likewise, here, requests Nos. 1-14 properly seek to clarify Casey's legal theories as applied to the facts at issue in this case. Casey's objections should be overruled and she should be compelled to provide a substantive answer to each of those requests.

## II. CASEY'S INADEQUATE RESPONSES TO INTERROATORIES

### A. Casey Failed to Abide by Her Agreement to Supplement Responses to Interrogatory Nos. 4, 7, 10, 11, 12, 13, 14, 16, 17, 19, 20, 21

On June 20, 2018, Casey served Objections and Responses to Counterclaim Plaintiffs' First Interrogatories to Counterclaim Defendant Connie Braun Casey ("Interrogatory Responses," Exhibit B to Bernstein Decl.) On July 6, at noon, Plaintiffs' counsel Martina Bernstein and Jared Goodman conferred by telephone with Casey's counsel Dan Batten, and an agreement was reached with Mr. Batten that Casey would provide supplemental responses in order to avoid the need for Court intervention, as memorialized by Ms. Bernstein in a follow-up email, as follows:

> Interrogatory No. 4:
> Casey agreed that she will withdraw her objection and respond in full, if Plaintiffs clarify what they mean by the term "social grouping." We offer the following clarification: the

5

term "social grouping" as used in Interrogatory No. 4 shall have the ordinary meaning of the term as it is used in 9 C.F.R. §§ 3.83 and 3.82 and in USDA, Final Report on Environmental Enhancement to Promote the Psychological Well-Being of Nonhuman Primates § III (1999) ["USDA Report"]. Casey has averred in paragraph 43 of her Answer that the USDA Report "speaks for itself," so presumably she needs no further definition of the meaning of that term as used in the USDA Report.

Let us know whether this sufficiently addresses the objection or whether additional clarification and definition is necessary for your client to be able to understand the meaning of the term "social grouping" in the context of this interrogatory.

You will let us know this coming Tuesday by when Casey will provide this supplemental response.

(Exhibit C to Bernstein Decl.)

<u>Interrogatory Nos. 7, 10, 12, 13, 16, 19, 20:</u>

Casey agreed to supplement these interrogatories, and you will let us know this coming Tuesday by when we will receive these supplemental responses.

(*Id.*)

<u>Interrogatory No. 11:</u>

Casey agreed to withdraw her objections, and respond to this interrogatory—rephrased as follows:

> **Interrogatory No. 11:** During the Relevant Time Period, was the size of each of the Chimpanzees' enclosures sufficient to meet their needs? If so, state all material facts upon which you base that conclusion with respect to each of the Chimpanzees.

You will let us know this coming Tuesday by when Casey will provide this supplemental response.

(*Id.*)

<u>Interrogatory No. 14:</u>

Casey agreed to withdraw her objections, and respond to this interrogatory—rephrased as follows:

> **Interrogatory** No. **14:** During the Relevant Time Period, was the design of the enclosures in which the Chimpanzees were kept sufficient to meet their needs? If so, state all material facts upon which you base that conclusion with respect to each of the Chimpanzees.

You will let us know this coming Tuesday by when Casey will provide this supplemental response.

(*Id.*)

> Interrogatory No. 17:

Casey agreed to withdraw her objections, and respond to this interrogatory—rephrased as follows:

> Interrogatory No. 17: During the Relevant Time Period, was the Chimpanzees' enrichment program was sufficient to meet their needs? If so, state all material facts upon which you base that conclusion with respect to each of the Chimpanzees.

You will let us know this coming Tuesday by when Casey will provide this supplemental response.

(*Id.*)

> Interrogatory No. 21:

Casey agreed to withdraw her objections, and to respond to this interrogatory—rephrased as follows:

> Interrogatory No. 21 Provide a list of the daily husbandry tasks performed by each MPF staff and the approximate amount of time necessary to complete each task, to care for, feed, and maintain the housing of the Chimpanzees, and any other task that is performed on a daily basis in maintaining the Chimpanzees.

You will let us know this coming Tuesday by when Casey will provide this supplemental response.

(*Id.*)

Casey never served the supplemental responses that her counsel agreed to. Instead, she subsequently instructed her counsel "to conduct no other work on this case besides potentially settling this matter, including any discovery." (Exhibit D to Bernstein Decl.) This attempt to thwart discovery that her counsel agreed to provide is improper. Casey cannot unilaterally suspend her (and her counsel's) obligation to participate in discovery and fail to abide by agreements to resolve discovery disputes, reached among counsel after conferring in good faith to avoid the need for court intervention.

As the Eighth Circuit has noted, a party may not "fashion his own rule of defense to discovery," and the district court is well within its discretion to impose sanctions against parties

7

for their "intentional disregard" of those rules. *Lindstedt v. City of Granby*, 238 F.3d 933, 937 (8th Cir. 2000). Casey's unilateral decree that her counsel of record would no longer perform any work relating to discovery is improper, and the Court should order Casey and her counsel to abide by the agreement they made to supplement Responses to Interrogatory Nos. 4, 7, 10, 11, 12, 13, 14, 16, 17, 19, 20, and 21.

In addition, the Court should issue a warning that Casey will suffer a default judgment if she continues to instruct her counsel of record not to perform work relating to discovery. *See, e.g., Inman v. Am. Home Furniture Placement, Inc.*, 120 F.3d 117, 119 (8th Cir. 1997) (holding that district court was within its discretion to enter default against defendant whose "counsel had done nothing regarding this litigation since filing a motion to dismiss, . . . neglected discovery requests, and ignored repeated inquiries from [plaintiff's] counsel").

### B. Casey's Objections to Interrogatory No. 1 are Without Merit

Interrogatory No. 1 asked Casey to:

> Identify all current and former MPF employees and volunteers during the Relevant Time Period by name, job title, beginning and ending dates of employment, and general job duties and responsibilities. For former employees or volunteers, please also provide their last known address and contact information.

Casey responded:

> Objection. This Interrogatory is overly broad, unduly burdensome, merely intended to embarrass and harass Defendant Connie Braun Casey ("Ms. Casey") and the persons for whom the identities are requested, not relevant to any party's claim or defense, and is not proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' resources, and the importance of the discovery in resolving the issues.

These objections should be overruled. The identities of persons who care(d) for the chimpanzees at issue in this case are clearly relevant and nothing suggests that providing this information would impose significant burdens on Casey.

8

### C. Casey's Objections to Interrogatory No. 8 are Without Merit

Interrogatory No. 8 asked:

> If you contend that during the Relevant Time Period, the Chimpanzees' social groupings and/or social housing was sufficient to meet their needs, state all material facts upon which you base that contention with respect to each of the Chimpanzees whose social needs you contend were met.

Casey responded:

> Objection, this Interrogatory is a contention interrogatory and requires Ms.Casey to articulate theories of her case that have not been fully developed. Ms. Casey will supplement her response once discovery is completed.

Casey incorrectly asserts that this interrogatory asks her to articulate "theories" of her case. Rather, it asks about Casey's contention about the existence of facts regarding the chimpanzees' social needs. Whether the chimpanzees' social needs are met is hardly a theory that Casey needs to "develop" during the course of discovery. To the contrary: Animal Welfare Act regulations require Casey to meet those needs on a daily basis—and it is hardly a matter of mere theory to the chimpanzees in her care whether Casey, in fact, complies with those requirements. *See, e.g.,* 9 C.F.R. § 3.81 ("The environment enhancement plan must include specific provisions to address the social needs of nonhuman primates of species known to exist in social groups in nature"). To the extent that the failure to provide for a chimpanzees' social needs results in harassment and/or harm, the prohibitions of the Endangered Species Act require it as well.

Therefore, Casey's objection that she needs to "fully develop[]" the "theories of her case" before responding is as spurious as it is troubling. The objection should be overruled.

### III. CASEY'S INADEQUATE RESPONSES TO PLAINTIFFS' SECOND REQUESTS FOR ADMISSION

On June 20, 2018, Casey served Objections and Responses to Counterclaim Plaintiffs' Second Request for Admission to Counterclaim Defendant Connie Braun Casey ("Second RFA

Responses," Exhibit E to Bernstein Decl.) All requests asked Casey to admit the genuineness of certain described documents, as specifically contemplated by Rule 36(a)(1)(B) of the Federal Rules of Civil Procedure. Casey responded to each request that she "has no personal knowledge as to the identified document, when, where, how or by whom the document was created, and lacks the knowledge or information sufficient to admit its genuineness, and therefore denies same." (Second RFA Responses, Nos. 1-92.)

On July 6, at noon, Plaintiffs' counsel Martina Bernstein and Jared Goodman conferred by telephone with Casey's counsel Dan Batten, in an attempt to gain compliance with Casey's obligations under Rule 36 and to avoid the need for Court intervention. (Bernstein Decl. ¶ 8.) In the conference, Plaintiffs' counsel pointed out that "personal knowledge" about "when, where, how, or by whom the document was created" was simply not an appropriate standard for denying its authenticity, and that Casey's claim of "insufficient information" was moreover inappropriate because "[t]he answering party may assert lack of knowledge or information as a reason for failing to admit or deny **only** if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36 (emphasis added). Moreover, Plaintiffs' counsel questioned whether Casey made the required "reasonable inquiry" before denying the requests—in light of the fact that the documents at issue are (or relate to) inspection reports and photographs of Casey's own facility, prepared by USDA inspectors. (Bernstein Decl. ¶ 9.) Plaintiffs' counsel pointed out that many of these reports were signed by Casey, and most likely, Casey received copies of those reports as well, in accordance with USDA policies. (*Id*.) After these facts were pointed out to Casey's counsel, Mr. Batten agreed during the July 6 telephone conference that he would confirm by the following Tuesday when and whether Casey would supplement her responses. (Exhibit F to

Bernstein Decl.) Mr. Batten subsequently **did** confirm that "[o]ur client will serve her supplemental discovery responses as discussed last week during the meet and confer by Tuesday, July 17, 2018." (Exhibit G to Bernstein Decl.)

Casey never served the supplemental responses that her counsel agreed to, and instead instructed her counsel "to conduct no other work on this case besides potentially settling this matter, including any discovery." (Exhibit D to Bernstein Decl.) For the reasons previously demonstrated, Casey cannot unilaterally suspend her (and her counsel's) obligation to abide by agreements made to resolve discovery disputes. *See supra* II.A. The Court should therefore require Casey supplement her Second RFA Responses as agreed upon by her counsel. In addition, the Court should issue a warning that Casey will suffer a default judgment if she continues to instruct her counsel of record not to perform work relating to discovery. *See, e.g., Inman*, 120 F.3d at 119 (holding that district court was within its discretion to enter default against defendant whose "counsel had done nothing regarding this litigation since filing a motion to dismiss, . . . neglected discovery requests, and ignored repeated inquiries from [plaintiff's] counsel").

IV. **THE COURT SHOULD AWARD REASONABLE EXPENSES INCURRED BY PLAINTIFFS IN MAKING THIS MOTION**

Upon granting a motion to compel, Rule 37(a)(5)(A) authorizes the Court to award "reasonable expenses incurred in making the motion, including attorney's fees." *Id.* at 37(a)(5)(A); *see also Koenig v. Bordeau Const. LLC*, No. 4:13CV477 SNLJ, 2015 WL 1636988, at *1 (E.D. Mo. April 10, 2015). Plaintiffs are entitled to an award of reasonable attorney's fees because Casey's conduct necessitated this motion following Plaintiffs' good faith attempts to resolve the disputes consistent with this Court's rules. *See* Fed. R. Civ. P. 37(a)(5)(A); *see also Liley v. Mitek Corp.*, No. 1:13CV95 SNLJ, 2015 WL 1383958, at *1 (E.D. Mo. March 23, 2015)

(awarding attorneys' fees to the party compelling discovery where "counsel made good faith attempts to resolve the dispute before filing the motion, the nondisclosure and failure to respond was not substantially justified, and there are no other circumstances that make an award of fees unjust").

**V. CONCLUSION**

Accordingly, Plaintiffs respectfully request that the Court enter an Order, in the form submitted herewith, granting this motion to compel in all respects.

Dated: July 30, 2018　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　/s/ Martina Bernstein
　　　　　　　　　　　　　　　　　　　　　MARTINA BERNSTEIN (#230505CA)
　　　　　　　　　　　　　　　　　　　　　PETA Foundation
　　　　　　　　　　　　　　　　　　　　　1536 16th St. NW
　　　　　　　　　　　　　　　　　　　　　Washington, DC 20036
　　　　　　　　　　　　　　　　　　　　　202.483.7382
　　　　　　　　　　　　　　　　　　　　　Fax No: 202.540.2208
　　　　　　　　　　　　　　　　　　　　　martinab@petaf.org

　　　　　　　　　　　　　　　　　　　　　JARED S. GOODMAN (#1011876DC)
　　　　　　　　　　　　　　　　　　　　　(Admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　PETA Foundation
　　　　　　　　　　　　　　　　　　　　　2154 W. Sunset Blvd.
　　　　　　　　　　　　　　　　　　　　　Los Angeles, CA 90032
　　　　　　　　　　　　　　　　　　　　　323.210.2266
　　　　　　　　　　　　　　　　　　　　　Fax No: 213.484.1648
　　　　　　　　　　　　　　　　　　　　　jaredg@petaf.org

　　　　　　　　　　　　　　　　　　　　　POLSINELLI PC
　　　　　　　　　　　　　　　　　　　　　JAMES P. MARTIN (#50170)
　　　　　　　　　　　　　　　　　　　　　KELLY J. MUENSTERMAN (#66968)
　　　　　　　　　　　　　　　　　　　　　100 S. Fourth Street, Suite 1000
　　　　　　　　　　　　　　　　　　　　　St. Louis, MO 63102
　　　　　　　　　　　　　　　　　　　　　314.889.8000
　　　　　　　　　　　　　　　　　　　　　Fax No: 314.231.1776
　　　　　　　　　　　　　　　　　　　　　jmartin@polsinelli.com

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants/*
　　　　　　　　　　　　　　　　　　　　　*Counterclaim Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that on July 30, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to the following:

Brian Klar, bklar@lawsaintlouis.com
Daniel T. Batten, dbatten@lawsaintlouis.com
*Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

Geordie Duckler, geordied@animallawpractice.com
*Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

Patrick Hanley, p.hanley@att.net
*Attorney for Plaintiff/Counterclaim Defendant Vito Stramaeglia*

And was served by regular mail on the following:

Missouri Primate Foundation
c/o Connie Braun Casey
12338 State Rd. CC
Festus, MO 63028

/s/ Jared S. Goodman