UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, CONNIE BRAUN CASEY, individually, ANDREW SAWYER, individually, and JANE DOE 2, <br><br> Plaintiffs, <br><br> v. <br><br> PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC. and ANGELA SCOTT a/k/a ANGELA G. CAGNASSO, individually, <br><br> Defendants. | Case No. 4:16-cv-02163 |

## DECLARATION OF JARED GOODMAN

Pursuant to 28 U.S.C. § 1746, I, Jared Goodman, declare the following to be true and correct to the best of my knowledge and belief:

1. I am counsel for Counterclaim Plaintiffs People for the Ethical Treatment of Animals, Inc. and Angela Scott (together, "Plaintiffs"). I make this declaration based upon my personal knowledge and upon information available to me as Plaintiffs' counsel.

2. On June 6, 2018, I requested from counsel for Counterclaim Defendant Connie Braun Casey ("Casey") available dates for an inspection of the location at which Casey holds chimpanzees at issue in this litigation.

3. After extensive consultation with Casey's counsel about a mutually agreeable date, on June 15, 2018, Casey's counsel confirmed availability for the inspection on July 25, 2018, and Casey's "require[ment of] a protective order limiting the disclosure of any information arising from the inspection."

4. On June 19, 2018, I served on all parties Plaintiffs' Request for Entry Upon Land for Purposes of Inspection of Casey's premises. A true and correct copy is attached hereto as **Exhibit A**.

5. On July 6 and 11, 2018, Plaintiffs held telephone conferences with Casey's counsel regarding the attendees to and the scope of the inspection, and Casey's demand for a protective order prior to the inspection, and the parties had additional correspondence regarding these issues. A true and correct copy of this correspondence is attached hereto as **Exhibit B**.

6. Plaintiffs agreed to Casey's condition of a confidentiality stipulation for the inspection, with the understanding that this would allow the inspection to proceed as scheduled without the need for Court intervention. True and correct copies of the Stipulated Protective Order and related correspondence are attached hereto as **Exhibit C**.

7. On July 17, 2018, one week prior to the inspection, travel and accommodations were booked for myself and Plaintiffs' experts and consultant. In an effort to conserve my client's resources, and Casey's should costs ultimately be awarded to Plaintiffs, these arrangements were not booked until there was no foreseeable reason as to why the inspection would not proceed. Also for that reason, certain bookings were non-refundable.

8. On the afternoon of July 20, 2018, Casey's counsel Brian Klar emailed Plaintiffs' counsel to inform counsel, for the first time, that he and Mr. Batten had "been instructed by our client to conduct no other work on this case besides potentially settling this matter, including any discovery," and that he was "canceling the upcoming inspection." A true and correct copy of this correspondence is attached hereto as **Exhibit D**.

9. Plaintiffs' counsel Martina Bernstein immediately responded to Mr. Klar that the "cancellation" was not accepted. True and correct copies of this and subsequent correspondence are attached hereto as **Exhibit E**.

10. On Monday, July 23, I further confirmed that the inspection would proceed as validly noticed and served pursuant to Rule 34. I also advised that Mr. Klar's premise of an impending settlement was not well taken, and that Casey participation in discovery was critical to Plaintiffs' ability to engage in settlement discussions. Casey's counsel did not respond to this email. A true and correct copy of this correspondence is attached hereto as **Exhibit F**.

11. Having received no response to my email, request to meet and confer regarding the inspection, or motion for a protective order to preclude the inspection from proceeding as scheduled, and because Plaintiffs relied on Casey's representations in booking certain non-refundable travel, on Tuesday, July 24, I traveled from California to Missouri in order to attend the inspection, and Plaintiffs' consultant and experts traveled from Canada, Oregon, Illinois, and Washington, D.C.

12. At nearly 4:30 p.m. local time the day before the scheduled inspection, while the inspection attendees were en route to or had already arrived in Missouri, Mr. Klar sent another email again purporting to "reconfirm the cancellation" of the inspection. A true and correct copy of this correspondence is attached hereto as **Exhibit G**.

13. At this time, Casey's counsel still had served no objection, had not sought a protective order from the Court, requested to confer by telephone or in person as required prior to moving for a protective order, or responded in substance to Plaintiffs' counsels' assertions that the inspection would be moving forward because no such measures were taken. Plaintiffs' counsel therefore deemed the attempted cancellation invalid and again advised that the inspection would

proceed as noticed. A true and correct copy of this correspondence is attached hereto as **Exhibit H**.

14. At the previously agreed upon date and time, on July 25 at 9:00 a.m., three experts, a consultant, a certified videographer, and I—all of whom had been identified in advance at Casey's request—appeared at the site of the inspection. Casey's counsel of record was not present and Casey refused to allow the inspection to proceed.

15. Upon arriving to the premises, I was met by an unidentified man on Casey's property who stated, "I'll let any federal official in here who wants to come in here and inspect the facility, but you folks aren't coming." He then threatened, "The first PETA guy that comes through here, and I know you're an attorney now, I'm gonna knock his ass out. Right on the spot. I'll lay him out flat."

16. The man was soon joined by Ms. Casey and an unidentified woman. The woman asserted, "Her lawyer told her under no circumstances to allow you on the property without a court order," and Ms. Casey confirmed that she was directed by counsel not to proceed with the inspection.

17. Ms. Casey requested that the inspection team leave her driveway, which we did promptly, at which point I attempted to contact Casey's counsel by telephone as a matter of urgency. Casey's counsel would not accept my request for a telephone conference.

18. After I contacted chambers, the Court held a brief emergency hearing to address Casey's refusal to proceed with the inspection. The Court denied Plaintiffs' emergency motion to compel the inspection as scheduled at that time and invited Plaintiffs to file a motion to compel the inspection if they so choose.

19. Following this hearing, I received a call from the certified videographer, who was parked down the block from Casey's property as he awaited word as to whether the inspection would proceed, that a Jefferson County Sheriff's Deputy was present and requested that we return to the area. Upon our return, the deputy informed me that Ms. Casey called the sheriff's office to report that "you guys were trying to force entry into her property."

20. Following Casey's refusal to permit entry, Plaintiffs' counsel, Martina Bernstein, again requested to confer with Casey's counsel to avoid the need for further Court intervention, and a telephone conference was scheduled with Mr. Klar for July 30 at 2 p.m., a date and time proposed by Mr. Klar.

21. Ms. Bernstein and I joined the conference prior to the scheduled time, at which point Mr. Klar had not yet joined. We waited more than twenty minutes, until 2:21 p.m., and Mr. Klar did not join the conference.

22. As Plaintiffs never received a version of the Stipulated Protective Order with Casey's counsel's or any other party's signature, Casey's counsel never filed the stipulation, and Casey refused to proceed with the inspection notwithstanding Plaintiffs' assent to the order that she "require[d]," I withdrew Plaintiffs' assent to this stipulation on the afternoon of July 25, 2018.

23. On June 26, 2018, Casey served a "Second Supplemental Disclosures Pursuant to Rule 26(a)(1)." A true and correct copy of this document is attached hereto as **Exhibit I**.

I declare under the penalty of perjury that the foregoing is true and correct.

July 30, 2018

Los Angeles, CA  /s/ Jared Goodman
                  Jared Goodman