UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) | |
| v. | ) ) | Case No. 4:16-cv-02163 |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) ) | |
| Defendants and Counterclaim Plaintiffs. | ) ) | |

**COUNTERCLAIM PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR AN ORDER COMPELLING INSPECTION OF PREMISES AGAINST COUNTERCLAIM DEFENDANT CONNIE BRAUN CASEY**

At issue in this case are the conditions and treatment of endangered chimpanzees that were, and in some cases still are, confined at the premises of Counterclaim Defendant Connie Braun Casey ("Casey"). Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Counterclaim Plaintiffs, People for the Ethical Treatment of Animals, Inc. and Angela Scott a/k/a Angela G. Cagnasso (together, "Plaintiffs") therefore served Casey with a request to inspect those same premises. ("Request," Declaration of Jared Goodman ("Goodman Decl.") ¶ 4, Exhibit A.) The date for the inspection was mutually agreed upon in advance and confirmed by Casey's counsel well over a month before the inspection was to take place on July 25.

Casey served no objections to the Request, nor sought a protective order from this Court—much less demonstrated "good cause" why she should not be required to comply with the validly noticed and served Request. Nevertheless, defying her obligations under Rule 34, three business days before the inspection, Casey's counsel unilaterally attempted to "cancel" the

inspection. On the date of the noticed inspection, Casey refused entry to Plaintiffs' counsel and their experts. Accordingly, pursuant to Rule 37(d) of the Federal Rules of Civil Procedure, Plaintiffs move to compel the inspection and for reimbursement of fees and costs incurred as a result of Casey's discovery default.

I.  **FACTUAL BACKROUND**

On June 19, 2018, after extensive consultation with Casey's counsel about a mutually agreeable date, Plaintiffs validly served and noticed their Request pursuant to Rule 34, to take place on July 25, beginning at 9 a.m. (Goodman Decl. ¶¶ 2-4.) Plaintiffs scheduled the inspection for that date not only because it was one of only a few dates available to all attendees (including Plaintiffs' experts), but also to allow for sufficient time following the inspection for Plaintiffs' counsel and their expert to complete the work necessary to make their disclosures required by Rule 26(a)(2)(B) "no later than **September 14, 2018**[,]" as required by the Court's Amended Case Management Order [ECF No. 54, at 2].

After the Request was served, counsel for Casey and Plaintiffs held several additional conferences to address Casey's counsel's insistence to know in advance the identities of experts who would be attending the inspection, and Casey's purported concerns about the scope of the inspection. (Goodman Decl. ¶ 5, Exhibit B.) Additionally, as a condition to proceed with the noticed inspection, Casey's counsel "require[d] a protective order limiting the disclosure of any information arising from the inspection." (Goodman Decl., ¶ 3). Although not required by Rule 34 or any other legal authority to agree to these conditions, Plaintiffs acceded to Casey's

counsel's various demands—with the understanding that this would allow the inspection to proceed as scheduled, without the need for Court intervention. (Goodman Decl. ¶ 6, Exhibit C).[1]

At no time did Casey serve any objections to the Request, or seek a protective order, much less asserted "good cause" why the inspection should not proceed. Indeed, on June 26, Casey served a "Second Supplemental Disclosure" pursuant to Rule 26(a)(1) stating that **she herself may use tangible evidence of the conditions of the chimpanzees' enclosures and related items "located at Ms. Casey's premises"—all of which was within the scope of the Request—to support her claims or defenses in this case**. (Goodman Decl. ¶ 23, Exhibit I.).

Having agreed to the date of the inspection and having provided concessions and assurances to Casey's counsel as requested as a condition to proceed with the inspection, and having received no indication whatsoever from Casey's counsel that the inspection would not proceed on the noticed date, Plaintiffs made travel arrangements for their counsel and experts and proceeded with preparations for the inspection, including arranging for a certified videographer. (Goodman Decl. ¶ 7.) In an effort to conserve the parties' resources, these arrangements were not booked until there was no foreseeable reason as to why the inspection would not proceed, and certain bookings were non-refundable. (*Id.*)

Three business days before the inspection, Casey's counsel Brian Klar sent an email to Plaintiffs' counsel attempting to unilaterally "cancel" the inspection. (Goodman Decl. ¶ 8, Exhibit D.) As sole "justification" for the refusal to proceed as agreed, Mr. Klar asserted that Casey had instructed her counsel to no longer participate in this litigation except for purposes of settlement. (*Id.*) Plaintiffs' counsel Martina Bernstein immediately responded that the

---

[1] However, Casey's counsel never filed the stipulation, and it has since been withdrawn since Casey did not fulfil her side of the bargain, i.e., to proceed with the Request as scheduled. (Goodman Decl. ¶ 22.)

"cancellation" was not accepted and that the inspection would proceed as validly noticed and served, pursuant to Rule 34. (Goodman Decl. ¶ 9, Exhibit E.)

On Monday, July 23, Plaintiffs' counsel Jared Goodman also confirmed that Mr. Klar's premise of an impending settlement was not well taken, and that the inspection would proceed as validly noticed and served pursuant to Rule 34. (Goodman Decl. ¶ 10, Exhibit F.) Indeed, as Mr. Goodman pointed out, the inspection was vital for the parties to have a chance of settling the case. (*Id.*) Plaintiffs' counsel received no further response to their Monday communication. On the morning of Tuesday, July 24, counsel for Plaintiffs, Jared Goodman, traveled from California to Missouri in order to attend the inspection. Plaintiffs' consultant and experts, likewise, traveled from Canada, Oregon, Illinois, and Washington, D.C. (Goodman Decl. ¶ 11.)

Less than 24 hours before the inspection, while the inspection attendees were thus en route or had already arrived in Missouri, Mr. Klar sent another email again purporting to cancel the inspection. (Goodman Decl. ¶ 12, Exhibit G). However, Casey's counsel still had served **no objection**, had not sought a **protective order** from the Court, or even requested to confer by telephone or in person as required prior to moving for a protective order. (Goodman Decl. ¶ 13). Nor did Casey's counsel address any of those points, merely stating that his email would "reconfirm the cancellation." (Goodman Decl. ¶ 12-13.) Plaintiffs' counsel therefore deemed the attempted cancellation invalid and again advised that the inspection would proceed as noticed. (Goodman Decl. ¶ 13, Exhibit H.)

At the previously agreed upon date and time, on July 25, Plaintiffs' counsel, consultant, and experts, together with a certified videographer, appeared at the site of the inspection. Casey's counsel of record was not present and Casey refused to allow the inspection to proceed. (Goodman Decl. ¶ 14.) Instead, Plaintiffs' counsel was met by an unidentified man

accompanying Casey who threatened, "The first PETA guy that comes through here, and I know you're an attorney now, I'm gonna knock his ass out. Right on the spot. I'll lay him out flat." (Goodman Decl. ¶ 15.) An unidentified woman asserted that Casey's "lawyer told her under no circumstances to allow you on the property without a court order," and Ms. Casey confirmed that she was directed by counsel not to proceed with the inspection. (Goodman Decl. ¶ 16.) Casey's counsel also refused to respond to Plaintiffs' counsel's request for a telephone conference. (Goodman Decl. ¶ 17.) After Plaintiffs' counsel contacted chambers, the Court held an emergency hearing to address Casey's refusal to proceed with the inspection as scheduled. The Court denied Plaintiffs' emergency motion to compel Casey to proceed with the inspection at that time, but invited Plaintiffs to file a motion to compel an inspection, if they so choose (Goodman Decl. ¶ 18.)

Following Casey's refusal to permit entry, Plaintiffs' counsel, Martina Bernstein, again requested to confer with Casey's counsel to avoid the need for further Court intervention, and a telephone conference was scheduled and confirmed for July 30 at 2 p.m, a date and time proposed by Casey's counsel. (Goodman Decl. ¶ 20.) Casey's counsel never joined the conference. (Goodman Decl. ¶ 21.)

## II. APPLICABLE LEGAL STANDARD

Rule 37 of the Federal Rules of Civil Procedure governs the issuance of an order compelling discovery. In relevant part, Rule 37(d) provides that "[a] party seeking discovery may move for an order compelling . . . inspection" if a party "fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(4). "Upon a showing by the requesting party that the discovery is relevant, the burden is on the party resisting discovery to explain why discovery should be limited." *CitiMortgage, Inc. v. Allied Mortg. Group,*

*Inc.*, 4:10CV1863 JAR, 2012 WL 1554908, at *2 (E.D. Mo. May 1, 2012). Moreover, where, as here, a party fails to timely serve objections without providing good cause, any objections to the requested discovery are waived. *See, e.g., Precinct, Inc. v. MWS, LLC*, No. 4:13-CV-2391 RLW, 2014 WL 7271992, at *1 (E.D. Mo. Dec. 18, 2014).

Upon granting a motion to compel, Rule 37(a)(5)(A) authorizes the Court to award "reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A); *see also Koenig v. Bordeau Const. LLC*, No. 4:13CV477 SNLJ, 2015 WL 1636988, at *1 (E.D. Mo. April 10, 2015). A district court also has broad discretion in imposing sanctions and "also has inherent power to fashion sanctions based on litigation conduct that is disruptive of the judicial process." *Custom Hardware Eng'g & Consulting, Inc. v. Dowell*, No. 4:10CV000653 ERW, 2012 WL 4108930, at *3 (E.D. Mo. Sept. 18, 2012).

### III. CASEY SHOULD BE COMPELLED TO COMPLY WITH THE INSPECTION REQUEST

It is beyond dispute that the conditions of the chimpanzees' enclosures on Casey's premises are relevant and material to the claims and defenses in this case. As stated in her Rule 26 disclosure, Casey herself intends to rely on tangible evidence of the conditions of the premises where the chimpanzees are kept to support her claims and defenses in this case. Yet she refused access to Plaintiffs to inspect this same evidence. The refusal was without justification: her counsel previously agreed to the date and even obtained concessions from Plaintiffs' counsel with the understanding that such concessions would allow the inspection to proceed without Court intervention. Casey, however, failed to uphold her side of the bargain, thereby forcing Plaintiffs, after the fact, to seek relief from the Court.

Casey's last minute attempt to cancel the inspection and her ultimatum that Plaintiffs' only option was to discuss settlement falls far short of demonstrating "good cause" for

6

disregarding Plaintiffs' validly noticed and served Rule 34 inspection demand. If Casey believed she had good cause to refuse to comply with the Request, she could have served timely objections and/or moved for a protective order. She did neither. Without asserting a single valid objection, Casey unilaterally decided to simply ignore Plaintiffs' Request. The Court should not countenance such willful and deliberate disregard of a party's discovery obligations. *See Williams v. Roper*, No. 4:13-CV-2440 CAS, 2015 WL 4546216, at *4 (E.D. Mo. July 28, 2015) (granting motion to compel discovery where party "intentionally failed to meet his discovery obligations by refusing to sit for deposition . . . and he did not file a motion with this Court asking for relief under Rule 26(c) or Rule 30(d) of the Federal Rules of Civil Procedure").

Moreover, Plaintiffs were well within their rights to reject Casey's improper ultimatum and eleventh hour attempt to "cancel" a validly served and noticed inspection. It is beyond cavil that a party may not simply unilaterally "cancel" discovery—as demonstrated by a legion of cases involving cancellations of properly noticed depositions without agreement of the opposing party. *See, e.g., Stevenson v. Bartlo*, 8 F. App'x 580, 581 (8th Cir. 2001) (affirming dismissal where plaintiff failed to appear for deposition or pay costs for the deposition as ordered by the district court); *Richardson v. BNSF Ry. Co.*, No. CIV.A. 13-5415, 2014 WL 5317866, at *2 (E.D. La. Oct. 16, 2014) ("A lawyer has no authority unilaterally to cancel a deposition that is reasonably noticed in writing pursuant to Fed.R.Civ.P. 30(b)(1), which is a step only the court is empowered to take"); *Panzer v. Swiftships, LLC*, 318 F.R.D. 326, 329 (E.D. La. 2016) ("Defendants had no right to unilaterally cancel the depositions, and their opposition fails to provide any support for why their actions should be countenanced in this instance"); *Reddy v. Bisaria*, No. 10-80725-CIV, 2011 WL 13227890, at *3 (S.D. Fla. July 27, 2011) (stating that "Defendants' belief that they were somehow relieved of their discovery obligations because of

earlier settlement discussions and their unilateral action in cancelling their depositions a mere one day before they were scheduled to commence demonstrates a cavalier view of the Court and the Rules governing proceedings in the Court the undersigned frankly finds astonishing."); *Huertas v. City of Camden,*, No. CV 06-4676-NLH-AMD, 2009 WL 10705067, at *4 (D.N.J. Jan. 30, 2009) ("Generally, the unilateral cancellation of a deposition without agreement of the parties is not appropriate.").

That the notice in this case involved an inspection, as opposed to deposition, does not justify Casey's cancellation. Her unilateral decision to relieve herself of her discovery obligations and to ignore her own counsel's previous agreement to proceed with the inspection on the previously scheduled date, under mutually negotiated conditions, demonstrate a troubling disregard for her own counsel's previous agreement and the rules of discovery and this Court. Furthermore, Casey cannot, on the one hand, seek to rely on tangible evidence regarding the conditions in which the chimpanzees are kept, while on the other hand, on a whim, disregard Plaintiffs' validly served request to inspect those same conditions.

Casey's instruction to her attorneys that they would only be permitted to engage in settlement negotiations but not perform any work associated with discovery moreover overlooks that Plaintiffs' counsel explicitly noted that proceeding with the inspection and curing existing discovery defects was critical for Plaintiffs' ability to assess the possibility of settlement. (Goodman Decl. ¶ 10, Exhibit F.) Particularly given Casey's spoliation of critical evidence [ECF Nos. 66-67], production of falsified documents [ECF No. 89, at 6], and failing to even correct acknowledged deficiencies in her discovery responses [ECF Nos. 92-93], Plaintiffs are still in the dark about the most basic information they need to assess the viability of settlement. Far from

8

promoting settlement, Casey's refusal to permit key discovery, erects only further roadblocks to an out-of-court resolution of this matter.

Casey's counsel's claim that a "delay" of the inspection causes no prejudice also defies credibility. In addition to the costs incurred by Plaintiffs' in reliance on Casey's agreement to the inspection, the deadline for Plaintiffs to serve their expert disclosures and reports is only approximately six weeks away—yet Plaintiffs' experts are being denied timely access to crucial evidence that they must have to assess information necessary to formulate opinions about the conditions in which the chimpanzees are currently held. This is the essence of unfair prejudice. *Monsanto Co. v. Hargrove*, No. 4:09-CV-1628(CEJ), 2010 WL 1936182, at *3 (E.D. Mo. May 12, 2010) ("Plaintiffs have suffered prejudice from defendants' continued failure to comply with the discovery rules. First, defendants' conduct has caused delays in discovery, and resulted in plaintiffs incurring additional costs by filing a motion to compel and the instant motion for sanctions. Second, defendants' failure to produce complete and adequate answers and documentation has hampered plaintiffs' ability to conduct depositions and engage in settlement negotiations. . . . The Court, thus, finds that plaintiffs are prejudiced by defendants' noncompliance with the discovery rules.").

## IV. REIMBURSEMENT OF FEES AND COSTS ARE APPRORIATE

Casey was not justified in her refusal to participate in discovery. As a result of Casey's decision to disregard a validly served and noticed request pursuant to Rule 34, on a date she provided, Plaintiffs incurred significant expenses and were forced to file the instant motion. Under these circumstances, an award of fees and cost is reasonable and appropriate. Moreover, as detailed in several pending motions [ECF Nos. 66-67, 88-89, 92-93], this latest failure to comply with discovery obligations is part of a pattern of obstructing discovery and thwarting

Plaintiffs' ability to determine facts at issue in this case. For this additional reason, an award of costs and fees is proper. *See, e.g., A.H. v. St. Louis Cty., Missouri*, No. 4:14-CV-2069 (CEJ), 2016 WL 3903366, at *5 (E.D. Mo. July 19, 2016).

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order, in the form submitted herewith, compelling compliance with Plaintiffs' validly served Request for Inspection and granting Plaintiffs an award of costs and attorneys' fees relating to this motion to compel. Plaintiffs also request that the Court award them costs and fees to reimburse Plaintiffs' counsel and their experts for the expenses incurred as a result of Casey's failure to comply with the Request, and granting that Plaintiffs have 14 days from the date of the Order granting this motion for sanctions to file an affidavit detailing these fees and costs.

Dated: July 30, 2018

Respectfully submitted,

/s/ Martina Bernstein
MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

JARED S. GOODMAN (#1011876DC)
(Admitted *pro hac vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90032
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000

St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/
Counterclaim Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on July 30, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to the following:

Brian Klar, bklar@lawsaintlouis.com
Daniel T. Batten, dbatten@lawsaintlouis.com
*Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

Geordie Duckler, geordied@animallawpractice.com
*Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

Patrick Hanley, p.hanley@att.net
*Attorney for Plaintiff/Counterclaim Defendant Vito Stramaeglia*

And was served by regular mail on the following:

Missouri Primate Foundation
c/o Connie Braun Casey
12338 State Rd. CC
Festus, MO 63028

/s/ Jared S. Goodman