UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) | |
| v. | ) ) | Case No. 4:16-cv-02163 |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) ) | |
| Defendants and Counterclaim Plaintiffs. | ) ) | |

**[PROPOSED] SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF COUNTERCLAIM PLAINTIFFS' MOTION TO COMPEL INSPECTION, OR, IN THE ALTERNATIVE, FOR ENTRY OF DEFAULT AGAINST COUNTERCLAIM DEFENDANT SAWYER**

**I.  INTRODUCTION**

Counterclaim Plaintiffs People for the Ethical Treatment of Animals, Inc. and Angela Scott a/k/a Angela G. Cagnasso (together, "Plaintiffs") submit this [Proposed] Supplemental Memorandum in Further Support of Counterclaim Plaintiffs' Motion to Compel Inspection, Or, in the Alternative, for Entry of Default Against Counterclaim Defendant Sawyer ("Supplemental Memorandum"). This Supplemental Memorandum is limited to a discussion of evidence and information that was unavailable at the time Plaintiffs filed their Memorandum and Reply Memorandum in support of their motion to compel inspection ("Inspection Motion") [ECF Nos. 83, 84, 86].[1]

---

[1] Local Rule 4.01 permits the filing of a motion, a response to a motion, and a reply in support of a motion and specifies that "[a]dditional memoranda may be filed by either party only with leave of Court." E.D. Mo. L.R. 4.01(C). "A party that wishes to file additional briefing after a reply must file a motion for leave of Court to do so, must explain in the motion for leave why

1

In particular, Plaintiffs need to inform the Court that Sawyer refused to confirm at his recent deposition that his attorney's filing of the opposition to the Inspection Motion [ECF No. 85] and **statements contained therein, made purportedly on Sawyer's behalf,** were authorized by Sawyer, or that they truthfully represent Sawyer's personal views. *See, e.g.,* Exhibit A, Deposition Transcript of Andrew Sawyer ("Tr.") at 53:14-21 (refusing to answer the question, "Mr. Sawyer, does document 85 reflect any of your views and positions?"); *see infra* II.A. Indeed, Geordie Duckler, Sawyer's counsel, insisted that Sawyer made no representations to the Court at all—and perhaps did not even understand what was stated in Document No. 85:

> MR. DUCKLER: . . . you're incorrect that [Sawyer] made representations to the Court. I think he may be misunderstanding what was written. He didn't write any representations to the Court. That was me.

Tr. at 46:3-13.

When he was repeatedly questioned about the specific representations made by Mr. Duckler in Document No. 85, Sawyer refused to own up to **any** of them:

> Q: And the statements that Mr. Duckler made on your behalf, are those reflective of your views and your positions in this case?
>
> MR. DUCKLER: So I'll object to that question on the grounds of the deponent's constitutional rights against self-incrimination.
>
> THE WITNESS: I refuse to answer the question pursuant to my constitutional right against self-incrimination.

Tr. 72:7-14; *see also infra* II.A.

Since it cannot be determined whether any of the representations in Document No. 85 accurately reflect Sawyer's personal views, they are not entitled to any credence. Moreover, the

---

additional briefing is necessary, and must submit the proposed additional briefing along with the motion for leave." *Davis v. Jomp*, No. 4:16-CV-229 CAS, 2017 WL 1407293, at *1 (E.D. Mo. Apr. 20, 2017).

establishment of a privilege that is personal to Sawyer is fundamentally incompatible with the rank speculation in which this Court would have to engage in divining whether Sawyer's actual beliefs and contentions are consistent with the purported fear of self-incrimination claimed by his counsel.

In addition, at his deposition, Sawyer invoked the Fifth Amendment privilege in response to each question eliciting substantive information about the conditions and whereabouts of Joey, and he refused to identify any witnesses, documents, or other evidence relating to the merits of this case. *See infra* II.B. This contradicts Sawyer's counsel's contention in Document No. 85 that "alternative" means exist for Plaintiffs to take discovery about the treatment and circumstances in which Joey is presently held. By first hiding Joey and then refusing to provide **any** information about Joey's whereabouts, treatment, or condition—including the identity of witnesses and documents from which such information may be gleaned, Sawyer effectively precluded a determination on the merits of Plaintiffs' case.

Accordingly, good cause exists to grant Plaintiffs' request for leave to present this after-acquired information regarding Sawyer's testimony, because that information is both highly relevant and it will assist the Court in determining the merits of the pending Inspection Motion. *See, e.g., United States v. Reed*, No. 4:12 CR 59 CDP, 2012 WL 4343406, at *1 (E.D. Mo. Sept. 24, 2012), *aff'd*, 545 F. App'x 579 (8th Cir. 2013) (granting leave to file a supplemental memorandum after a hearing "following receipt of the transcript"); *Kinder v. Geithner*, No. 1:10 CV 101 RWS, 2011 WL 1576721, at *2 (E.D. Mo. Apr. 26, 2011), *aff'd,* 695 F.3d 772 (8th Cir. 2012) (granting motion to file a supplemental memorandum where, subsequent to initial briefing, an additional development "squarely impact[ed]" the issues raised by the pending motion and provided "an additional basis" to rule on the pending motion); *Johnson v. Midcoast Aviation*, No.

4:06-CV-1805(CEJ), 2008 WL 3200801, at *4 (E.D. Mo. Aug. 6, 2008) (providing "leave of Court to subsequently file a supplemental memorandum . . . based on the after-acquired evidence doctrine").

## II. ARGUMENT

### A. The After-Acquired Information Confirms That Mr. Duckler's Purported Fifth Amendment Privilege Claim Regarding His Client Is Purely Speculative

Among the central issues presented by the Inspection Motion is whether Sawyer properly, i.e., "personally," invoked the Fifth Amendment privilege, in light of the fact that Document No. 85 **relies solely on the argument of his counsel about what a generic citizen or defendant or individual might assert or might have cause to fear**. [ECF No. 85, at 1-3]. As Plaintiffs have pointed out, at no time does Sawyer himself personally, affirmatively, claim the privilege. [ECF No. 87, at 10].

Whether Sawyer personally harbored any of the alleged fears of self-incrimination that Document No. 85 attributed to these nameless citizens, defendants, or individuals was the subject of several questions at Sawyer's July 13 deposition. However, Sawyer refused to provide any substantive response that would shed light on whether he has such fears, or whether he knows evidence that would support fears of prosecution. Instead, Sawyer invoked the Fifth Amendment in response to the following questions:

> Q: Mr. Sawyer, through your counsel you represented to the Court that there are instances in civil matters where the criminal liability of a party might manifest, and accusations by activist organizations under the Endangered Species Act 16 USC Section 1540, et seq. against other private citizens form a classic example. Please identify all such instances of which you are aware.

Tr. at 10:1-10.

> Q: So you also represented to the Court that information demanded of defendants in a civil [Endangered Species Act case] . . . is almost guaranteed to later be used

against them in some fashion in a separate yet related criminal case. Do you have any information to back up that claim?

Tr. at 10:18-25.

> Q: So these alleged fears of prosecution if you reveal Joey's location, which your lawyer asserted on your behalf, you're not going to provide any evidence that this is a real concern that you individually have?

Tr. at 11:8-11.

Sawyer was then provided with a copy of Document No. 85 (Tr. at 47:11-25) and was asked a number of questions about that document and representations made therein. Invoking the Fifth Amendment, Sawyer refused to answer all of the following questions that would shed light on whether he authorized the filing of Document No. 85 (**or any other filing** in this case), if he was aware of representations contained therein, and if those representations accurately reflect his views:

> Q: . . .you are the one who initiated the proceedings in which you are now testifying; is that right?

Tr. at 58:24-25 to 59:1.

> Q: And in those papers and filings your lawyers made various representations to the Court. You're aware of that?

Tr. at 59:22-24.

> Q: And these representations in the filings on your behalf, did those filings and representations reflect your views and positions?

Tr. at 60:8-10.

> Q: So because you refuse the question, we have to guess whether or not the filings made on your behalf actually reflect your views and positions; is that right?

Tr. at 60:18-21.

> Q: So you would have to speculate as to whether or not what your lawyers filed on your behalf actually reflected your views and position; is that right?

Tr. at 61:5-7.

>Q: Sitting here today, do any of the filings in which your lawyers make representations on your behalf incorrectly reflect your views?

Tr. at 61:15-17.

>Q: …are you the person who instructed your lawyers to file the various filings that were made in your name in this matter?

Tr. at 64:23-25.

>Q: Just to be clear, did you or did you not authorize your lawyers to file the various filings that they filed under your name in this case?

Tr. at 68:14-16.

With respect to the filing of, and specific representations contained in, Document No. 85, the following questions and answers bear quoting in their entirety, because they make clear that the Court would need a crystal ball to divine what, if anything, stated in that document is true—with respect to Sawyer's own position in this matter:

>Q: If you still have in front of you what has been filed in this case docket No. 85, it was filed on June 25th, 2018. If you kindly turn to page 8 of 10. At the top -- you have this in front of you. At the top of the page this filing states, "For all the reasons stated Counter-Defendant Sawyer respectfully submits," et cetera, et cetera. Do you see that?
>
>A: Yes.
>
>Q: Is there a different Counter-Defendant Sawyer than the one that is sitting here today?
>
>MR. DUCKLER: I will object to the question on the grounds of the deponent's constitutional rights against self-incrimination.
>
>THE WITNESS: I refuse to answer the question pursuant to my constitutional right against self-incrimination.
>
>BY MS. BERNSTEIN:
>Q: You're refusing to tell me whether you are the Counter-Defendant Sawyer who made the filing document 85 to the Court?

> MR. DUCKLER: I will object to the question on the grounds of the deponent's constitutional rights against self-incrimination.
>
> THE WITNESS: I refuse to answer the question pursuant to my constitutional right against self-incrimination.

Tr. at 69:3-25 to 70:1-3.

> Q: And the statements that Mr. Duckler made on your behalf, are those reflective of your views and your positions in this case?
>
> MR. DUCKLER: So I'll object to that question on the grounds of the deponent's constitutional rights against self-incrimination.
>
> THE WITNESS: I refuse to answer the question pursuant to my constitutional right against self-incrimination.

Tr. at 72:7-14.

It is of course a bedrock principle that the Fifth Amendment privilege against self-incrimination is a "purely personal right" and therefore cannot be asserted on behalf of others. *Rakas v. Illinois*, 439 U.S. 128, 140 n.8 (1978) (citing *Bellis v. United States*, 417 U.S. 85, 89–90 (1974); *Couch v. United States*, 409 U.S. 322, 327–28 (1973); *United States v. White*, 322 U.S. 694, 698–99 (1944)); *United States v. Bruton*, 416 F.2d 310, 312 (8th Cir. 1969). At most, in Document No. 85, Mr. Duckler has made certain claims to this Court that may (or may not) have been authorized or understood by Sawyer, and that may (or may not) happen to coincide with what Sawyer believes. Given Sawyer's own refusal to confirm that this filing was authorized or represents his position in this matter, there simply is no basis for the Court to attribute the representations in Document No. 85 to Sawyer and to sustain the privilege as to Sawyer, personally.

### B. The After-Acquired Information Shows That a Default Is the Only Proper Remedy for the Prejudice Caused by Sawyer's Conduct

Assuming that the Court nevertheless sustains Sawyer's privilege claim, the Court must

7

then determine an appropriate remedy. It is undisputed that in making this decision, the Court considers whether there are alternative means to obtain the information and whether there are effective remedies that would be less drastic than a terminating sanction. [ECF No. 85, at 6]. Sawyer's attorney previously argued that a default is not appropriate here because Plaintiffs can subpoena witnesses to ascertain information about Joey's condition and treatment. [*Id.*] It is now abundantly clear that this is incorrect.

At his deposition, Sawyer invoked the privilege and refused to provide a substantive response to all questions that attempted to elicit the identities of any witnesses or documents or any other "alternative" sources of this information. Among other things, Sawyer invoked his Fifth Amendment right in refusing to answer the following questions:

> Q: Please identify all persons with whom you communicated about the removal of Joey from the Missouri Primate Foundation and transferring him to another location.

Tr. at 42:4-7.

> Q: Please identify all written communications reflecting Joey's removal and transfer after you received the notice letter.

Tr. at 42:15-17.

> Q: Do you have any communications or e-mails, text messages, written records regarding those communications?

Tr. at 45:9-11.

> Q: Sitting here today, can you identify any documents of which you are aware that contain information describing or reflecting Joey's location or conditions?

Tr. at 51:8-11.

> Q: Can you identify any persons who have information about Joey's whereabouts and present conditions?

Tr. at 51:19-21.

8

> Q: And you fully intended not to disclose the identity of knowledgeable witnesses to the plaintiff; right?

Tr. at 52:18-20.

> Q: So when you represented to the Court that alternative means certainly exist to obtain this information, you knew full well that plaintiffs had no such means, didn't you?

Tr. at 53:3-6.

> Q: Can you identify all persons who have knowledge of the conditions in which Joey is kept?

Tr. at 53:23-24.

> Q: Will you please identify all persons who have knowledge of the location in which Joey is kept?

Tr. at 54:7-8.

> Q: Will you identify all persons who presently care for Joey?

Tr. at 54:16-17.

> Q: Can you identify all documents that reflect Joey's location?

Tr. at 54:25-56:1.

> Q: Can you identify all documents that reflect Joey's care?

Tr. at 54:9-10.[2]

In light of Sawyer's initial spoliation of Joey and his subsequent refusal to identify any sources of evidence that would shed light on the salient issues concerning Joey's present conditions and treatment, it is clear that there are no "alternative" means for Plaintiffs to discover this information. Therefore, and for the additional reasons demonstrated in the Inspection Motion, an entry of a default is the only means of effectively remedying the prejudice caused to

---

[2] Invoking his Fifth Amendment right, Sawyer similarly refused to answer **all** other questions pertaining to the merits of the case. Tr. at 8:5 to 72:14.

Plaintiffs by Sawyer's conduct.

Dated:  August 17, 2018			Respectfully submitted,

/s/ Martina Bernstein
MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

JARED S. GOODMAN (#1011876DC)
(Admitted *pro hac vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90032
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/*
*Counterclaim Plaintiffs*