UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) |
| v. | ) ) ) |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) ) |
| Defendants and Counterclaim Plaintiffs. | ) ) |

Case No. 4:16-cv-02163

**MEMORANDUM IN SUPPORT OF COUNTERCLAIM PLAINTIFFS'
SECOND MOTION TO COMPEL THE DEPOSITION OF
<u>COUNTERCLAIM DEFENDANT CONNIE BRAUN CASEY</u>**

**I.     INTRODUCTION**

During the October 29, 2018, deposition of Counterclaim Defendant Connie Braun Casey ("Casey"), it became clear that—contrary to her counsel's prior assurances—Casey had failed to search for, and/or produce, all documents responsive to discovery requests initially served on her on February 23, 2018. As a result, counsel for Counterclaim Plaintiffs, People for the Ethical Treatment of Animals, Inc. and Angela Scott a/k/a Angela G. Cagnasso (together, "Plaintiffs") did not have a full and fair opportunity to cross-examine Casey about material evidence in this case. Although Casey has since corrected most of these defaults, she has refused to appear for a follow-up deposition to answer questions about the belatedly produced documents unless Plaintiffs agree to limit her deposition to just one hour. Due to the extensive nature (and material significance) of hundreds of documents Casey failed to produce in a timely manner—including e-mail communications with veterinarians, enrichment logs, and photographs of the facilities and

chimpanzees at issue in this case—a one hour of deposition will not suffice to cure the unfair prejudice caused by Casey's prior unjustified discovery lapses.

Accordingly, pursuant to Rules 26, 30, and 37 of the Federal Rules of Civil Procedure, Plaintiffs move for an order compelling Casey to appear for deposition to afford Plaintiffs' counsel a reasonable opportunity to examine Casey about any matters as to which Plaintiffs' counsel lacked an opportunity for a full and fair examination during Casey's first deposition, due to Casey's failure to timely disclose such matters in discovery. Plaintiffs moreover request that the Court order Casey to pay Plaintiffs' costs and attorneys' fees relating to this motion to compel, and order that Casey shall reimburse Plaintiffs' counsel for reasonable travel expenses and related costs incurred in having to take a second deposition.

## II.     FACTUAL BACKGROUND

On October 29, 2018, Plaintiffs took the duly noticed deposition of Casey. During the examination, Plaintiffs learned that Casey had yet to produce numerous documents responsive to Plaintiffs' February 23, 2018, discovery requests. [ECF #123-3.] Among other things, Casey had in her possession a notebook and calendar, to which she referred during her deposition, that had not been produced. [*See, e.g.,* Deposition Transcript of Connie Braun Casey ("Casey Tr.") 120:15-25; 121:1-25; 153:17-25.][1] Demonstrating that she simply had not grasped the extent of her discovery obligations, Casey explained that copies of these documents had not been provided to her counsel because "I write in it every day." [*Id.* 154:14-19.]

Casey also testified that in the past, she had sent and received e-mails relating to her chimpanzees—but as of the date of her deposition, no such emails had been produced, or likely

---

[1] Copies of relevant pages of Casey's deposition transcript are attached as Exhibit A to the Declaration of Jared Goodman ("Goodman Decl."), filed concurrently herewith.

even searched. [*See, e.g., id.* 11:7-18; 169:1-4; 170:18-24; 171:21-25.] When Casey was asked why she had not yet searched for certain emails in her possession, she responded: "I haven't had time." [*Id.* 171:1-2.]

In addition to these discovery lapses, it came to light that Casey had "probably" thousands of photographs or videos of the chimpanzees housed at her facility (including hard copies and photos in her camera and/or stored electronically on her phone), but she did not turn them over to her attorneys to determine if they needed to be produced. [*Id.* 182:10-15; 184:4-7.]

In the late afternoon of Casey's deposition, her counsel, Debbie Champion, handed some documents across the table that she had just received and that Casey had brought with her, including USDA license applications, a calendar, and an enrichment log. [*Id.* 193-194.] In response to attempts by Plaintiffs' counsel to confer about producing Casey for a follow-up deposition about these (and other belatedly produced) documents, Ms. Champion confirmed that it was her

> understand[ing] that you still need e-mails and photos, and to the extent that there are follow-up regarding the things that are going to be subsequently provided to you, assuming that there are these things, obviously you'll need to do your follow-up on those.

[*Id.* 331:8-15.] Ms. Champion added the caveat "that we would object to anything that goes beyond anything you haven't already seen." Subject to that understanding, Plaintiffs' counsel suspended the deposition. [*Id.* 335:5-9.]

During the months following her deposition, Casey produced, among other things, approximately 100 pages of emails and 250 photographs, on or about December 5, and approximately 300 pages of emails, on or about December 19, 2018. [Goodman Decl. ¶ 4.][2]

---

[2] Casey's counsel also agreed to produce and/or search for additional responsive records that have not yet been produced as of the date of this filing.

When Plaintiffs' counsel requested a date for Casey's follow-up deposition about the matters as to which Plaintiffs lacked a full and fair opportunity to depose her previously, Casey's counsel refused to provide a date—unless Plaintiffs agreed that the deposition was limited to just one hour. [*Id.* ¶ 5.] While Plaintiffs' counsel agreed that the deposition would be strictly limited to documents that had not been produced before Casey's October 29 deposition, Plaintiffs' counsel explained that Plaintiffs could not commit to concluding the deposition in only one hour, given the extent and material nature of Casey's belated production. [*Id.* ¶ 6.]

**III.    ARGUMENT**

**A. One Additional Hour of Deposition Will Not Cure Casey's Extensive Discovery Defaults**

At the time of her October 29 deposition, Casey had failed to produce well over six-hundred pages of documents responsive to Plaintiffs' February requests. Many of those documents are material to the issues in this case. As a result, Plaintiffs were unfairly prejudiced in their ability to obtain full and fair discovery. Plaintiffs' counsel was forced to waste substantial time during Casey's October 29 deposition just identifying missing documents and she was limited to examining Casey without the benefit of contemporaneous emails, photographs and other documents with which to impeach or refresh Casey's recollection. Although Casey's counsel previously confirmed her understanding that "to the extent that there are follow-up [questions] regarding the things that are going to be subsequently provided to [Plaintiffs], assuming that there are these things, obviously [Plaintiffs' counsel will] need to do [her] follow-up on those," such follow-up has not been permitted. [Casey Tr. p. 335:5-9.] Rather than making a good faith effort to cure the prejudice caused by Casey's dilatory conduct in searching for, and providing, all responsive records, her counsel placed an unreasonable one hour time limitation on the resumption of Casey's deposition.

Even if Casey's follow up deposition were limited to questions about just a fraction (less than 10 percent) of the emails, photographs, USDA documents, enrichment logs and other belatedly produced documents, this would leave only about 45 seconds—barely enough time to mark and identify—for each exhibit. Therefore, the one-hour limitation Casey placed on her follow-up deposition could not cure the unfair prejudice caused by her unjustified discovery defaults.

Casey had a duty to conduct a diligent search for all responsive materials, as well as a duty to supplement her production if additional responsive materials were located. Fed. R. Civ. P. 26(e)(1). Notably, this Court previously denied Plaintiffs' motion to compel the production of documents that Casey previously claimed she did not have. [ECF No. 132 at 7] The Court reasoned:

> PETA does not believe these answers because it believes Casey *must* have additional documents. It asks me to order production of the additional documents that it believes must exist. I will not order a party to produce documents that the party has stated do not exist. Casey now has new counsel, and I am confident that those lawyers understand both their duty to verify with their client that documents have been produced and their duty to supplement Casey's responses if additional documents are discovered. I will deny this motion.

*Id.* 7-8. Plaintiffs agree that no purpose could be served by ordering Casey to produce documents that do not exist. However, as the Court's reasoning implies, the discovery process is intended to be self-executing, and Casey (with the benefit of new counsel) was expected to cure any deficiencies in her prior discovery responses without the need of a court order. Notwithstanding this Court's expectation that Casey's present counsel "understand both their duty to verify with their client that documents have been produced and their duty to supplement Casey's responses if additional documents are discovered," this was not done by the time Casey was deposed. As reflected by her testimony and the enormous gaps in her production, Casey had a very casual and

5

cavalier attitude of indifference relative to her duties to respond fully and completely to discovery. Even though she was represented by three different sets of attorneys since the time Plaintiffs first served their document requests on Casey in February, as of the date of her deposition, Casey still seemed oblivious of her obligations to make a timely and complete search for all requested records. It also strains credulity that Casey's latest (present) counsel had sufficiently complied with "their duty to verify with their client" that all responsive documents had, in fact, been produced, as of October 29, because they would have discovered those extensive gaps before that date. Casey filed no supplemental responses to Plaintiffs' document requests to which she previously responded "None," and Plaintiffs' counsel therefore assumed that Casey was mostly compliant with her obligation to turn over all responsive records, and that with only minor exceptions, "None" remained to be produced. That assumption turned out to be misplaced.

Plaintiffs' counsel did not anticipate (and could not have anticipated) that over six-hundred pages of documents would still be missing when the date for the October 29 deposition was scheduled. As a result of Casey's dilatory conduct, Plaintiffs' counsel was forced to conduct much of her cross-examination about key issues without the benefit of contemporaneously created emails with which she could have impeached or refreshed Casey's recollection. Additional time was wasted during the deposition just tracking down the many different ongoing gaps in Casey's production. As one court cogently noted, "[i]t is not the court's role, nor that of opposing counsel, to drag a party kicking and screaming through the discovery process." *U & I Corp. v. Advanced Med. Design, Inc.*, 251 F.R.D. 667, 676 (M.D. Fla. 2008).

Where, as here, parties thwart their opponents' ability to conduct an adequate deposition because they failed to produce discovery in a timely manner, courts routinely allow follow-up

6

depositions in order to cure the unfair prejudice caused by such failures. For example, in *Bootheel Ethanol Investments, L.L.C. v. SEMO Ethanol Co-op.*, No. 1:08-CV-59 SNLJ, 2011 WL 4549626, at *8 (E.D. Mo. Sept. 30, 2011), the court agreed that "as for any deponents whom defendants would like to question regarding certain later-produced documents, defendants should be permitted to retake those depositions." Similarly, in *United States ex rel. Cairns v. D.S. Med., L.L.C.*, No. 1:12CV00004 AGF, 2017 WL 3887850, at *3 (E.D. Mo. Aug. 31, 2017), the court granted plaintiff's motion to redepose two individuals "[i]n light of the supplemental production of documents," noting, "'Courts frequently permit a deposition to be reopened where the witness was inhibited from providing full information at the first deposition … or where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition.'" *Id.* (quoting *Keck v. Union Bank of Switzerland*, No. 94CIV.4912 (AGS)(JCF), 1997 WL 411931, at *1 (S.D.N.Y. July 22, 1997)). *See also, e.g., Owen v. State Farm Fire & Cas. Co.*, No. CIVA 1:06CV617 LTSMT, 2007 WL 1562216, at *2 (S.D. Miss. May 29, 2007) (granting plaintiffs' request to resume the deposition of defendant's witness after the production of previously withheld documents, provided that "the follow-up deposition shall be limited to questions related to [those] documents").[3]

---

[3] *See also, e.g., Costanzo v. Prop. & Cas. Ins. Co. of Hartford*, No. 13-CV-1199 WPL/RHS, 2014 WL 11511714, at *1 (D.N.M. Sept. 3, 2014) ("Plaintiff Costanzo has now found time to search his records and make a complete response some three months after his deposition, and he must now submit to a second deposition concerning these supplemental disclosures… Cost of the second deposition (excepting attorney's fees of Defendant Hartford) shall be paid by Plaintiff Costanzo"); *Kirgan v. FCA LLC*, No. 10-1392, 2013 WL 1500708, at *1 (C.D. Ill. Apr. 10, 2013) ("Plaintiff's motion to compel was granted and Defendants were ordered to provide Plaintiff with a copy of all existing calendars …In addition, the two men were ordered to sit for supplemental depositions regarding the calendars"); *Medicines Co. v. Mylan Inc.*, 936 F. Supp. 2d 894, 907 (N.D. Ill. 2013) (granting motion to compel witness for follow-up deposition of four hours on the subject of subsequently produced documents); *Kmart Corp. v. Securitas Sec. Servs. USA, Inc.*, No. 1:10-CV-0753-AT, 2011 WL 13217033, at *1 (N.D. Ga. Oct. 14, 2011) ("the Court granted Kmart's request to conduct follow-up depositions regarding the documents

### B. The Court Should Award Reasonable Costs Incurred As A Result Of The Second Deposition

If Casey had complied with her obligations to produce all responsive records in time for her deposition—or if her counsel had at least alerted Plaintiffs' counsel that discovery was still substantially incomplete and therefore requested a brief delay in taking Casey's initial deposition to allow a cure of these defects in advance of the deposition—the need for a costly follow-up deposition could have been avoided. Therefore, Casey or her counsel should bear the reasonable costs incurred by Plaintiffs in taking the second deposition.

For example, in *Bootheel Ethanol Investment*, the court granted leave to defendants to "file a motion seeking reimbursement of costs and fees," should they choose to re-depose witnesses about belatedly produced documents, "clearly detailing the reasons why re-taking the deposition was necessary and summarizing and supporting the expenses associated with the deposition[.]" *Bootheel Ethanol Investments,* 2011 WL 4549626, at *8. *See also, e.g.*, *Resicom Custom Painting & Maint., Inc. v. Prof'l Retail Servs., Inc.*, No. 14 CV 09190, 2017 WL

---

produced in response to the Order on Kmart's Motion to Compel"); *Stallings v. Michelin Americas Research & Dev. Corp.*, No. 1:07-CV-2497-RWS, 2010 WL 966865, at *7 (N.D. Ga. Mar. 12, 2010) (granting a supplemental deposition of witness on the limited subject of previously undisclosed materials); *Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, No. C 04-2266 JW (PVT), 2009 WL 302003, at *1 (N.D. Cal. Feb. 6, 2009) (granting motion to permit follow-up deposition questions about previously withheld financial documents); *Cimaglia v. Union Pac. R. Co.*, No. 06-CV-3084, 2008 WL 5244824, at *1 (C.D. Ill. Dec. 16, 2008) ("Given the fact that the note did not surface until April 2008, this Court, in order to ensure a fair discovery process, granted Plaintiffs the opportunity to take the deposition of Steve Jackson on the limited issue concerning the handwritten note, as well as the opportunity to take supplemental depositions of Mike Rodriguez and Scott Gunter, not to exceed four hours each, on the issue of the "witness" in the note"); *Palmetto Pharm. LLC v. AstraZeneca Pharm. LP*, No. 2:11-CV-00807-SB-JDA, 2012 WL 4369259, at *4 (D.S.C. July 18, 2012) (granting plaintiffs' motion to compel the supplemental deposition of witness regarding belatedly produced document "which was not available at his deposition"); *Hartford Fire Ins. Co. v. Harris Co. of Fort Smith, Inc.*, No. 2:14-CV-02096, 2015 WL 4391910, at *3 (W.D. Ark. July 16, 2015) (granting defendant permission to take a supplemental deposition "limited to questions or issues raised by" plaintiffs' supplemental document production).

3951603, at *6 (N.D. Ill. Sept. 8, 2017) ("should supplemental depositions of Brian and/or Kathleen Larmour be required based solely on defendant's delayed production, defendant is to bear the cost of the depositions"); *Costanzo v. Prop. & Cas. Ins. Co. of Hartford*, No. 13-CV-1199 WPL/RHS, 2014 WL 11511714, at *1 (D.N.M. Sept. 3, 2014) (ordering that cost of the supplemental deposition concerning the supplemental disclosures that did not occur until three months after plaintiffs' deposition "shall be paid" by plaintiff); *Rodgers v. Beechcraft Corp.*, No. 15-CV-0129-CVE-PJC, 2017 WL 465474, at *14 (N.D. Okla. Feb. 3, 2017) (accepting the magistrate judge's recommendation for plaintiffs to make witness available for a supplemental deposition and for plaintiffs to bear defendants' travel costs for the supplemental deposition as an appropriate remedy for their failure to abide by disclosure requirements).

C. **The Court Should Award Reasonable Expenses Incurred by Plaintiffs' in Making This Motion**

Upon granting a motion to compel, Rule 37(a)(5)(A) authorizes the Court to award "reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A); *see also Koenig v. Bordeau Const. LLC*, No. 4:13CV477 SNLJ, 2015 WL 1636988, at *1 (E.D. Mo. April 10, 2015). Plaintiffs are entitled to an award of reasonable attorney's fees because Casey's conduct necessitated this motion following Plaintiffs' good faith attempts to resolve the disputes consistent with this Court's rules. *See* Fed. R. Civ. P. 37(a)(5)(A); *see also Liley v. Mitek Corp.*, No. 1:13CV95 SNLJ, 2015 WL 1383958, at *1 (E.D. Mo. March 23, 2015) (awarding attorneys' fees to the party compelling discovery where "counsel made good faith attempts to resolve the dispute before filing the motion, the nondisclosure and failure to respond was not substantially justified, and there are no other circumstances that make an award of fees unjust"). *See also, e.g., Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, No.

208CV00105APGGWF, 2017 WL 44942, at *2 (D. Nev. Jan. 4, 2017) (awarding plaintiff its reasonable attorney's fees associated with a motion to compel defendant's supplemental deposition).

## IV. CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court enter an Order, in the form submitted herewith, granting this motion to compel in all respects.

Dated: January 2, 2019                Respectfully submitted,

/s/ Martina Bernstein
MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

JARED S. GOODMAN (#1011876DC)
(Admitted *pro hac vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90032
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/
Counterclaim Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on January 2, 2019, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to the following:

Debbie S. Champion, dchampion@rssclaw.com
Victor Essen, vessen@rssclaw.com
*Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

Geordie Duckler, geordied@animallawpractice.com
*Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

/s/ Jared Goodman