**MISSOURI PRIMATE FOUNDATION, et al.,**

        Plaintiffs and Counterclaim
        Defendants;

v.

                            **Case No. 4:16-cv-02163**

**PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC., et al.,**

        Defendants and
        Counterclaim Plaintiffs.

## COUNTERCLAIM PLAINTIFFS' FIRST INTERROGATORIES TO COUNTERCLAIM DEFENDANT MISSOURI PRIMATE FOUNDATION

Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 3.03, Counterclaim Plaintiffs People for the Ethical Treatment of Animals, Inc. and Angela Scott (together, "Counterclaim Plaintiffs") propound the following interrogatories to Counterclaim Defendant Missouri Primate Foundation ("MPF"), to be answered, and verified, in accordance with the federal and local rules and within thirty days of service hereof.

## INSTRUCTIONS AND DEFINITIONS

1.    "You" and "your" shall refer to MPF and any representatives, agents, volunteers, employees, and others acting on its behalf.

2.    "MPF" refers to Missouri Primate Foundation and its representatives, including but not limited to Connie Casey and James Michael Casey, as well as all other persons or entities acting or purporting to act at its direction or on its behalf.

1



3.     The word "Chimpanzees," when capitalized, refers to each and every chimpanzee that was housed at MPF at any time during the Relevant Time Period.

4.     The term "Relevant Time Period" refers to the period of time from January 1, 2012, through the present.

5.     The words "and" and "or" shall be construed either conjunctively or disjunctively as necessary to make the requests inclusive rather than exclusive. The word "including" shall be construed to mean without limitation.

6.     The use of the singular form of any word includes the plural and vice versa.

## INTERROGATORIES

**Interrogatory No. 1** Identify all current and former MPF employees and volunteers during the Relevant Time Period by name, job title, beginning and ending dates of employment, and general job duties and responsibilities. For former employees or volunteers, please also provide their last known address and contact information.
**RESPONSE:**


**Interrogatory No. 2** Identify each of the Chimpanzees, including by providing the sex, dates of birth and death (if applicable), and pedigree (i.e., information regarding the chimpanzee's parents).
**RESPONSE:**


**Interrogatory No. 3** Provide a complete and detailed description of the current social groupings of each of the chimpanzees named in Defendants' November 2, 2016, Notice of Intent, including where each chimpanzee is housed and the name of each other chimpanzee in the enclosure.
**RESPONSE:**

**Interrogatory No. 4**  State the date or age at which each of the Chimpanzees was separated from his or her mother.

**RESPONSE:**


**Interrogatory No. 5**  Provide a complete and detailed description of each transfer of a chimpanzee to or from you to or from a third party during the Relevant Time Period, including the name and age of the chimpanzee transferred, the date of the transfer, the sending or recipient party, and the dollar amount paid or received by you for such transfer, if any.

**RESPONSE:**


**Interrogatory No. 6**  Provide a complete and detailed description of the enclosures in which you house or housed chimpanzees during Relevant Time Period, including exact dimensions, whether the enclosure is fully indoors or both indoors and outdoors and the dimensions of any outdoor section, which chimpanzees are or were housed in each enclosure, and the dates in which they were so housed.

**RESPONSE:**


**Interrogatory No. 7**  If you contend that during the Relevant Time Period, the Chimpanzees' social groupings and/or social housing was sufficient to meet their needs, state all material facts upon which you base that contention with respect to each of the Chimpanzees whose social needs you contend were met.

**RESPONSE:**

**Interrogatory No. 8** Describe your understanding (if any) as to what constitutes appropriate social groupings and/or social housing to meet the needs of chimpanzees in captivity.

**RESPONSE:**


**Interrogatory No. 9** Identify all relevant sources and expert information you consulted or considered in order to determine what type of social groupings and/or social housing is sufficient to meet the needs of the chimpanzees in captivity and state the date(s) you first learned of the information.

**RESPONSE:**


**Interrogatory No. 10** If you contend that during the Relevant Time Period, the size of the Chimpanzees' enclosures was sufficient to meet their needs, state all material facts upon which you base that contention with respect to each of the Chimpanzees whose enclosure size you contend met his or her needs.

**RESPONSE:**


**Interrogatory No. 11** Describe your understanding (if any) as to what constitutes an appropriate enclosure size to meet the needs of chimpanzees in captivity.

**RESPONSE:**


**Interrogatory No. 12** Identify all relevant sources and expert information you consulted or considered in order to determine what enclosure size is required to meet the needs of chimpanzees in captivity and state the date(s) you first learned of the information.

**RESPONSE:**

4

**Interrogatory No. 13** If you contend that during the Relevant Time Period, the design of the enclosures in which the Chimpanzees were kept was sufficient to meet their needs, state all material facts upon which you base that contention with respect to each of the Chimpanzees whose enclosure design you contend met his or her needs.

**RESPONSE:**


**Interrogatory No. 14** Describe your understanding (if any) as to what an appropriate enclosure design must include in order to meet the needs of chimpanzees in captivity.

**RESPONSE:**


**Interrogatory No. 15** Identify all relevant sources and expert information you consulted or considered in order to determine what constitutes an appropriate enclosure design to meet the needs of chimpanzees in captivity and state the date(s) you first learned of the information.

**RESPONSE:**


**Interrogatory No. 16** If you contend that during the Relevant Time Period, the Chimpanzees' enrichment program was sufficient to meet their needs, state all material facts upon which you base that contention with respect to each of the Chimpanzees whose enrichment needs you contend were met.

**RESPONSE:**


**Interrogatory No. 17** Describe your understanding (if any) as to what constitutes an adequate enrichment program to meet the needs of chimpanzees in captivity.

**RESPONSE:**

**Interrogatory No. 18** Identify all relevant sources and expert information you consulted or considered in order to determine what constitutes an adequate enrichment program to meet the needs of chimpanzees in captivity and state the date(s) you first learned of the information.

**RESPONSE:**


**Interrogatory No. 19** Provide a budget breakdown for your average monthly expenses of keeping a chimpanzee at MPF, including but not limited to, the cost of housing, feeding, veterinary care, etc.

**RESPONSE:**


**Interrogatory No. 20** Provide a description of the daily husbandry tasks performed by each MPF staff and the approximate amount of time necessary to complete each task, to care for, feed, and maintain the housing of the Chimpanzees, and any other task that is performed on a daily basis in maintaining the Chimpanzees.

**RESPONSE:**


Dated: February 23, 2018

Respectfully submitted,

/s/ Jared S. Goodman
JARED S. GOODMAN (#1011876DC)
(Admitted *pro hac vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90032
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
MARISSA L. CURRAN (#61943)

100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/*
*Counterclaim Plaintiffs*

# VERIFICATION

I, _____, hereby verify under penalty of perjury under the laws of the United States of America that the foregoing answers are true and correct to the best of my knowledge, information, and belief.

Executed on _____, 2018.

_____
Name

_____
Title

# CERTIFICATE OF SERVICE

I certify that on February 23, 2018, the forgoing interrogatories were served by electronic mail on the following:

Kurtis B. Reeg
Goldberg Segalla
kreeg@goldbergsegalla.com

*Attorney for Plaintiffs/*
*Counterclaim Defendants*

/s/ Jared S. Goodman

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No: 4:16-cv-2163-CDP |
| v | ) |
| | ) |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al. | ) |
| | ) |
| Defendant | ) |

## COUNTERCLAIM DEFENDANT CONNIE BRAUN CASEY'S OBJECTIONS AND ANSWERS TO COUNTERCLAIM PLAINTIFFS' SECOND INTERROGATORIES TO COUNTERCLAIM DEFENDANT CONNIE BRAUN CASEY

COMES NOW Counterclaim Defendant Connie Braun Casey, by and through undersigned counsel, and for her objections and answers to Counterclaim Plaintiffs' Second Interrogatories to Counterclaim Defendant Connie Braun Casey, states as follows:

**Interrogatory No. 1** If you contend Plaintiffs made defamatory statements that financially harmed you, identify each statement by Plaintiffs you claim to be defamatory, including when and to whom the statement was made.

**RESPONSE:**

**Objection, this Interrogatory seeks information that is not relevant in that there is no claim for defamation at issue in this case due to the Court's prior ruling on the Defendant/Counterclaim Plaintiffs' Motion to Dismiss. Without waiving said objection, as a result of the said ruling Casey is not asserting such a claim here at this time.**

**Interrogatory No. 2** With respect to the alleged defamatory statements identified in the preceding interrogatory, identify all pecuniary damages you claim to have suffered as of the date of your response to this interrogatory and explain how these damages were calculated.

**RESPONSE:**

**Objection, this Interrogatory seeks information that is not relevant in that there is no claim for defamation at issue in this case due to the Court's prior ruling on the Defendant/Counterclaim Plaintiffs' Motion to Dismiss. Without waiving said objection, as a result of the said ruling Casey is not asserting such a claim here at this time.**

**Interrogatory No. 3** Identify all persons who have knowledge of the pecuniary damages you allegedly suffered as a result of Plaintiffs' alleged defamatory statements.

**RESPONSE:**

**Objection, this Interrogatory seeks information that is not relevant in that there is no claim for defamation at issue in this case due to the Court's prior ruling on the Defendant/Counterclaim Plaintiffs' Motion to Dismiss. Without waiving said objection, as a result of the said ruling Casey is not asserting such a claim here at this time.**

**Interrogatory No. 4** Identify all communications between you and any other person(s), from January 1, 2016, through the present, relating to selling, donating, loaning or otherwise transferring custody and/or possession of any chimpanzee(s) that were or are housed at MPF.

**RESPONSE:**

Objection, this Interrogatory seeks information that necessarily is protected by the attorney client privilege and/also would involve the mental impressions of counsel and the litigation strategies of this party.

Without waiving said objection, it is not possible for me to "identify" all communications that I have had with third-parties about selling, donating, loaning or otherwise transferring custody and/or possession of any chimpanzees from January 1, 2016 to the present. I have had conversations with third persons about establishing plans for the care of my chimpanzees if I were to become unable to care for them and/or if I pass away.

The only definite communications that I had about any specific plan to transfer any chimpanzee in that time period would have been with representatives of DeYoung Zoo. Those communications would have been verbal and in person, but I would not be able to recall the specifics of the dates and times of those communications. Carrie Cramer of DeYoung Zoo did visit me in April 2016 and September of 2016.

RYNEARSON SUESS SCHNURBUSCH
CHAMPION, LLC.

BY: _____
Debbie S. Champion,        #38637MO
Victor H. Essen, II,        #57629MO
500 North Broadway, Suite 1550
St. Louis, MO 63102
314-421-4430 / FAX: 314-421-4431
dchampion@rssclaw.com
vessen@rssclaw.com
*Attorney for Plaintiff/Counter-Defendant*
*Connie Braun Casey*

Case No: 4:16-CV-02163-CDP

Court: Eastern District of Missouri

## <u>AFFIDAVIT</u>

STATE OF MISSOURI    )
                            ) SS
CITY/COUNTY OF _____  )

I, Connie Casey, having been duly first sworn on my oath, depose and state that the facts
in the foregoing Answers to Interrogatories directed to me are true to the best of my knowledge,
information, and belief.

*Connie Casey*
Connie Casey

Subscribed and sworn to before me, a Notary Public, this __12__ day of
__October__ , 2018.

J.S. BOEHME
My Commission Expires
May 18, 2022
Jefferson County
Commission # 14974955

_____
Notary Public

My Commission Expires __5 - 18 - 22__

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**MISSOURI PRIMATE FOUNDATION, et al.,**

        Plaintiffs and Counterclaim
        Defendants;

v.

**PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC., et al.,**

        Defendants and
        Counterclaim Plaintiffs.

**Case No. 4:16-cv-02163**

## COUNTERCLAIM PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO COUNTERCLAIM DEFENDANTS

Pursuant to Federal Rule of Civil Procedure 34, Defendants and Counterclaim Plaintiffs People for the Ethical Treatment of Animals, Inc. and Angela Scott request that Plaintiffs and Counterclaim Defendants Missouri Primate Foundation ("MPF"), Connie Braun Casey, Andrew Sawyer, and Jane Doe 2 (collectively, with MPF, the "Responding Parties") produce the following documents in their possession, custody or control for inspection and/or copying within thirty days of service hereof to the office of Polsinelli, 100 S. Fourth Street, Suite 1000, St. Louis, MO 63102.

## INSTRUCTIONS AND DEFINITIONS

1.    The use of the singular form of any word includes the plural and vice versa.

2.    All documents produced pursuant hereto shall be organized and labeled (without permanently marking the item produced) so as to correspond with the categories of each numbered request hereof.

3.    These requests cover all documents, including electronically stored

information (ESI), in, or subject to, your possession, custody, or control, including, but not limited to, all documents (including ESI) that you have the ability to obtain, that are responsive, in whole or in part, to these requests. *Information that exists in electronic form is specifically requested to be produced in native or near-native formats* and should not be converted to imaged formats. Native format requires production in the same format in which the information was customarily created, used and stored by you. The table below supplies examples of the native or near-native forms in which specific types of electronically stored information (ESI) should be produced.

| Source ESI | Native or Near-Native Form or Forms Sought |
|---|---|
| Microsoft Word documents | .DOC, .DOCX |
| Microsoft Excel spreadsheets | .XLS, .XLSX |
| Microsoft PowerPoint presentations | .PPT, .PPTX |
| Microsoft Access databases | .MDB, .ACCDB |
| WordPerfect documents | .WPD |
| Adobe Acrobat documents | .PDF |
| Images | .JPG, .JPEG, PNG |
| Video | .AVI, .FLV, .WMV, .MOV, .MP4 |
| E-mail | Messages should be produced in a form or forms that readily support import into standard e-mail client programs; that is, the form of production should adhere to the conventions set out in RFC 5322 (the internet e-mail standard). For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and produced. For Lotus Notes mail, furnish .NSF files or convert to .PST. If your workflow requires |

| | |
|---|---|
| | that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced in a delimited text file. |
| Databases | Unless the entire contents of a database are responsive, extract responsive content to a fielded and electronically searchable format preserving metadata values, keys and field relationships. If doing so is infeasible, please identify the database and supply information concerning the schemae and query language of the database, along with a detailed description of its export capabilities, so as to facilitate crafting a query to extract and export responsive data. |

4.     Documents that do not exist in native electronic formats or which require redaction of privileged content should be produced in searchable .PDF formats or as single page .TIFF images with OCR text furnished and logical unitization and family relationships preserved.

5.     These requests should be regarded as ongoing, whereby you are to timely supplement them as additional documents may become available to you subsequent to your initial response.

6.     Unless otherwise specified in a particular request, the documents requested are those that have been generated by or have been in the Responding Parties' possession, custody, or control at any time from November 2, 2010 to the present, referred to below as the "Relevant Time Period".

7.     "You" and "your" shall refer to the Responding Parties and any representatives, agents, volunteers, employees, and others acting on their behalf.

8.     "MPF" refers to Missouri Primate Foundation and its representatives, including but not limited to Connie Casey and James Michael Casey, as well as all other persons or entities acting or purporting to act at its direction or on its behalf.

9. The word "Chimpanzees," when capitalized, refers to each and every chimpanzee that was housed at MPF at any time during the Relevant Time Period.

10. The words "and" and "or" shall be construed either conjunctively or disjunctively as broadly as necessary to make the requests inclusive rather than exclusive. The word "including" shall be construed to mean without limitation.

11. "Communication" means any oral statement, dialogue, colloquy, discussion, correspondence or conversation, and also means any transfer of thoughts or ideas between persons by means of documents and includes any transfer of data from one location to another by electronic or similar means.

12. "Document" means all written, typed, or printed documents and tangible things and all magnetic, electronic, or other recording or documentation of any kind in your possession, custody, or control, whether or not prepared by you, that constitute or contain matters relevant to the subject matter of this arbitration. The term "document" includes, without limitation, books, papers, records, letters, notes, schedules, tabulations, vouchers, accounts, statements, financial statements, balance sheets, income or revenue statements, debt summaries, profit-and-loss statements, spreadsheets, data bases, affidavits, memoranda, records, communications, electronic mail ("e-mail"), text messages, minutes, reports, abstracts, agreements, contracts, calendars, drafts, drawings, photographs, blueprints, slides, sketches, video recordings, audio recordings (including voicemails), charts, graphs and similar items, including originals, copies, or reproductions of any kind, and shall also include any kind of transcript, transaction, or recording of any audio or visual presentation or communication of any kind. The term "document" shall further include other data compilations or Electronically Stored Information of any kind, including data or information that can be obtained or translated through detection devices or other means into any reasonably useable or readable format.

13. "Electronically Stored Information" or "ESI" means all documents that are stored in any electronic medium from which information can be obtained.

14.     "Relating to" or "related to" means directly or indirectly concerning, respecting, referring to, pertaining to, summarizing, digesting, embodying, reflecting, establishing, tending to establish, derogating from, tending not to establish, evidencing, not evidencing, comprising, connected with, commenting on, responding to, arising or resulting from, disagreeing with, showing, describing, analyzing, representing, constituting, including, or in any way legally, logically, or factually connected with the matter discussed.

## REQUESTS FOR PRODUCTION

1.      All documents relating to any chimpanzees in any of the Responding Parties' custody or control during any period of time during the Relevant Time Period.

**RESPONSE:**


2.      To the extent not already encompassed within the foregoing request, the Chimpanzees' veterinary records, including but not limited to clinical histories and necropsy reports.

**RESPONSE:**


3.      To the extent not already encompassed within the foregoing requests, all logs or other records documenting the Chimpanzees' day-to-day care and/or behavior.

**RESPONSE:**


4.      To the extent not already encompassed within the foregoing requests, all documents that set forth or regarding the Responding Parties' policies or practices with respect to caring for, feeding, watering, handling, training, or treating the Chimpanzees, including but not limited to food storage and handling.

**RESPONSE:**

5. To the extent not already encompassed within the foregoing requests, all documents that set forth or regarding the Responding Parties' policies or practices relating to cleaning and sanitizing chimpanzee enclosures and other facilities related to their feeding, husbandry, or care.

**RESPONSE**:


6. To the extent not already encompassed within the foregoing requests, all documents referring or relating to the maintenance of the Chimpanzees' enclosures, including but not limited to ventilation systems.

**RESPONSE**:


7. To the extent not already encompassed within the foregoing requests, all documents relating to licenses or permits, or applications for licenses or permits, any of the Responding Parties have received or submitted regarding the Chimpanzees.

**RESPONSE**:


8. To the extent not already encompassed within the foregoing requests, all documents referring or relating to the acquisition, disposition, boarding and/or transfer of the Chimpanzees (whether temporarily or permanently), including but not limited to communications referencing such acquisition, disposition and/or transfer, contracts, memoranda of understanding, and proof of payment, if any, including receipts, invoices, or records of banking transactions indicating the receipt or acceptance of funds received in exchange for a transferred chimpanzee, or any non-monetary compensation for the exchange.

**RESPONSE**:

9.     To the extent not already encompassed within the foregoing requests, all communications with, or from, State, Federal and/or local agencies or authorities referring or relating to the Chimpanzees.

**RESPONSE:**


10.     To the extent not already encompassed within the foregoing requests, all documents that set forth or regarding the Responding Parties' policies or practices relating to socializing chimpanzees.

**RESPONSE:**


11.     To the extent not already encompassed within the foregoing requests, all documents that set forth or regarding the Responding Parties' policies or practices relating to breeding chimpanzees, including relating to the separation of chimpanzees from their mothers.

**RESPONSE:**


12.     To the extent not already encompassed within the foregoing requests, all documents that set forth the Responding Parties' policies or practices relating to shifting or transporting chimpanzees.

**RESPONSE:**


13.     To the extent not already encompassed within the foregoing requests, all documents that set forth the Responding Parties' policies or practices relating to training, treating, controlling, correcting, or disciplining chimpanzees.

**RESPONSE:**


14.     To the extent not already encompassed within the foregoing requests, all

communications with, or from, members of the public (including visitors), referring or relating to the Chimpanzees.

**RESPONSE:**

15. To the extent not already encompassed within the foregoing requests, all communications with, or from, paid or unpaid (volunteer) staff, contractors, or other agents referring or relating to the Chimpanzees.

**RESPONSE:**

16. To the extent not already encompassed within the foregoing requests, all communications, with, or from, any of the parties in this case, referring or relating to the Chimpanzees.

**RESPONSE:**

17. To the extent not already encompassed within the foregoing requests, all photographs and videos depicting the chimpanzees or any of their enclosures or part(s) thereof.

**RESPONSE:**

18. To the extent not already encompassed within the foregoing requests, all training manuals, instructions, handouts, background documents, or other documents provided to or shared with volunteers or employees at MPF.

**RESPONSE:**

19. To the extent not already encompassed within the foregoing requests, all documents related to environmental enrichment for nonhuman primates, including but not limited to any plans for environment enhancement to promote the psychological well-being

of nonhuman primates and that address social housing, environmental enrichment, special considerations for nonhuman primates requiring special attention, and restraint devices.

**RESPONSE:**

20. To the extent not already encompassed within the foregoing requests, all documents related to a nutritional plan or feeding guidelines for chimpanzees.

**RESPONSE:**

21. To the extent not already encompassed within the foregoing requests, all certificates of veterinary inspection ("CVIs") and APHIS Forms 7020 related to your acquisition or disposition of any chimpanzees.

**RESPONSE:**

22. To the extent not already encompassed within the foregoing requests, all written programs of veterinary care relating to the Chimpanzees, including but not limited to APHIS Form 7002 and/or other records required to be maintained pursuant to the Animal Welfare Act.

**RESPONSE:**

23. To the extent not encompassed by the requests above, all documents reflecting budgets, expenses, and expenditures relating to the Chimpanzees' care.

**RESPONSE:**

24. MPF's profit and loss statements, accounting ledgers, or income statements for the last five (5) years.

**RESPONSE:**

25. MPF's state and federal income tax returns for the last five (5) years.

**RESPONSE:**


26. To the extent not already encompassed within the foregoing requests, all documents reviewed, consulted, referenced, and/or relied upon by the Responding Parties in answering interrogatories and requests for admission propounded by the Defendants and Counterclaim Plaintiffs to the Responding Parties.

**RESPONSE:**


27.    To the extent not already encompassed within the foregoing requests, all documents that reflect or support the contention in the March 21, 2017, Declaration of Connie Braun Casey (ECF No. 017-1), that the transfer of three chimpanzees was based on transfer discussions that occurred "well before the receipt of PETA's Notice of Intent to Sue."

**RESPONSE:**


28.    To the extent not already encompassed within the foregoing requests, all documents related to chimpanzees' status as endangered under the Endangered Species Act.

**RESPONSE:**


29.    To the extent not already encompassed within the foregoing requests, documents sufficient to show Responding Parties' sales or revenue related to the use, exhibition, or transfer of chimpanzees.

**RESPONSE:**

30.     To the extent not already encompassed within the foregoing requests, documents sufficient to show the identity of all current or former employees of the Responding Parties who had responsibilities for the care of any chimpanzees during the Relevant Time Period.

**RESPONSE**:


31.     To the extent not already encompassed within the foregoing requests, all documents related to Angela Scott, including but not limited to any communications with or related to her, any personnel records from her employment or her time as a volunteer at MPF, and any documents you provided to her or received from her.

**RESPONSE**:


32.     To the extent not already encompassed within the foregoing requests, all documents made during the course of any conversations or meetings regarding the instant litigation, including but not limited to notes, memoranda, or minutes.

**RESPONSE**:


33.     To the extent not already encompassed within the foregoing requests, all documents provided by the Responding Parties to any expert witnesses who may be called to testify on behalf of Plaintiffs at the trial of this matter.

**RESPONSE**:


Dated: February 23, 2018                    Respectfully submitted,



                                            /s/ Jared S. Goodman
                                            JARED S. GOODMAN (#1011876DC)
                                            (Admitted *pro hac vice*)
                                            PETA Foundation

2154 W. Sunset Blvd.
Los Angeles, CA 90032
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
MARISSA L. CURRAN (#61943)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/*
*Counterclaim Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on February 23, 2018, the forgoing requests for production were served by electronic mail on the following:

Kurtis B. Reeg
Goldberg Segalla
kreeg@goldbergsegalla.com

*Attorney for Plaintiffs/*
*Counterclaim Defendants*

/s/ Jared S. Goodman

| | | |
|---|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs and | ) | |
| Counterclaim Defendants, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-02163 |
| | ) | |
| PEOPLE FOR THE ETHICAL | ) | |
| TREATMENT OF ANIMALS, INC., et al., | ) | |
| | ) | |
| Defendants and | ) | |
| Counterclaim Plaintiffs. | ) | |

## COUNTERCLAIM PLAINTIFFS' SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS TO COUNTERCLAIM DEFENDANT CONNIE BRAUN CASEY

Pursuant to Federal Rule of Civil Procedure 34, Counterclaim Plaintiffs People for the Ethical Treatment of Animals, Inc. and Angela Scott request that Counterclaim Defendant Connie Braun Casey produce the following documents in her possession, custody, or control for inspection and/or copying within thirty days of service hereof to the office of Polsinelli, 100 S. Fourth Street, Suite 1000, St. Louis, MO 63102.

## INSTRUCTIONS AND DEFINITIONS

To the extent applicable, Plaintiffs incorporate by reference herein their Instructions and Definitions stated in Counterclaim Plaintiffs' Requests for Production of Documents to Counterclaim Defendants, served on February 23, 2018.

## REQUESTS FOR PRODUCTION

1.     All of the following documents kept by MPF or any of its representatives pursuant to Mo. Ann. Stat. § 355.821 during the Relevant Time Period, including:

a.  minutes of all meetings of MPF's members or board of directors;

b.  a record of all actions taken by MPF's members or directors without a meeting;

c.  a record of all actions taken by MPF's committees of the board of directors;

d.  MPF's accounting records;

e.  MPF's articles or restated articles of incorporation and all amendments to them, to the extent that they have not already been produced;

f.  MPF's bylaws or restated bylaws and all amendments to them;

g.  resolutions adopted by MPF's board of directors;

h.  the minutes of all meetings of MPF's members and records of all actions approved by the members;

i.  all written communications with all MPF's members or any specific class of members generally within the past three years, including the financial statements furnished for the past three years; and

j.  MPF's financial statements of all income and expenses

**RESPONSE**:



Dated: June 12, 2018                  Respectfully submitted,

                                      /s/ Jared S. Goodman
                                      JARED S. GOODMAN (#1011876DC)
                                      (Admitted *pro hac vice*)
                                      PETA Foundation
                                      2154 W. Sunset Blvd.
                                      Los Angeles, CA 90032
                                      323.210.2266
                                      Fax No: 213.484.1648
                                      jaredg@petaf.org

                                      MARTINA BERNSTEIN (#230505CA)
                                      PETA Foundation
                                      1536 16th St. NW
                                      Washington, DC 20036

202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/*
*Counterclaim Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that on June 12, 2018, the foregoing requests for production were served by electronic mail and regular mail as follows:

Geordie Duckler, geordied@animallawpractice.com
*Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

Brian Klar, bklar@lawsaintlouis.com
Daniel T. Batten, dbatten@lawsaintlouis.com
*Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

Missouri Primate Foundation
c/o Connie Braun Casey
12338 State Rd. CC
Festus, MO 63028

Vito Stramaeglia
ICS
832 Jones Creek Rd.
Dickson, TN 37055

/s/ Jared Goodman

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) |
| Plaintiffs and Counterclaim Defendants, | ) ) ) |
| v. | )     Case No. 4:16-cv-02163 ) |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) |
| Defendants and Counterclaim Plaintiffs. | ) ) |

## COUNTERCLAIM PLAINTIFFS' THIRD REQUESTS FOR PRODUCTION OF DOCUMENTS TO COUNTERCLAIM DEFENDANT CONNIE BRAUN CASEY

Pursuant to Federal Rule of Civil Procedure 34, Counterclaim Plaintiffs People for the Ethical Treatment of Animals, Inc. and Angela Scott ("Plaintiffs") request that Counterclaim Defendant Connie Braun Casey ("Responding Party") produce the following documents in her possession, custody, or control for inspection and/or copying within thirty days of service hereof to the office of Polsinelli, 100 S. Fourth Street, Suite 1000, St. Louis, MO 63102.

## DEFINITIONS

1.    "You" and "your" shall refer to the Responding Party and any representatives or agents acting on Responding Party's behalf.

2.    "MPF" refers to Missouri Primate Foundation and its representatives or agents acting on MPF's behalf. "MPF" refers to both the corporate entity and the fictitious name, whether or not registered with any government authority.

# REQUESTS FOR PRODUCTION

1.     All documents reflecting the alleged false, misleading and defamatory statements published by Plaintiffs upon which you rely in support of your purported claim for damages.

**RESPONSE:**

2.     All documents reflecting, or used by you to calculate, the alleged financial losses you claim to have suffered as a result of the alleged false, misleading and defamatory statements published by Plaintiffs.

**RESPONSE:**

3.   Your state and federal income tax returns for the last five (5) years.

**RESPONSE:**

Dated: June 25, 2018                  Respectfully submitted,

/s/ Martina Bernstein
MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

JARED S. GOODMAN (#1011876DC)
(Admitted *pro hac vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90032

323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/
Counterclaim Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on June 25, 2018, the foregoing was served by electronic mail and regular mail as follows:

Geordie Duckler, geordied@animallawpractice.com
*Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

Brian Klar, bklar@lawsaintlouis.com
Daniel T. Batten, dbatten@lawsaintlouis.com
*Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

Patrick J. Hanley, p.hanley@att.net
*Attorney for Plaintiff/Counterclaim Defendant Vito Stramaglia*

Missouri Primate Foundation
c/o Connie Braun Casey
12338 State Rd. CC
Festus, MO 63028

/s/ Jared Goodman

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) | |
| **Plaintiffs and** | ) | |
| **Counterclaim Defendants,** | ) ) | |
| v. | ) ) | Case No. 4:16-cv-02163 |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) | |
| **Defendants and** | ) | |
| **Counterclaim Plaintiffs.** | ) | |

## COUNTERCLAIM PLAINTIFFS' FOURTH REQUESTS FOR PRODUCTION OF DOCUMENTS TO COUNTERCLAIM DEFENDANT CONNIE BRAUN CASEY

Pursuant to Federal Rule of Civil Procedure 34, Counterclaim Plaintiffs People for the Ethical Treatment of Animals, Inc. and Angela Scott request that Counterclaim Defendant Connie Braun Casey produce the following documents in her possession, custody, or control for inspection and/or copying within thirty days of service hereof to the office of Polsinelli, 100 S. Fourth Street, Suite 1000, St. Louis, MO 63102.

## INSTRUCTIONS AND DEFINITIONS

To the extent applicable, Plaintiffs incorporate by reference herein their Instructions and Definitions stated in Counterclaim Plaintiffs' Requests for Production of Documents to Counterclaim Defendants, served on February 23, 2018.

# REQUESTS FOR PRODUCTION

1.    All communications between Casey (and/or any of her representatives), with any person or entity who is not a party in this case, relating to any primates who were housed at the facilities of Casey and/or the Missouri Primate Foundation, from 2015 to the present.

2.    All documents relating to the operation of Missouri Primate Foundation and/or Connie Casey's home/facility, including any permits, licenses, inspections, filings or any other documents, including, but not limited to, those maintained by any governmental entity.

3.    All documents and/or other things you have provided to any expert you intend to call as a witness at trial.

4.    All communications exchanged between you and any expert you intend to call as a witness at trial.

5.    All notes and/or other writings generated by any expert you intend to call as a witness at trial.

6.    All bills and/or invoices for services rendered by any expert witness you intend to call as a witness at trial in connection with this case.

7.    All documents that evidence communications, coordination, and/or the relationship generally between Casey and/or Missouri Primate Foundation and any expert witness Casey intends to call as a witness at trial.

8.    All documents evidencing the amount of attorneys' fees and/or other expenses incurred by Casey and/or the Missouri Primate Foundation in prosecuting and/or defending this action.

9.    All documents that represent public statements made about PETA and/or Angela Scott by Missouri Primate Foundation and/or Connie Casey.

10.    All documents evidencing interactions between "volunteers" or "visitors" and any primates at the facilities of Connie Casey and/or the Missouri Primate Foundation.

11.     Copies of any and all texts and/or writings you consider authoritative regarding the appropriate animal husbandry standards for the care of chimpanzees.

12.     All documents evidencing any communications between Casey, Missouri Primate Foundation or any of their representatives, with Dr. Doug Pernikoff and/or any attorney or agent of Dr. Doug Pernikoff.

13.     All documents evidencing any communications between Casey, Missouri Primate Foundation or any of their representatives, with Dr. Butch Jones and/or any attorney or agent of Dr. Butch Jones.

14.     All documents evidencing any effort on the part of Casey, Missouri Primate Foundation, or their agents and/or representatives to examine the criminal history of each employee or volunteer at MPF.

15.     All documents evidencing the criminal history of each employee or volunteer at MPF.

16.     All treatises, policies, rules, and/or other guidelines in your possession that you intend to rely on in this case referring to appropriate animal husbandry standards for the care of chimpanzees.

17.     All documents and/or other thing that you intend to use at trial.

18.     All documents reflecting the treatment or consultation regarding the health or welfare of any chimpanzees at Connie Casey's home/facility and/or the Missouri Primate Foundation facility from 2012 to the present.

19.     All documents evidencing instructions, communications, efforts to coordinate, and/or other directives concerning or evidencing activities, visits, investigations, research and/or other efforts to collect information about PETA and Angela Scott.

20.     All documents identifying any person or entity that Casey or any of her representatives have worked with and/or otherwise coordinated with to gather information concerning PETA and/or Angela Scott.

21.     All documents and/or things identified in any of your answers to interrogatories.

3

22. All documents and/or things generated in connection with the inspection of Connie Casey's premises on or about October 30, 2018.

23. All documents supporting or relating to your assertion that the claims against you "are moot in that any violation of the Endangered Species Act and/or the Animal Welfare Act and/or the regulations thereunder have been remedied."

24. All documents supporting or relating to your assertion that "Counterclaim Plaintiffs' claims for attorneys' fees are barred in that Counterclaim Plaintiff attorneys' fees are unreasonable and that the costs and litigation expenses incurred are not reasonable."

25. All documents supporting or relating to your assertion that "Counterclaim Plaintiffs lack an interest in the claims at issue sufficient to confer standing under Article III of the U.S. Constitution."

26. All documents supporting or relating to your assertion that "there is no injury sufficient to support standing in that any injury is contrived and/or manufactured for the purposes of litigation and that as a result Counterclaim Plaintiffs lack standing for the purposes of the claim at issue."

27. All documents supporting or relating to your assertion that "any effort to remove the chimpanzees at issue from their current home and/or living arrangements would represent a harm and/or create a likelihood of harm to the chimpanzees that would represent an improper 'taking' of the chimpanzees under the Endangered Species Act."

Dated: January 8, 2019            Respectfully submitted,

/s/ Jared S. Goodman
JARED S. GOODMAN (#1011876DC)
(Admitted *pro hac vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90032
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/
Counterclaim Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on January 8, 2019, the foregoing Counterclaim Plaintiffs' Fourth Requests for Production of Documents to Counterclaim Defendant Connie Braun Casey were served by electronic mail on:

Debbie S. Champion, dchampion@rssclaw.com
Victor Essen, vessen@rssclaw.com
*Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

Geordie Duckler, geordied@animallawpractice.com
*Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

/s/ Jared Goodman

MISSOURI PRIMATE FOUNDATION, et al.,

             Plaintiffs and Counterclaim
             Defendants;

    v.

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC., et al.,

             Defendants and
             Counterclaim Plaintiffs.

Case No. 4:16-cv-02163

# COUNTERCLAIM PLAINTIFFS' FIRST REQUESTS FOR ADMISSION TO COUNTERCLAIM DEFENDANT CONNIE BRAUN CASEY

Pursuant to Federal Rule of Civil Procedure 36, Counterclaim Plaintiffs People for the Ethical Treatment of Animals, Inc. and Angela Scott (together, "Counterclaim Plaintiffs") propound the following requests for admission to Counterclaim Defendant Connie Braun Casey, to be answered, and verified, in accordance with the federal and local rules and within thirty days of service hereof.

## INSTRUCTIONS AND DEFINITIONS

1.    The words "and" and "or" shall be construed either conjunctively or disjunctively as necessary to make the requests inclusive rather than exclusive. The word "including" shall be construed to mean without limitation.

2.    "Chimpanzees," when capitalized, refers to each and every chimpanzee that was housed at Missouri Primate Foundation ("MPF") at any time during the Relevant Time Period.

3.     "Relevant Time Period" refers to any time from November 2, 2010 to the present.

4.     "Structural enrichment" refers to enclosure design and furniture that add complexity to the environment and promote species-specific behavior (e.g. climbing, perching).

5.     "Object enrichment" refers to objects that encourage inspection and manipulation and promote species-specific behavior (e.g., nesting, tool-use).

6.     "Food enrichment" refers to varying food choices and food presentation, including the use of puzzles that increase food procurement time.

7.     "Social enrichment" refers to affiliative interactions between caregivers and apes (e.g., grooming and playing chase) made on an individual basis, considering only the social needs of the animal.

8.     "Species-typical behavior" refers to behaviors the species normally exhibits in a natural environment.

## MATTERS REQUESTED TO BE ADMITTED

1.     Confinement that fails to meet a chimpanzee's basic physiological needs can cause "harass[ment]" and/or "harm" as those terms are used in 16 U.S.C. § 1532(19) and defined by 50 C.F.R. § 17.3.

**RESPONSE:**


2.     Confinement that fails to meet a chimpanzee's basic behavioral needs can cause "harass[ment]" and/or "harm" as those terms are used in 16 U.S.C. § 1532(19) and defined by 50 C.F.R. § 17.3.

**RESPONSE:**

3.     Confinement that fails to meet a chimpanzee's basic psychological needs can cause "harass[ment]" and/or "harm" as those terms are used in 16 U.S.C. § 1532(19) and defined by 50 C.F.R. § 17.3.

**RESPONSE:**


4.     Confinement that fails to meet a chimpanzee's basic needs for physical enrichment can cause "harass[ment]" and/or "harm" as those terms are used in 16 U.S.C. § 1532(19) and defined by 50 C.F.R. § 17.3.

**RESPONSE:**


5.     Confinement that fails to meet a chimpanzee's basic needs for psychological enrichment can cause "harass[ment]" and/or "harm" as those terms are used in 16 U.S.C. § 1532(19) and defined by 50 C.F.R. § 17.3.

**RESPONSE:**


6.     Confinement that provides insufficient space to meet a chimpanzee's needs can cause "harass[ment]" and/or "harm" as those terms are used in 16 U.S.C. § 1532(19) and defined by 50 C.F.R. § 17.3.

**RESPONSE:**


7.     Confining chimpanzees in unsanitary conditions can cause "harass[ment]" and/or "harm" as those terms are used in 16 U.S.C. § 1532(19) and defined by 50 C.F.R. § 17.3.

**RESPONSE:**

8.     Failure to provide timely and appropriate veterinary care to chimpanzees in captivity can cause "harass[ment]" and/or "harm" as those terms are used in 16 U.S.C. § 1532(19) and defined by 50 C.F.R. § 17.3.

**RESPONSE:**


9.     Failure to provide a wholesome and nutritious diet to chimpanzees in captivity can cause "harass[ment]" and/or "harm" as those terms are used in 16 U.S.C. § 1532(19) and defined by 50 C.F.R. § 17.3.

**RESPONSE:**


10.     Confinement that fails to meet a chimpanzee's needs to engage in social relations with other members of their species can cause "harass[ment]" and/or "harm" as those terms are used in 16 U.S.C. § 1532(19) and defined by 50 C.F.R. § 17.3.

**RESPONSE:**


11.     Failure to provide chimpanzees in captivity with structural enrichment can cause "harass[ment]" and/or "harm" as those terms are used in 16 U.S.C. § 1532(19) and defined by 50 C.F.R. § 17.3.

**RESPONSE:**


12.     Failure to provide chimpanzees in captivity with adequate object enrichment can cause "harass[ment]" and/or "harm" as those terms are used in 16 U.S.C. § 1532(19) and defined by 50 C.F.R. § 17.3.

**RESPONSE:**

13.    Failure to provide chimpanzees in captivity with adequate food enrichment can cause "harass[ment]" and/or "harm" as those terms are used in 16 U.S.C. § 1532(19) and defined by 50 C.F.R. § 17.3.

**RESPONSE:**


14.    Failure to provide adequate social enrichment to chimpanzees in captivity can cause "harass[ment]" and/or "harm" as that term is used in 16 U.S.C. § 1532(19).

**RESPONSE:**


15.    Foraging is an essential species-typical behavior of chimpanzees.

**RESPONSE:**


16.    Nest-building is an essential species-typical behavior of chimpanzees.

**RESPONSE:**


17.    Climbing is an essential species-typical behavior of chimpanzees.

**RESPONSE:**


18.    Brachiating is an essential species-typical behavior of chimpanzees.

**RESPONSE:**


19.    Playing is an essential species-typical behavior of chimpanzees.

**RESPONSE:**


20.    Tool use is an essential species-typical behavior of chimpanzees.

**RESPONSE:**

21. Socializing is an essential species-typical behavior of chimpanzees.

**RESPONSE:**


22. When chimpanzees do not have the opportunity to forage in captivity, it significantly disrupts or impairs their normal behavioral patterns.

**RESPONSE:**


23. When chimpanzees do not have the opportunity to nest in captivity, it significantly disrupts or impairs their normal behavioral patterns.

**RESPONSE:**


24. When chimpanzees do not have the opportunity to climb in captivity, it significantly disrupts or impairs their normal behavioral patterns.

**RESPONSE:**


25. When chimpanzees do not have the opportunity to brachiate in captivity, it significantly disrupts or impairs their normal behavioral patterns.

**RESPONSE:**


26. When chimpanzees do not have the opportunity to play in captivity, it significantly disrupts or impairs their normal behavioral patterns.

**RESPONSE:**


27. When chimpanzees do not have the opportunity to use tools in captivity, it significantly disrupts or impairs their normal behavioral patterns.

**RESPONSE:**

28.     When chimpanzees do not have the opportunity to socialize in captivity, it significantly disrupts or impairs their normal behavioral patterns.

**RESPONSE:**


29.     When chimpanzees in captivity are removed too early from their mothers, it significantly disrupts or impairs the development of normal behavioral patterns.

**RESPONSE:**


30.     During the Relevant Time Period, the Chimpanzees' enclosures did not replicate chimpanzees' natural habitat.

**RESPONSE:**


31.     During the Relevant Time Period, the Chimpanzees' enclosures did not meet the minimum standards recommended by the Global Federation of Animal Sanctuaries to promote the well-being of chimpanzees in captivity.

**RESPONSE:**


32.     During the Relevant Time Period, the Chimpanzees' enclosures did not meet the minimum standards recommended by the Association of Zoos & Aquariums to promote the well-being of chimpanzees in captivity.

**RESPONSE:**


33.     During the Relevant Time Period, the Chimpanzees were not provided with an adequate program of structural enrichment.

**RESPONSE:**

34.     During the Relevant Time Period, the Chimpanzees were not provided with an adequate program of object enrichment.

**RESPONSE:**


35.     During the Relevant Time Period, the Chimpanzees were not provided with an adequate program of food enrichment.

**RESPONSE:**


36.     During the Relevant Time Period, the Chimpanzees were not provided with adequate social enrichment.

**RESPONSE:**


37.     The inability of captive chimpanzees to seek privacy from humans or other animals can lead to stress, anxiety, and risk of injury.

**RESPONSE:**


38.     During the Relevant Time Period, the Chimpanzees did not have the ability to seek privacy from humans or other animals.

**RESPONSE:**


39.     During the Relevant Time Period, the Chimpanzees were not housed in enclosures that approximate the complexity and variety of experiences that wild chimpanzees have.

**RESPONSE:**

40. During the Relevant Time Period, the Chimpanzees were not confined in a manner that met their basic behavioral needs.

**RESPONSE:**


41. During the Relevant Time Period, the Chimpanzees were not confined in a manner that met their basic psychological needs.

**RESPONSE:**


42. During the Relevant Time Period, the Chimpanzees' enclosures did not provide sufficient space to meet their needs.

**RESPONSE:**


43. During the Relevant Time Period, the Chimpanzees were housed in unsanitary conditions.

**RESPONSE:**


44. During the Relevant Time Period, the Chimpanzees were not provided with timely and appropriate veterinary care.

**RESPONSE:**


45. During the Relevant Time Period, the Chimpanzees did not have adequate opportunities to engage in foraging behavior.

**RESPONSE:**


46. During the Relevant Time Period, the Chimpanzees did not have adequate opportunities to engage in nest-building behavior.

**RESPONSE:**

47.     During the Relevant Time Period, the Chimpanzees did not have adequate opportunities to engage in climbing behavior.

**RESPONSE:**


48.     During the Relevant Time Period, the Chimpanzees did not have adequate opportunities to engage in brachiating behavior.

**RESPONSE:**


49.     During the Relevant Time Period, the Chimpanzees did not have adequate opportunities to engage in tool use behavior.

**RESPONSE:**


50.     During the Relevant Time Period, the Chimpanzees did not have adequate opportunities to engage in socializing behavior.

**RESPONSE:**


51.     During the Relevant Time Period, the Chimpanzees exhibited abnormal behavior patterns.

**RESPONSE:**


Dated: May 22, 2018                    Respectfully submitted,

                                       /s/ Jared S. Goodman
                                       JARED S. GOODMAN (#1011876DC)
                                       (Admitted *pro hac vice*)
                                       PETA Foundation
                                       2154 W. Sunset Blvd.
                                       Los Angeles, CA 90032

323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/*
*Counterclaim Plaintiffs*

## VERIFICATION

I, _____, hereby verify under penalty of perjury under the laws of the United States of America that the foregoing answers are true and correct to the best of my knowledge, information, and belief.

Executed on _____, 2018.

_____
Name

_____
Title

# CERTIFICATE OF SERVICE

I certify that on May 22, 2018, the foregoing requests for admission were served by electronic mail and regular mail as follows:

Geordie Duckler, geordied@animallawpractice.com
*Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

Brian Klar, bklar@lawsaintlouis.com
Daniel T. Batten, dbatten@lawsaintlouis.com
*Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

Missouri Primate Foundation
c/o Connie Braun Casey
12338 State Rd. CC
Festus, MO 63028

Vito Stramaeglia
ICS
832 Jones Creek Rd.
Dickson, TN 37055

/s/ Jared S. Goodman

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**MISSOURI PRIMATE FOUNDATION, et al.,**

     Plaintiffs and Counterclaim
     Defendants;

v.

**PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC., et al.,**

     Defendants and
     Counterclaim Plaintiffs.

**Case No. 4:16-cv-02163**

## COUNTERCLAIM PLAINTIFFS' SECOND REQUESTS FOR ADMISSION TO COUNTERCLAIM DEFENDANT CONNIE BRAUN CASEY

    Pursuant to Federal Rule of Civil Procedure 36, Counterclaim Plaintiffs People for the Ethical Treatment of Animals, Inc. and Angela Scott (together, "Counterclaim Plaintiffs") propound the following second requests for admission to Counterclaim Defendant Connie Braun Casey, to be answered, and verified, in accordance with the federal and local rules and within thirty days of service hereof.

### MATTERS REQUESTED TO BE ADMITTED

    1.  Admit the genuineness of the document attached to Counterclaim Plaintiffs' Second Requests for Admission to Counterclaim Defendant Missouri Primate Foundation, served on Counterclaim Defendants on February 23, 2018 (hereinafter "attached"), as Exhibit 1 (bearing Bates numbers PETA-00001 to PETA-00002).

**RESPONSE:**

2.      Admit the genuineness of the document attached as Exhibit 2 (bearing Bates number PETA-00003).

**RESPONSE:**


3.      Admit the genuineness of the document attached as Exhibit 3 (bearing Bates number PETA-00004).

**RESPONSE:**


4.      Admit the genuineness of the document attached as Exhibit 4 (bearing Bates numbers PETA-00005 to PETA-00006).

**RESPONSE:**


5.      Admit the genuineness of the document attached as Exhibit 5 (bearing Bates numbers PETA-00007 to PETA-00047).

**RESPONSE:**


6.      Admit the genuineness of the document attached as Exhibit 6 (bearing Bates numbers PETA-00048 to PETA-00053).

**RESPONSE:**


7.      Admit the genuineness of the document attached as Exhibit 7 (bearing Bates numbers PETA-00054 to PETA-00069).

**RESPONSE:**


8.      Admit the genuineness of the document attached as Exhibit 8 (bearing Bates numbers PETA-00070 to PETA-00072).

**RESPONSE:**

9.     Admit the genuineness of the document attached as Exhibit 9 (bearing Bates numbers PETA-00073 to PETA-00074).

**RESPONSE:**


10.     Admit the genuineness of the document attached as Exhibit 10 (bearing Bates numbers PETA-00075 to PETA-00086).

**RESPONSE:**


11.     Admit the genuineness of the document attached as Exhibit 11 (bearing Bates numbers PETA-00087 to PETA-00088).

**RESPONSE:**


12.     Admit the genuineness of the document attached as Exhibit 12 (bearing Bates number PETA-00089).

**RESPONSE:**


13.     Admit the genuineness of the document attached as Exhibit 13 (bearing Bates numbers PETA-00090 to PETA-00109).

**RESPONSE:**


14.     Admit the genuineness of the document attached as Exhibit 14 (bearing Bates numbers PETA-00110 to PETA-00111).

**RESPONSE:**


15.     Admit the genuineness of the document attached as Exhibit 15 (bearing Bates numbers PETA-00112 to PETA-00117).

**RESPONSE:**


16.     Admit the genuineness of the document attached as Exhibit 16 (bearing Bates numbers PETA-00118 to PETA-00119).

**RESPONSE:**


17.     Admit the genuineness of the document attached as Exhibit 17 (bearing Bates number PETA-00120).

**RESPONSE:**


18.     Admit the genuineness of the document attached as Exhibit 18 (bearing Bates number PETA-00121).

**RESPONSE:**


19.     Admit the genuineness of the document attached as Exhibit 19 (bearing Bates numbers PETA-00122 to PETA-00123).

**RESPONSE:**


20.     Admit the genuineness of the document attached as Exhibit 20 (bearing Bates number PETA-00124).

**RESPONSE:**


21.     Admit that the photograph bearing Bates number PETA-00013, described in the attached Exhibit 5 as "Feeder and enrichment item have not been cleaned/sanitized all summer," accurately portrays the condition and appearance of the depicted feeder and enrichment item on September 17, 2013.

**RESPONSE:**

22.     Admit that the photograph bearing Bates number PETA-00014, described in the attached Exhibit 5 as "Close up photo of: Feeder and enrichment item have not been cleaned/sanitized all summer," accurately portrays the condition and appearance of the depicted feeder and enrichment item on September 17, 2013.

**RESPONSE:**


23.     Admit that the photograph bearing Bates number PETA-00015, described in the attached Exhibit 5 as "Close up photo of: Feeder and enrichment item have not been cleaned/sanitized all summer," accurately portrays the condition and appearance of the depicted feeder and enrichment item on September 17, 2013.

**RESPONSE:**


24.     Admit that the photograph bearing Bates number PETA-00016, described in the attached Exhibit 5 as "Enrichment items inside enclosure have not been cleaned sanitized all summer," accurately portrays the condition and appearance of the enclosure and enrichment items inside the inspected enclosure on September 17, 2013.

**RESPONSE:**


25.     Admit that the photograph bearing Bates number PETA-00017, described in the attached Exhibit 5 as "Close up photo of: Enrichment items inside enclosure have not been cleaned sanitized all summer," accurately portrays the condition and appearance of the enclosure and enrichment items inside the inspected enclosure on September 17, 2013.

**RESPONSE:**

26.     Admit that the photograph bearing Bates number PETA-00018, described in the attached Exhibit 5 as "Water receptacle (used for enrichment-not drinking water) hasn't been cleaned/sanitized all summer," accurately portrays the condition and appearance of the receptacle on September 17, 2013.

**RESPONSE:**


27.     Admit that the photograph bearing Bates number PETA-00019, described in the attached Exhibit 5 as "Close up photo of: Water receptacle (used for enrichment-not drinking water) hasn't been cleaned/sanitized all summer," accurately portrays the condition and appearance of the receptacle on September 17, 2013.

**RESPONSE:**


28.     Admit that the photograph bearing Bates number PETA-00020, described in the attached Exhibit 5 as "Indoor enclosures have bedding and other debris caked on them," accurately portrays the condition and appearance of the bedding on September 17, 2013.

**RESPONSE:**


29.     Admit that the photograph bearing Bates number PETA-00021, described in the attached Exhibit 5 as "Close up photo of: Indoor enclosures have bedding and other debris caked on them," accurately portrays the condition and appearance of the bedding on September 17, 2013.

**RESPONSE:**


30.     Admit that the photograph bearing Bates number PETA-00022, described in the attached Exhibit 5 as "Open bag of food. Area around food not being cleaned. Misc

junk and random items," accurately portrays the condition and appearance of the inspected area on September 17, 2013.

**RESPONSE:**

31. Admit that the photograph bearing Bates number PETA-00023, described in the attached Exhibit 5 as "Close up photo of: Open bag of food. Area around food not being cleaned. Misc junk and random items," accurately portrays the condition and appearance of the inspected area on September 17, 2013.

**RESPONSE:**

32. Admit that the photograph bearing Bates number PETA-00024, described in the attached Exhibit 5 as "Another view of: Open bag of food. Area around food not being cleaned. Misc junk and random items. Rodent droppings," accurately portrays the condition and appearance of the inspected area on September 17, 2013.

**RESPONSE:**

33. Admit that the photograph bearing Bates number PETA-00025, described in the attached Exhibit 5 as "Close up photo of: Another view of: Open bag of food. Area around food not being cleaned. Misc junk and random items. Rodent droppings," accurately portrays the condition and appearance of the inspected area on September 17, 2013.

**RESPONSE:**

34. Admit that the photograph bearing Bates number PETA-00026, described in the attached Exhibit 5 as "Overview of: Area around food not being cleaned. Misc junk and random items," accurately portrays the condition and appearance of the inspected area on September 17, 2013.

**RESPONSE:**


35.     Admit that the photograph bearing Bates number PETA-00027, described in the attached Exhibit 5 as "More junk and clutter in animal housing room. Area not being cleaned very well. Rodent droppings," accurately portrays the condition and appearance of the animal housing room on September 17, 2013.

**RESPONSE:**


36.     Admit that the photograph bearing Bates number PETA-00028, described in the attached Exhibit 5 as "Close up photo of: More junk and clutter in animal housing room. Area not being cleaned very well. Rodent droppings," accurately portrays the condition and appearance of the animal housing room on September 17, 2013.

**RESPONSE:**


37.     Admit that the photograph bearing Bates number PETA-00029, described in the attached Exhibit 5 as "Licensee stated she cannot clean/sanitize dirt/grime from wall of indoor enclosure because animal is too aggressive to allow her in cage," accurately portrays the condition and appearance of the depicted enclosure on September 17, 2013.

**RESPONSE:**


38.     Admit that the photograph bearing Bates number PETA-00030, described in the attached Exhibit 5 as "Close up photo of: Licensee stated she cannot clean/sanitize dirt/grime from wall of indoor enclosure because animal is too aggressive to allow her in cage," accurately portrays the condition and appearance of the depicted enclosure on September 17, 2013.

**RESPONSE:**

39.     Admit that the photograph bearing Bates number PETA-00031, described in the attached Exhibit 5 as "Junction between wall and ceiling in indoor enclosure is not being cleaned sanitized appropriately," accurately portrays the condition and appearance of the junction between wall and ceiling in the indoor enclosure on September 17, 2013.

**RESPONSE:**


40.     Admit that the photograph bearing Bates number PETA-00032, described in the attached Exhibit 5 as "Close up photo of: Junction between wall and ceiling in indoor enclosure is not being cleaned sanitized appropriately," accurately portrays the condition and appearance of the junction between wall and ceiling in the indoor enclosure on September 17, 2013.

**RESPONSE:**


41.     Admit that the photograph bearing Bates number PETA-00033, described in the attached Exhibit 5 as "Bedding is stored outside, on the ground and against a wall," accurately portrays the condition and appearance of the stored bedding on September 17, 2013.

**RESPONSE:**


42.     Admit that the photograph bearing Bates number PETA-00034, described in the attached Exhibit 5 as "Trash receptacle (on right) has no lid and is right next to a lot of clutter. Note rodent droppings on floor," accurately portrays the condition and appearance of the inspected area on September 17, 2013.

**RESPONSE:**


43.     Admit that the photograph bearing Bates number PETA-00035, described in the attached Exhibit 5 as "Trash receptacle (in animal housing room) has no lid,"

accurately portrays the condition and appearance of the trash receptacle in the animal housing room on September 17, 2013.

**RESPONSE:**


44.    Admit that the photograph bearing Bates number PETA-00036, described in the attached Exhibit 5 as "Sharp points protruding into enclosure," accurately portrays the condition and appearance of the sharp points protruding into the depicted enclosure on September 17, 2013.

**RESPONSE:**


45.    Admit that the photograph bearing Bates number PETA-00037, described in the attached Exhibit 5 as "Singly-housed baboon has excessive hairloss on arms, legs, and tail," accurately portrays the condition and appearance of the depicted baboon on September 17, 2013.

**RESPONSE:**


46.    Admit that the photograph bearing Bates number PETA-00038, described in the attached Exhibit 5 as "Food on enclosure floor is attracting ants," accurately portrays the condition and appearance of the depicted enclosure floor on September 17, 2013.

**RESPONSE:**


47.    Admit that the photograph bearing Bates number PETA-00039, described in the attached Exhibit 5 as "Close up photo of: Food on enclosure floor is attracting ants," accurately portrays the condition and appearance of the depicted enclosure floor on September 17, 2013.

**RESPONSE:**

48. Admit that the photograph bearing Bates number PETA-00040, described in the attached Exhibit 5 as "Feeder is permanently attached so it cannot be readily cleaned and sanitized," accurately portrays the condition and appearance of the depicted feeder on September 17, 2013.

**RESPONSE:**


49. Admit that the photograph bearing Bates number PETA-00041, described in the attached Exhibit 5 as "Close up photo of: Feeder is permanently attached so it cannot be readily cleaned and sanitized," accurately portrays the condition and appearance of the depicted feeder on September 17, 2013.

**RESPONSE:**


50. Admit that the photograph bearing Bates number PETA-00042, described in the attached Exhibit 5 as "Feeder is permanently attached and licensee states animal is aggressive so it cannot be readily cleaned and sanitized," accurately portrays the condition and appearance of the depicted feeder on September 17, 2013.

**RESPONSE:**


51. Admit that the photograph bearing Bates number PETA-00043, described in the attached Exhibit 5 as "Close up photo of: Feeder is permanently attached and licensee states animal is aggressive so it cannot be readily cleaned and sanitized," accurately portrays the condition and appearance of the depicted feeder on September 17, 2013.

**RESPONSE:**


52. Admit that the photograph bearing Bates number PETA-00044, described in the attached Exhibit 5 as "Water bottle was empty. When it got filled, two capuchins

drank more than half the bottle in less than 3 minutes," accurately portrays the condition and appearance of the depicted water bottle on September 17, 2013.

**RESPONSE:**


53.     Admit that the photograph bearing Bates number PETA-00045, described in the attached Exhibit 5 as "Mouse in housing room faintly viewable behind board which is furthest to the right," accurately portrays the condition and appearance of the housing room on September 17, 2013.

**RESPONSE:**


54.     Admit that the photograph bearing Bates number PETA-00046, described in the attached Exhibit 5 as "Close up photo of: Trash receptacle (on right) has no lid and is right next to a lot of clutter. Note rodent droppings on the floor," accurately portrays the condition and appearance of the inspected area on September 17, 2013.

**RESPONSE:**


55.     Admit that the photograph bearing Bates number PETA-00047, described in the attached Exhibit 5 as "Trash with no lid and open bag near primate enclosures," accurately portrays the condition and appearance of the area near the primate enclosures on September 17, 2013.

**RESPONSE:**


56.     Admit that the photographs bearing Bates number PETA-00059, described in the attached Exhibit 7 as "Close up photo of: Sharp points formed by broken/bent fine wire. Fencing of enclosure wall is not being cleaned/sanitized properly," accurately portray the condition and appearance of the inspected enclosure on January 7, 2014.

**RESPONSE:**

12

57. Admit that the photograph bearing Bates number PETA-00060, described in the attached Exhibit 7 as "Sharp points formed by broken/bent wire. Fencing of enclosure wall is not being cleaned/sanitized properly," accurately portrays the condition and appearance of the inspected enclosure on January 7, 2014.

**RESPONSE:**


58. Admit that the photograph bearing Bates number PETA-00060, described in the attached Exhibit 7 as "Sharp points formed by broken/bent wire on right side of enclosure. Brown material caked on fencing of capuchin enclosure," accurately portrays the condition and appearance of the inspected enclosure on January 7, 2014.

**RESPONSE:**


59. Admit that the photograph bearing Bates number PETA-00061, described in the attached Exhibit 7 as "Feeder is not being cleaned/sanitized properly," accurately portrays the condition and appearance of the inspected enclosure on January 7, 2014.

**RESPONSE:**


60. Admit that the photograph bearing Bates number PETA-00062, described in the attached Exhibit 7 as "Close up photo of: Feeder is not being cleaned/sanitized properly," accurately portrays the condition and appearance of the inspected enclosure on January 7, 2014.

**RESPONSE:**


61. Admit that the photograph bearing Bates number PETA-00063, described in the attached Exhibit 7 as "Adult, female chimpanzee, 'Crystal', has excessive hair loss

on arms, legs, chest, and belly," accurately portrays the condition and appearance of the chimpanzee named Crystal on January 7, 2014.

**RESPONSE:**


62.    Admit that the photograph bearing Bates number PETA-00064, described in the attached Exhibit 7 as "Adult, female chimpanzee, 'Tammy', has excessive, generalized hair loss," accurately portrays the condition and appearance of the chimpanzee named Tammy on January 7, 2014.

**RESPONSE:**


63.    Admit that the photograph bearing Bates number PETA-00065, described in the attached Exhibit 7 as "Adult, female baboon, 'Leona', is singly housed and has excessive hair loss on arms and legs. The enrichment program does not address her needs as an individually housed animal," accurately portrays the condition and appearance of the baboon named Leona on January 7, 2014.

**RESPONSE:**


64.    Admit that the photograph bearing Bates number PETA-00066, described in the attached Exhibit 7 as "An adult cinnamon capuchin, 'Coco', has excessive hair loss on her hind end, near the base of her tail," accurately portrays the condition and appearance of the capuchin named Coco on January 7, 2014.

**RESPONSE:**


65.    Admit that the photograph bearing Bates number PETA-00067, described in the attached Exhibit 7 as "Trash is not a receptacle with a tight fitting lid," accurately portrays the condition and appearance of trash on the inspection site on January 7, 2014.

**RESPONSE:**

66.     Admit that the photograph bearing Bates number PETA-00068, described in the attached Exhibit 7 as "Debris and waste collecting in corner of pink room just a few feet away from animal enclosure," accurately portrays the condition and appearance of debris and waste collecting in the corner of the pink room on January 7, 2014.

**RESPONSE:**


67.     Admit that the photograph bearing Bates number PETA-00069, described in the attached Exhibit 7 as "Enriching items, including perch and toy are not being cleaned/sanitized properly," accurately portrays the condition and appearance of the depicted enriching items on January 7, 2014.

**RESPONSE:**


68.     Admit that the photograph bearing Bates number PETA-00078, described in the attached Exhibit 10 as "Open bag of food in animal area is not in a container with a tight fitting lid," accurately portrays the condition and appearance of the inspected animal area on April 29, 2014.

**RESPONSE:**


69.     Admit that the photograph bearing Bates number PETA-00079, described in the attached Exhibit 10 as "Bedding in tortoise enclosure, directly adjacent to chimp enclosure is not getting cleaned properly," accurately portrays the condition and appearance of the bedding in the tortoise enclosure on April 29, 2014.

**RESPONSE:**


70.     Admit that the photograph bearing Bates number PETA-00080, described in the attached Exhibit 10 as "Close up photo of: Bedding in tortoise enclosure, directly

adjacent to chimp enclosure is not getting cleaned properly," accurately portrays the condition and appearance of the bedding in the tortoise enclosure on April 29, 2014.

**RESPONSE:**

71.     Admit that the photograph bearing Bates number PETA-00081, described in the attached Exhibit 10 as "Catch pan just a couple of inches beneath wire floor in outdoor shelter has an accumulation of old waste/feces," accurately portrays the condition and appearance of the inspected area on April 29, 2014.

**RESPONSE:**

72.     Admit that the photograph bearing Bates number PETA-00082, described in the attached Exhibit 10 as "Close up photo of: Catch pan just a couple of inches beneath wire floor in outdoor shelter has an accumulation of old waste/feces," accurately portrays the condition and appearance of the inspected area on April 29, 2014.

**RESPONSE:**

73.     Admit that the photograph bearing Bates number PETA-00083, described in the attached Exhibit 10 as "Dirty rag hanging on chimpanzee enclosure wall," accurately portrays the condition and appearance of the depicted rag hanging on the chimpanzee enclosure wall on April 29, 2014.

**RESPONSE:**

74.     Admit that the photograph bearing Bates number PETA-00084, described in the attached Exhibit 10 as "Close up photo of: Dirty rag hanging on chimpanzee enclosure wall," accurately portrays the condition and appearance of the depicted rag hanging on the chimpanzee enclosure wall on April 29, 2014.

**RESPONSE:**

75. Admit that the photograph bearing Bates number PETA-00085, described in the attached Exhibit 10 as "Chimpanzee enclosure in 'pink room' is not being cleaned/sanitized properly," accurately portrays the condition and appearance of the "pink room" on April 29, 2014.

**RESPONSE:**


76. Admit that the photograph bearing Bates number PETA-00086, described in the attached Exhibit 10 as "Close up photo of: Chimpanzee enclosure in 'pink room' is not being cleaned/sanitized properly," accurately portrays the condition and appearance of the "pink room" on April 29, 2014.

**RESPONSE:**


77. Admit that the photographs bearing Bates numbers PETA-00093 to PETA-00094, described in the attached Exhibit 13 as "Several cockroaches in the corner of the chimpanzee green enclosure," accurately portray the condition and appearance of the corner of the chimpanzee green enclosure on October 29, 2014.

**RESPONSE:**


78. Admit that the photograph bearing Bates number PETA-00095, described in the attached Exhibit 13 as "Several cockroaches on the frame of the chimpanzee green enclosure," accurately portrays the condition and appearance of the frame of the chimpanzee green enclosure on October 29, 2014.

**RESPONSE:**


79. Admit that the photographs bearing Bates numbers PETA-00096 to PETA-00097, described in the attached Exhibit 13 as "Collection of miscellaneous items in the

corner of green enclosure viewing room," accurately portray the condition and appearance of the corner of the green enclosure viewing room on October 29, 2014.

**RESPONSE:**


80.    Admit that the photograph bearing Bates number PETA-00098, described in the attached Exhibit 13 as "Gibbon housing shelter had dirt and grime built up," accurately portrays the condition and appearance of the gibbon housing shelter on October 29, 2014.

**RESPONSE:**


81.    Admit that the photograph bearing Bates number PETA-00099, described in the attached Exhibit 13 as "Close up of gibbon housing shelter with dirt and grime build up in the corner," accurately portrays the condition and appearance of a corner of the gibbon housing shelter on October 29, 2014.

**RESPONSE:**


82.    Admit that the photographs bearing Bates numbers PETA-00100 to PETA-00101, described in the attached Exhibit 13 as "Macaques' enclosure with debris and fecal material on the floor," accurately portray the condition and appearance of the macaques' enclosure on October 29, 2014.

**RESPONSE:**


83.    Admit that the photograph bearing Bates number PETA-00102, described in the attached Exhibit 13 as "Build up of trash in chimpanzee connector tunnels," accurately portrays the condition and appearance of the chimpanzee connector tunnels on October 29, 2014.

**RESPONSE:**

84.     Admit that the photograph bearing Bates number PETA-00103, described in the attached Exhibit 13 as "Build up of trash and waste in chimpanzee connector tunnels," accurately portrays the condition and appearance of the chimpanzee connector tunnels on October 29, 2014.

**RESPONSE:**


85.     Admit that the photograph bearing Bates number PETA-00104, described in the attached Exhibit 13 as "On the bottom of Joey's enclosure, there was a build up of food waste," accurately portrays the condition and appearance of the bottom of Joey's enclosure on October 29, 2014.

**RESPONSE:**


86.     Admit that the photograph bearing Bates number PETA-00105, described in the attached Exhibit 13 as "In the pink room, line of grime above the top of the enclosure," accurately portrays the condition and appearance of the pink room on October 29, 2014.

**RESPONSE:**


87.     Admit that the photograph bearing Bates number PETA-00106, described in the attached Exhibit 13 as "In the pink room, close up of line of grime above the top of the enclosure," accurately portrays the condition and appearance of the pink room on October 29, 2014.

**RESPONSE:**


88.     Admit that the photograph bearing Bates number PETA-00107, described in the attached Exhibit 13 as "Line of dirt and grime at the base of chimpanzee enclosure

on the floor of pink room," accurately portrays the condition and appearance of the pink room on October 29, 2014.

**RESPONSE:**


89.    Admit that the photograph bearing Bates number PETA-00108, described in the attached Exhibit 13 as "Mister pipe covered in flyspeck," accurately portrays the condition and appearance of the inspected area on October 29, 2014.

**RESPONSE:**


90.    Admit that the photograph bearing Bates number PETA-00109, described in the attached Exhibit 13 as "Cobwebs and dust on vents in the pink room," accurately portrays the condition and appearance of the vents in the pink room on October 29, 2014.

**RESPONSE:**


91.    Admit that the photographs bearing Bates numbers PETA-00115 to PETA-00116, described in the attached Exhibit 15 as "Buildup of dirt and grime on metal bar and blue wooden border," accurately portray the condition and appearance of the inspected area on December 9, 2014.

**RESPONSE:**


92.    Admit that the photograph bearing Bates number PETA-00117, described in the attached Exhibit 15 as "Buildup of dirt and grime on metal bars within enclosure," accurately portrays the condition and appearance of the inspected area on December 9, 2014.

**RESPONSE:**

Dated: May 22, 2018                    Respectfully submitted,

/s/ Jared S. Goodman
JARED S. GOODMAN (#1011876DC)
(Admitted *pro hac vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90032
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/*
*Counterclaim Plaintiffs*

## VERIFICATION

I, _____, hereby verify under penalty of perjury under the laws of the United States of America that the foregoing answers are true and correct to the best of my knowledge, information, and belief.

Executed on _____, 2018.

_____
Name

_____
Title

# CERTIFICATE OF SERVICE

I certify that on May 22, 2018, the foregoing requests for admission were served by electronic mail and regular mail as follows:

Geordie Duckler, geordied@animallawpractice.com
*Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

Brian Klar, bklar@lawsaintlouis.com
Daniel T. Batten, dbatten@lawsaintlouis.com
*Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

Missouri Primate Foundation
c/o Connie Braun Casey
12338 State Rd. CC
Festus, MO 63028

Vito Stramaeglia
ICS
832 Jones Creek Rd.
Dickson, TN 37055

/s/ Jared S. Goodman

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) | |
| v. | ) ) ) | Case No. 4:16-cv-02163 |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) | |
| Defendants and Counterclaim Plaintiffs. | ) ) ) | |

## COUNTERCLAIM PLAINTIFFS' THIRD REQUESTS FOR ADMISSION TO COUNTERCLAIM DEFENDANT CONNIE BRAUN CASEY

Pursuant to Federal Rule of Civil Procedure 36, Counterclaim Plaintiffs People for the Ethical Treatment of Animals, Inc. and Angela Scott (together, "Counterclaim Plaintiffs") propound the following second requests for admission to Counterclaim Defendant Connie Braun Casey, to be answered, and verified, in accordance with the federal and local rules and within thirty days of service hereof.

### MATTERS REQUESTED TO BE ADMITTED

1. Admit the genuineness of the document attached to Counterclaim Plaintiffs' Memorandum in Opposition to Counterclaim Defendants' Motion to Strike, as Exhibit 1, titled "Notice of Federal Tax Lien." [ECF No. 35-1, at 2.]

**RESPONSE:**

2.    Admit the genuineness of the document attached to Counterclaim Plaintiffs'
Memorandum in Opposition to Counterclaim Defendants' Motion to Strike, as Exhibit 1, titled
"Certificate of Tax Lien – Individual Income Tax." [ECF No. 35-1, at 4.]

**RESPONSE:**

Dated: June 12, 2018                    Respectfully submitted,

                                        /s/ Jared S. Goodman
                                        JARED S. GOODMAN (#1011876DC)
                                        (Admitted *pro hac vice*)
                                        PETA Foundation
                                        2154 W. Sunset Blvd.
                                        Los Angeles, CA 90032
                                        323.210.2266
                                        Fax No: 213.484.1648
                                        jaredg@petaf.org

                                        MARTINA BERNSTEIN (#230505CA)
                                        PETA Foundation
                                        1536 16th St. NW
                                        Washington, DC 20036
                                        202.483.7382
                                        Fax No: 202.540.2208
                                        martinab@petaf.org

                                        POLSINELLI PC
                                        JAMES P. MARTIN (#50170)
                                        KELLY J. MUENSTERMAN (#66968)
                                        100 S. Fourth Street, Suite 1000
                                        St. Louis, MO 63102
                                        314.889.8000
                                        Fax No: 314.231.1776
                                        jmartin@polsinelli.com

                                        *Attorneys for Defendants/*
                                        *Counterclaim Plaintiffs*

**VERIFICATION**

I, _Connie Casey_, hereby verify under penalty of perjury under the laws of the United States of America that the foregoing answers are true and correct to the best of my knowledge, information, and belief.

Executed on _June 14_, 2018.

_Connie Casey_
Name

_individual_
Title

3

# CERTIFICATE OF SERVICE

I certify that on June 12, 2018, the foregoing requests for admission were served by electronic mail and regular mail as follows:

Geordie Duckler, geordied@animallawpractice.com
*Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

Brian Klar, bklar@lawsaintlouis.com
Daniel T. Batten, dbatten@lawsaintlouis.com
*Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

Missouri Primate Foundation
c/o Connie Braun Casey
12338 State Rd. CC
Festus, MO 63028

Vito Stramaeglia
ICS
832 Jones Creek Rd.
Dickson, TN 37055


/s/ Jared S. Goodman

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) |
| Plaintiffs and Counterclaim Defendants, | ) ) ) |
| v. | ) ) |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) |
| Defendants and Counterclaim Plaintiffs. | ) ) ) |

Case No. 4:16-cv-02163

## COUNTERCLAIM PLAINTIFFS' FOURTH REQUESTS FOR ADMISSION TO COUNTERCLAIM DEFENDANT CONNIE BRAUN CASEY

Pursuant to Federal Rule of Civil Procedure 36, Counterclaim Plaintiffs People for the Ethical Treatment of Animals, Inc. and Angela Scott (together, "Counterclaim Plaintiffs") propound the following requests for admission to Counterclaim Defendant Connie Braun Casey, to be answered, and verified, in accordance with the federal and local rules and within thirty days of service hereof.

### DEFINITIONS

"MPF" refers to Missouri Primate Foundation.

"Casey" refers to Counterclaim Defendant Connie Braun Casey.

### MATTERS REQUESTED TO BE ADMITTED

1.     The MPF board of directors did not hold any meetings during MPF's existence as a Missouri nonprofit corporation and before MPF was administratively dissolved.

1

2.     MPF did not maintain minutes of any meetings of its board of directors during its existence as a Missouri nonprofit corporation and before it was administratively dissolved.

3.     The MPF board of directors took no actions during MPF's existence as a Missouri nonprofit corporation and before MPF was administratively dissolved.

4.     MPF did not maintain any records of actions taken by MPF's board of directors during MPF's existence as a Missouri nonprofit corporation and before MPF was administratively dissolved.

5.     MPF did not adopt any resolutions during its existence as a Missouri nonprofit corporation and before MPF was administratively dissolved.

6.     MPF did not maintain any accounting records during its existence as a Missouri nonprofit corporation and before MPF was administratively dissolved.

7.     MPF's funds or other assets were not kept separate from those of Casey during MPF's existence as a Missouri nonprofit corporation and before MPF was administratively dissolved.

8.     Casey exercised total control over MPF during MPF's existence as a Missouri nonprofit corporation and before MPF was administratively dissolved.

9.     Casey exercised ultimate power over all of MPF's corporate decision-making during MPF's existence as a Missouri nonprofit corporation and before MPF was administratively dissolved.

10.     Casey made use of funds donated to MPF as she saw fit during MPF's existence as a Missouri nonprofit corporation and before MPF was administratively dissolved.

11.     The MPF board of directors never questioned Casey's use of funds donated to MPF during MPF's existence as a Missouri nonprofit corporation and before MPF was administratively dissolved.

12.     Casey never consulted the MPF board of directors about any decisions she made with respect to MPF during MPF's existence as a Missouri nonprofit corporation and before MPF was administratively dissolved.

13.     Casey did not consult with the MPF board of directors before MPF filed a lawsuit against the Counterclaim Plaintiffs.

14.     After Kurtis Reeg withdrew as counsel for MPF in the above-captioned lawsuit, Casey did not consult with the MPF board of directors about her decision that MPF would not retain substitute counsel to represent MPF.

15.     No member of MPF's board of directors ever questioned any decisions Casey made with respect to MPF during MPF's existence as a Missouri nonprofit corporation and before MPF was administratively dissolved.

16.     After MPF was administratively dissolved, the MPF board of directors took no action to wind up and liquidate MPF's affairs.

17.     After MPF was administratively dissolved, Casey did not consult the MPF board of directors with respect to minimizing MPF's liabilities.

18.     After MPF was administratively dissolved, the MPF board of directors took no action to discharge MPF's potential liabilities and obligations.

19.     After MPF was administratively dissolved, Casey did not consult the MPF board of directors with respect to MPF's potential liabilities and obligations.

20.     No steps were taken to preserve and protect MPF's assets following its administrative dissolution.

21.     After MPF was administratively dissolved, no provisions were made for the payment of liabilities of MPF that MPF may incur as a result of the claims by the Counterclaim Plaintiffs against MPF.

22. After MPF was administratively dissolved, Casey exercised total control over the actions and conduct by the dissolved MPF entity.

23. After MPF was administratively dissolved, Casey exercised ultimate power over all decision-making by the dissolved MPF entity.

Dated: October 18, 2018

Respectfully submitted,

/s/ Martina Bernstein
MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

JARED S. GOODMAN (#1011876DC)
(Admitted *pro hac vice*)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90032
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/*
*Counterclaim Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on October 18, 2018, the foregoing was served by electronic mail on:

Debbie S. Champion, dchampion@rssclaw.com
Victor Essen, vessen@rssclaw.com
*Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

Geordie Duckler, geordied@animallawpractice.com
*Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

/s/ Jared Goodman