```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE EASTERN DISTRICT OF MISSOURI
 3
 4    MISSOURI PRIMATE FOUNDATION, et al.,
 5                 Plaintiff,
 6
 7    vs.                          No. 4:16-cv-02163-CDP
 8
 9    PEOPLE FOR THE ETHICAL TREATMENT
10    OF ANIMALS, INC., et al.,
11                 Defendant.
12    _____
13
14
15        Deposition of LISA HARNED, taken on behalf of
16    the Defendant, at the offices of Polsinelli, 100
17    S. Fourth Street, Suite 1000, in the City of
18    St. Louis, State of Missouri, on the 16th day of
19    October, 2018, before Kristine A. Toennies, RMR,
20    CRR, CRC, CCR (MO), CSR (IL & IA), and Notary
21    Public.
22
23
24    Job No. 3009296
25    Pages 1 - 244
```

Veritext Legal Solutions
866 299-5127

EXHIBIT
E

| | |
|---|---|
| 1 A I have an e-mail address, but I don't use it<br>2 because I don't know how to use it is what I'm<br>3 trying to say. I know I have one but I don't.<br>4 Q Well, who did you speak with about your<br>5 deposition today?<br>6 A Who did I speak with? Well, my mom and the<br>7 lawyer, my mom's lawyer, that I had a deposition,<br>8 and my husband.<br>9 Q What's the name of your husband?<br>10 A Kevin Harned.<br>11 Q And you spoke to Connie Casey, your mother?<br>12 A Yes.<br>13 Q And what did you discuss?<br>14 A That I had a deposition.<br>15 Q And you spoke with Ms. Casey's attorneys?<br>16 A Yeah.<br>17 Q Was that Mr. Essen?<br>18 A Yes.<br>19 Q And Ms. Champion?<br>20 A Yes.<br>21 Q And when did you speak with them?<br>22 A I spoke with them a little bit yesterday.<br>23 Q Both of them?<br>24 A Yes.<br>25 Q Was that in person or by phone?<br>Page 6 | 1 A A friend.<br>2 Q You don't know her last name?<br>3 A No. I know it starts with an H, I think.<br>4 Q And who was the other friend or the other<br>5 person you identified?<br>6 A Penny.<br>7 Q Penny?<br>8 A Uh-huh.<br>9 Q Do you know her last name?<br>10 A No. And Byron.<br>11 Q Do you know why they were there since they<br>12 were not subpoenaed?<br>13 A Because we're all friends, and you know.<br>14 Q Why did they come to the lawyer's office?<br>15 MR. ESSEN: I just object to foundation,<br>16 speculation, but subject to that, go ahead.<br>17 Q (By Ms. Bernstein) Why did they come to the<br>18 lawyer's office with you?<br>19 A To figure out exactly what's going on here<br>20 because....<br>21 Q How are they involved in this case?<br>22 A Because they're friends and they've been<br>23 helping.<br>24 Q Helping with what?<br>25 A With -- at my mom's and stuff.<br>Page 8 |
| 1 A Person.<br>2 Q Did you meet them at their office?<br>3 A Yes.<br>4 Q Did they show you any documents?<br>5 A No.<br>6 Q For how long did you meet?<br>7 A I don't remember. A couple hours or so.<br>8 Q And during those hours did they ask you any<br>9 questions?<br>10 A No.<br>11 Q Did you ask them questions?<br>12 A I did.<br>13 Q And what were you asking them?<br>14 A Just what to expect because I've never been<br>15 depositioned, so I was very nervous and not knowing<br>16 what to expect.<br>17 Q And for those two hours that you met with<br>18 them, what else did you discuss?<br>19 A Just what, you know, you might ask as far as<br>20 the stuff here because I, you know.<br>21 Q And who else was at the meeting?<br>22 A My mom and Tonia and Penny and Byron.<br>23 Q Tonia?<br>24 A I don't know her last name. I don't --<br>25 Q Who is Tonia?<br>Page 7 | 1 Q Is Byron related to Penny or Tonia or you?<br>2 A Penny and Byron are husband and wife.<br>3 Q Are you presently employed?<br>4 A Yes.<br>5 Q Where are you employed?<br>6 A At Mercy Hospital Jefferson.<br>7 Q For how long have you been employed there?<br>8 A Let's see, probably 12, 13 years.<br>9 Q And what is your current position?<br>10 A They call me a -- what do they call me?<br>11 Basically I answer the phone when the patients call<br>12 to order the food.<br>13 Q And for how long have you had that<br>14 responsibility?<br>15 A Those years, probably ten of those years<br>16 because I used to cook food before that.<br>17 Q What are your hours?<br>18 A I work from, let's see, 5:30 to 2.<br>19 Q 5:30 a.m.?<br>20 A Yes.<br>21 Q Until 2 p.m.?<br>22 A Yes.<br>23 Q Monday through Friday?<br>24 A I usually work Tuesdays, Thursdays and every<br>25 other weekend.<br>Page 9 |

| | |
|---|---|
| 1  Q  So you work part time?<br>2  A  Yes.<br>3  Q  Can you briefly describe your educational<br>4  background.<br>5  A  Let's see here, I'm trying to remember what<br>6  grade. I didn't graduate from school, but I can't<br>7  remember what grade I quit. Probably tenth, tenth<br>8  or eleventh grade maybe. It's been too long ago.<br>9      (Harned Deposition Exhibit Number<br>10     1 marked for identification.)<br>11 Q  Let me show you what will be marked as<br>12 Harned Exhibit 1. That is an application for<br>13 license for the U.S. Department of Agriculture, an<br>14 application for an exhibitor's license. Have you<br>15 ever seen this before?<br>16 A  No.<br>17 Q  Under the heading -- it looks like nine, it<br>18 says, List owners, partners and officers, and under<br>19 the name and title, it says Connie Braun Casey and<br>20 Lisa Harned. Do you see that?<br>21 A  I do.<br>22 Q  What is -- are you an owner, partner and<br>23 officer of the licensee that applied for this USDA<br>24 license?<br>25 A  I know that a long time ago this here you<br>Page 10 | 1  Q  You need to have a verbal response for the<br>2  court reporter. What is MPF?<br>3  A  Missouri Primate Foundation.<br>4  Q  Right. What is it?<br>5  A  Oh, what is it?<br>6  Q  Your answer was correct, but perhaps you<br>7  misunderstood.<br>8  A  It's a facility that has chimps, takes care<br>9  of them.<br>10 Q  At some point did you become the director --<br>11 did you become a director of MPF?<br>12 A  I guess on paperwork, yeah.<br>13 Q  What do you mean on paperwork? What does<br>14 that mean, you became a director on paperwork?<br>15 A  That means I guess my name is written down,<br>16 but ...<br>17 Q  But what?<br>18 A  But that's all I know is my name was written<br>19 down as that, but we, you know.<br>20 Q  But we what?<br>21 A  I don't know.<br>22 Q  During what period of time were you a<br>23 director of MPF?<br>24 A  I don't know.<br>25 Q  Corporate records identify you during some<br>Page 12 |
| 1  could put two people on there, and my name was on<br>2  there just in case something happened to Mom that I<br>3  would be able to kind of take over. But since then<br>4  they don't let -- you can only have one person on<br>5  there.<br>6  Q  But at the time were you an owner, partner<br>7  and officer when you were identified as such?<br>8      MR. ESSEN: I just object to foundation,<br>9  speculation, but subject to that, go ahead, if you<br>10 know.<br>11 A  I don't know.<br>12 Q  (By Ms. Bernstein) So you don't know why you<br>13 are identified as an owner, partner and officer?<br>14     MR. ESSEN: I just object as asked and<br>15 answered. Subject to that, go ahead.<br>16 A  I ...<br>17 Q  (By Ms. Bernstein) Are you familiar with an<br>18 entity called the Missouri Primate Foundation?<br>19 A  Yes.<br>20 Q  For purposes of this deposition, I shall<br>21 refer to Missouri Primate Foundation as MPF. Do you<br>22 understand that?<br>23 A  Uh-huh.<br>24 Q  Yes?<br>25 A  Yes.<br>Page 11 | 1  period of time as the secretary of MPF. Does that<br>2  refresh your recollection that you were the<br>3  corporate secretary of MPF?<br>4      MR. ESSEN: I'm just going to object that it<br>5  assumes facts not in evidence. I'm also going to<br>6  object that you're improperly attempting to refresh<br>7  her recollection by referring to a document but not<br>8  actually showing it to her. Subject to that, go<br>9  ahead.<br>10 Q  (By Ms. Bernstein) You can answer.<br>11 A  I know -- like I said, I know my name was on<br>12 there, but you know, we never had any meetings or<br>13 anything like that, so I ...<br>14 Q  You don't know that you were the corporate<br>15 secretary of MPF?<br>16 A  I guess I did.<br>17 Q  What were your responsibilities as the<br>18 corporate secretary?<br>19 A  We never had any meetings or anything, so I<br>20 really don't, don't know.<br>21 Q  Did you not keep the official corporate<br>22 records?<br>23 A  No.<br>24 Q  Did you not oversee the day-to-day<br>25 operations of MPF?<br>Page 13 |

Veritext Legal Solutions
866 299-5127

Page 14

1  A  No.
2  Q  At some point do you recall you also became
3  a member of the board of MPF?
4     MR. ESSEN: I just object to foundation, but
5  subject to that, go ahead.
6  A  No.
7  Q  (By Ms. Bernstein) You don't know that you
8  were a board member -- that you were on the board of
9  MPF?
10  A  There was really no, no board. I mean, I
11  don't know. As I said, we never had any meetings or
12  anything, so I don't really know exactly how to
13  answer that question because there was no ...
14  Q  Well, was the corporate entity known as MPF,
15  was that just a pure sham?
16     MR. ESSEN: Objection. It's argumentative.
17  It's also calling for a legal conclusion. It's a
18  completely improper question.
19  Q  (By Ms. Bernstein) Was it a sham?
20     MR. ESSEN: Same objection.
21  Q  (By Ms. Bernstein) You must answer.
22     MR. ESSEN: Well, she can choose not to
23  answer, I guess, but there might be consequences for
24  that.
25  A  No, I don't -- no.

Page 15

1  Q  (By Ms. Bernstein) What did you do to
2  discharge your responsibility to the corporate
3  entity MPF as a director and board member of MPF?
4     MR. ESSEN: Objection. Foundation;
5  speculation; assumes facts not in evidence. Subject
6  to that, go ahead.
7  A  What was the question?
8  Q  (By Ms. Bernstein) What did you do to
9  discharge your responsibilities to the corporate
10  entity MPF?
11     MR. ESSEN: Same objection.
12  Q  (By Ms. Bernstein) Can you identify anything
13  you did as part of your responsibilities as an
14  officer and director of MPF?
15     MR. ESSEN: Objection. Foundation;
16  speculation. Assumes facts not in evidence that she
17  actually had any responsibility. Subject to all of
18  that, go ahead.
19  A  I don't know.
20  Q  (By Ms. Bernstein) You can't think of a
21  single thing you did as a director and member of the
22  board of MPF to discharge your responsibilities to
23  MPF; is that right?
24     MR. ESSEN: Objection. Foundation;
25  speculation. Calls for a legal conclusion about

Page 16

1  discharging responsibilities and also assumes facts
2  not in evidence. Subject to that, go ahead.
3  A  I don't know.
4  Q  (By Ms. Bernstein) I'm sorry?
5  A  I said I don't know.
6  Q  Did you do anything to keep yourself
7  informed about MPF's operations over the last three
8  years?
9  A  To keep myself informed, I'm there every
10  day, but as, you know, I mean, I do what I have to
11  do there, but ...
12  Q  You say you're there every day. Every
13  single day?
14  A  Yes.
15  Q  Every single day?
16     MR. ESSEN: I think we need to clarify what
17  "there" is. I think Ms. Bernstein is asking you
18  something very specific about your role with respect
19  to a corporation.
20     MS. BERNSTEIN: I'm sorry, if you want -- I
21  don't think you get to instruct the witness. You
22  don't represent her. You can state an objection.
23     MR. ESSEN: Well, I'm just trying to
24  actually make this go more smoothly.
25     MS. BERNSTEIN: I'm sorry, I do not want you

Page 17

1  to give this witness any instructions.
2     MR. ESSEN: I'm attempting to --
3     MS. BERNSTEIN: Just state your objection
4  and wait until it's your turn.
5     MR. ESSEN: Here's my objection. I think
6  your question is vague and ambiguous --
7     MS. BERNSTEIN: Okay, fine.
8     MR. ESSEN: -- as to whether or not you're
9  asking her about responsibilities with respect to a
10  corporate entity or whether or not you're asking her
11  about what she does on a day-to-day basis with
12  respect to her mom's place.
13  Q  (By Ms. Bernstein) The question, you said
14  you were there every single day; right?
15  A  Well, I guess I wasn't there every single
16  day because if I go on a vacation or something,
17  so ...
18  Q  You're not at MPF every single day?
19  A  Almost every day.
20     MR. ESSEN: I'm just going to continue to
21  object to this being vague because you haven't
22  clarified what you mean by MPF -- well, nobody has
23  clarified what they mean by "there." All of this is
24  total nonsense at this point.
25  Q  (By Ms. Bernstein) Does the corporate entity

| | |
|---|---|
| 1  MPF currently carry on any activities?<br>2  A  No.<br>3  Q  It does not?<br>4  A  If you're talking about the -- as far as the<br>5  board or whatever, I'm not exactly understanding<br>6  that either.<br>7  Q  Does MPF conduct fundraising?<br>8  A  No.<br>9  Q  Does MPF, the corporate entity, accept<br>10  donations?<br>11  A  Missouri Primate Foundation doesn't really<br>12  exist anymore. That's been abolished, I guess, or<br>13  whatever the word is.<br>14  Q  When did MPF, the corporate entity, stop<br>15  existing?<br>16  A  I'm not sure.<br>17  Q  Why did the corporate entity MPF stop<br>18  existing?<br>19  A  I guess because it was not re -- I don't<br>20  know the word to use. Re -- when you have to -- I<br>21  don't know.<br>22  Q  Who is Connie Casey?<br>23  A  My mother.<br>24  Q  What is her present role with respect to<br>25  MPF? | 1  Q  (By Ms. Bernstein) To this day you haven't<br>2  seen a copy of this letter?<br>3  A  I guess I have. I don't -- I'm not sure<br>4  because I don't know what copy you're even talking<br>5  about. I'm not sure.<br>6  Q  The notice of intent to sue MPF --<br>7    MR. ESSEN: Might it be helpful to show her<br>8  a copy of this document to ask her if she's ever<br>9  seen it before?<br>10  Q  (By Ms. Bernstein) When I talk about the<br>11  notice of intent to sue MPF, you don't know what I'm<br>12  talking about?<br>13  A  No, because I don't know what paper you're<br>14  talking about.<br>15  Q  You, sitting here today, you're telling me<br>16  you're not aware that in November of 2016 a letter<br>17  was sent to Ms. Casey alerting her that PETA and<br>18  Ms. Scott intended to sue MPF and others? That's<br>19  news to you?<br>20  A  No.<br>21    MR. ESSEN: Hold on. Your tone is really<br>22  argumentative for no particular reason. You know,<br>23  obviously this woman has very limited knowledge<br>24  about the things you're wanting to ask her about,<br>25  and you're being rude to her about it. |
| Page 18 | Page 20 |
| 1  A  If it's abolished, I guess nothing. If<br>2  you're talking about the -- just the name, you know<br>3  what I mean? Because like I said, the name does not<br>4  exist anymore.<br>5  Q  But the facility still exists?<br>6  A  Yes.<br>7  Q  And what are the facilities called?<br>8  A  Good question because that's a private<br>9  place. You know what I mean? It's not ...<br>10  Q  In or around November 2, 2016, did Ms. Casey<br>11  provide you with a notice of intent to file citizen<br>12  suit against MPF?<br>13  A  Say that again.<br>14  Q  In or around November 2, 2016, did Ms. Casey<br>15  provide you with a copy of a notice of intent to sue<br>16  MPF?<br>17  A  Me, no. Why would I get a copy?<br>18  Q  Because you were on the board and you were a<br>19  director of MPF. So Ms. Casey never gave you a copy<br>20  of that letter?<br>21  A  No.<br>22  Q  To this day you haven't seen a copy of that<br>23  letter?<br>24    MR. ESSEN: Again, it sort of assumes facts<br>25  not in evidence, but she's already testified. | 1  But again, there's no foundation. Calls for<br>2  speculation. It's already been asked and answered.<br>3  Subject to all of that.<br>4  Q  (By Ms. Bernstein) So it's news to you?<br>5  A  No, I knew she was getting sued, but I<br>6  didn't say that -- I mean, I don't know that I seen<br>7  the letter.<br>8  Q  Right.<br>9  A  Okay?<br>10  Q  That's what I wanted to know.<br>11  A  All right. Well ...<br>12  Q  Did you at the time when the letter was sent<br>13  expressing an intent of PETA and Ms. Scott to sue<br>14  MPF and others, did you have discussions about it<br>15  with Ms. Casey?<br>16  A  Well, of course. She's my mother.<br>17  Q  And what did you discuss with her?<br>18  A  How stupid it was. There was no foundation<br>19  of the stuff.<br>20  Q  What was your understanding as to why there<br>21  was no foundation for what was alleged in the<br>22  letter?<br>23  A  Say that again.<br>24  Q  Why did you think there was no foundation of<br>25  what the letter said? |
| Page 19 | Page 21 |

| | |
|---|---|
| 1  MR. ESSEN: I'm just going to object because<br>2  I think it's asking her to speculate about what's<br>3  contained in the letter. It's vague and ambiguous.<br>4  Subject to all of that, go ahead.<br>5     Q  (By Ms. Bernstein) You said you discussed<br>6  how stupid it was. Why did you think it was stupid?<br>7     A  Because --<br>8     MR. ESSEN: Same objection. I also think<br>9  it's getting to be argumentative again. You've got<br>10 a minimal duty to kind of be somewhat polite to a<br>11 witness.<br>12    Q  (By Ms. Bernstein) Well, you said you<br>13 discussed that it was stupid, and I'm just asking<br>14 what was stupid about it?<br>15    MR. ESSEN: Same objection.<br>16    A  Because she's got a good facility.<br>17    Q  (By Ms. Bernstein) Do you recall at some<br>18 point in December a letter was sent to you proposing<br>19 a retirement of the chimpanzees to an accredited<br>20 sanctuary?<br>21    MR. ESSEN: Objection. Foundation;<br>22 speculation; assumes facts not in evidence. Subject<br>23 to all of that and if there is a letter, it might be<br>24 helpful to actually show it to her.<br>25    MS. BERNSTEIN: You know, you don't need to<br>Page 22 | 1  see that?<br>2     A  Yes.<br>3     Q  Did you discuss this letter with the other<br>4  board members?<br>5     A  There was no board.<br>6     Q  All right. So the board did nothing with<br>7  respect to this letter?<br>8     A  Did what?<br>9     Q  That the board did nothing with respect to<br>10 this letter?<br>11    MR. ESSEN: Objection. Assumes facts not in<br>12 evidence. She just said there wasn't a board. Go<br>13 ahead.<br>14    A  I still don't understand the total question.<br>15    Q  (By Ms. Bernstein) So there were no<br>16 discussions with Dr. Pernikoff or Debbie Marshall<br>17 with respect to this letter?<br>18    A  No.<br>19    Q  And who made the decision whether or not to<br>20 accept the proposal that was stated in the December<br>21 13th letter?<br>22    MR. ESSEN: Objection. Foundation;<br>23 speculation.<br>24    A  I'm not understanding the question.<br>25    Q  (By Ms. Bernstein) The letter that will be<br>Page 24 |
| 1  make a speech every single time. You can just state<br>2  your objection and be done with it.<br>3     MR. ESSEN: Well, I mean, I need to actually<br>4  say enough about the objection to preserve it and<br>5  also to give you an opportunity to cure the defects<br>6  in all of your questions.<br>7     MS. BERNSTEIN: If I will want an<br>8  explanation, I will ask for it.<br>9     MR. ESSEN: I still need to make a record.<br>10        (Harned Deposition Exhibit Number<br>11        2 marked for identification.)<br>12    Q  (By Ms. Bernstein) I'm handing you what will<br>13 be marked as Harned Exhibit 2, a letter dated<br>14 December 13, 2016.<br>15        (Discussion off the record.)<br>16    Q  (By Ms. Bernstein) It is a December 13,<br>17 2016, letter from Jared Goodman to Connie Braun<br>18 Casey and Andrew Sawyer with a copy to you as<br>19 secretary and board member. Do you see that?<br>20    A  Yes.<br>21    Q  Did you receive this letter?<br>22    MR. ESSEN: If you know.<br>23    A  I don't remember.<br>24    Q  (By Ms. Bernstein) It copied the other board<br>25 members, Dr. Pernikoff and Debbie Marshall. Do you<br>Page 23 | 1  marked as Exhibit 2 made a proposal for the<br>2  chimpanzees to be retired to an accredited<br>3  sanctuary, and the question is who made the decision<br>4  whether or not to accept that proposal?<br>5     MR. ESSEN: Objection. Foundation;<br>6  speculation. It calls for a legal conclusion and<br>7  also potentially mischaracterizing the letter, so I<br>8  think it's kind of a pointless question. The<br>9  witness already said she doesn't even know if she<br>10 received it.<br>11    Q  (By Ms. Bernstein) If you don't know, you<br>12 can just say so.<br>13    A  Okay, I don't know.<br>14    Q  Okay. Is it fair to say that you do not<br>15 know any actions that the board ever took with<br>16 respect to the business of MPF before MPF stopped<br>17 existing?<br>18    A  Say that again.<br>19    Q  Is it fair to say that you do not know of<br>20 any actions that the MPF board took at any time?<br>21    A  Yes.<br>22    Q  Is it fair to say that you never took any<br>23 actions in your capacity as a director or board<br>24 member?<br>25    MR. ESSEN: Objection. Foundation;<br>Page 25 |

## Page 26

1 speculation. Calls for a legal conclusion. Subject
2 to that, go ahead.
3   A  I don't know. I'm not ...
4   Q  (By Ms. Bernstein) Who made the decisions
5 about what MPF would do or not do?
6   A  My mom as far as I know.
7   Q  Would you say -- I'm sorry. Would you say
8 she was the sole decisionmaker with respect to what
9 MPF did at any given time?
10      MR. ESSEN: Objection. Foundation;
11 speculation. Subject to that, go ahead.
12   A  I mean, I guess.
13   Q  (By Ms. Bernstein) At some point did you
14 become aware that some of the chimpanzees were
15 transferred from the MPF facility to another
16 facility?
17   A  Was I aware that they were?
18   Q  Yes.
19   A  Yes.
20   Q  And what was the other facility?
21   A  DeYoung Zoo.
22   Q  And when were the chimpanzees transferred to
23 the DeYoung Zoo?
24   A  I don't remember.
25   Q  Do you know why they were transferred to the

## Page 27

1 DeYoung Zoo?
2   A  Because Mom had made a decision back when
3 that she would transfer some of them to -- but it
4 was a long time ago that she had made that decision.
5   Q  Ms. Casey made that decision?
6   A  Uh-huh.
7   Q  Without any input from the board?
8   A  What board?
9   Q  The MPF board. Ms. Casey made the decision
10 to transfer the chimpanzees without any input from
11 the MPF board; is that correct?
12      MR. ESSEN: Again, objection. Foundation;
13 speculation. Subject to that, go ahead.
14   A  Yeah. I mean ...
15   Q  (By Ms. Bernstein) And why were the
16 chimpanzees transferred to the DeYoung Zoo?
17      MR. ESSEN: Objection. Foundation. Go
18 ahead if you know.
19   A  Why were they transferred? Let's see,
20 because Mom had made the decision way back that she
21 was going to let them take some of the chimps.
22   Q  (By Ms. Bernstein) Right, she made the
23 decision, but the question is why?
24      MR. ESSEN: Again, objection. Foundation.
25   A  I'm not exactly sure what -- I know that she

## Page 28

1 was wanting to -- how do I say it? Make a new --
2 I'm trying to figure out how to say this. To not
3 have as many there to make it a little easier for
4 her to take care of what she has.
5   Q  (By Ms. Bernstein) And why did she want to
6 make it a little easier for her to take care of the
7 chimpanzees that she had?
8      MR. ESSEN: Objection. Foundation.
9   A  I guess because she's getting a little
10 older, just making it a little easier to, like I
11 said ...
12   Q  (By Ms. Bernstein) Did Ms. Casey consult you
13 as to whether to send the chimpanzees to the DeYoung
14 Zoo or to an accredited sanctuary?
15   A  Those are all her decisions.
16   Q  So you were not consulted?
17   A  No.
18   Q  Are you aware that on December 30, 2016, the
19 corporate entity MPF and others filed a lawsuit
20 against PETA and Angela Scott?
21   A  Well, I knew they -- I don't know who filed
22 a lawsuit except my -- you know, my mom.
23   Q  You don't know that MPF, the corporate
24 entity, filed a lawsuit against PETA and Angela
25 Scott?

## Page 29

1   A  I know my mom did. I don't know if MPF was.
2   Q  Did anyone seek your consent for filing this
3 lawsuit against PETA and Angela Scott --
4   A  No.
5   Q  -- in December of 2016?
6   A  No.
7   Q  Do you know who Kurtis Reeg is?
8   A  Kurtis Reeg, I know the name. Is it the
9 lawyer? I don't know.
10   Q  Did Mr. Reeg represent MPF in a lawsuit?
11   A  I know -- let's see, if that's the lawyer,
12 then it would have been representing Mom. I don't
13 know about MPF.
14   Q  You had no knowledge about what MPF did with
15 respect to any lawsuit; is that right?
16   A  I know my mom did. I don't know about MPF.
17   Q  Right, right. With respect to the entity
18 MPF of which you were an officer and director, you
19 did not know whether it filed suit?
20   A  I know my mom did.
21   Q  Right, we have that, but with respect to
22 MPF, you have no knowledge as to whether it sued?
23   A  If it don't exist, how could it file?
24   Q  It did exist at some point, didn't it?
25 Right? You're aware that MPF existed at some point;