UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) |
|       **Plaintiffs and** **Counterclaim Defendants,** | ) ) ) ) |
| v. | )    Case No. 4:16-cv-02163 ) |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) |
|       **Defendants and** **Counterclaim Plaintiffs.** | ) ) ) |

**COUNTERCLAIM PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AGAINST COUNTERCLAIM DEFENDANT ANDREW SAWYER**

Counterclaim Plaintiffs, People for the Ethical Treatment of Animals, Inc. and Angela Scott (together, "Plaintiffs"), submit this memorandum in support of their motion for summary judgment against Counterclaim Defendant Andrew Sawyer ("Sawyer").

**I.    PROCEDURAL BACKGROUND AND OVERVIEW OF UNDISPUTED MATERIAL FACTS**

Plaintiffs challenge Sawyer's unlawful "taking" of a chimpanzee named Joey, pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 and 1544, and its implementing regulations. From approximately 2013 until December 2016, Sawyer boarded Joey at facilities operated by Connie Braun Casey ("Casey"), also known as the Missouri Primate Foundation ("MPF"). Statement of Uncontroverted Material Facts ("SOF") ¶ 2. In November 2016, Plaintiffs notified Sawyer of their intent to sue, pursuant to the requirement under the ESA, 16 U.S.C. § 1540(g) ("Notice"). SOF ¶ 4. From this Notice, Sawyer understood that Plaintiffs intended to seek a judicial determination that Joey was held under conditions that violated the ESA. SOF ¶ 5.

To preclude Plaintiffs from accessing potentially incriminating evidence, Sawyer removed Joey to an unknown location. SOF ¶ 7.

During discovery, Sawyer invoked his Fifth Amendment privilege against self-incrimination and refused to answer discovery requests or divulge Joey's location. ECF No. 132 at 5. The Court therefore agreed to draw certain adverse factual inferences against Sawyer. *Id.* at 6-7. These inferences, together with ample additional evidence in the record, establish that the conditions in which Joey was held failed to meet the minimum basic needs appropriate for his species, fell below acceptable levels of care, and significantly impaired Joey's normal behavior patterns, causing a range of injuries and harm, and a likelihood of future physical and psychological harm if these conditions are not abated. *See, e.g.,* SOF ¶¶ 130, 131, 132, 135-137, 223-224, 229-230, 232, 23-235; *and see infra* at pp. 5-14 (detailing Joey's conditions and harms caused thereby).

## II.   LEGAL FRAMEWORK

### A.   Standard for Granting Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] … which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant does so, the non-movant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted).

Under Local Rule 7-4.01(E), "all matters set forth in the movant's statement of facts are deemed admitted for the purposes of a summary judgment motion unless specifically contravened

by the opposing party." *Jett v. Interface Sec. Sys.*, No. 4:17 CV 2864 CDP, 2019 WL 480020, at *2 (E.D. Mo. Feb. 7, 2019). If the non-movant fails to contravene the movant's material facts, "the facts are considered undisputed." *Id.* The fact that non-movants "are not in a position to file affidavits opposing [a] summary judgment motion because they repeatedly have invoked their Fifth Amendment privilege in response to [movants'] discovery requests does not save them from having summary judgment entered against them." *Royal Am. Managers, Inc. v. Int'l Surplus Lines Ins. Co.*, 760 F. Supp. 788, 792 (W.D. Mo. 1991).

### B. Overview of The Endangered Species Act

Captive chimpanzees are deemed endangered pursuant to the ESA. 50 C.F.R. § 17.11(h); 80 Fed. Reg. 34499 (June 16, 2015). Under the ESA, it is unlawful to "take" an endangered species, 16 U.S.C. § 1538(a)(1)(B), or to "possess" any endangered species that has been unlawfully taken, *id.* § 1538(a)(1)(D). "Take" is defined to include "harm" and "harass," neither of which is defined by statute. *Id.* § 1532(19). As the Supreme Court explained in *Babbitt v. Sweet Home Chapter of Communities for a Great Or.*, these terms must therefore be construed in a way that effectuates the "broad purpose of the ESA." 515 U.S. 687, 698 (1995); *see also* S. Rep. No. 307, 93rd Cong., 1st Sess., p. 7 (1973) ("[T]ake" should be defined "in the broadest possible manner to include every conceivable way in which a person can 'take' or attempt to 'take' any fish or wildlife.").

The regulations promulgated under ESA define "harm" as "an act which actually kills or injures wildlife," including "by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3. This definition does not specify that the injury must be physical, and "[i]n the absence of statutory definitions, [courts] turn to the ordinary meaning of the statutory terms as derived from a dictionary and consider the context of the statute in which the language appears." *City of Jefferson City, Mo. v. Cingular Wireless, LLC*, 531 F.3d 595, 606 (8th Cir. 2008) (citing *Missouri ex rel. Burns v. Whittington*, 219 S.W.3d 224, 225

(Mo.2007) (en banc)). Merriam-Webster Online Dictionary defines "harm" as "physical or mental damage," and defines "injury" as "an act that damages or hurts," neither of which limits an injury to a physical or bodily injury. Accordingly, a mental *or* psychological injury may constitute "harm."

"Harass" is defined to include an "intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." *Id.* For captive animals, the Fish and Wildlife Service ("FWS") exempts from the definition of "harass" (but not from the definition of "harm"[1]) "[1] generally accepted … [2] animal husbandry practices [3] that meet or exceed the minimum standards for facilities and care under the Animal Welfare Act [(AWA)] … [4] when such practices … are not likely to result in injury to the wildlife." *Id.* The FWS has made clear that despite this exemption, "Obviously, maintaining animals in inadequate, unsafe or unsanitary conditions, feeding an improper or unhealthful diet, and physical mistreatment constitute harassment …." 58 Fed. Reg. 32632, 32637 (June 11, 1993).

Plaintiffs' Counterclaim details how the conditions in which Joey was held constitute a "take" in violation of the ESA. *See* ECF No. 23, Answer to Count I and Counterclaim for Declaratory and Injunctive Relief ("Counterclaim"). Among other things, Plaintiffs allege that Joey is subject to an unlawful "take" because Sawyer failed (and fails) to meet Joey's fundamental social, physical, and psychological needs, *id.* ¶¶ 62-73, 75-92, 95, 97-105; confines him to a dangerous and unsanitary environment, *id.* ¶¶ 106-19; restricts him to a dangerously unhealthy diet, *id.* ¶¶ 120-28; and fails to provide him with adequate preventative and emergency veterinary

---

[1] "The definition of harm contains no similar exclusion." *Graham v. San Antonio Zoological Soc'y*, 261 F. Supp. 3d 711, 739 (W.D. Tex. 2017).

4

care, *id*. ¶¶ 129-33. Plaintiffs allege that these actions cause Joey serious physical and psychological injury, *id*. ¶¶ 105, 119, 128, 133, and that Sawyer otherwise failed to comply with even minimal animal-husbandry requirements, *id*. ¶¶ 43, 112-115. Plaintiffs allege that these deficiencies and omissions constitute "harm" and "harassment" of Joey in violation of the ESA's "take" prohibition by causing Joey psychological harm, preventing him from carrying out his natural behaviors, and exposing him to a significant risk of physical illness and injury. *Id*. ¶ 4. **In denying Sawyer's motion to dismiss, the Court has already determined that these allegations—<u>if</u> proven true at trial—establish that Sawyer's conduct constitutes an unlawful "take" under the ESA, entitling Plaintiffs to relief.** ECF No. 56 at 10-11. For the reasons demonstrated below, no trial will be necessary, however, because those facts are indeed true and undisputed. Summary judgment should therefore be entered in favor of Plaintiffs and against Sawyer.

### III.   ARGUMENT

#### A. Sawyer Harms and Harasses Joey By Holding Him In Isolation, Failing to Meet His Fundamental Social Needs

There is no genuine dispute that Sawyer failed (and fails) to meet Joey's fundamental social needs by housing him in isolation, thereby causing harm and the likelihood of compounded future harm if this condition is not abated: In the wild, chimpanzees engage in social interactions throughout life, and social interaction and stimulation are essential for a chimpanzee's development, health, and wellbeing. SOF ¶ 13. Chimpanzees are rarely by themselves in the wild, and male chimpanzees appear especially social. SOF ¶ 14. Given the highly social nature of chimpanzees, SOF ¶ 26, social interactions are crucial to chimpanzee well-being and the adverse effects of social isolation are well known, SOF ¶¶ 16-17. These harmful consequences of housing a chimpanzee individually will likely be long-lasting. SOF ¶ 26; *see also* SOF ¶¶ 17, 19-24

5

(summarizing harmful effects of inadequate social housing). Every available standard regarding chimpanzee care mandates that chimpanzees be housed in an adequate social group unless there exists a documented, veterinarian-mandated medical or behavioral reason why *temporary* isolation is necessary. SOF ¶ 25; *see also* SOF ¶¶ 28, 29. During all relevant times, Joey's conditions fell below this standard. While at MPF, Joey was housed in an enclosure by himself and did not have an adequate opportunity to engage in social relations with other chimpanzees. SOF ¶¶ 30, 32. Presently, Joey is still not held in an adequate social group and still does not have an adequate opportunity to engage in social relations with other chimpanzees. SOF ¶¶ 33, 34.

The failure to house Joey with an appropriate social group has caused Joey wide-ranging harm, including psychological, emotional, and physical injury, and subjects him to a continuing likelihood of injury. SOF ¶¶ 37-40, 48. The solitary housing in which Joey has been, and is being, kept, creates (and created) the likelihood of injury to Joey by significantly disrupting Joey's normal behavioral repertoire in a manner likely to result in psychological injury. SOF ¶ 41. It is also likely to result in future harms by disrupting Joey's cognitive and behavioral development, thus limiting his ability to develop critical psychological functioning to maintain social relationships. SOF ¶ 42; *see also* SOF ¶¶ 43-46. If Joey remains physically isolated from other chimpanzees, he will never learn how to engage in species-specific behaviors that are essential for his psychological and physiological wellbeing.[2] SOF ¶ 47. These harmful effects will be further exacerbated, if they

---

[2] A marker of wellbeing in chimpanzees is the manifesting of species-typical behaviors. SOF ¶ 122. For chimpanzees, foraging, nest-building, climbing, brachiating, playing, tool use, and socializing are all essential species-typical behaviors. SOF ¶¶ 123, 124, 125, 126, 127, 128, 129. When a chimpanzee is in a deprived environment with insufficient social, structural, and object enrichment, such behaviors become less frequent and are replaced by stereotypies and other abnormal, often harmful, behaviors indicative of poor welfare and stress. SOF ¶¶ 130, 131, 132; USDA Report, § III.

remain unabated. SOF ¶ 49. The longer Joey's social isolation and solitary housing persist, the more difficult rehabilitation and resocialization will be. SOF ¶ 50.

Nor is Joey's housing AWA-complaint, 9 C.F.R. § 3.81(a), as the U.S. Department of Agriculture (USDA) recognizes the harmful effects of social isolation. Under the heading "Detrimental effects of single caging," the USDA notes in its Final Report on Environmental Enhancement to Promote the Psychological Well-Being of Nonhuman Primates ("USDA Report") that "[m]any authors have described the pronounced association between abnormal behaviors and/or physiological disturbance and single cage housing." USDA Report, § IV.A.3.a (identified at SOF ¶¶ 237-238, attached as Exhibit A). It further acknowledges that "[s]ocial interactions are considered to be one of the most important factors influencing the psychological well-being of most nonhuman primates," *id.* § IV.A.1, and that "even one or two conspecifics are not sufficient to meet the extraordinary social needs of chimps in stimulus-restricted environments," *id.* § IV.A.6. By keeping Joey in isolation and failing to meet his fundamental social needs, Sawyer therefore harmed and harassed Joey, in violation of the ESA.

Under closely analogous factual circumstances, the district court in *Kuehl v. Sellner*, 161 F. Supp. 3d 678, 710–11 (N.D. Iowa 2016), *aff'd*, 887 F.3d 845 (8th Cir. 2018), held that keeping a protected lemur in social isolation "constitutes 'harassment' and, therefore, a 'taking' within the meaning of the [ESA]." *Id.* There, as here, the evidence showed that the species at issue was highly social and had a high level of cognitive ability, and that therefore, keeping the primate without adequate ability to socialize with other conspecifics caused suffering and harm. *See id.*; *see also Kuehl v. Sellner*, 887 F.3d 845, 852 (8th Cir. 2018) (affirming district court's finding that that lemur, kept in social isolation, was "taken" within the meaning of the ESA). Therefore, summary judgment against Sawyer is appropriate.

### B. Sawyer Harms and Harasses Joey By Holding Him in a Deprived Environment, Failing to Meet His Fundamental Psychological Needs

In addition to the psychological harm caused by being housed in isolation, there is no genuine dispute that Joey's fundamental psychological needs were, and are, not met in several other respects, and that this causes or compounds the harm to Joey:

In 1985, the AWA was amended to mandate the promotion of the psychological well-being of primates in captivity. Food Security Act of 1985, Pub.L. No. 99-198, § 1752, 99 Stat. 1645 (1985) (codified as amended at 7 U.S.C. § 2143(a)(2)(B)). The concept of "psychological well-being" has been recognized to be a mental state that is distinct from an animal's environment, behavioral profile, and physiologic state. SOF ¶ 87. Psychological well-being entails that the animal is able to cope with day-to-day changes in the environment and does not experience chronic distress or engage in self-injury. SOF ¶ 89. Beyond appropriate social housing, a program of environmental enrichment is critical for captive chimpanzees to provide essential cognitive and physical stimulation, opportunities for psychological development, and opportunities to conduct species-typical behaviors. SOF ¶ 82; *see also* SOF ¶¶ 81, 83, 88, 92.

The USDA requires a plan and implementation of the plan, and it must be in accordance with accepted professional standards. 9 C.F.R. § 3.81; SOF ¶ 91. Because of its importance, environmental enrichment is one of the aspects of chimpanzee care that must be routinely reviewed by a veterinarian under the AWA. 9 C.F.R. § 3.81; SOF ¶ 94. When chimpanzees are kept under inadequate environmental conditions, they are subject to psychological harms including suffering from boredom, developing stereotypies (abnormal, repetitive, seemingly meaningless behaviors) and/or self-injurious behaviors, and becoming increasingly aggressive. SOF ¶ 95.

During the time Joey was at MPF, the manner in which he was kept failed to meet his basic psychological needs. SOF ¶¶ 96, 101. The enrichment he received at MPF fell far below the

8

required minimum standards, as it did not include novelty, variety, or diversity. SOF ¶ 98; *see also* SOF ¶¶ 100-103, 106-112; USDA Report § III.E, G. Presently, the manner in which Joey is being held also fails to meet his basic psychological needs and he does not receive adequate enrichment. SOF ¶¶ 97, 104, 105. This has harmed, and continues to harm, Joey's psychological and physical well-being. SOF ¶ 115.

Among other things, the deprived conditions in which Joey is kept cause Joey harm by failing to provide the mental stimulation required for this cognitively complex species. SOF ¶ 113. It also creates the likelihood of harm by significantly disrupting Joey's normal behavioral repertoire. SOF ¶ 114. Similar to a neglected child, Joey likely developed cognitive deficits by spending his formative years in a mostly barren and unstimulating environment. SOF ¶¶ 116-117; *see also* SOF ¶ 118; USDA Report, § II.D. (stating that "restricted social environments during development" is "known to result in aberrant behavior that may persist into adulthood or be expressed long after infancy").

For these additional reasons, by keeping Joey in a deprived environment and by failing to meet his fundamental psychological needs, Sawyer harms and harasses Joey in violation of the ESA. The decision in *Kuehl* is again instructive here. Similar to the flawed environmental plan at Casey's facility, the plan at the facility in *Kuehl* was inadequate and, "[e]ven with the limited plan, however, there is no evidence that [the facility] routinely followed the plan, and there is no evidence that they properly documented their implementation of the enrichment plan." *Kuehl*, 116 F. Supp.3d at 711-712. There, as here, the "failure to 'develop, document, and follow an appropriate plan for environmental enhancement adequate to promote psychological well-being' for [the animal] significantly disrupts their normal behavioral patterns and, therefore, constitutes

9

'harassment' and 'taking' within the meaning of the [ESA]." *Id.* For this additional reason, summary judgment against Sawyer is appropriate.

### C. Sawyer Harms and Harasses Joey By Failing to Provide Joey With Any Veterinary Care

There is no genuine dispute that Joey has been deprived of appropriate veterinary care, and that this harms Joey. Proper veterinary care is essential to ensuring the well-being of animals in captivity, as well as preventing their untimely deaths. SOF ¶ 139. Unless a facility has a full time veterinarian on the premises, it is the responsibility of the staff to ensure that the primates' basic veterinary care needs are met in a timely and appropriate manner. SOF ¶ 140; *see also* SOF ¶¶ 141, 142, 145, 146. Preventive care is especially important for chimpanzees in captivity, and it is legally mandated by the AWA, 9 C.F.R. § 2.40(b)(2). SOF ¶¶ 143, 144. All published standards require a written veterinary care program for captive chimpanzees, overseen by a veterinarian with training or experience with the species. SOF ¶ 147. In addition to standard health care needs common to all captive chimpanzees, Joey requires additional care, because he reportedly had (and has) special needs due to a history of seizures and severe—potentially fatal—allergies. This makes it even more imperative that Joey have an effective program of veterinary care. SOF ¶ 148; *see also* SOF ¶¶ 149, 152, 153, 156. Furthermore, the initial symptoms that led to Joey's supposed food allergy diagnosis could have other causes which, if not diagnosed, are likely to be neglected and to worsen. SOF ¶ 154; *see also* SOF ¶ 155.

During the time Joey was at MPF, he was not provided with any appropriate veterinary care. SOF ¶ 150; *see also* SOF ¶¶ 151, 158. Currently, Joey is still not provided with preventative or other appropriate veterinary care. SOF ¶ 159. The failure to provide Joey with adequate veterinary care has subjected Joey, and continues to subject Joey, to a likelihood of injury and likely has already actually injured him. SOF ¶ 160; *see also* SOF ¶ 161. Since Joey does not receive

10

any veterinary care, including preventive care, illnesses will not be identified in their early stages when they are more treatable—if at all. SOF ¶ 162; *see also* SOF ¶¶ 163-166 (identifying additional significant risks due to lack of veterinary care). There is a very high likelihood of Joey sustaining an illness or injury, including a life-threatening one, and there is no program to prevent it or appropriately treat it. SOF ¶ 167. This failure to provide preventive or reactive veterinary care falls below all generally accepted standards and can cause injury to and even result in the death of chimpanzees. SOF ¶168.

The failure to provide adequate (or, in the case of Joey, **any**) veterinary care, violates the basic tenets of the ESA. "'[I]f an exhibitor chooses to keep endangered species, it must assume the obligation—and the cost—of providing such care.'" *Kuehl*, 887 F.3d at 853 (quoting and affirming decision below). In *Kuehl*, the Eighth Circuit thus affirmed that a facility had injured, and thereby harmed, endangered animals in violation of the ESA by "'fail[ing] to provide timely and appropriate veterinary care.'" *Id.* This failure provides additional grounds for entering summary judgment against Sawyer.

### D. Sawyer Harms and Harasses Joey By Holding Him Without Adequate or Appropriate Space, Failing to Meet His Fundamental Physical Needs

There is no genuine dispute that Joey's fundamental physical needs were, and are, not met, by confining him in a small and barren enclosure, thereby causing him harm.

A key factor bearing on a chimpanzee's wellbeing is the physical space he occupies on a daily basis. SOF ¶ 51; *see also* SOF ¶¶ 52, 53, 54. Chimpanzees are an arboreal species, meaning that while they walk on the ground, they are natural climbers and spend more time in the trees. SOF ¶ 55; *see also* SOF ¶¶ 56. Chimpanzees in captivity therefore need physical furnishings and conditions to allow for species-typical behaviors such as climbing and building nests off the ground. When such furnishings and conditions are lacking, captive chimpanzees will likely suffer

physiological harm. SOF ¶ 57. The AWA mandates furnishing captive primates' physical environment with items that allow them to express such "species-typical" activities in order to safeguard their welfare. 9 C.F.R. § 3.81.

At MPF, Joey's minimum needs for space were not met, and at his current location, Joey still is not provided with adequate and appropriate space. SOF ¶¶ 64, 65. During all relevant times, Joey's physical environment failed to meet his basic physiological needs. SOF ¶¶ 66, 67; *see also* SOF ¶¶ 68, 69, 71. Because Joey lacked sufficient access to spaces off the floor (e.g., platforms, ledges, ropes), he lacked adequate opportunities to express species-typical behaviors of climbing, clinging, brachiating, jumping, leaping, and hanging, which are essential to promote his physiological health. SOF ¶ 70; *see also* SOF ¶ 75. This persistent failure to provide Joey with adequate and appropriate physical space creates the likelihood of harm by disrupting Joey's normal behavioral repertoire. SOF ¶ 74. It also is likely to result in future harms because of the limitations it puts on Joey's physical development. SOF ¶ 76. A growing chimpanzee like Joey needs adequate physiological stimulation for proper development of muscles and bone strength. SOF ¶ 77. Depriving Joey of sufficient appropriate opportunities for species-typical locomotion and postural behaviors put (and puts) Joey at risk of suffering lasting deficits. SOF ¶ 78; *see also* SOF ¶ 79. Even if this physiological damage has not yet caused irreversible harm to Joey, it will likely do so in the future if it continues unabated. SOF ¶ 80; *see also* 58 Fed. Reg. at 32637 ("Obviously, maintaining animals in inadequate … conditions … constitute[s] harassment").

### E. Sawyer Harms and Harasses Joey By Confining Joey To an Unsanitary and Dangerous Environment

There is also no genuine dispute that Joey has been, and is, confined to a harmful unsanitary environment. A key part of ensuring physical and psychological well-being is proper sanitation of the space in which chimpanzees are kept, where sanitation encompasses both cleaning (removing

excessive amounts of dirt and debris) and disinfecting (removing unacceptable concentrations of microorganism). SOF ¶ 169; *see also* SOF ¶ 170. Poor sanitation increases the likelihood of disease, parasites, and pests, such as infestations by rodents and insects, who are also carriers of disease. SOF ¶ 172; *see also* SOF ¶¶ 173-175. The likelihood that a chimpanzee who is kept in unsanitary conditions will get sick or even die is compounded where (as here) the animal is not routinely screened for parasites, given no vaccines, and lacks any program of preventive veterinary care. SOF ¶ 176.

At MPF and currently, Joey is held in unsanitary conditions. SOF ¶¶ 182, 183. Joey's environment at MPF was unsanitary in numerous ways, which are each associated with potential harm to his psychological and physical well-being. SOF ¶ 184; *see also* SOF ¶¶ 185-192. The failure to provide Joey with a safe and sanitary environment has subjected Joey, and continues to subject Joey, to a further likelihood of injury. SOF ¶ 193; *see also* SOF ¶ 194. Among other things, food waste build-up can lead to skin irritation due to prolonged contact, potentially causing infected wounds; irritation of the respiratory tract from the emitted fumes; increased risk of illness spread by rodents or insects; providing a medium for infectious organisms to grow, increasing likelihood of disease; and worsening physical inactivity, as chimpanzees are likely to try to avoid stepping in rotting food. SOF ¶ 195. In addition, rodents and their feces and urine can introduce a host of viral and bacterial diseases to nonhuman primates, including chimpanzees, most of which can be fatal if not diagnosed and treated promptly. SOF ¶ 196; *see also* SOF ¶¶ 197, 198.

Due to his unsanitary conditions of confinement, Joey is at risk of physical injury, including infectious and parasitic disease, allergic/irritant respiratory disease, food-borne illness, physical injury, and death—and the longer Joey remains in an unsanitary or unsafe environment, the greater likelihood of injury. SOF ¶¶ 199-200. In sum, Sawyer harms and harasses Joey by holding him in

a small, barren and unsanitary enclosure that fails to meet his fundamental physical needs. "Obviously, maintaining animals in … unsafe or unsanitary conditions … constitute[s] harassment because such conditions might create the likelihood of injury or sickness of an animal." 58 Fed. Reg. at 32637. Consistent with this "obvious" fact noted by the USDA, the Eighth Circuit has affirmed a district' court's ruling that defendants had "harassed" lemurs and tigers by not providing the sanitary conditions specified in 9 C.F.R. § 3.84(a), which requires that '[e]xcreta and food waste must be removed from inside each indoor primary enclosure daily.'" 887 F.3d at 853-54. The inadequate physical conditions in which Joey has been, and currently is, kept thus provide further grounds for entering summary judgment against Sawyer.

### F. Sawyer Harms and Harasses Joey By Restricting Joey to an Unhealthy and Improper Dietary Regime

There also is no genuine dispute that Joey has been, and is, restricted to a dangerously unhealthy diet, which is harmful to Joey: A nutritionally balanced diet is essential to preserving and promoting physical health of captive chimpanzees. SOF ¶ 204; *see also* SOF ¶ 205. The diet of captive chimpanzees also plays an essential role in providing opportunities to engage in natural behaviors, such as foraging, problem solving, and manipulation of food items, and is therefore considered critical enrichment and key to ensuring their psychological well-being. SOF ¶ 207.

Joey was not and is not provided with a wholesome and nutritious diet, and Joey's diet was presented to him in an inadequate manner. SOF ¶¶ 210-214. Joey's diet, and the manner in which the diet and water were provided to him, also do not comport with generally accepted practices. SOF ¶ 215. The diet that Joey was provided, and the manner in which it was provided, likely injured him both physically and psychologically. SOF ¶ 217; *see also* SOF ¶ 218. Joey is likely to experience (and may already have experienced) physical injury due to nutrient imbalances leading to an increased risk of diabetes, cardiovascular disease, obesity, metabolic bone disease, and

14

periodontal disease. SOF ¶ 221. Joey's inadequate diet and nutrition is also likely to harm Joey in the future if his diet and manner in which he is fed continues. SOF ¶ 219.

Because Sawyer harms and harasses Joey by restricting him to an unhealthy and improper dietary regime, summary judgment should be entered against Sawyer for this additional reason. *See* 58 Fed. Reg. at 32637 ("Obviously, … feeding an improper or unhealthful diet … constitute[s] harassment").

## IV. CONCLUSION

For all of the foregoing reasons, and based on all of the uncontroverted material facts submitted concurrently herewith, Plaintiffs respectfully request that the Court grant summary judgment their favor and against Sawyer, by finding that Sawyer has violated and continues to violate the ESA and its implementing regulations, by unlawfully taking Joey, a federally protected animal, 16 U.S.C. § 1538(a)(1)(B), (G); 50 C.F.R. §§ 17.11(h), 17.21(c), 17.31(a), and by continuing to possess Joey who was unlawfully taken, 16 U.S.C. § 1538(a)(1)(D); 50 C.F.R. §§ 17.11(h), 17.21(d), 17.31(a). Plaintiff requests an injunction terminating Sawyer's ownership and possessory rights with respect to Joey, and prohibiting Sawyer from owning or possessing endangered or threatened animals in the future, and from otherwise violating the ESA. Plaintiffs also request a hearing to address the appointment of a special master or guardian ad litem to determine placement of Joey at an appropriate GFAS accredited sanctuary, consistent with his best interests.

Dated: March 18, 2019  Respectfully submitted,

/s/ Martina Bernstein
MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036

202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

JARED S. GOODMAN (#1011876DC)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90026
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/
Counterclaim Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on March 18, 2019, the foregoing Counterclaim Plaintiffs' Memorandum in Support of Their Motion for Summary Judgment Against Counterclaim Defendant Andrew Sawyer was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to the following:

Debbie Champion, dchampion@rssclaw.com
Victor H. Essen, vessen@rssclaw.com
*Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

Geordie Duckler, geordied@animallawpractice.com
*Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

/s/ Jared S. Goodman