UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) |
| v. | ) Case No. 4:16-cv-02163 ) |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) ) |
| Defendants and Counterclaim Plaintiffs. | ) ) |

**COUNTERCLAIM PLAINTIFFS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO PRECLUDE THOMAS JONES FROM OFFERING OPINIONS
AS A NON-RETAINED EXPERT**

Counterclaim Plaintiffs, People for the Ethical Treatment of Animals, Inc. and Angela Scott (together, "Plaintiffs"), move to preclude the opinion testimony of Thomas "Butch" Jones, D.V.M. ("Jones") in his capacity as a non-retained expert, on three grounds: First, the disclosure of Jones' proposed testimony was inadequate under Federal Rule of Civil Procedure 26(a)(2)(C). Second, to the extent Plaintiffs can ascertain the general subjects on which Jones would opine, those opinions were not formed as part of Jones' involvement with the events at issue in this case, and therefore are beyond the permissible scope of testimony for a Rule 26(a)(2)(C) witness. Third, the opinions are inadmissible under Federal Rule of Evidence 702 because Jones lacks the required specialized knowledge to testify about the particular subjects for which he is proffered.

I.   **FACTUAL BACKGROUND**

At issue in this case is whether chimpanzees housed at the home of Counterclaim Defendant Connie Casey ("Casey") were injured or will likely suffer future injury, in violation of the Endangered Species Act ("ESA"), as a result of Casey's past and ongoing failure to meet their

1

basic needs—such as lack of preventive and emergency medical care, environmental enrichment, appropriate social grouping, safe and sanitary housing, and adequate diet.

Jones is a veterinarian who in the past issued travel papers for primate babies who were sold by Casey as part of her breeding business. Declaration of Martina Bernstein ("Bernstein Decl.") Ex. A, Jones Dep. 82:13-22; *see also id.* 18:12-21, 20:13-23, 21:9-24. However, Jones has *never* had a chimpanzee or any other primate as a patient, *id.* 9:3-18, and his only experience or training in chimpanzee care was approximately five to ten hours of "lab animal medicine" instruction in veterinary school twenty-five years ago, *id.* 6:23-8:14. Jones acted as "ancillary caregiver" for other primates at Casey's facility, but none of them survived for more than a few days after Jones was called by Casey to provide such care. *Id.* 144:17-23; 224:11-23. Casey failed to disclose Jones as a person likely to have discoverable information in her initial Rule 26(a)(1) disclosures or any supplemental disclosures thereafter.

At Jones' deposition, his attorney stressed that Jones was not testifying as an expert and that any questions about such "opinions" were beyond the scope of Jones' testimony. *Id.* 122:24-123:1 ("If you're asking [Jones] his opinions as an expert, he's not here as an expert. He's not here for that."); *id.* 128:16-21 ("You're asking for expert opinions here and he's not giving those."); *id.* 135:9-13 ("He's not answering this kind of question. It would be totally different if we're talking about expert witnesses and things like that, but we're not. He's not here to answer those kinds of questions. We're not going down that road."); *id.* 286:16-18 ("He's not been called as an expert witness, or he has not been retained as a nonretained expert witness.").

Less than three weeks after Jones declined to testify as an expert, Casey did name Jones as a non-retained expert witness and proffered him to testify "concerning any opinions that he has

derived as a result of his care of the chimpanzees at issue in this case." Bernstein Decl., Ex. B, at 6. Casey identified the following nine opinions that Jones "may offer":

1. "Casey's facility is generally adequate for the chimpanzees at issue in this case";

2. "Casey's care for the chimpanzees has been generally adequate to meet their needs";

3. "[T]he chimpanzees have generally appeared to be in good health when Jones has visited Casey's facility";

4. Jones "is not aware of any existing condition or practice at Connie Casey's facility that creates a likelihood of injury to any of the chimpanzees at issue";

5. Jones "has seen no signs of obvious psychological distress of the chimpanzees at issue in this case as a result of any condition of Connie Casey's facility and/or her care of the chimpanzees";

6. "[T]here is no pattern of neglect with respect to the chimpanzees at issue in this case";

7. "[T]he cause(s) of any diseases" that Jones has treated "cannot be linked to a condition of ... Casey's facility and/or the nature of her care for the chimpanzees at issue in this case";

8. Jones' "conclusions about the causes of death of any chimpanzee at Connie Casey's facility";

9. The care Jones "observed Dr. Pernikoff rendering to the chimpanzees at issue … appeared to be adequate and consistent with normal veterinary practices."

Bernstein Decl., Ex. B, at 6.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 26(a)(2)(C)

If a party intends to call a witness to testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705, the party must disclose "the subject matter on

which the witness is expected to present" expert opinion testimony and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). These disclosure requirements "share the goal of increasing efficiency and reducing unfair surprise." *Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co.*, No. 4:13CV1043SPM, 2015 WL 8770712, at *1–2 (E.D. Mo. Dec. 15, 2015) (internal quotation and citation omitted). A party does not comply with this obligation "by merely stating the topic that will be discussed at a high level and/or identifying documents containing information consistent with the opinion testimony to be offered." *Id.* at *2 (collecting cases).

"The disclosure mandates in Rule 26 are given teeth by the threat of sanctions in Rule 37." *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702–03 (8th Cir. 2018). "[I]f a party does not satisfy the expert disclosure requirements in Rule 26(a)(2), the undisclosed information … is excluded unless the failure was substantially justified or harmless." *Id.*

**B. Federal Rule of Evidence 702**

A district court acts as a "gatekeeper" when screening expert testimony for relevance and reliability. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-93 (1993); *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). The starting point for analyzing expert testimony is Federal Rule of Evidence 702, which provides, in relevant part, that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is

scientifically valid." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)).

A treating doctor's opinion is subject to the same standards of scientific reliability that govern opinions of doctors hired solely for purposes of litigation. *Brooks v. Union Pac. R. Co.*, 620 F.3d 896, 900 (8th Cir. 2010); *Barrett*, 606 F.3d at 982; *Lemaire v. Monster Energy Co.*, No. 5:17-CV-05104, 2018 WL 4144456, at *2 (W.D. Ark. Aug. 30, 2018). Furthermore, a witness's "[e]xperience in a particular [medical] field is not enough to qualify an expert; the expert must have experience with the [particular] issue before the court." *Jones v. Novartis Pharm. Corp.*, 235 F. Supp. 3d 1244, 1293 (N.D. Ala. 2017*), aff'd in part sub nom. Jones v. Novartis Pharm. Co.,* 720 F. App'x 1006 (11th Cir. 2018).

### III.   ARGUMENT

#### A. Opinions 1 Through 9 Do Not Comply With Federal Rule of Civil Procedure 26(a)(2)(C)'s Disclosure Requirements.

Jones is proffered to testify about a wide range of unspecified categories of "needs," "care," "conditions," and "practices" involving unidentified "chimpanzees at issue," as well as the causes of these chimpanzees' various unnamed illnesses and deaths suffered at unspecified periods of time. Such broad-brush disclosures are precisely the type the courts have excluded as insufficient under Rule 26(a)(2)(C). For example, in *Emerson Elec. Co.*, 2015 WL 8770712, at *2, the court held that a party's disclosure contained no meaningful "summary of the [expert's] facts and opinions," where it "simply contains generic, high-level references to the subject matter of the entire case [and] … Defendants' disclosure amounts to little more than a statement that the [expert] will testify as to nearly all of the issues in the case." *Id.* "That is not a 'summary of facts and opinions,' and it does nothing to promote the goals of 'increasing efficiency' or 'reducing unfair surprise' to the opposing parties. It is not sufficient to satisfy Rule 26(a)(2)(C)." *Id.*; *see also*

*Luminara Worldwide, LLC v. Liown Elecs. Co.,* No. CV 14-3103 (SRN/FLN), 2016 WL 6920516, at *2 (D. Minn. Feb. 25, 2016).

Casey's generic broad-brush disclosures are similarly deficient because they do not identify the precise opinions Jones will offer. The disclosures also do not reveal what (if any) facts Jones relied on in forming those opinions.[1] Compounding this defect, Casey also fails to disclose *what* Jones concluded "about the causes of death of any [or which] chimpanzee" at Casey's facility (Opinion 8).

The fact that Jones was previously deposed does not mitigate these deficiencies. In *Luminara,* 2016 WL 6920516, at *2, the court rejected the notion that a prior deposition obviates the need for a party to comply with expert disclosure requirements:

> The plain language of Rule 26(a)(2)(C) states that an expert disclosure must contain *both* the subject matter of the witnesses testimony *and* a summary of the facts and opinions to which the witness is expected to testify. "Courts have found that a party cannot comply with its disclosure obligations under this rule by merely stating the topic that will be discussed at a high level and/or identifying documents containing information consistent with the opinion testimony to be offered."

*Id.* (quoting *Emerson Elec. Co.*, 2015 WL 8770712, at *2). "[T]he Court has found no authority to support the proposition that the mere citation to a witness's deposition testimony is a sufficient disclosure under Rule 26(a)(2)(C) when, at the time of the deposition, the witness had not been identified as an expert witness." *Id.* at *2.

Likewise, the fact that Jones produced medical records, and that—according to Casey's disclosure—he is expected to testify consistent with these records, also does not cure the unfair

---

[1] The disclosures also do not specify which of the numerous potential aspects of "care," "conditions," or "practices" at Casey's facility may be the subject of Jones' testimony (Opinions 1, 2, 3, 5, 7). Those generic terms could include anything from environmental enrichment to ventilation, to parasite testing and control, quarantine protocols, vaccination, social grouping, cage sizes, substrate, bedding and furnishings, staffing, and many others. Far from fulfilling the disclosure's purpose of "efficiency," Plaintiffs here are left to speculate which of these particular topics will be addressed by Jones' testimony.

prejudice caused by the inadequate disclosure. As the Eighth Circuit stressed, the production of medical records does not constitute a Rule 26(a)(2)(C) disclosure: "While the records contained facts and opinions, they did not disclose what facts and what opinions would be provided by what witnesses. Nor can the hundreds of pages of medical records reasonably be called a 'summary.'" *Vanderberg*, 906 F.3d at 703; *see also Balinger v. Casey's Gen. Store, Inc.*, No. 1:10-CV-1439-JMS-TAB, 2012 WL 1099823, at *4 (S.D. Ind. March 29, 2012) (permitting a party to provide medical records in lieu of a summary "would invite a party to dump a litany of medical records on the opposing party" and would be "contrary to the rule's attempt to extract a 'summary'"); *Reynolds v. Knox Cty. Gov't*, No. 3:17-CV-79-HSM-DCP, 2018 WL 6523439, at *5 (E.D. Tenn. Dec. 12, 2018) ("stating that a treating physician is expected to testify consistent with his or her records does not comply with Rule 26(a)(2)(C)"); *Hampton v. Bob Evans Transportation Co., LLC*, No. CV 6:18-143-DCR, 2019 WL 615355, at *3 (E.D. Ky. Feb. 13, 2019) ("reference to a large body of material (such as medical records) without summarizing the main points from them does not satisfy Rule 26(a)(2)(C)").

In short, because Casey failed to comply with the disclosure requirements in Rule 26(a), she "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Vanderberg*, 906 F.3d at 702–03 (internal quotations omitted).

### B. Opinions 1 Through 9 Are Beyond The Scope Of Jones' Involvement As A Treating Veterinarian

By his own admission, none of the chimpanzees at issue were Jones' patients. *A fortiori*, any opinions about these chimpanzees were not formed during the course of his treatment of a patient. Therefore, they must therefore be excluded as impermissible non-retained expert testimony.

7

The limitations on the testimony of a treating medical provider under Rule 26(a)(2)(C) are well established: as non-retained expert, he or she may only testify about *opinions formed during the course of treating the patient. See, e.g., E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 833 (7th Cir. 2013) ("a treating physician can provide an expert opinion without submitting a written report if the physician's opinion was formed during the course of the physician's treatment, and not in preparation for litigation"); *Meyers v. Nat'l R.R. Passenger Corp.,* 619 F.3d 729, 734–35 (7th Cir. 2010) ("[A] treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, *but who did not make that determination in the course of providing treatment,* should be deemed to be one 'retained or specially employed to provide expert testimony in the case,' and thus is required to submit an expert report in accordance with Rule 26(a)(2)." (emphasis added)); *Doyle v. Graske*, No. 7:05CV21, 2008 WL 824275, at *1 (D. Neb. March 20, 2008) (a treating physician does not need to write an expert report so long as the expert testimony is limited to "*matters encompassed in the ordinary care of a patient*, including the cause of the medical condition, diagnosis and extent of disability" (emphasis added)).

For example, one of the issues in *Kirk v. Schaeffler Grp. USA, Inc.*, No. 3:13-CV-5032-DGK, 2015 WL 12567288, at *2–3 (W.D. Mo. Sept. 29, 2015), was whether plaintiff's illness was caused by childhood exposure to trichloroethylene ("TCE"). This highly specific question "is an exponentially more complex question that Plaintiff's [treating] doctors did not address, and did not need to address, to diagnose and treat" plaintiff's illness. Therefore, while plaintiff's medical providers were allowed to testify what evidence of TCE they found in her body, they were excluded from offering any testimony or opinion concerning whether TCE could have caused plaintiff's illness—since that would not have been the sort of opinion they would have formed as part of their treatment of the patient. *Id.*

Likewise, here, Jones' proffered opinions involve highly specific and complex issues concerning the standards of care for chimpanzees, their risks of harm and the causes of their illnesses and deaths. Although Casey claims that Jones "derived" these opinions "as a result of his care of the chimpanzees at issue in this case" (Ex. B), Jones' own testimony refutes this:

> Q: [H]ow many chimpanzees have you treated over the years? Or perhaps I want to be a bit more clear. How many chimpanzees have been your patients?
>
> A: Specifically my patients?
>
> Q: Yes, yes, that you would consider to be your patients.
>
> A: None.
>
> Q: How many?
>
> A: Zero.

Jones Dep. 9:1-12. With respect to Casey's chimpanzees, Jones' role was limited to "ancillary caregiver" acting "under the guidance of Dr. Pernikoff." *Id.* 11:18-12:2. Jones' testimony about the recent death of the chimpanzee Kimmy illustrates his extremely limited role:

> Q: Why was an exploratory performed on the abdomen [of Kimmy] given that her primary symptoms when she came in were breathing difficulty?
>
> A: You would have to ask Dr. Pernikoff that.
>
> Q: You have no idea why he did that?
>
> A: You would have to ask him.
>
> Q: Did you agree with the decision based on the fact that you were an eyewitness?
>
> A: I didn't agree or disagree. I relied on his knowledge.
>
> Q: *Oh, so you have no opinion?*
>
> A: *As to the care of the animal, no. Again, they utilized my facility*.

*Id.* 51:19-52:6; *see also id.* 34:17-24 (Jones performed no acts on Kimmy that required a license to practice veterinary medicine in Missouri; Dr. Pernikoff was the veterinarian in charge of the

case); *id.* 34:17-19 ("Dr. Pernikoff was the one performing everything. They just utilized my facility") *id.* 36:6-9 (Kimmy was not Jones' patient, and Jones "did nothing other than provide [his] facility"); *id.* 44:6-8 ("I did not provide care" to Kimmy); *id.* 36:9-11 (Jones was "merely an eye witness to what happened" to Kimmy at his facility); *id.* 67:17-22 ("I can't speculate as to how [Kimmy] was. I can only say what I saw when she was brought in that day"); *id.* 75:1-13 (Jones has "no opinion" and "no way of knowing" if Kimmy's illness could have been successfully managed if Casey had brought Kimmy in sooner).

Jones' involvement with the chimpanzee Toni was of similar "ancillary" nature. At Casey's request, Jones wrote a letter after Toni's death about which he testified as follows:

> Q: So in this letter you're just writing what the client told you or another veterinarian told you? You have no knowledge whether that's true or false; is that right?
>
> A: Correct.

*Id.* 153:17-154:2.

> Q: So who treated [Toni] with amoxicillin?
>
> A: I would assume Dr. Pernikoff.
>
> Q: You're just assuming? How do you know?
>
> A: I have no idea. I don't know.
>
> Q: So you wrote [in your letter] that she was treated with amoxicillin even though you have no idea if that is true?
>
> [objections]
>
> A: I'm going on the basis of what they told me.

*Id.* 154:18-155:6.[2]

---

[2] *See also* Jones Dep. 76:21-77:2 (primates for whom Jones served as ancillary caregiver were treated "under the direction of Dr. Pernikoff"); *id.* 172:2-23 (it is "possible" that chimpanzee Candy suffers from any number of diseases, but Jones has no treatment plan or prognosis because Jones did not do anything with respect to Candy); *id.* 179:6-13 (Jones made no records and

In short, nothing supports the inference that performing emergency euthanasia on chimpanzees in distress and obtaining second-hand reports and observations of the treatment of chimpanzees by others required Jones to render the types of highly specialized expert opinions relating to the standards of care for any of the chimpanzees for which Jones has been proffered. As a non-retained expert witness, Jones is therefore precluded from rendering such opinions after the fact.

### C. Jones' Opinions are Inadmissible under Federal Rule of Evidence 702

Jones' opinions must also be excluded because Casey cannot meet her burden of establishing Jones' expertise with respect to any subjects on which he is proffered.

The party offering the expert testimony "must show by a preponderance of the evidence … that the expert is qualified to render the opinion." *Barrett*, 606 F.3d at 980 (internal citations and quotations omitted). Federal Rule of Evidence 702 defines an expert witness as, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education …." Fed. R. Evid. 702. Just because a person has a medical degree does not qualify him or her to "to testify concerning *any* medical issue; a physician's expert testimony must stay within the 'reasonable confines' of his or her practice area." *Thompson v. United States*, No. 4:17-CV-63, 2019 WL 149553, at *4 (S.D. Ga. Jan. 9, 2019).

---

performed no acts that would require a license as a veterinarian with respect to the chimpanzee Angel, who was operated on at his facility by others); *id.* 180:21-181:2 (procedure on chimpanzee Kelly was performed at Jones' facility but he played no role at all in treating or diagnosing her); *id.* 183:8-11 (by the time Jones was called for "some ancillary caregiving, Kelly was already dead"); *id.* 264:1-18 ("I euthanized [the chimpanzee Sheena]. That's all I know"); *id.* 315:22-316:1 (Jones "wouldn't have an opinion" on whether chimpanzee Candy's condition "is caused by something her environment" at Casey's facility); *id.* 344:18-23 (Jones "can't comment about Angel's care one way or another"). The only thing Jones knows about preventive veterinary care Casey provides to her chimpanzees is that at some point in the past "she bought dewormer" from him. *Id.* 219:8-20.

For example, in *Barrett*, a treating physician was offered to testify that his patient "suffered a brain injury resulting in dementia and that the injury had resulted from exposure to hydrogen sulfide gas." *Barrett,* 606 F.3d at 982. However, the doctor "had never before treated a patient suffering from $P_2S_5$ or hydrogen sulfide gas exposure. He did no research on either chemical or on toxicology before forming his opinion." *Id.* Therefore, the district court properly precluded him from opining about the cause of the patient's toxic exposure. *Id.* Similarly, in *Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 897 (8th Cir. 2008), the Eighth Circuit held that the district court did not abuse its discretion when it precluded opinion testimony of a treating physician that exposure to certain chemicals caused patient's condition, where physician never previously treated patients who were exposed to such chemicals. Likewise, a physician was not qualified to opine on the causes of a patient's vertigo given that the party who proffered him "point[ed] to nothing more than [his] general education, training, and experience as a medical doctor." *Thompson*, 2019 WL 149553, at *6.

Although Jones has a veterinary degree, nothing in his background qualifies him to render opinions about the highly specialized and complex subjects regarding the needs, standards of care, risks of injuries, and causes of illnesses of chimpanzees. He made it abundantly clear that he acted solely at Dr. Pernikoff's direction and that none of Casey's chimpanzees were his "patients." By his own admission, Jones' only "experience or training in diagnosing and treating primates" comes from veterinary school, during which he spent approximately "five to ten hours" on the subject of chimpanzees "lumped into a category of lab animal medicine" twenty-five years ago. Jones Dep. 6:23-25, 8:1-14. Jones agrees that he is not a "lab animal specialist," *id.* 97:23-98:4—and those few hours of lab animal training in 1994 certainly do not qualify him to proffer opinions on the currently applicable standard of care for chimpanzees at Casey's facility.

**IV. CONCLUSION**

For all of these reasons, Plaintiffs respectfully request that the Court enter an order, in the form submitted herewith, precluding Jones from offering any opinions as an expert at trial.

Dated: October 1, 2019

Respectfully submitted,

/s/ Martina Bernstein
MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

JARED S. GOODMAN (#1011876DC)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90026
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/
Counterclaim Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on October 1, 2019, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to the following:

    Debbie Champion, dchampion@rssclaw.com
    Victor H. Essen, vessen@rssclaw.com
    *Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*

    Geordie Duckler, geordied@animallawpractice.com
    *Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

    /s/ Jared Goodman