UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) |
| v. | ) ) |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) ) |
| Defendants and Counterclaim Plaintiffs. | ) ) |

Case No. 4:16-cv-02163

**COUNTERCLAIM PLAINTIFFS' OPPOSITION TO COUNTERCLAIM DEFENDANT CONNIE CASEY'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1)**

In her latest effort to evade responsibility for the past and ongoing harm she has caused to the chimpanzees at issue, Counterclaim Defendant Connie Casey ("Casey") now asks the Court to dismiss Counterclaim Plaintiffs' ("Plaintiffs") claims against her as moot. Casey's motion is based on her transfer of the chimpanzees last December (which brazenly contradicted her previous assurances to the Court and about which Casey has not produced any meaningful discovery despite Plaintiffs' repeated requests, and her alleged future intentions. There is no evidence in the record that refutes Plaintiff's evidence, including their experts' conclusions, that the manner in which the chimpanzees were and continue to be held violate the Endangered Species Act ("ESA"). The only thing that has changed is that Casey now profits off this venture by renting that area of her home to her former volunteer, to whom she purportedly "donated" the chimpanzees in a transaction she kept secret from her counsel, Plaintiffs, and the Court, for many months.

Casey's motion to dismiss Plaintiffs' claims against her [ECF No. 191] should be denied because Casey remains liable for the past and ongoing violations of the ESA that she has caused;

the Court can grant Plaintiffs meaningful injunctive relief to enjoin and prevent continuing unlawful takes of the chimpanzees; and, even assuming *arguendo* that the claims were otherwise moot, they would fall within the voluntary cessation exception to the mootness doctrine.

I.  **Factual Background**

It bears noting at the outset that Casey's supposed (and untested) transfer of ownership of the chimpanzees to Tonia Haddix is not only inconsistent with Casey's previous representations to this Court [ECF No. ECF No. 82 at 3], but also with public statements Haddix herself has made. On December 25, 2018, six days after Casey purportedly transferred legal ownership of the chimpanzees to Haddix [ECF No. 192-3.], Haddix created a Facebook group titled "Saving Connie's Chimps From PETA," for which she is an administrator and to which she posts frequently Declaration of Jared Goodman ("Goodman Decl."), ¶ 2, Ex. A. On January 2, 2019, Haddix posted Casey's counsel's business card, soliciting money for legal fees for this case, and stating that "with some encouragement and help [Casey] got back in the fight … and *has a very good chance of keeping all of her babies*." *Id.* ¶ 3, Ex. B (emphasis added).

Similarly, on January 14, Haddix wrote, "please if you can donate do if not please share this to *help Connie keep what rightfully belong to her and that's her babies*." *Id.* ¶ 4, Ex. C (emphasis added). These and several similar public assertions by Haddix directly contradict Casey's current claims that the chimpanzees are no longer hers.[1]

---

[1] With the exception of the few documents that she has filed with the court, Casey has provided no discovery regarding these transfers. Plaintiffs were scheduled to continue Casey's court-ordered deposition on October 23, but Casey's counsel cancelled the deposition that same morning, stating that Casey went to the emergency room for an undisclosed condition. Prior to that date, however, counsel refused to allow any time beyond the two hours that the Court ordered *prior to* these developments to allow time for Casey to cover the new defenses raised in her motion. Goodman Decl., ¶ 5, Ex. D. Plaintiffs are also awaiting from Casey's counsel dates on which Haddix, who Casey identified in her Rule 26(a)(2) disclosures as a non-retained expert witness, will be made available to be deposed consistent with the effective case management order [ECF No. 183].

## II. Argument

### A. Plaintiffs' Claims Are Not Moot Because Casey Remains Legally Responsible for the Continuing Take of the Chimpanzees.

Other than the fact that Casey is now paid by Haddix specifically to continue holding the chimpanzees in the same inadequate facility at which they have been held throughout this litigation, the dispositive facts in the record have not changed and the conditions that constitute a violation of the ESA have not been abated. Casey nevertheless argues that she "is no longer in, even arguably, a position to violate the ESA or 'take' the chimpanzees within the meaning of the ESA." [ECF No. 197, ¶ 8; *see also* ECF No. 192, at 7.] Casey is mistaken, as the plain language of the statute and prior federal court decisions clearly establish that she remains culpable for their take. To conclude otherwise would make a mockery of ESA litigation since any defendant could evade liability by merely "donating" the animals to a third party during the pendency of the case, without abating the harmful treatment of the animals, and while actually taking affirmative steps to continue the harm.

The ESA makes it "unlawful for any person" to take an endangered species, 16 U.S.C. § 1538(a)(1)(B), to "possess … by any means whatsoever" any species unlawfully taken, *id.* § 1538(a)(1)(E), or to "*solicit another to commit, or cause to be committed*," any ESA violation. *Id.* § 1538(g) (emphasis added). Further, the take prohibition "encompasses indirect as well as direct injuries," *Babbitt v. Sweet Home Chapter of Communities for a Great Or.*, 515 U.S. 687, 697-98 (1995), and "incorporate[s] ordinary requirements of proximate causation and foreseeability," *id.* at 698 n.9.

In *Strahan v. Coxe*, 127 F.3d 155 (1st Cir. 1997), *cert. denied*, 525 U.S. 978 (1998), for example, the plaintiff filed suit against state officers alleging that they violated the ESA by authorizing the use of certain fishing equipment in an endangered whale habitat. The plaintiff

3

sought a preliminary injunction ordering the state to revoke licenses and permits it had issued authorizing the use of that equipment and barring it from issuing such licenses and permits in the future unless it received take permits. *Id.* at 158. The First Circuit, citing sections 1538(a)(1)(B) and § 1538(g), noted that "[t]he statute *not only prohibits the acts of those parties that directly exact the taking, but also bans those acts of a third party that bring about the acts exacting a taking*." *Id.* at 163 (emphasis added). The court affirmed the district court's holding that these provisions "apply to acts by third parties that allow or authorize acts that exact a taking and that, but for the permitting process, could not take place." *Id.* (collecting cases). It also rejected the state's attempt to analogize imposing liability for issuing a driver's license to someone who later uses their car to violate federal laws: "In this instance, the state has licensed commercial fishing operations to use gillnets and lobster pots in specifically the manner that is likely to result in a violation of federal law." *Id.* at 164.

Similarly, in *Loggerhead Turtle v. Cty. Council of Volusia Cty., Fla.*, 148 F.3d 1231 (11th Cir. 1998), *cert. denied*, 526 U.S. 1081 (1999), the plaintiffs sued the county, alleging that its inadequate regulation of beach lighting that adversely impacted endangered sea turtles violates the take prohibition. The Eleventh Circuit found that the plaintiffs showed sufficient causation for purposes of standing due to the county's allegedly inadequate regulation, even where nonparty municipalities also maintained regulatory authority over lighting in their communities. *Id.* at 1249. The court noted that it "need not decide whether the [plaintiffs] have made a sufficient showing of causation for purposes of *liability*," but that "precedent from the Supreme Court and other circuits that address causation for purposes of liability support our holding." *Id.* at 1250. The county "need not operate every beachfront lighting source itself to be held liable under the ESA," and "its indirect control over lighting is sufficient." *Id.* at 1250-51

4

(citing *Sweet Home*, 515 U.S. at 697-98). *See also, e.g.*, *Animal Prot. Inst., Ctr. for Biological Diversity v. Holsten*, 541 F. Supp. 2d 1073 (D. Minn. 2008) (granting summary judgment finding that state violated the take prohibition by allowing trapping activities within range of the Canada Lynx, though no takings had been reported for the past two years).[2]

Here, even if the Court could determine as a matter of law that Casey's disputed transfer of the chimpanzee is binding and irrevocable, prior to any meaningful discovery on the issue, Casey remains liable for continuing takes of the chimpanzees. The transactions that Casey entered into in an attempt to moot Plaintiffs' claims allow Haddix to continue to hold the chimpanzees in conditions that "exact a taking," which she could not do but for Casey's conduct. *Strahan*, 127 F.3d at 163. Casey has contracted with Haddix for her to continue to maintain the chimpanzees "in specifically the manner that is likely to result in a violation of federal law," *id.* at 164, per Plaintiffs' allegations and evidence of the inadequacy of the same enclosures in which they are currently held at her home.

Accordingly, far from immunizing Casey from liability, on the current record she remains liable for the continuing take of the chimpanzees, continuing to possess the unlawfully taken chimpanzees at her home, and, at a minimum, causing the continuing take to be committed.

**B. Plaintiffs' Claims Are Not Moot Because the Court Can Provide Substantial Relief.**

Even if Haddix turns out to be the present legal owner of the chimpanzees and the Court could not order her to transfer them to an accredited sanctuary absent her joinder,[3] the Court can still grant Plaintiffs the majority of their requested relief. Casey's assertion that this case is moot

---

[2] While each of these cases involve the government causing a take by authorizing or not preventing the offending conduct, they rely on the very same prohibitions at issue in this case. They do not relate to any provision specific to a government entity's conduct.

[3] The Court remains empowered to join Haddix if it determines that joinder is required to provide Plaintiffs with the complete relief they seek. [ECF Nos. 184-85.]

because "the Court is no longer in a position to fashion any kind of meaningful injunctive relief" is based on a false premise and must fail. [ECF No. 197, ¶ 9; *see also* ECF No. 192, at 8.]

In *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000), a citizen suit under the Clean Water Act ("CWA"), the district court's imposed a civil penalty but denied plaintiff's request for injunctive relief on the ground that after the lawsuit began, the defendant achieved substantial compliance with the terms of its discharge permit. *Id.* at 173. The Fourth Circuit vacated the order, holding that the case became moot once the defendant complied with the permit and the plaintiff failed to appeal the denial of equitable relief, since civil penalties payable to the government do not redress *the plaintiff's* injuries. *Id.* The Supreme Court reversed, reasoning that "[t]o the extent that [civil penalties] encourage defendants to discontinue current violations and deter them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct." *Id.* at 186. The Eighth Circuit has similarly recognized that "even if a polluter's *voluntary* permanent cessation of the alleged violations moots a citizen suit claim for injunctive relief, it does not moot a related claim for civil penalties." *Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 356 (8th Cir. 1998).[4] "[A] polluter should not be able to avoid otherwise appropriate civil penalties by dragging the citizen suit plaintiff into costly litigation and then coming into compliance before the lawsuit can be resolved." *Id.* Accordingly, a case seeking equitable remedies does not become moot because of the unavailability of one such remedy if the court can otherwise redress the plaintiff's injury.

---

[4] *Comfort Lake Ass'n* referred to statutory civil penalties under the Clean Water Act, which are not provided for by the ESA. However, it also dealt with a permanent cessation of unlawful conduct that is not at issue here. As discussed in this section, Plaintiffs still seek meaningful injunctive relief to prevent ongoing and future unlawful conduct.

6

The Courts of Appeal have similarly declined to declare cases moot when the property at issue has been lost but the courts can fashion other appropriate equitable remedies. In *Thompson v. Covington*, 47 F.3d 974 (8th Cir. 1995), the Eighth Circuit considered a federal inmate's civil action against FBI agents alleging that the agents seized "some of his legal papers" during their investigation of his criminal case and failed to return it. *Id.* at 974. In dismissing the case without prejudice because Thompson filed in the wrong district court, the court specifically highlighted that the case was "not mooted by the government's assertion that it cannot find Thompson's property." *Id.* at 975 (citations omitted). The Eighth Circuit cited to the Second Circuit's decision in *Soviero v. United States,* 967 F.2d 791 (2d Cir. 1992), in which that court held that "[w]hen a court possessing equitable powers has jurisdiction over a complaint that seeks equitable relief, it has authority to award whatever damages are incident to the complaint." *Id.* at 793.

Here, Casey acknowledges that Plaintiffs seek several forms of injunctive relief. [ECF No. 192, at 2-3.] Specifically, Plaintiffs request that the Court:

    a. Enter a declaratory judgment that Counterclaim Defendants' treatment of endangered chimpanzees violates the ESA's prohibition on the "take" of an endangered species set forth in 16 U.S.C. § 1538(a)(1)(B) and corresponding regulations;

    b. Enjoin Counterclaim Defendants pursuant to 16 U.S.C. § 1540(g)(1)(A) from continuing to violate the ESA and its implementing regulations with respect to endangered chimpanzees;

    c. Enjoin Counterclaim Defendants from owning or possessing any endangered chimpanzees in the future;

    d. Appoint a special master or guardian ad litem to determine the most appropriate placement for the forfeited chimpanzees, consistent with their best interests, at wildlife sanctuaries that are accredited by the Global Federation of Animal Sanctuaries and that will provide animals with appropriately sized naturalistic habitats, adequate socialization, and expert care;

    e. Award Counterclaim Plaintiffs their reasonable attorneys' and expert fees and costs for this action; and

> f. Grant such other and further relief as the Court deems just and proper.

[ECF No. 23, at 35.]

Accordingly, even if the Court cannot require the chimpanzees' transfer to an accredited sanctuary pursuant to section d without Haddix's joinder, the Court can grant every other form of requested relief to prevent continuing and future violations of the ESA, as none of them has been addressed by Casey's motion, affidavit, or conduct in attempting to moot Plaintiffs' claims against her. Notably, Casey does not even attest that there are any plans to remove the chimpanzees from her facility (indeed, she entered into a 99-year lease with Haddix), nor that she will never own or possess endangered chimpanzees in the future. A declaration that these conditions violate the ESA, enjoining her from continuing to violate the law, and enjoining her from possessing these or any other chimpanzees in her home are all meaningful relief that would end these unlawful conditions in which the chimpanzees are held.

Given Casey's continuing violations and Haddix's apparent complicity in these violations, this is clearly not a situation where the plaintiffs "no longer have the requisite 'personal stake' in the lawsuit." *Cf. Teague v. Cooper*, 720 F.3d 973, 976-77 (8th Cir. 2013) (plaintiffs conceded that new legislation enacted after the challenged school choice statute was declared unconstitutional "affords their children the full prospective relief they seek in the lawsuit"). Plaintiffs face the very same injuries with respect to the remaining chimpanzees as the day they sent their notice of intent to due in November 2016.

**C. Even Assuming Plaintiffs' Claims Were Otherwise Moot, They Fall Within the Voluntary Cessation Exception and Should Not Be Dismissed.**

While Casey remains liable for continuing violations and the Court can grant meaningful relief for present and past violations, Plaintiffs assume *arguendo* that their claims are otherwise moot in order to respond to Casey's assertion that they do not fall within the exception to the

mootness doctrine for a defendant's voluntary cessation of unlawful conduct. [ECF No. 192, at 9-10.]

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). "If it did, courts would be compelled to leave the defendant free to return to its old ways." *Friends of the Earth*, 528 U.S. at 170. As this Court recognized in denying Counterclaim Defendants' motion to dismiss Plaintiffs' claims with respect to Joey as moot, "[a] party claiming mootness faces a heavy burden to meet the stringent mootness test and must 'show[ ] that 'the challenged conduct cannot reasonably be expected to start up again.'" *Missouri Primate Found. v. People for Ethical Treatment of Animals, Inc.*, No. 4:16 CV 2163 CDP, 2018 WL 1420239, at *5 (E.D. Mo. Mar. 22, 2018) (quoting *Ctr. for Special Needs Admin., Inc., v. Olson*, 676 F.3d 688, 697 (8th Cir. 2012)); *see also Friends of the Earth*, 528 U.S. at 189 (party seeking dismissal must prove that the voluntary acts "make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur"). A defendant's burden is so heavy and the mootness test so stringent that in *Friends of the Earth*, the Court held that where the defendant ceased its illegal polluting, came into compliance with its permit, and shut down the polluting facility, the case was not moot because the effect of these actions "on the prospect of future violations is a disputed factual matter." 528 U.S. at 193-94.

Casey has not met this substantial burden, even assuming her transactions were not a "sham" and were entered into in good faith:

- Casey's voluntary "donation" of the chimpanzees to Haddix, and the lease of a portion of her home to Haddix, do not preclude her from violating the ESA with respect to these same chimpanzees in these very same conditions.
- The "donation" form Casey completed as the only evidence of the transfer of the chimpanzees does not prevent her and Haddix from executing a nearly identical form to transfer the chimpanzees back to Casey at any time. [*See* ECF No. 192-3, at 3.]
- The lease that Casey entered into with Haddix does not contain any provisions preventing or restricting its termination. [*See* ECF No. 192-3, at 6.]
- Casey's termination of her Animal Welfare Act ("AWA") license is entirely irrelevant to this inquiry. As Casey states in her affidavit, she "long ago discontinued" being a "breeder/exhibitor/dealer of animals." [*See* ECF No. 192-3, at 1.][5]

Casey's statements in her affidavit that she has no plans to "accept legal ownership" or "exercise practical control" of these chimpanzees in the future, *id.,* are also due no meaningful weight. *U.S. v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968) (appellees' statement that it would be uneconomical for them to commit further violations "cannot suffice to satisfy the heavy burden of persuasion which we have held rests upon those in appellees' shoes."); *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (denying motions to dismiss as moot actions by government to enjoin violations of prohibition against interlocking

---

[5] Casey's termination of her AWA license also has no bearing on her culpability under the ESA. While she may point to her most recent inspection reports as evidence of alleged AWA compliance, any alleged compliance is only one of three factors that must be considered as to whether her conduct falls within the exception to "harass," 50 C.F.R. § 17.3, and the Court "must independently assess [Casey's] animal husbandry practices under the AWA," *Graham v. San Antonio Zoological Soc'y*, 261 F. Supp. 3d 711, 744 (W.D. Tex. 2017). Plaintiffs have provided the Court with evidence of a take, supported by extensive expert opinion, during the same three years that Casey was not cited for AWA violations.

corporate directorates where defendant resolved from corporate boards and submitted affidavits "that the interlocks no longer existed and disclaimed any intention to revive them"); *see also* ECF No. 82 at 3 (Casey assertion, prior to transferring the chimpanzees to Haddix, that she "has no plans or intent to transfer any of the other chimpanzees pending resolution of this suit").

Finally, if Casey "wants to make a *factual* attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947)). "The 'proper course' for the defendant to make a factual attack 'is to request an evidentiary hearing on the issue.'" *United Transp. Union Local 418, Burlington Sys. Div. of the Bhd. of Maint. of Way Employes v. Boardman*, No. C07-4100-MWB, 2008 WL 2600176, at *5 (N.D. Iowa June 24, 2008) (quoting *Osborn v. United States,* 918 F.2d 724 (8th Cir.1990)). Here, Casey has provided minimal documentation, inconsistent with her allegations to the Court, belied by Haddix's own public statements, and which Plaintiffs assert—even if accepted as true—do not remotely moot their claims against Casey. Although the Court is not required to hold an evidentiary hearing, one is patently critical if the Court elects not to deny Casey's motion on this record. *Cf. id.* at 6 (finding no hearing necessary where it was "undisputed that Defendants responded to the FOIA request and the petitions for rulemaking" at issue, "precisely the bases for their argument that Plaintiffs' claims are now moot").

In sum, Casey has not proven that these voluntary acts "make it absolutely clear" that her ESA violations "could not reasonably be expected to occur" in the future. *Friends of the Earth*, 528 U.S. at 189. Without a decision on the merits, subsequent injunction, and Plaintiffs' other prayers for relief, there is nothing preventing Casey from regaining ownership of the

chimpanzees, terminating Haddix's lease, or otherwise violating the ESA even under the current circumstances the moment the litigation is resolved. Indeed, given the continuing conduct that would appropriately be the subject of new litigation against both Casey and Haddix, "[t]o abandon the case at an advanced stage [would] prove more wasteful than frugal." *Id.* at 191-92. Accordingly, Casey has not satisfied the heavy burden of proving that she could not reasonably continue to violate the ESA.

### D. Casey's Assertions Regarding Her Attempts to Resolve This Case in Good Faith Are Demonstrable Misrepresentations.

While unrelated to the merits of her motion, Casey argues that "[a]t various stages in this case, [she] has attempted to resolve the claims due to the impact of the case on her life and the demands of caring for the animals at issue." [ECF No. 192, at 3.] She fails to acknowledge that she "attempted to resolve" the case only by secretly moving several chimpanzees and transferring ownership of others in attempt to remove them from the Court's jurisdiction. [*See, e.g.*, ECF No. 158 12 ("[A] stay of the proceedings is appropriate to determine whether a transfer has or can be effected that renders this case moot.")]

Casey notes that she previously filed an Offer of Judgment, but inexplicably asserts both that "PETA rejected this Offer of Judgment" and "[t]he reasons for this remain unexplained." In fact, in Plaintiffs' letter rejecting the Offer, they provided a detailed explanation that the Offer was invalid on its face because "it is so vague as to render it impossible for Plaintiffs (and subsequently, the Court) to determine what the Offer entails," including what chimpanzees were encompassed by it. *See* Goodman Decl., ¶ 6, Ex. E. Plaintiffs expressly stated that they "remain open to consider any valid offers made in good faith," *id.*, and later specifically invited Casey's counsel to clarify the ambiguities for Plaintiffs' consideration, *id.* ¶ 7. Casey chose not to do so. *Id.*

12

More recently, Plaintiffs suggested to Casey "in-person mediation consistent with the court's directive to continue to attempt to resolve this matter by settlement," to take place during the month of September. *Id.* ¶ 8, Ex. F. Casey's counsel responded that "mediation is [not] going to be feasible at this point in this case." *Id.*

\* \* \*

Even assuming that Casey's legal transfer of the chimpanzees to Haddix was not a sham in a misguided attempt to evade liability after several years of litigation, Casey's motion to dismiss the case should be denied because: (1) Casey remains liable for the continuing take of the chimpanzees, continuing to possess the unlawfully taken chimpanzees, and causing the continuing take to be committed; (2) the Court can grant Plaintiffs meaningful injunctive relief to enjoin and prevent continuing unlawful takes of the chimpanzees; and (3) even assuming that the claims were otherwise moot, Casey has not met the heavy burden to establish that her claimed voluntary cessation of unlawful conduct does not fall within that exception to the mootness doctrine.

Dated: October 24, 2019

Respectfully submitted,

/s/ Jared Goodman
JARED GOODMAN (#1011876DC)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90026
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

MARTINA BERNSTEIN (#230505CA)
PETA Foundation
1536 16th St. NW
Washington, DC 20036
202.483.7382
Fax No: 202.540.2208
martinab@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

*Attorneys for Defendants/
Counterclaim Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on October 24, 2019, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to the following:

>Debbie Champion, dchampion@rssclaw.com
>Victor H. Essen, vessen@rssclaw.com
>*Attorneys for Plaintiff/Counterclaim Defendant Connie Braun Casey*
>
>Geordie Duckler, geordied@animallawpractice.com
>*Attorney for Plaintiff/Counterclaim Defendant Andrew Sawyer*

>/s/ Jared Goodman