Geordie Duckler, OSB #873780
9397 SW Locust St.
Tigard, Oregon 97223
Telephone: (503) 546-8052
Facsimile: (503) 241-5553
geordied@animallawpractice.com
Attorney for Plaintiff and Counter-Defendant Andrew Sawyer

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MISSOURI

EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et. al.,<br><br>Plaintiffs and Counter-Defendants,<br><br>vs.<br><br>PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et. al.,<br><br>Defendant and Counter-Plaintiff. | Case no. 4:16 CV 2163 CDP<br><br>COUNTER-DEFENDANT ANDREW SAWYER'S OPPOSITION TO COUNTER-CLAIMANT MOTION FOR ORDER TO SHOW CAUSE RE CIVIL CONTEMPT RE AUGUST 24TH ORDER |

Plaintiff and Counter-Defendant Andrew Sawyer ("Sawyer") hereby opposes Counter-Claimant PETA's ("PETA") motion to show cause for civil contempt regarding this Court's August 24th Order ("Order") as follows.

In general, Sawyer asserts through counsel that he is unable to presently comply with the August 24th Order based on his legitimate assertion of rights against self-incrimination under the 5th and 14th Amendments to the US Constitution as well as rights against self-incrimination under Article 1, Section 19 of the Missouri Constitution, and he justifies failure to comply with the August 24th Order as excusable as a failure being based on a legitimate assertion of his rights against self-incrimination under the 5th and 14th Amendments to the US Constitution, as well as rights against self-incrimination under Article 1, Section 19 of the Missouri Constitution.

1

More specifically, Sawyer explains his present inability and his excusable and justifiable failure to comply as follows:

At page 12 of its <u>Answer and Counterclaims</u> in this case PETA alleged that "Upon information and belief, at some time after receiving the Notice and before February 2, 2017, Counterclaim Defendant Sawyer removed chimpanzee Joey from MPF, where Joey was being held indefinitely, and transferred him to an unknown location." In civil actions under the ESA, 16 U.S.C. Section 1540 et. seq., such as this one that PETA has pursued via its counterclaims, it is incontestable that federal prosecutors regularly track the action in order to contemplate, investigate, prepare, and pursue later or parallel imposition of criminal charges against the party under attack in such an action, invariably by implementing the criminal statute 16 U.S.C. Section 1540(b)(1). The charges for violation of that federal statute carry the possibility of criminal penalties of up to $50,000 and imprisonment in a federal prison facility for up to a year.

Any information provided by Sawyer in this action which he either voluntarily provides or is compelled to provide is thus guaranteed to later be used against him in a subsequent criminal case. Additionally, the government has the benefit of a lengthy five year statute of limitations on such crimes, per 18 U.S.C. Section 3282, to take full advantage, with assistance of the animal rights organization in the civil action, of all information obtained. Thus, by virtue of PETA's own allegations, the federal government has another year and a half until, at the very least, February 2, 2022 (if not even later given some tolling provisions), to charge Sawyer with quite serious federal crimes; given the overt aggressiveness with which PETA has pursued this case against each opposing party, it is a foregone conclusion that the organization has been undoubtedly providing status and detailed information it has obtained in this case to the federal government to push it to do exactly that.

At present, the Court's August 24th Order demands that Sawyer "transfer" the chimp Joey to the Center for Great Apes and "confer with counsel" for PETA to facilitate, cooperate with, assist with, and otherwise lend any support necessary to effectuate the transfer. While a showing of noncompliance with those commands might normally constitute a *prima facie* case of contempt of a court order, there is a well-established exemption for an accused under the doctrine that a court may *not* impose punishment in a civil contempt proceeding when impossibility is shown, or where it is clearly established that the alleged contemnor is truly unable to comply with the terms of the order. Turner v. Rogers, 564 US 431, 131 S Ct 2507, 180 L Ed 2d 452 (2011); Acosta v. La Piedad Corp., 894 F3d 947 (8th Cir 2018) (one charged with contempt of court for failure to comply with a court order makes a complete defense by proving that he is unable to comply).

Proving an inability to perform and showing that noncompliance was not an act of contumacy is on the shoulders of the one being accused of contempt, and requires that the defense be raised affirmatively and that its validity be demonstrated. Henderson v. Henderson, 389 SW3d 260 (Mo Ct App 2012). To show that compliance is presently impossible, and thereby to avoid contempt for disobeying a court order, the demonstration must be (1) that the accused is unable to comply, explaining why categorically and in detail, (2) that the accused's inability to comply was not self-induced, and (3) that the accused made in good faith all reasonable efforts to comply. Chao v. McDowell, 198 F Supp 2d 1093 (ED Mo 2002).

As carefully and consistently described to this Court in previous submissions by Sawyer, and as now sworn to under oath by Sawyer himself demonstrating the complete affirmative defense of inability via his attached Declaration, then under the Fifth and Fourteenth Amendments to the US Constitution a person in Sawyer's position is more than entitled to the

3

exemption since one may not be compelled to give testimony in *any* proceeding, civil or criminal, formal or informal, before administrative, legislative or judicial bodies, when one's compliance may tend to incriminate him or her in future criminal proceedings. Lefkowitz v. Cunningham, 431 US 801, 804-805 (1977) (privilege available in civil proceedings where the testimony might later subject the witness to criminal prosecution); United States v. Balsys, 524 U.S. 666, 672 (1998); Kastigar v. United States, 406 U.S. 441, 444-445 (1972); McCarthy v. Arndstein, 266 U.S. 34, 40 (1924).

Sawyer's protection in this area is heavily weighted in his favor: The Supreme Court has held that the privilege is to be construed liberally "in favor of the right it was intended to secure." Hoffman v. United States, 341 US 479, 486 (1951). The Hoffman decision makes it very clear that the scope of the privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." Id.

Again, the Court's Order demands, under pain of sanction, that Sawyer do two active tasks: one, engage in specific personal actions – "transfer" Joey to the Center for Great Apes – and two, engage in specific communications directed toward accomplishing the first – "confer with counsel" for PETA to facilitate, cooperate with, assist with, and otherwise lend any support necessary to effectuate the transfer. In engaging in either of those tasks, however, Sawyer by definition would be directly providing PETA (and the federal government) a specific and accurate "inventory of a source of potentially incriminating evidence" and handing over the "functional equivalent of the preparation of an answer to either a detailed written interrogatory or a series of oral questions at a discovery deposition", all of which have been deemed protected by the constitutional privilege in United States v. Hubbell, 530 U.S. 27, 41-41 (2000).

4

In reality, the most casual word spoken by Sawyer to PETA's counsel divulging that he knows even vaguely or in general where the chimp currently is, that he knows how one might effectively transfer it from one place to another, that he is in possession of any detail, large or small, about the particular actors, locations, or mechanics involved in a workable transfer procedure, will inexorably would lead to him then having to inform PETA (and by extension the federal government) of the consequential nitty gritty – the detailed places, names, dates, communications, persons involved, motivations, supporting documents, etc. he is aware of as to enabling any transport to and from a certain location. Divulging, engaging, conferring, and assisting all are activities that make it mandatory for Sawyer to thereby have to make extensive use of "the contents of his own mind' in participating in those conversations and assisting in that process. His participation even at the basest level makes it a certainty that doing so would then provide a prosecutor with a "lead to incriminating evidence," and/or "a link in the chain of evidence needed to prosecute." Hubbell, *supra*, at 42 (quoting Doe v. United States, 487 US 201 (1988) and Hoffman v. United States, 341 US 479 (1951) and Curcio v. United States, 354 U.S. 118, 128 (1957)). Such is not only prohibited and protected from occurring once invocation of the privilege is made, it is prohibited and protected from being coerced by any actor *after* invocation, be they a litigant or jurist.

Assertion of the privilege then brings up the concept of potential waiver of the privilege. It is important to note that the Fifth Amendment privilege against self-incrimination is waived as to any matters to which the witness actually "testifies" to voluntarily. United States v. Musk, 719 F3d 962 (8th Cir 2013). Sawyer's compliance with the two tasks ordered of him has to comprise "testimony" on those topics and thus would waive the privilege, something he not only will not do, but cannot be forced to do.

5

Moreover, the privilege against self-incrimination being a right of constitutional magnitude, then the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side. United States v. Seifert, 648 F.2d 557, 561-62 (9th Cir. 1980). Since PETA has recently confessed that "Under these circumstances, transferring or facilitating the transfer of Joey would add "little or nothing to the sum total" of what is already known about Joey's ownership. Similarly, compliance with the August 24th Order would add "little or nothing to the sum total" of what is already known about Joey's present location", then Sawyer asserting a constitutional privilege causes no unfair or unnecessary prejudice to PETA at all, an entity which has conceded that it possesses all the information and assistance it needs without Sawyer.

It is equally instructive to acknowledge that Sawyer's protections in this area don't begin and end with the federal constitution, but are both advanced and enhanced by the parallel state constitution provision as well.

One, as noted to this Court previously, for an event to be "testimonial" as required to implicate the Fifth Amendment under Missouri law, a communication must either explicitly or implicitly relate a factual assertion or disclose information. State v. Johnson, 576 SW3d 205 (Mo Ct App 2019), transfer den (June 25, 2019), cert. den, 140 S Ct 472 (2019). The act of entering a passcode to unlock an electronic device seized by the government comprised "testimonial communication" triggering Fifth Amendment protection in that case since, by entering a passcode, the defendant was thereby implicitly acknowledging that he had ownership and control over the electronic device and its content. State v. Johnson, supra. It must be repeated that "conferring with counsel" and "facilitating, cooperating with, assisting with, and otherwise lending any support necessary to effectuate the transfer of Joey" comprise the express act of

making an actual statement protected in Johnson and again would comprise implicit acknowledgment that Sawyer had ownership and control over Joey exactly as prohibited and protected by that ruling.

Two, Section 19 of the Missouri Constitution Section 19, entitled "Self-incrimination and double jeopardy" states in relevant part that "no person shall be compelled to testify against himself in a criminal cause...", using language congruent to very similar language in the Georgia Constitution stating that "No person shall be compelled to give testimony tending in any manner to be self-incriminating", and supporting reasoning of that state's Supreme Court in holding that such language must be construed to also cover incriminating <u>acts</u> and is more extensive than the Supreme Court of the United States's interpretation of the right against compelled self-incrimination guaranteed by the Fifth Amendment". <u>Olevik v. State</u>, 302 Ga 228, 240, 806 SE2d 505, 516 (2017) (holding that breathing deep lung air into a breathalyzer is a self-incriminating act that the state Constitution prevents the State from compelling) (emphasis added); see also, <u>Brown v. State</u>, 262 Ga 833, 836, 426 SE2d 559, 562 (1993) (requiring a defendant to furnish a handwriting exemplar violated the defendant's right under the Georgia constitution not to be compelled to give self-incriminating evidence).

The comparable language of the Missouri Constitution justifies a similar conclusion: Missouri's constitutional provision covers incriminating acts as well as statements such that the coerced acts of "conferring" and "assisting," and "facilitating" in the animal's transfer is the functional equivalent of Sawyer being forced to breathe into a breathalyzer – and represents a self-incriminating act that the state Constitution also prevents his from being held in contempt for.

Simply put, Sawyer cannot be validly compelled, via threat of contempt, into relating a factual assertion or disclosing information in the manner specifically prohibited by State v. Johnson, *supra*, and Sawyer is protected by both the U.S. Constitution and the Missouri Constitution prohibiting the compulsion of "testimony" in the form of "making statements" he does not want to make and the making of which may well lead to his prosecution. Neither can Sawyer be forced, via threat of contempt, to *waive* those important rights against self-incrimination under the 5th and 14th Amendments to the US Constitution as well as pursuant to Article 1, Section 19 of the Missouri Constitution – yet a finding of contempt for not conferring or assisting as ordered would place him in exactly those straits that the case law on the privilege is designed to address: the impossible position of a defendant involuntarily trading away a constitutional protection in order to avoid a serious personal sanction.

A contempt finding here would by definition in such circumstances thus impermissibly jeopardize a party's valuable constitutional rights at a basic level. See, Blau v. United States, 340 US 332, 71 S Ct 301, 95 L Ed 306 (1951) (contempt conviction cannot be based upon a witness' refusal to answer certain questions where the witness invoked his privilege against self-incrimination). Courts faced with the specific claim by a defendant who asserts rights against self-incrimination to refrain from complying with a court order, have held that a contemnor may indeed assert that they were unable to comply or that their failure to comply is based on constitutional rights against self-incrimination if the position were a valid one. Braatz v. Braatz, 2 Wash App 2d 889, 413 P3d 612, rev den, 190 Wash 2d 1031 (2018). See also, People v. Baker, 158 Ill App 3d 756, 758, 511 NE2d 219, 221 (1987), rev'd on procedural grounds in 123 Ill 2d 233 (1988) (defendant who is guilty of driving under the influence of alcohol may not be held in contempt of court for failure to appear at or obtain an alcohol evaluation, if the asserted reason

for such conduct is that all questions asked during the evaluation might violate the defendant's privilege against self-incrimination).

Given the above points and authorities, and given Sawyer's sworn declaration demonstrating the complete affirmative defense of present inability, Sawyer therefore rigorously maintains that his legitimate assertion of his rights against self-incrimination under the 5th and 14th Amendments to the US Constitution, as well as his rights against self-incrimination under Article 1, Section 19 of the Missouri Constitution, is not conduct in contempt of the Court's August 24th order but instead provides the basis for the Court to find a valid present inability, a legitimate excuse, and/or an allowable exemption from his compliance with the order. Respectfully submitted,

DATED: November 11, 2020    GEORDIE DUCKLER, P.C.

By: *s/ Geordie Duckler*
Geordie Duckler, OSB #873780
Attorney for Plaintiff and Counter-Defendant Andrew Sawyer

Geordie Duckler, OSB #873780
9397 SW Locust St.
Tigard, Oregon 97223
Telephone: (503) 546-8052
geordied@animallawpractice.com
Attorney for Plaintiff and Counter-Defendant Andrew Sawyer