UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PEOPLE FOR THE ETHICAL          )
TREATMENT OF ANIMALS, INC.,     )
et al.,                         )
                                )
    Defendants and            )
    Counterclaim Plaintiffs,  )
                                )
    v.                        )   No. 4:16-CV-2163-CDP
                                )
TONIA HADDIX,                   )
                                )   April 7, 2021
    Counterclaim Defendant.   )

IN-COURT PROCEEDING
BEFORE THE HONORABLE CATHERINE D. PERRY
UNITED STATES DISTRICT COURT JUDGE

**APPEARANCES**

**FOR DEFENDANTS**      Jared S. Goodman, Esq.
**AND COUNTERCLAIM**   PETA Foundation
**PLAINTIFFS:**         2154 W. Sunset Blvd.
                  Los Angeles, CA 90026
                  (323)210-2266

                  James P. Martin, Esq.
                  Polsinelli, PC
                  100 S. Fourth, Suite 1000
                  St. Louis, MO 63102
                  (314)231-1776

**FOR COUNTERCLAIM**   Tonia Haddix
**DEFENDANT:**        12340 State Road CC
                  Festus, MO 63028
                  lazyjet69@yahoo.com

**REPORTED BY:**   CARLA M. KLAUSTERMEIER, RMR, CRR, CSR, CRC, CCR
               Official Court Reporter
               United States District Court
               111 South Tenth Street
               St. Louis, MO 63102 | (314)244-7984

PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

1          **(Proceedings convened in open court at 10:00 a.m.)**

2          THE COURT:  All right.  Good morning.  We are here

3 in the case of -- the Motion for Contempt filed by the

4 Counterclaim Plaintiffs, People for the Ethical Treatment of

5 Animals, against Counterclaim Defendant, Tonia Haddix.

6          And Ms. Haddix, I see you are here.

7          And would counsel for the defendant -- I mean, for

8 the counterclaim plaintiff please announce yourself for the

9 record.

10          MR. GOODMAN:  Yes.  It's Jared Goodman for the

11 plaintiff -- counterclaim plaintiffs.

12          THE COURT:  All right.

13          MR. GOODMAN:  And with me is my co-counsel, Jim

14 Martin.

15          THE COURT:  All right.  And just because we are --

16 well, the nature of this, I guess.  If you wish to use the

17 mics at your table and remain seated because of the continuing

18 pandemic, that's fine.

19          So, Ms. Haddix, this is a hearing for you to show

20 cause why you should not be held in contempt.  Do you wish to

21 present evidence or provide testimony?

22          MS. HADDIX:  Your Honor, currently, at this time,

23 I'm looking for an attorney, so I would like a continuance so

24 that I can have time to get an attorney.

25          THE COURT:  And what -- do you have -- do you think

```
 1   you'll be able to obtain an attorney any time in the near

 2   future?

 3              MS. HADDIX:  Yes.  I've already spoke to a couple

 4   that I've got appointments with this week to go ahead and try

 5   to obtain -- you know, retain one.

 6              THE COURT:  When you talked to them, did you tell

 7   them that this was a proceeding that was going on today and

 8   that it was a contempt matter?

 9              MS. HADDIX:  Yes, I did.

10              THE COURT:  And neither one of them was willing to

11   come in and represent you today?

12              MS. HADDIX:  No, because one of them is out until

13   Friday, so I couldn't, you know, talk to them until Friday,

14   and the other one, there was a conflict of interest, so they

15   were going to see if -- because they had represented Connie on

16   another case, that because Connie's not dealing with this

17   situation, if they could take me or not.

18              THE COURT:  Okay.  And Mr. Goodman, what's your

19   response?

20              MR. GOODMAN:  Your Honor, Counterclaim Plaintiffs

21   oppose the request for a continuance.  Your Honor has

22   suggested on several occasions that Ms. Haddix obtain an

23   attorney and she had decided not to do that.

24              Here, we are now in a situation where we've got the

25   TRO in place, we are about a month past her final deadlines in
```

1    this case, and she has presented no evidence or testimony

2    during the last hearing that provides any excuse for her

3    default.

4            You know, it is -- it's clear and undeniable that

5    she has defaulted on her fundamental obligations under the

6    agreement and provided false and misleading information to

7    Plaintiffs to attempt to appear to have been in compliance

8    when she wasn't.

9            You know, she testified under oath during the last

10   hearing that the enclosure that she was required to complete

11   by the deadline was not, in fact, completed, that she did not

12   provide the required monthly updates on the status of the

13   construction.  And when asked by the Court why she did not

14   comply with her obligation, she provided no explanation that

15   would even arguably excuse her conduct stating only, "You

16   can't work with these people."

17           So this, alone, is sufficient to find in Plaintiff's

18   favor, but I would like to just address each of her defaults

19   to the extent that Your Court -- excuse me -- Your Honor is

20   open to that.

21           THE COURT:  All right.  It might be helpful,

22   actually, if you would stand up at the lectern.  And you can

23   remove your mask while you're talking because it's -- I'm

24   having a little trouble hearing you.  And just make sure you

25   are using that mic.  It's a little -- it's not exactly where

1    it needs to be.  Thank you.

2              MR. GOODMAN:  Hopefully this is a little bit better?

3              THE COURT:  Yes.  Thank you.

4              MR. GOODMAN:  Thank you, Your Honor.

5              So I'd just like to address each of these defaults

6    in turn.  So, Ms. Haddix's first construction update with

7    photographs was due to the counterclaim plaintiffs in

8    November, 2020.  She did not send any update until she was

9    notified of her default.  During the cure period, she did not

10   send any photographs, although it's required, and she reported

11   that "excavation was complete."  Plaintiffs informed

12   Ms. Haddix that, absent photographs, this did not meet her

13   obligation, but that Plaintiffs would accept the update and

14   expected photographs along with her December update.

15             Ms. Haddix's second construction status update with

16   photographs was due in December of 2020.  She did not send any

17   update, again, until she was notified of her default.  During

18   the cure period on December 22nd, she reported that she would,

19   "Get pics today," and later sent two images of the property

20   with the text, "Completely done ground work and all septic and

21   sewer and water and electric."  These photographs, she

22   represented as current, were actually taken in November, 2020.

23             Despite her express representations, the ground

24   work, or excavation and grading, was not completed.  No

25   electrical, concrete, water, sewer, or septic work was even

1    started on the property.  And this is information that the

2    counterclaim plaintiffs obtained solely because Mr. Hovis, who

3    submitted a declaration in this case, contacted Plaintiffs to

4    inquire about Ms. Haddix's whereabouts because she was in

5    default on her obligations to purchase the property at which

6    this was built on.  Absent Mr. Hovis coming forward, we

7    wouldn't have this information.

8            THE COURT:  And where -- where was this -- where was

9    this property?

10           MR. GOODMAN:  This was in Stoddard County.

11           THE COURT:  Okay.  Is it the same place in Eldon,

12   Missouri, where she's talking -- where it is now?

13           MR. GOODMAN:  It is not.

14           THE COURT:  Okay.  Go ahead.

15           MR. GOODMAN:  So Ms. Haddix's third construction

16   status update with photographs was due in January, 2021.  In

17   light of hearing this information from Mr. Hovis, she -- when

18   Plaintiffs notified her of her default for not sending the

19   required update, we also informed her that we were in receipt

20   of information that called into question the veracity of her

21   prior updates.

22           During the cure period, she said, simply, "There is

23   nothing new to report."  When we requested the requisite

24   photographs and asked for other documentation to allay their

25   concerns in light of Mr. Hovis' declaration, she refused to

1   provide them.  Instead, writing, "You are not the police, just

2   a member of a terrorist group that I happen to be in agreement

3   with."

4             After Plaintiff's filed their first contempt motion

5   against Ms. Haddix, her fourth construction status update with

6   photographs was due in February of 2021.  She did not send any

7   update until she was notified of her default.

8             During the cure period, Ms. Haddix reported, "There

9   has been no progress," and sent no photographs.  Again,

10  despite Plaintiffs raising these concerns, they received no

11  update whatsoever on the status of the property or the

12  enclosures.

13            Her fifth and final construction status update was

14  due in -- last month, along with her other related obligations

15  under the agreement that we discussed at the TRO hearing.  She

16  did not send any update even after she was notified of her

17  default and she did not complete the new chimpanzee enclosure

18  required by the Consent Decree on any property as she

19  testified under oath.

20            She's also provided no evidence that she has hired a

21  full-time experienced chimpanzee caregiver, part-time

22  maintenance worker, or established -- or experienced volunteer

23  sufficient to ensure the chimpanzees' proper care by her

24  deadlines last month or that she established a nonprofit

25  entity that was approved as 501(c)(3) by the IRS, again, by

1    her deadlines last month.

2            So, in sum, she has satisfied none, or virtually

3    none, of her obligations under the agreement.  And these were

4    not innocent -- innocent failures.  She's expressed and

5    demonstrated several times her contempt for this process, for

6    the Plaintiffs and their counsel, and for the Court's order.

7    All we're requesting to finally resolve this is the remedy

8    that we explicitly agreed to in the Consent Decree, the costs

9    and fees that were required to -- that we were required to

10   incur to enforce the agreement, and any other remedy that the

11   Court deems appropriate.

12           I'd also like to just seek confirmation that

13   Ms. Haddix has actually complied with the temporary

14   restraining order that was issued by Your Honor on March 25th.

15   Ms. Haddix's social media suggests that she was in

16   San Antonio, Texas, between that time and now.  We'd like to

17   confirm where the chimpanzees were located and who was caring

18   for them during that time.

19           Just further, we'd like to note that we request that

20   this issue be resolved today, simply because these issues are

21   incredibly clear.  Plaintiffs -- myself, I have flown here and

22   stayed here, specifically, for this argument.  Ms. Haddix had

23   the opportunity to ask the Court for a continuance in advance

24   of today and declined to do so.

25           THE COURT:  Let me ask you this.  And it's the

1   question I was concerned with at our last hearing as well.

2   Your contempt motions and what you're asking for here today is

3   in order of specific performance.  So, in other words, you're

4   asking me to order her to do what I've already ordered her to

5   do and then to pay your costs -- your expenses, attorneys'

6   fees -- reasonable attorneys' fees and expenses.  What will we

7   do if she doesn't do that?

8           MR. GOODMAN:  Your Honor, as you noted at the last

9   hearing, of course, there are other options for her contempt,

10  including jail.  And no party here is interested in doing

11  that.  But clearly, there are other individuals who are able

12  to care for the chimpanzees as they are doing right now while

13  she's here, and as they do while she travels for work or other

14  reasons.  So if that becomes necessary to ensure her

15  compliance with the agreement, that seems like a feasible

16  option for the Court.

17          THE COURT:  Well, which would be if you would file

18  then another motion for contempt, right, would be how that

19  would happen?  If I -- if she didn't comply with what you're

20  asking for here today?

21          MR. GOODMAN:  Yes, Your Honor.

22          THE COURT:  Okay.  So, all right.  You can be

23  seated.

24          Ms. Haddix, when we were here on March 25th, I did

25  enter an order that you -- a temporary restraining order

1    requiring that you comply -- that you, you know, not move any

2    of the chimpanzees and that you provide the level of care

3    giving set out in the Consent Decree pending this hearing.

4              And let me ask you this:  Have you complied with

5    what I ordered you to do the last time?

6              MS. HADDIX:  Yes, Your Honor.

7              THE COURT:  And when you're not actually physically

8    present in -- last time, you told me you couldn't

9    physically -- you couldn't possibly do this because some of

10   the chimps were in Eldon and some were in Festus.  And so, how

11   have you been doing that in this last couple of weeks?

12             MS. HADDIX:  Well, first of all, of course, in my

13   book, the chimps are the primary concern here.  So, of course,

14   I have never failed to provide care for those chimps.  They

15   are posted daily, or practically daily, on Facebook, which,

16   obviously, Mr. Goodman's already stated he's trolling my

17   Facebook page daily.  So he knows that the chimps are very

18   well cared for.  They have Easter parties.  Since our last

19   hearing, they are well cared for.  They are seen socially on

20   social media.  So it's not like it's a hidden secret that the

21   chimps are well cared for.

22             THE COURT:  Okay.  Well, actually, you're not

23   answering my question, which was:  Who's been caring for them?

24   When you're not there or when you can't be in two places at

25   once, as you told me you couldn't be --

1              MS. HADDIX:  Yes, ma'am.

2              THE COURT:  -- who is doing this?  And even if you

3     are there, do you have assistants?  Who are the people who do

4     this?

5              MS. HADDIX:  No.  If I'm there, I'm the primary

6     caregiver.  If I'm gone because of business so that I can make

7     money to provide care for the chimps, they have Connie Casey,

8     which is the prior owner of the chimpanzees and her daughter,

9     Lisa Harned, that does provide the minimal care that they have

10    to have to get by.  Connie is 71 years old, 70, and that's why

11    she gave up the chimps to begin with is because she's

12    physically, like, 100 pounds overweight and cannot really

13    clean the cage.  So Lisa steps in when she's not working and

14    provides that care.

15             So the minimal care while I'm gone does get done.

16    And then whenever I get back, I have to spend, like I did

17    yesterday, all day making up for the cage cleaning and that

18    type stuff for the chimps.

19             THE COURT:  And, well, then what happens to the

20    other three chimps when you're in Festus?

21             MS. HADDIX:  Again, I go back and forth.  Luckily, I

22    got married recently and he's an animal person and he can do

23    anything with the chimps that I can do with the chimps.  So

24    I've been very lucky to have extra help.

25             THE COURT:  Okay.  Well, you know, I'm going to

1    grant the motion for contempt.  I still think that you should

2    get a lawyer.  And I guess I would say, if you -- I'm not

3    going to -- let me -- let me back up before I say I'm granting

4    it.  Let me say it this way.  I'm not going to grant your

5    request for a continuance.

6          Now, if we need to have further proceedings, I mean,

7    I still think you definitely need a lawyer and you should

8    continue meeting with them and talk to them to see if there is

9    a way to make this so we're not back here in another month or

10   so with another hearing.  But do you want to say anything else

11   before I rule on the motion for contempt because you are still

12   representing yourself as you've done throughout this case.

13         MS. HADDIX:  Well, basically, the chimps have always

14   been cared for.  There's no issues with those chimps.  But

15   what I don't understand is PETA has had five years to be able

16   to provide a home for these chimps.  If they've wanted these

17   chimps so bad and they think that Connie and I do not provide

18   adequate care for these chimps, which is the reason why they

19   supposedly are entitled to these chimps, why on God's green

20   earth are they leaving them here with us after they got a

21   ruling a year -- September will be a year.

22         And how come they think we should provide care for

23   these chimps if we are not capable of doing so?  Why would

24   they put and leave those chimps in that same environment if

25   we're not good enough to take care of them for another six

*In-Court Proceeding*                                                    13

1    months?

2             I don't -- I don't think you guys understand.  It's

3    not just me, but these chimps love us and you guys don't know.

4    They're not -- they're not just objects.  They are kids.  And

5    every time I leave, Connor cries.  He cries whenever he sees

6    my car pull up.  You guys don't know.  It's wear and tear not

7    only on us, but those chimps.

8             If they take them, they need to take them now, not

9    six months from now.  And don't expect us to provide all the

10   monies and everything because they haven't been taking care of

11   their obligations.  And I even told them before that they were

12   in contempt because they're not paying the bills like they're

13   supposed to.  You can argue with them.  I've sent them stuff.

14   But there is no arguing with the devil.  I'm sorry.  There's

15   not.  And I'm tired of it.  It's caused me to have a lot of

16   health issues that I shouldn't have.

17            You know, I don't get paid nothing to take care of

18   those chimps.  I do it because I want to.  Because it's

19   something that I have a passion for and because I love each

20   and every single one of them kids.  And you guys have got to

21   understand, I'm not -- I can't take it.  I can't take daily

22   providing care for them knowing that you guys are going to

23   take them from us.

24            I'm -- it's like a kid.  I adopted a little girl

25   that was six weeks old with a cardiac issue whenever I was

1   20-some years old, and I've raised her ever -- and she's 27 --

2   or 29 years old today.  And the fact of it is, I know -- I've

3   fostered 75 foster kids.  I know what it feels like.  I can't

4   do it.

5           I mean, I'm sorry.  If you guys don't understand,

6   it's literally killing me to know that these guys are

7   uprooting from these chimpanzees from the only home they've

8   ever known and taking them some place and throwing them into

9   some place where they'll never have human contact, which

10  they're used to.  And you guys think that you guys are doing

11  right by them, but you're not.  You're not at all.

12          THE COURT:  Hold on.  Calm down, Ms. Haddix.  I

13  really --

14          MS. HADDIX:  [Indiscernible.]

15          THE COURT:  I can't understand what you're saying,

16  nor can the court reporter.  Do you need a break for a minute

17  to compose yourself so we can continue with this hearing?

18          MS. HADDIX:  Yes, please.

19          THE COURT:  Okay.  We'll take a five-minute break,

20  and then we'll resume the hearing.

21          **(Court recessed from 10:16 a.m. to 10:21 a.m.)**

22          THE COURT:  All right, Ms. Haddix.  Do you wish to

23  say -- make any further statements?

24          MS. HADDIX:  Okay.  Basically, whenever I came up

25  here to help Connie with these chimps, the whole goal for us

```
 1   was to keep the chimpanzees in the home that they have ever

 2   known.  I had no intentions on owning any chimps.  I am a

 3   monkey person that has had monkeys 20-plus years, and I just

 4   wanted to help this little lady that was being wronged by

 5   having her babies ripped out from underneath her.

 6           So I came up here with nothing but good-heartedness

 7   with the intentions I'm getting a 501(3)(c) started so that

 8   Connie financially had monies to be able to take care of the

 9   chimps, as well as to be able to hire employees that the

10   chimps could have to have caregiving.

11           Okay.  I don't even know how many years ago that was

12   because I have lost my life since then.  I have been nothing

13   but up there at Connie's diligently, trying to take care of

14   the chimps, trying to provide monies to take care of those

15   chimps.

16           I have earned nothing from taking care of these

17   chimps.  In fact, it's cost me probably -- and I'm only

18   guessing because I don't tally the results -- but between

19   paying attorney fees for Connie and for providing all the

20   funds to revamp the facility to the degree that it has been

21   revamped, and also spending money on the property and then

22   being ripped off by the guy that was working on that property

23   for me, and then having to move to another property, I'm only

24   going to guess a half a million dollars.  That's only

25   guessing.  I don't have receipts.  I don't save receipts.  The
```

*In-Court Proceeding*                                                    16

1   only receipts I have managed to save is stuff that PETA has

2   requested to get monies back per our agreement for the chimps'

3   care, which has been minimal and only some of them.  I mean, I

4   spend a lot more than that.

5          But -- and I have argued with them over a propane

6   bill.  I have argued over an electric bill with them.  I have

7   argued -- they even said that because the chimps have

8   housing -- I even let them know that I had a colobus housed in

9   that chimp enclosure so that I could deduct part of the

10  propane for that eighth animal, which was the colobus, which

11  is a little tiny monkey.

12         I mean, I tried to be fair with them.  There is no

13  reasoning with these people.  And I know that nobody knows how

14  ruthless and evil they are until you deal with them yourself

15  because Connie used to try to tell me that.  But whenever I

16  wasn't in the lawsuit, I didn't understand.  I always thought

17  that the judicial system was just and fair and I believe in

18  God and I believe that as long as you do right by those

19  animals and by people, that you're going to be treated just

20  and fairly, which you're not.

21         In fact, it's tainted me a lot and has made me very

22  bitter to realize that it's who has money and who doesn't have

23  money is who's going to win in a court case.  Obviously,

24  you've told me every time I've met you that I should have an

25  attorney because nobody *pro se* ever wins, so obviously, that's

1  a moot point, so that's already stated and already a known

2  fact.

3          So all I can say is I decided I'm going to get an

4  attorney because I'm not giving up on these chimpanzees.  I

5  will go to hell or I will die first before them chimpanzees go

6  anywhere else.  And I do not anticipate to move them.  I will

7  not go against your Court order.  I do believe in the judicial

8  system, so I won't do anything wrong there.  But I will

9  protect those chimpanzees and I will make sure that they are

10 cared for and loved and --

11         THE COURT:  All right, Ms. -- okay, Ms. Haddix.  So

12 I'm very glad to hear that you're getting a lawyer.  I doubt

13 that I actually told you that nobody *pro se* ever wins.  I

14 probably told you it's very difficult to win when you don't

15 have a lawyer because people do win sometimes, even though

16 they're representing themselves.  It happens, actually, with

17 some frequency.

18         But in any event, the issue is whether you've

19 complied with the Court order, and you've indicated that you

20 have not.  The only remedy that PETA is asking for is that you

21 be ordered to comply, an order of specific performance, and

22 that you pay their expenses and legal fees of filing these

23 motions and, you know, enforcing the rule.  The evidence

24 before me --

25         MS. HADDIX:  Their money?

1          THE COURT:  The order.  The evidence before me is

2    that, you know, you not only failed to comply, you've lied

3    about it repeatedly.  You've said things were happening that

4    weren't happening.

5          MS. HADDIX:  That's not true.

6          THE COURT:  Well, okay.  What about this -- telling

7    them in an e-mail that this was all -- this work had all been

8    done when it hadn't been done?  I asked you if you had

9    anything to present.  This is your chance.  Do you have any

10   evidence you want to talk about?

11         MS. HADDIX:  Well, first of all, I would like to see

12   the copy of the e-mail that he supposedly says that I sent.

13   And then I will address that e-mail -- that specific e-mail,

14   because that's not what was said to him.

15         MR. GOODMAN:  Your Honor?

16         THE COURT:  I believe -- Mr. Goodman, was that --

17   was that attached to one of your motions?

18         MR. GOODMAN:  Yes, Your Honor.  All of the e-mails

19   that we referenced in any of our motions are attached to my

20   sworn declaration submitted therewith.

21         THE COURT:  Right.  So it was attached.  You have

22   been given that document.  It was attached to the motions that

23   they filed.

24         MS. HADDIX:  Well, I didn't get the motion, but

25   anyway...

1             THE COURT:  You didn't get the motions?  And you

2    know, the only address we have for you, the mailing address,

3    is in Festus, Missouri.  It's your obligation to tell us what

4    your correct address is.

5             MS. HADDIX:  That -- that is the correct address,

6    and I've never received anything from the mail from any of the

7    court systems until just recently.  I got something in the

8    mail from you that was on the temporary restraining order.

9    That has been the only mail that I have ever, ever received

10   from the courts.

11            THE COURT:  Well, and so, you're telling me you

12   never received these motions saying you had not complied?

13            MS. HADDIX:  From the -- from PETA.  PETA would send

14   me stuff.  Yes.

15            THE COURT:  Okay.  Well, that was where it was

16   attached, and so you got it.  Okay?  And we've been sending

17   things to the address you gave us.  We've also been e-mailing

18   things to you, which is not the normal practice when someone

19   is not represented, but we're doing that because we want to

20   make sure you get what the Court sends out.

21            But I want to make sure when you -- before you leave

22   here today, that the address -- if you'll talk to the clerk

23   here before you leave, make sure that the mailing address she

24   has is your actual mailing address where you wish to receive

25   mail in this case.  So...

1           MR. GOODMAN:  Your Honor, if I may, I'd also just

2    like to note that Ms. Haddix has posted about filings on her

3    Facebook page.  She has acknowledged that she's received it,

4    including the first contempt motion that was filed against

5    her.

6           THE COURT:  Do you have a -- do you have the --

7           MS. HADDIX:  From you, yes.

8           THE COURT:  Hold on.  Wait.  Hold on.  Do you have a

9    copy of that attachment?  I don't have the whole file in front

10   of me and I'm not logged in right now.  Do you have a copy of

11   that e-mail?

12          MR. GOODMAN:  Yes.

13          MS. HADDIX:  Yes.  I did --

14          THE COURT:  Okay.  Would you put it on the ELMO here

15   and we'll turn on the ELMO so everyone can see it on the

16   screen.

17          MS. HADDIX:  Yeah.  Because I did receive stuff from

18   PETA.  PETA has always sent me stuff.

19          MR. GOODMAN:  And I've not sent any of those things

20   directly.  They've all been sent through the ECF system.

21          THE COURT:  Okay.

22          MR. GOODMAN:  Here it is.

23          THE COURT:  Okay.  You want to just put that on the

24   evidence presentation screen there and we'll all be able to

25   see it on our e-mails?

1          MR. GOODMAN:  Yes.  As you'll see from my note here,

2   so this was Document No. 287-10.  But when I was just trying

3   to print this in advance of the hearing, the two images that

4   were attached of the Hovis property were not printing.

5          THE COURT:  Okay.  So, Ms. Haddix, did you send this

6   e-mail with the subject line, "Completely done ground work and

7   all septic and sewer and water and electric"?

8          MS. HADDIX:  Yes.  And what -- I'd like to see the

9   e-mail because, basically, what I --

10          THE COURT:  This is the e-mail that you attached a

11   couple of images.  Okay.  We'll take a recess so the Court can

12   print those out for you since you --

13          MS. HADDIX:  Yeah.  Because what --

14          THE COURT:  -- claim not to have seen them.

15          MS. HADDIX:  Well, no.  I -- I sent an e-mail, but

16   basically, I was specific on saying, okay, the ground work was

17   completed, which it was.  Until we decided to -- we changed --

18   I talked to PETA.  PETA said that instead of doing a round

19   Primadome or an octagon Primadome, that I could do a square

20   cage and he was okay with that.  I even asked him if I needed

21   to submit it to you, you know, so that you knew that we were

22   making a change, and he said, no, that they agreed to it.  So

23   it was okay, I didn't have to submit it to you.

24          So what happened was, when we did that, that

25   expanded how much further -- you'd just have to see the

1    property.  But, basically, how much further we had to go back

2    to be able to put a square cage versus this round one over

3    here.  So it ended up that more --

4          THE COURT:  Okay.  Let me just back up, because I

5    thought that the -- I thought we had three different

6    locations.  I thought the place that you claimed you were

7    working on was in Stoddard County.

8          MS. HADDIX:  It was originally.  Yes.

9          THE COURT:  Are did you start -- are you telling me

10   you started building a rectangular enclosure in Stoddard

11   County?

12         MS. HADDIX:  No.  What I'm --

13         THE COURT:  No.  You moved to a different location.

14   So whatever the pictures were, that's not what you were

15   actually doing.

16         MS. HADDIX:  It was in Stoddard County.  It was

17   in -- them pictures are in Stoddard County.

18         THE COURT:  And so when you sent pictures with an

19   e-mail with the subject line, "Completely done ground work and

20   all septic and sewer and water and electric," are you telling

21   me that, in Stoddard County, you completed all septic, sewer,

22   water and electric and ground work?

23         MS. HADDIX:  No.

24         THE COURT:  Okay.  So are you --

25         MS. HADDIX:  In the heading, I wrote that, but in

1   the e-mail -- that's why I'd like to see the e-mail, because,

2   basically, I specifically said that all the ground work was

3   completed, which it was.

4          THE COURT:  Yeah.  Okay.  So the Court has -- is

5   able to pull those up.  And it is just photographs attached to

6   it.  There's not any further text.

7          MS. HADDIX:  Well, there should have been.  I mean,

8   because what I said was --

9          THE COURT:  Well, then you'll have evidence of that.

10         MS. HADDIX:  And you can see it on my Facebook post.

11         THE COURT:  You -- you would have evidence of

12  that --

13         MS. HADDIX:  Anything I post, I post on Facebook.

14         THE COURT:  -- if you, in fact, did that, correct,

15  because it's your e-mail?  So here's the thing.  You haven't

16  presented any evidence or anything that is admissible.  I did

17  put you under oath the last time you were here.  But you still

18  haven't given any actual reasons for not complying with the

19  order.  The last time you were here, you told me it wasn't

20  even a Court order and you didn't intend to comply with it.

21  Now you've said, okay, I guess it is a Court order.

22         MS. HADDIX:  No.  I did not know that it was a Court

23  order until you clarified that to me.

24         THE COURT:  You know --

25         MS. HADDIX:  I thought it was an agreement.  Because

1    if you read it, it says "Consent Decree."  And I even looked

2    it up on the internet what Consent Decree stood for, and it's

3    basically an agreement.  And I even explained to you the

4    analogy that I assumed it was under, which is like a contract

5    with John Deere.  I used the terminology, John Deere.

6            So, basically, like if you have a service contract

7    or if you have a rental agreement or if you have whatever

8    agreement that you sign with somebody and the two parties go

9    into the agreement together, like you have a twelve-month

10   lease on something, and, say, six months in, you end up

11   terminal or you end up, a life change or whatever, the

12   agreement can be altered by either one of the parties, just

13   like Connie and my lease agreement that I have with Connie for

14   a lifetime lease on that facility.  The agreement was that

15   anybody could change that agreement at any point in time that

16   they want to.

17           So when you told me that it was, like, a Court order

18   that you cannot change that, I did not understand that in the

19   beginning.  I thought, just as we did with the rectangle

20   enclosure, as they did the Primadome, that you can change

21   anything that you want to.  That anybody has a right in

22   America to change their mind, because I thought we were free,

23   white, and 21, and that we can make a decision to change

24   things.

25           I've changed my whole lifestyle.  I've changed a lot

1    of directions.  And I don't want to do this agreement with

2    them.  I feel like I was coerced into the agreement anyways by

3    Connie and by PETA, and I think that the agreement was not

4    appropriately written the way we had agreed to it on the

5    phone.

6              And, yes, I did sign it.  I'm not going to lie and

7    say I didn't.  But I signed it as I was driving down the road,

8    and I didn't even pay attention.  I thought I had good faith

9    in Jared Goodman that he would put in there what we had agreed

10   to, and it wasn't.

11             THE COURT:  Well, let me just tell you --

12             MR. GOODMAN:  Your Honor?

13             THE COURT:  Hold on now.  I mean, the Consent Decree

14   itself has numerous references to this being a Court order and

15   the Court retaining jurisdiction to enforce it, so to tell me

16   that you thought you could just breach the contract and you

17   wouldn't have any repercussions, you know --

18             MS. HADDIX:  No.  I figured --

19             THE COURT:  -- from the Court is wrong.

20             MS. HADDIX:  -- we'd end up back in court and I'm

21   ready to go back to court with them.

22             THE COURT:  Well, we're here in court.  Okay?

23             MS. HADDIX:  No.  I mean --

24             THE COURT:  Now here's what you need to do.  You

25   need to get a lawyer.  However -- because we're not going

1   anywhere.  You're not telling me anything that absolves you

2   from the contempt that you are in.  I am going to find that

3   you are in contempt.  The plaintiffs have -- I mean, PETA, the

4   counterclaim plaintiffs, have adequately shown that you have

5   been in contempt.

6            You know, I have been sympathetic to the desire of

7   both you and Ms. Casey throughout to care for these chimps,

8   that you care about them.  I do understand that.  But the law

9   is the law and this case was resolved through a Consent

10  Decree, and you agreed to it.  And it was a reasonable

11  agreement in my estimation.  I approved it.  And you have

12  willfully violated it.  So you are in contempt of court.

13           I will enter an order that you comply in full with

14  the decree.  I will also tell you that you -- I'm not -- I'm

15  going to withhold imposing any additional -- so I told you

16  last time that one of -- some of the things we can do on

17  contempt is I can fine you a certain amount per day until you

18  purge yourself of the contempt by coming into compliance.  I

19  could also order a body attachment by the U.S. Marshals where

20  they would arrest you and you would be confined in jail until

21  you could purge yourself of the contempt.  There are other

22  things we can do with contempt powers.  This is civil

23  contempt.  It's not a crime.  It's just to try to get you to

24  do what you're supposed to do.

25           Now, obviously, I don't want to do things that

1   aren't going to actually have any effect, and Mr. Goodman

2   doesn't want you to go to jail, nor do I.  But if -- you know,

3   when people won't do what they are required under the law to

4   do, sometimes that's what we end up having to do.

5           So what I'm going to do is enter this order of

6   contempt telling you to comply and it will also award the

7   reasonable expenses and attorneys' fees --

8           MS. HADDIX:  File bankruptcy on.

9           THE COURT:  -- of PETA because they had to come to

10  court to file this because you weren't complying with the

11  Consent Decree.  But I -- and I will withhold any further

12  orders to require you to comply for a period of ten days.  I'm

13  not withholding your compliance with the Consent Decree.  But

14  if you haven't taken steps to comply or obtained a lawyer who

15  has entered an appearance and talked to PETA to see if there

16  is a way to resolve this, then I will start imposing a fine in

17  the amount of $50 a day that will accrue until you have purged

18  yourself of the contempt by coming into compliance with the

19  Consent Decree.

20          And it'll be your obligation to come back to court

21  and tell me that that's what you've done.  Otherwise, that

22  money will be adding up that you will owe.  I will withhold

23  that.  I said ten days.  It'll actually be fourteen days.

24  I'll withhold the starting of that for fourteen days, two

25  weeks, so that you can get a lawyer, get that lawyer to talk

 1   to Mr. Goodman, and see -- I mean, you said you were going to

 2   do that.

 3            MS. HADDIX:  I am getting an attorney.  You betcha.

 4            THE COURT:  Okay.

 5            MS. HADDIX:  Because I'm suing them.  You betcha.

 6            THE COURT:  Well, whatever you want to do in terms

 7   of a new lawsuit is up to you, of course.  But what you do

 8   have to do in terms of this lawsuit is comply with the order

 9   that's already been entered.

10            MS. HADDIX:  Which it has been.  The chimps have

11   been well cared for.

12            THE COURT:  Well, you've -- you've admitted several

13   things.  Just so I can make these findings clear.  You moved

14   the three chimps without authorization to do that.  You

15   didn't tell the truth --

16            MS. HADDIX:  Where does it say in the Consent Decree

17   that I cannot move those three chimpanzees?

18            THE COURT:  Let me just finish, ma'am.  Please don't

19   interrupt me.  You can read the Consent Decree.  You signed

20   it.  You said you read it before you signed it.

21            MS. HADDIX:  It does not say that.

22            THE COURT:  You have to -- the facility that you

23   were supposed to have built, you say you've built, but we

24   still haven't seen any proof of whether it actually complies

25   with the Consent Decree.  You have threatened to stop caring

1    for the -- for the chimps.

2              MS. HADDIX:  No.

3              THE COURT:  The other four chimps.  Yes, you clearly

4    did.  It's in the e-mails.  We talked about that at the last

5    hearing.  That's why I entered the temporary restraining

6    order.  And you have admitted that the things -- you've told

7    them things that aren't true.  I mean, you didn't tell them

8    that you had abandoned the Stoddard County area and were now

9    building something in Eldon, Missouri, and you didn't provide

10   them with all the plans and things to show whether it was in

11   compliance.  You still have not shown that your enclosure that

12   you now have for the three chimps you have moved is in

13   compliance with the Consent Decree.

14             We talked about changing it from rectangular -- to

15   rectangular, but you've changed the entire location of it and

16   who knows what else.  You haven't provided us any evidence of

17   that.

18             The -- additionally, I mean, the -- yes, under the

19   decree for the four chimps, they're still in Festus.  PETA is

20   supposed to pay you the reasonable expenses that you're

21   spending to do that if you spend them appropriate receipts.

22             MS. HADDIX:  I did.  And they haven't.

23             THE COURT:  But there's a dispute over the receipts

24   and whether they're appropriate.  And, also, if you're sending

25   receipts for something you were doing in Stoddard County

 1    versus what you're doing for caring for them, I don't

 2    understand that.  If you're sending them receipts that,

 3    apparently, charge -- is the whole propane bill and half of

 4    the propane bill is going for the care of other -- other than

 5    the four, that's not something they're required to pay.  I --

 6    I haven't got into the nitty-gritty of that dispute, but it's

 7    obvious that there are disputes about it.

 8              You have some rights under the agreement.  That's

 9    why if you get a lawyer, perhaps that lawyer and Mr. Goodman

10    can sit down and talk about this and we can come up with a way

11    to get it moving back on track.

12              Mr. Goodman, is the Center for Great Apes still

13    saying it will be summer or some time in August before the

14    facility for the four chimps in Festus will be available?

15              MR. GOODMAN:  Yes, Your Honor.  That's the expected

16    timeline at this point.

17              THE COURT:  But you do think that can happen at that

18    time?

19              MR. GOODMAN:  Yes, absolutely.

20              THE COURT:  And so, the chimps can be moved into the

21    Center for Great Apes some time after August once that's

22    built?

23              MR. GOODMAN:  Yes.

24              THE COURT:  And that is the contemplation of the

25    Consent Decree, and that would -- you know, that would make

1    this much more straightforward.  So -- and it's -- yeah, okay.

2    So that's what we could do.

3              Now -- hold on just a second.

4              THE DEPUTY CLERK:  I printed the whole -- I printed

5    three copies.  Here's one complete set of that motion.  Want

6    me to pass them out to the attorneys and --

7              THE COURT:  Yeah.  That's good.

8              MS. HADDIX:  Thank you.

9              THE COURT:  So just a moment.  So the clerk printed

10   out what was the Exhibit I to PETA's Motion for Contempt and

11   it's CM/ECF Docket No. 287-10, that has the subject line,

12   "Completely done ground work and all septic and sewer, water

13   and electric."  And then attached to that are photos, two

14   photos, that show some leveled ground.  And that is all that

15   is attached to that e-mail.  So --

16             MS. HADDIX:  Yeah.  I'm looking to see through my

17   e-mails on "Sent" if I can come up -- because there may have

18   been another e-mail to him that he just --

19             THE COURT:  Attached to the exhibit is another

20   e-mail to him that says, "Re: Cage fronts," then there's --

21             MS. HADDIX:  That's what I said.  I did communicate

22   several times, so I think there's another e-mail he just

23   inadvertently didn't print.

24             THE COURT:  Well, there are pictures of a building

25   here.

*In-Court Proceeding*                                                    32

1            MS. HADDIX:  This building is a building that I

2    originally built for a chimpanzee way before and this was just

3    an example of the Primadome.  I own this Primadome that is

4    attached here.  But it is in Clever -- outside of Clever,

5    Missouri.  So what I was wanting to do and what I was showing

6    to him, this was before Connie.  This -- I mean, it's been

7    seven years.

8            THE COURT:  Okay.  Well, let me explain something to

9    you.  These e-mails from December 22nd and December 23rd,

10   attaching all of these things, even one of them responding to

11   his e-mail asking you -- "Thank you for the four images.  Are

12   the concrete and cages not being built on site?"

13           And you said, "No, they are not.  They are prefabbed

14   tilt concrete walls and --

15           MS. HADDIX:  Right.

16           THE COURT:  -- cage fronts have to be prefabricated

17   at shop, then brought out to site.  I'm waiting on concrete

18   man to pour floors and footings for walls; however, they are

19   behind."

20           And so, as of December 23rd, had you already

21   abandoned the Stoddard County site and decided to go to the

22   one in Eldon?

23           MS. HADDIX:  I don't -- to be honest with you,

24   dates, I don't know.

25           THE COURT:  Okay.  Well, I think you need a lawyer

1    so you're not also adding perjury to your problems.

2              MS. HADDIX:  Right.  I'm telling you --

3              THE COURT:  Okay?

4              MS. HADDIX:  -- I don't know the date timeline.  I

5    can look at the --

6              THE COURT:  Okay.

7              MS. HADDIX:  -- timeline, but I don't know it.

8              THE COURT:  Well, I started down this route because

9    you were arguing with me about your compliance, but I

10   clearly -- I find that you have clearly violated the

11   conditions of the Consent Decree, so I am holding you in

12   contempt and I'm going to order you to comply with the

13   conditions of the Consent Decree.  I will enter this in

14   writing later today.

15             I will not, at this time, impose any monetary

16   sanctions.  I will withhold doing so for fourteen days.

17   Within that fourteen days, if you have an attorney who enters

18   an appearance and is able to negotiate or talk to Mr. Goodman

19   and see if there is a way to resolve any of these disputes,

20   then I will withhold entry of monetary sanctions.

21             MS. HADDIX:  Ma'am, is there not --

22             THE COURT:  If you do not, I will enter those

23   sanctions and it will be your -- and they will be being

24   imposed on a daily basis, $50 a day, until you can show to the

25   Court that you have complied with the Consent Decree.

```
 1              MS. HADDIX:  Okay.  Your Honor, is there not any way

 2    that you can moderate or mediate this or can I ask for a

 3    mediator?  I don't --

 4              THE COURT:  We can have a mediator --

 5              MS. HADDIX:  -- want to deal with them.

 6              THE COURT:  -- if you have a lawyer --

 7              MS. HADDIX:  We don't -- I don't want to deal with

 8    them.

 9              THE COURT:  Ms. Haddix?  Ms. Haddix?

10              MS. HADDIX:  Uh-huh.

11              THE COURT:  If you have a lawyer who enters an

12    appearance, I will consider a request for mediation with PETA.

13    But --

14              MS. HADDIX:  I don't want to deal with them.

15              THE COURT:  -- you are not going to be able to do it

16    on your own because you are not -- you've demonstrated that

17    you're not willing to actually follow the rules.  You claim

18    you don't understand anything whenever you think it's to your

19    benefit.  You've misled the counterclaim plaintiffs about what

20    you were doing.  You didn't tell them -- they didn't know

21    until that temporary restraining order hearing two weeks ago

22    about all this stuff you're saying about your facility in

23    Eldon that you've built.  You still haven't provided proof of

24    that.  So you've shown that -- I mean, I'm not going to send

25    you to mediation without a lawyer because I don't believe we
```

```
 1   could trust --

 2             MS. HADDIX:  I don't want --

 3             THE COURT:  -- anything you would agree to.

 4             MS. HADDIX:  -- to deal with PETA.  I don't want to

 5   deal with them.

 6             THE COURT:  Well, there -- okay.  You -- there is a

 7   Consent Decree that requires you to deal with them.  Okay?

 8   That's the order of the Court.  And until you comply with it,

 9   you'll be in contempt of court.  All right?  So that is the

10   ruling.  And you ought to get a lawyer, please, within --

11             MS. HADDIX:  I plan on getting --

12             THE COURT:  -- fourteen days.

13             MS. HADDIX:  -- an attorney, but I'm not dealing

14   with them.

15             THE COURT:  Well, that's why you have lawyers.  Your

16   lawyer can deal with them.

17             MS. HADDIX:  No.

18             THE COURT:  All right.  So I'm granting the order of

19   contempt --

20             MS. HADDIX:  I'll get another -- another judge.

21             THE COURT:  -- as requested by PETA, and -- but I

22   will not impose any monetary sanctions, but it will be set out

23   in the order.  I will order specific performance and the fees.

24             And I -- and Mr. Goodman, obviously, if Ms. Haddix

25   gets a lawyer who contacts you, I expect you, in good faith,
```

*In-Court Proceeding*                                                                                                                    36

1   to negotiate or talk to him, see what can be done, and for you

2   all to jointly notify me if I should withhold entry of another

3   order in fourteen days.

4            And, certainly, if there is good faith effort made

5   to start complying, then, you know, as demonstrated by

6   having -- you know, that I can rely on, you know, and that

7   PETA can rely on, then I would consider not imposing the

8   monetary order that I've talked about.  But there has to be --

9   has to be something shown within the fourteen days in order

10  for me not to impose that monetary order.  And what I'd like

11  is if the lawyer enters, then the lawyer and Mr. Goodman could

12  enter a joint status report and say, We've agreed that you

13  don't need to enter any further orders.  We're going to try to

14  make sure this is worked out.  If that doesn't work, which it

15  may not, then I'll enter the further order.  All right?

16           So Ms. Haddix, you need to --

17           MS. HADDIX:  I want a new judge.

18           THE COURT:  -- comply with the Consent Decree, and,

19  obviously, do what you've already been ordered to do.

20           Court's in recess.

21           ***(Proceedings adjourned at 10:50 a.m.)***

22                    *    *    *    *

23

24

25

<u>CERTIFICATE</u>

I, Carla M. Klaustermeier, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 36 inclusive and was delivered electronically and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

Dated at St. Louis, Missouri, this 13th day of April, 2021.


*Carla M. Klaustermeier*
Carla M. Klaustermeier, RMR, CCR, CSR, CRR
Official Court Reporter