UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **MISSOURI PRIMATE FOUNDATION, ET AL,**<br><br>    Plaintiffs and Counterclaim Defendants,<br><br>  -against-<br><br>**PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., ET AL,**<br><br>    Defendants and Counterclaim Plaintiffs. | Case No. 4:16-cv-02163<br><br>Judge: Honorable Catherine D. Perry |

**COUNTERCLAIM DEFENDANT TONIA HADDIX'S OPPOSITION TO: (1) COUNTERCLAIM PLAINTIFFS' FOURTH MOTION FOR AN ORDER TO SHOW CAUSE WHY COUNTERCLAIM DEFENDANT TONIA HADDIX SHOULD NOT BE HELD IN CONTEMPT FOR FAILING TO TRANSFER CHIMPANZEE TONKA AS REQUIRED BY COURT ORDER (ECF NO. 333); AND (2) COUNTERCLAIM PLAINTIFFS' SUPPLEMENT THERETO (ECF NO. 337)**

Counterclaim Defendant Tonia Haddix respectfully brings before this Court her Opposition to Counterclaim Plaintiffs People for the Ethical Treatment of Animals' and Angela Scott's (collectively, PETA) Fourth Motion to Show Cause (the Motion) and the Supplement thereto (the Supplement).

## I. INTRODUCTION

The Motion is fundamentally premised on a lie: it avers that Ms. Haddix has "provided no proof" of Tonka's death. This premise is false, and was false at the time the Motion was filed: on July 28, 2021, Ms. Haddix's counsel (Counsel) provided PETA an email from Jerry Aswegan, the man who cremated Tonka, wherein he expressly states that he cremated Tonka. Counsel also told PETA that Ms. Haddix had retained

Tonka's remains, and that PETA could take a sample for genetic or other testing to verify their source.[1] Since Ms. Haddix has provided proof of Tonka's death, PETA is not entitled to any of the relief requested in the Motion. Accordingly, this Court should deny the Motion.

## II. STATEMENT OF FACTS

At the In the contempt hearing held on July 14, 2021 (the July 14 Hearing), this Court ordered Ms. Haddix to provide PETA with proof of Tonka's death. (Transcript of July 14 Hearing (Tr.) at 20:22–23.) The Court did not require any particular form for such proof—rather, the Court expressly acknowledged that it "[did not] know what that proof will be, but we need something." *Id.* at 20:23–24.

On July 28, 2021, Counsel provided PETA's counsel, Jared Goodman, with an email (the Proof of Death) from Jerry Aswegan, the man who cremated of Tonka. (Affidavit of John Pierce ¶ 5.) In this email, Mr. Aswegan stated that he cremated Tonka. (*Id.* ¶ 5; Ex. A.)

Ms. Haddix also had—and continues to have—possession of Tonka's remains. (Affidavit of Tonia Haddix ¶¶ 3–4.) On July 28, Counsel informed Mr. Goodman of the same, and made such remains available to PETA for purposes of genetic testing to verify that they are, in fact, Tonka's remains. (Pierce Aff. ¶¶ 6–7.) In the Supplement, PETA itself recognized that Tonka's remains could be used to verify Tonka's death, as "bone and teeth would remain, both of which could provide further evidence of his death." ECF No. 337 ¶ 9.

---

[1] PETA has thus far failed to avail itself of this offer. However, the offer remains open indefinitely.

At no point before filing the Motion did PETA voice any concerns about, or make any objections to, the Proof of Death. (Pierce Aff. ¶ 9.) Likewise, PETA did not avail itself of the opportunity to test Tonka's remains (an opportunity which remains open indefinitely). (*Id.* ¶¶ 8–9.)

On August 2, 2021, PETA filed the Motion. ECF No. 333. The fundamental premise of the Motion is that Ms. Haddix "has provided no [] proof" of Tonka's death. *Id.* at 1; *see also id.* ¶ 6 ("To date, Haddix has provided *no* proof that Tonka has died." (emphasis in original)). PETA further averred:

> In fact, the only suggestions supporting this allegation are based exclusively on Haddix's bald assertions—(1) her statements to the media; (2) her Motion for Continuance of the July 14, 2021 Contempt Hearing, which merely referred to a veterinarian's affidavit stating in relevant part that "Ms. Haddix called and informed me that Tonka had died"; and (3) Haddix and her counsel's similar unsupported representations during the July 14 hearing.

*Id.* (citations omitted). The Motion fails to disclose either the Proof of Death or the availability of Tonka's remains for testing. *See id.* at 1–5. Mr. Goodman's declaration in support of the Motion likewise fails to disclose either the Proof of Death or the availability of Tonka's remains for genetic testing. *See* ECF No. 333-3.

On August 9, 2021, Counsel sent Mr. Goodman an email explaining the Motion's material omissions in detail. (Pierce Aff. ¶ 10; Ex. B.) Counsel further explained that the omissions would be highly misleading to this Court, and demanded that PETA withdraw the Motion. (*Id.*) Mr. Goodman did not respond. (*Id.* ¶ 11)

Rather, on August 10, 2021, PETA filed the Supplement. ECF No. 337. Both the Supplement, and Mr. Goodman's supporting affidavit, again failed to disclose the offer of Tonka's remains. *See id.*; *see also* ECF No. 337-1.

Mr. Aswegan made several easily overlooked—yet significant—clerical errors in drafting the Proof of Death. Specifically, he erroneously omitted a zero from each of the temperatures stated in the Proof of Death. (Affidavit of Jerry Aswegan ¶ 15.) He intended to convey—and for the Proof of Death to state—that he had been instructed to ensure that Tonka's pyre reached a temperature of 1600 to 1800 Fahrenheit, and that the fire in fact burned at 1650 to 1700 Fahrenheit for approximately three hours. (*Id.*; *cf.* Pierce Aff. Ex. A at 2 ("he told me [the] flame needed to be [at] 160 to 180 . . . . The fire stayed at 165 to 170 for three hours.").)

## III. ARGUMENT

**A. This Court Should Deny PETA's Motion Because Ms. Haddix Has Provided Proof of Tonka's Death**

As noted above, the entire basis for the Motion is that Ms. Haddix "has provided *no* proof that Tonka has died." ECF No. 333 ¶ 6. However, as set forth above, Ms. Haddix did provide such proof. Indeed, she provided two separate forms of proof. This vitiates PETA's entire basis for relief. Therefore, PETA is not entitled to any of its requested relief. For this reason alone, the Court should deny the Motion.[2]

This Court should also deny the Motion because PETA has chosen not to avail itself of evidence that PETA itself concedes would establish Tonka's death. As noted above, PETA averred that Tonka's remains could be tested to determine their origin.

---

[2] In an abundance of caution, and to allay any concerns this Court may have, Ms. Haddix has filed with this Opposition an affidavit from Mr. Aswegan, in which he states in detail—and under penalty of perjury—the circumstances of Tonka's cremation. Mr. Aswegan's affidavit is not intended as an express or implied admission that the Proof of Death failed to satisfy the requirements of this Court's order, nor should it be understood as such.

Yet, in practice, PETA deliberately chose not to do such tests; instead, PETA elected to seek punitive sanctions against Ms. Haddix. This Court should not grant PETA any relief when it has deliberately spurned evidence that would prove Tonka's death. Accordingly, this Court must deny PETA's Motion.

**B. This Court Must Deny PETA's Motion Because It Fails to Comply With This Court's Local Rules**

In a transparent attempt to retroactively reframe the issues, the Supplement attacks the evidentiary value of the Proof of Death. However, in so doing, PETA only highlights another of the Motion's fatal defects. Courts in the Eastern District of Missouri "will not consider any motion relating to discovery and disclosure unless it contains a statement that movant's counsel has conferred in person or by telephone with the opposing counsel in good faith or has made reasonable efforts to do so, but that after sincere efforts to resolve their dispute, counsel are unable to reach an accord." E.D. Mo. L.R. 3.04(A).

Here, under PETA's retroactive reframing, the Motion clearly relates to disclosure—that is, disclosure of proof of Tonka's death. Certainly, concerns over the form or evidentiary value of the Proof of Death are exactly the sorts of issues that Rule 3.04(A) embraces. Yet neither the Motion nor the Supplement contains a Rule 3.04(A) disclosure. Nor could they: PETA never met and conferred with Counsel, nor made a good faith attempt to do so; indeed, PETA spurned Counsel's meet and confer efforts. Thus, PETA's disregard for this Court's local rules creates a second, independent reason that it must deny the Motion.

Beyond its fatal procedural flaw, the Supplement's attacks on the Proof of Death also fail on the merits. The thrust of the Supplement is that the Proof of Death is not admissible. ECF No. 337 ¶ 4. This supposed shortcoming cannot entitle PETA to any relief because this Court expressly stated that Ms. Haddix need only provide "something" as proof of Tonka's death. This Court certainly did not require the proof be in a form that would be admissible at trial. The Proof of Death is "something." Therefore, Ms. Haddix cannot be held in contempt because the Proof of Death is not in PETA's preferred form. Accordingly, even on the merits, this Court should deny the Motion.

**C. This Court Should Disregard Mr. Goodman's Declarations Because They Are Irrelevant to the Issue Raised By the Motion**

The Motion raises a single issue: whether Ms. Haddix provided *any* proof of Tonka's death. *See, e.g.*, ECF No. 333 at 1 ("Haddix has provided no [] proof [of Tonka's death], yet Tonka was not present at her facility during the [July 28] transfer . . . ."); *see also id.* ¶¶ 2, 3, 6. Therefore, PETA's evidence is only relevant if "it has any tendency" to make PETA's allegation that Ms. Haddix has provided no proof of Tonka's death "more or less probable than it would be without the evidence." FED. R. EVID. 401(a). Further, irrelevant evidence is inadmissible, *id.* Rule 402, and this Court must exclude irrelevant testimony. *U.S. v. Manning*, 509 F.2d 1230, 1234 (9th Cir. 1974), *cert. denied sub nom. Woolridge v. United States*, 423 U.S. 824 (1975).

In *Digital Ally, Inc. v. St. Paul Fire & Marine Ins. Co.*, the court struck a declaration in support of a motion for summary judgment because it addressed an issue that had already been determined by the Court. No. 11-00130-CV-W-GAF, 2012

WL 13027827, at *1, *3 (W.D. Mo. Aug. 15, 2012). Therefore, the court concluded that the declaration was irrelevant, and excluded it from consideration. *Id.* at *3 (citing *Manning*, 509 F.2d at 1234). Since Mr. Goodman's declarations are similarly irrelevant to the Motion's single issue, they must likewise be disregarded.

*1. Irrelevant Statements in Mr. Goodman's Declaration in Support of the Motion*

The first five numbered paragraphs in Mr. Goodman's declaration in support of the Motion have absolutely nothing to do with Tonka. *See* ECF No. 333-2 ¶¶ 1–5. As evidence of their irrelevance, this Court need look no further than the fact that not one of these paragraphs is cited in the Motion. Accordingly, this Court should disregard the first five paragraphs of this declaration.

*2. Irrelevant Statements in Mr. Goodman's Declaration in Support of the Supplement*

Mr. Goodman's declaration in support of the Supplement attacks the credibility of the Proof of Death. *See* ECF No. 337-1 ¶¶ 4–6. As noted above, this Court expressly stated that Ms. Haddix need only provide "something" to prove Tonka's death. The credibility of the Proof of Death has no relevance to whether it is "something" that would tend to prove Tonka's death. Accordingly, this Court should disregard paragraphs 4 to 6 of Mr. Goodman's declaration.

*3. This Court Should Also Disregard Hearsay in Mr. Goodman's Declaration in Support of the Supplement*

Mr. Goodman's declaration also conveys statements allegedly communicated to him by an anonymous whistleblower. *See id.* ¶ 7. This paragraph is attesting to a

statement made by a third party (the putative whistleblower) for the truth of the matter asserted (that Tonka is alive, and that Ms. Haddix "has or will soon have a baby chimpanzee"). Thus, this paragraph is a textbook example of hearsay, *see* FED. R. EVID. 801(b), and as such must be disregarded by this Court, *id.* Rule 802; *see also U.S. v. Holmes*, 421 F.3d 683, 688 (8th Cir. 2005) (private investigator's affidavit relating confidential informant's exculpatory statements was hearsay, and "could not be introduced for its substantive truth.").

### D. Pursuant to This Court's Own Statements, PETA Is Not Entitled to the Relief It Requests

At the July 14 Hearing, this Court expressly stated that it would hold Ms. Haddix in contempt and do a body attachment only if "not all of the[] six chimpanzees" were at the Festus facility on July 28, 2021. (Tr. at 18:22–19:1.) On July 28, 2021, six chimpanzees were indeed present at—and removed from—the Festus facility. ECF No. 333 at ¶ 8. Therefore, by necessary implication, PETA is not entitled to the contempt order or body attachment it demands in the Motion.

### IV. CONCLUSION

For all of the foregoing reasons, Ms. Haddix respectfully requests that this Court deny PETA's Motion.

Date: August 16, 2021
      Los Angeles, California

                                    Respectfully submitted,

                                    /s/ John M. Pierce

John M. Pierce
**PIERCE BAINBRIDGE P.C.**
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
Tel: (213) 400-0725
Email: jpierce@piercebainbridge.com

*Attorneys for Counterclaim Defendant
Tonia Haddix*

```
```

## CERTIFICATE OF SERVICE

I hereby certify that, on August 16, 2021, the foregoing was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

/s/ John M. Pierce
John M. Pierce

Case: 4:16-cv-02163-CDP   Doc. #: 338   Filed: 08/16/21   Page: 10 of 10 PageID #: 5810

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 16, 2021, the foregoing was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

/s/ John M. Pierce
John M. Pierce