# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **MISSOURI PRIMATE FOUNDATION, ET AL,**<br><br>　　Plaintiffs and Counterclaim Defendants,<br><br>　-against-<br><br>**PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., ET AL,**<br><br>　　Defendants and Counterclaim Plaintiffs. | Case No. 4:16-cv-02163<br><br>Judge: Honorable Catherine D. Perry |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTERCLAIM DEFENDANT TONIA HADDIX'S MOTION FOR TERMINATING SANCTIONS**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................... 1

II.  STATEMENT OF FACTS .................................................................................... 2

III.  MATERIAL MISREPRESENTATIONS MADE BY PETA AND MR. GOODMAN ............................................................................................................ 3

    A.  Material Misrepresentations in the Motion and Supporting Affidavit ................................................................................................... 3

    B.  Material Misrepresentations in the Supplement and Supporting Affidavit ................................................................................................... 4

IV.  THIS COURT SHOULD ENTER TERMINATING SANCTIONS AGAINST PETA BECAUSE PETA HAS SOUGHT RELIEF THROUGH FRAUD ON THIS COURT AND BECAUSE NO LESSER SANCTION WILL PROVIDE AN ADEQUATE REMEDY ...................................................................................... 5

    A.  PETA Committed Fraud on this Court by Seeking Relief Through Materially False Statements and Material Omissions In Its Moving Papers ...................................................................................................... 6

    B.  Terminating Sanctions Are the Only Adequate Remedy Here Because PETA's Misconduct Is Severe, and Because It Will Continue Lying to This Court to Persecute Ms. Haddix ................... 9

        1.  *Terminating Sanctions are Necessary Because, By Materially Misrepresenting the Facts in Two Separate Moving Papers, PETA has Engaged in a Pattern of Deception That Threatens to Interfere With the Rightful Decision of this Case* ....................................................... 10

        2.  *Terminating Sanctions are Necessary Because Lesser Sanctions Will Fail to Prevent PETA From Using Material Misrepresentations Against Ms. Haddix in the Future* ........................................................... 11

    C.  This Court Has Authority to Modify the Consent Decree So as to Effectuate Terminating Sanctions ........................................................ 14

    D.  This Court Should Declare Tonka Deceased ................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Anheuser-Busch, Inc. v. Nat. Beverage Distrib.*, 69 F.3d 337, 352 (9th Cir. 1995) ... 14

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989) .............................................. 5

*Compounding Servs., LLC v. Express Scripts, Inc.*, 349 F. Supp. 3d 794 (E.D. Mo. 2018) ........................................................................................................................ 9

*Grenier v. City of Champlin*, 152 F.3d 787 (8th Cir. 1998) .......................................... 5

*Hill v. West Publ'g Co.*, No. 4-96-1032 (JRT/RLE), 1998 WL 1069117 (D. Minn. Sept. 24, 1998) ................................................................................................. 5, 6, 9, 10, 11, 13

*McDonald v. Armontrout*, 908 F.2d 388, 390 (8th Cir. 1990) .................................... 14

*Nichols v. Klein Tools, Inc.*, 949 F.2d 1047 (8th Cir. 1991) .......................................... 5

*Pfizer, Inc. v. Int'l Rectifier Corp.*, 538 F.2d 180 (8th Cir. 1976), *cert. denied*, 429 U.S. 1040 (1977) ........................................................................................................ 5

*Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469 (D.C. Cir. 1995) .............................. 5

*Sys. Fed'n No. 91, Ry. Emp. Dept., AFL-CIO v. Wright*, 364 U.S. 642, 648 (1961) ... 14

*Transo Envelope Co. v. Murray Envelope Co.*, 227 F. Supp. 240, 242 (D.N.J. 1964) 13

*Vogel v. Tulaphorn, Inc.*, No. CV 13-464 PSG (PLAx), 2013 WL 12166212 (C.D. Cal. Nov. 5, 2013), *aff'd*, 637 F. App'x 344, 345 (2016), *cert. denied*, 137 S. Ct. 173 (2016) ................................................................................................................. 9, 10, 13

**Other Authorities**

*Fraud on the court*, BLACK'S LAW DICTIONARY (11th ed. 2019) .................................. 1

## I.  INTRODUCTION

PETA's Motion is a textbook example of fraud on the Court.[1] This is because it is fundamentally premised on a lie: PETA demands a body attachment (*i.e.* that this Court deprive Ms. Haddix of her liberty) because she has "provided no proof" of Tonka's death. This premise is false, and was false at the time the Motion was filed: on July 28, 2021, Ms. Haddix's counsel (Counsel) provided PETA an email from Jerry Aswegan, the man who cremated Tonka, wherein he expressly states that he cremated Tonka (the Proof of Death). Counsel also told PETA that Ms. Haddix had retained Tonka's remains, and that PETA could take a sample for genetic or other testing to verify their source.[2]

Had PETA disclosed these facts in the Motion, its entire argument—and its purported bases for relief—would have been vitiated. Since PETA lied directly to this Court multiple times for the purpose of securing severe sanctions against Ms. Haddix, this Court must assert its inherent authority and enter terminating sanctions against PETA. Specifically, this Court should modify the Consent Decree to end any ongoing obligations Ms. Haddix has thereunder, and terminate all other obligations Ms. Haddix has to PETA.

Ms. Haddix recognizes that terminating sanctions are severe. However, for the

---

[1] *See fraud on the court*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("In a judicial proceeding, a lawyer's or party's misconduct so serious that it undermines or is intended to undermine the integrity of the proceeding. Examples are bribery of a juror and introduction of fabricated evidence.").
[2] In the interest of fully disclosing the facts to this Court: On August 18, PETA contacted Counsel to inquire whether the remains could "theoretically be submitted for testing." Ms. Haddix does not believe this detracts from the argument for terminating sanctions since it does not excuse PETA's duplicitous conduct.

1

following reasons, no lesser sanction will be sufficient. *First*, Ms. Haddix presents clear and convincing evidence that PETA committed a fraud on this Court. As noted above, PETA's Motion sought relief through both affirmative misrepresentation and omission of material facts. PETA's Supplement doubled down on the material omission. Since these misrepresentations were made in moving papers, it was clearly PETA's specific intent to deceive this Court. Further, since the relevant events took place just days before PETA filed its Motion, it is inconceivable that the material misrepresentations were due to mistake or inadvertence.

*Second*, it is quite apparent that terminating sanctions are the only adequate remedy. This is because PETA's (and its counsel's) misrepresentations form the heart of PETA's claim for relief. Therefore, this Court can no longer trust any of PETA's representations (at least where it seeks relief against Ms. Haddix). Further, PETA has given clear and unmistakable indications that it will continue relying on misrepresentations when seeking relief against Ms. Haddix in the future. Therefore, nothing less than a terminating sanction will prevent ongoing prevarications. Accordingly, this Court should terminate any and all obligations Ms. Haddix may have to PETA in this matter.

## II. STATEMENT OF FACTS

On October 2, 2020, this Court entered the Consent Decree. ECF No. 274. The Consent Decree imposed on Ms. Haddix a number of ongoing obligations, *see id.* ¶¶ 3, 6, and granted PETA the right to enforce them, *id.* ¶ 8.

On April 8, 2021, this Court ordered Ms. Haddix to pay PETA's "attorney's fees and expenses" in bringing its Motion to Hold Counterclaim Defendant Tonia Haddix

in Contempt. ECF No. 299 at 4–5.

On June 30, 2021, this Court ordered Ms. Haddix to pay PETA's "costs and attorney's fees associated with their efforts to obtain compliance with the Consent Decree and Second Order of Civil Contempt." ECF No. 309 at 2.

On July 14, 2021, this Court ordered Ms. Haddix to reimburse PETA "for all costs associated with securing the service of the U.S. Marshals" in connection with the transfer of the chimpanzees. ECF No. 323 ¶ 8.

This Motion incorporates by reference the Statement of Facts in Ms. Haddix's Opposition to PETA's Fourth Motion for an Order to Show Cause. *See* ECF No. 338 at 2–4.

### III. MATERIAL MISREPRESENTATIONS MADE BY PETA AND MR. GOODMAN

#### A. Material Misrepresentations in the Motion and Supporting Affidavit

The Motion contains the following false statements of fact:

- That Ms. Haddix is "secreting chimpanzee Tonka and falsely representing he has died." ECF No. 333 at 1.
- "Haddix has provided no [] proof [of Tonka's death]." *Id.*
- That Ms. Haddix "refused to provide any evidence" of Tonka's death. *Id.* ¶ 2.
- That Ms. Haddix "fail[ed] to provide evidence of Tonka's death." *Id.* ¶ 3.
- "[As of August 2, 2021], Haddix has provided *no* proof that Tonka has died. In fact, the only suggestions supporting this allegation are based exclusively on Haddix's bald assertions—(1) her statements to the media [citation]; (2) her Motion for Continuance of the July 14, 2021 Contempt Hearing, which merely referred to a veterinarian's affidavit stating in relevant part that "Ms. Haddix called and informed me that Tonka had died" [citation; and (3) Haddix and her counsel's similar unsupported representations during the July 14 hearing [citation]." *Id.* ¶ 6 (emphasis retained).

Each of the foregoing statements is false because Ms. Haddix provided PETA with proof of Tonka's death and offered his remains for testing on July 28, 2021. *See*

3

ECF 338-1.

Mr. Goodman's affidavit in support of the Motion contains the following false statement of fact:

- That PETA will need to incur "fees and costs . . . to transfer Tonka to Center for Great Apes, all of which would have been unnecessary if Tonka was at the facility at the time of the initial transfer." ECF 333-1 ¶ 6.

This is a false statement of fact because, in so declaring, Mr. Goodman also necessarily stated as an implied fact that Tonka was alive at the time of the initial transfer. Yet, at the time Mr. Goodman signed the affidavit (on August 2—just five days after he received the Proof of Death and the offer of Tonka's remains) he had no objective basis for believing that Tonka was still alive, had reason to believe that Tonka had long since died, and had a means of verifying his death.

Both the Motion and Mr. Goodman's affidavit make the following material omissions:

- They fail to disclose that Ms. Haddix gave PETA written proof of Tonka's death.
- They fail to disclose that Ms. Haddix offered PETA a sample of Tonka's remains for the purposes of testing to verify that they were, in fact, Tonka's remains.

### B. Material Misrepresentations in the Supplement and Supporting Affidavit

The Supplement contains the following false statements of fact:

- That Ms. Haddix is "secreting chimpanzee Tonka and falsely representing he has died." ECF No. 337 at 1.
- "[T]hat Haddix has failed to provide evidence of Tonka's death" *Id.* at ¶ 1.

Each of the foregoing statements is false because Ms. Haddix provided PETA with proof of Tonka's death and offered his remains for testing on July 28, 2021. *See* ECF 338-1.

4

Both the Supplement and Mr. Goodman's affidavit in support thereof make the following material omissions:

- They fail to disclose that Ms. Haddix offered PETA a sample of Tonka's remains for the purposes of testing to verify that they were, in fact, Tonka's remains.

### IV. THIS COURT SHOULD ENTER TERMINATING SANCTIONS AGAINST PETA BECAUSE PETA HAS SOUGHT RELIEF THROUGH FRAUD ON THIS COURT AND BECAUSE NO LESSER SANCTION WILL PROVIDE AN ADEQUATE REMEDY

A litigant commits fraud on the court by engaging in egregious misconduct that is directed at the court itself. *Grenier v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998). It is within this Court's inherent authority to enter terminating sanctions against a litigant that commits fraud on the court. *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989). Indeed, it is "surpassingly difficult to conceive of a more appropriate use of a court's inherent power than to protect the sanctity of the judicial process—to combat those who would dare to practice unmitigated fraud upon the court itself." *Id.*

The Eighth Circuit uses a two-step test to determine whether terminating sanctions are appropriate: *First*, Ms. Haddix must provide clear and convincing evidence that PETA (or its counsel) committed a fraud on this Court; *Second*, she must show that terminating sanctions are the only adequate remedy. *See Hill v. West Publ'g Co.*, No. 4-96-1032 (JRT/RLE), 1998 WL 1069117, at *3 (D. Minn. Sept. 24, 1998) (citing *Pfizer, Inc. v. Int'l Rectifier Corp.*, 538 F.2d 180, 195 (8th Cir. 1976), *cert. denied*, 429 U.S. 1040 (1977); *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1476 (D.C. Cir. 1995); *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1048–49 (8th Cir. 1991)).

5

Here, Ms. Haddix easily establishes both.

### A. PETA Committed Fraud on this Court by Seeking Relief Through Materially False Statements and Material Omissions In Its Moving Papers

A party commits fraud on the court by "knowingly interfering with the judicial process." *Hill*, 1998 WL 1069117, at *4 (citing *Nichols*, 949 F.2d at 1048–49). In *Hill*, the court found that the plaintiff, who likely forged evidence, had committed a fraud on the court. *Id.* at *6. *Hill* involved an employment discrimination claim. *Id.* at *1. Before filing suit, the plaintiff sent the defendant a demand letter, to which he attached eleven documents "contain[ing] racist missives" that had purported been given to him in the workplace. *Id.* After his demand was rejected and he filed suit, the plaintiff stated at deposition and in interrogatory responses that the documents had been given to him in 1985. *Id.* at *2. However, the defendant's expert document examiner (and later, the plaintiff's) concluded that two of the eleven documents could not have been generated before 1992.[3] *Id.* Claiming that the evidence was fabricated, the defendant moved for terminating sanctions. *Id.* at *3.

The court found that the defendant had established the plaintiff's fraud on the court by clear and convincing evidence. *Id.* at *4. The court noted that the defendant demonstrated "beyond dispute" that the two documents could not have been created until six years after the date on which the plaintiff had testified that he received them. *Id.* Further, since there was no evidence on the record from which "mistake, misunderstanding, or misstatement [could] be inferred," the only reasonable

---

[3] He concluded that the two documents had been printed using a printer that was not available to consumers before late 1991. *Hill*, 1998 WL 1069117, at *2.

6

conclusion was that the plaintiff had fabricated the two documents and his testimony.[4] *Id.* Accordingly, the defendant had "clearly and convincingly established a fraud on th[e c]ourt." *Id.*

For several reasons, the argument that PETA has committed a fraud on this Court is far stronger. *First*, and most obviously, PETA made its material misrepresentations directly to this Court in two separate moving papers. Therefore, it is clear that PETA intended specifically to deceive this Court. Indeed, it would be difficult to conclude otherwise. By contrast, the *Hill* plaintiff's fabricated documents were sent to his employer before the action had commenced (and before it was clear that an action would ever be filed), so the nexus between the documents and the court was substantially attenuated. Nonetheless, the *Hill* court found the two documents to be clear and convincing evidence of fraud on the court. Since the nexus between PETA's misrepresentations and this Court could not possibly be stronger, this alone provides clear and convincing evidence of PETA's fraud on this Court.

*Second*, Had PETA disclosed the Proof of Death and the offer of Tonka's remains, its argument for relief would have been entirely vitiated. Therefore, PETA's claim for relief was entirely dependent on its materially false statements and omissions. In contrast, the *Hill* plaintiff had nine documents whose authenticity was not in question. Again, this makes the evidence of PETA's fraud on this Court much

---

[4] The plaintiff argued that terminating sanctions were inappropriate because there were other documents whose authenticity was not being questioned. The court rejected this argument, reasoning that "[t]he existence of other evidence is irrelevant to the issue of whether the evidence relating to [the forged documents] was fabricated." *Id.* at *4 n.2.

7

stronger than that which the *Hill* court found to be clear and convincing.

*Third*, like the *Hill* plaintiff, PETA doubled down on its attempt at deception. Specifically, the Supplement repeats the Motion's failure to disclose Ms. Haddix's offer of Tonka's remains. However, PETA's conduct is far more culpable because it was directed specifically at persuading this Court to grant relief (in contrast, the *Hill* plaintiff fabricated the documents to persuade his employer to settle without litigation). Accordingly, there is no question that PETA has repeatedly attempted to deceive this Court.

*Finally*, PETA cannot rationally argue that its repeated misrepresentations were due to mistake, inadvertence, or misstatement. With respect to the Motion, Counsel showed Mr. Goodman the Proof of Death, emailed it to him, and communicated the offer of Tonka's remains on July 28, *just five days before* PETA filed the Motion. Mr. Goodman is signing counsel on the Motion, so PETA cannot credibly argue that the Motion's drafter was unaware of the Proof of Death and the offer of Tonka's remains. Likewise, PETA cannot credibly argue that Mr. Goodman forgot about the Proof of Death and the offer of Tonka's remains, or that he mistakenly wrote that "Haddix has provided *no* proof that Tonka has died." Indeed, in the Supplement, PETA tacitly admits that it lied to this Court. *See* ECF No. 337 ¶ 2–3 (admitting that Counsel gave Mr. Goodman the Proof of Death on July 28).

With respect to the Supplement, on the morning of August 9, Counsel reminded PETA about the offer of Tonka's remains. *See* ECF No. 338-1 ¶ 10. PETA filed the Supplement *that same day*, yet failed to disclose this offer to the Court. This failure to disclose is especially damning because the Supplement expressly states that

8

Tonka's remains "could provide further evidence of his death." ECF No. 337 ¶ 9.

In summary, it is clear that PETA sought relief by omitting several material facts and repeatedly making false statements in its moving papers. Under the circumstances, it is impossible to conclude other than that the misrepresentations were made deliberately. Since these misrepresentations were included in moving papers, it is clear that they were made solely and exclusively for the purpose of deceiving this Court. Accordingly, Ms. Haddix has provided clear and convincing evidence that PETA knowingly interfered with the judicial process and, therefore, that PETA committed a fraud on this Court.

### B. Terminating Sanctions Are the Only Adequate Remedy Here Because PETA's Misconduct Is Severe, and Because It Will Continue Lying to This Court to Persecute Ms. Haddix

Admittedly, a terminating sanction is a severe remedy that should be used "cautiously and sparingly." *Hill*, 1998 WL 1069117, at *3. However, terminating sanctions are justified where, as here, a party engages in "egregious misconduct[,] such as intentional concealment." *Compounding Servs., LLC v. Express Scripts, Inc.*, 349 F. Supp. 3d 794, 800 (E.D. Mo. 2018). Egregious misconduct includes engaging in any "pattern of deception" that "threatens to interfere with the rightful decision of the case." *Vogel v. Tulaphorn, Inc.*, No. CV 13-464 PSG (PLAx), 2013 WL 12166212, at *3 (C.D. Cal. Nov. 5, 2013), *aff'd*, 637 F. App'x 344, 345 (2016), *cert. denied*, 137 S. Ct. 173 (2016). Terminating sanctions are also warranted where lesser sanctions would fail to deter similar, future wrongdoing. *Id.* Though Ms. Haddix need only establish one of these grounds, here, both grounds support terminating sanctions against PETA.

9

> *1. Terminating Sanctions are Necessary Because, By Materially Misrepresenting the Facts in Two Separate Moving Papers, PETA has Engaged in a Pattern of Deception That Threatens to Interfere With the Rightful Decision of this Case*

In *Vogel*, the court entered terminating sanctions against the plaintiff after it came to light that the plaintiff had lied to obtain standing to bring an Americans with Disabilities Act claim, continued the lie in his motion for summary judgment, and doubled down on that lie in his amended summary judgment motion. 2013 WL 12166212, at *2–3, *12. The court reasoned that terminating sanctions were appropriate because the "repeated lies under oath '[made] it impossible for the Court now to believe a word [the plaintiff] say[s] about' his standing." *Id.* (citation omitted).

The same reasoning applies here. PETA expressly stated that it was moving to hold Ms. Haddix in contempt for "willful violation of the Consent Decree [ECF No. 274], this Court's subsequent Second Order of Civil Contempt [ECF No. 307], and this Court's specific order that Haddix provide proof of Tonka's death." ECF No. 333 at 1. Like the *Vogel* plaintiff, PETA lied in its Motion, both through false statements and material omissions. In the Supplement, PETA stood by its mendacity by doubling down on one of the material omissions. PETA's mendacity is particularly damning because the false statements and material omissions "are at the heart of" PETA's claim for relief. *Hill*, 1998 WL 1069117, at *5. Thus, this Court can no longer believe PETA's future claims for relief against Ms. Haddix.

The *Vogel* court also noted that the plaintiff's counsel's mendacity—he misrepresented evidence so that it would support the plaintiff's argument for standing—militated in favor of terminating sanctions. *Id.* at *7, *12. Here, as

10

discussed above, *supra* Part III, both of Mr. Goodman's declarations omit material facts. Moreover, he also perjured himself: in his affidavit supporting the Motion, Mr. Goodman stated as a fact that PETA will need to incur "fees and costs . . . to transfer Tonka to Center for Great Apes, all of which would have been unnecessary if Tonka was at the facility at the time of the initial transfer." ECF 333-1 ¶ 6. In so declaring, Mr. Goodman also necessarily stated, by implication, that Tonka was alive at the time of the initial transfer. Yet, at the time he signed the affidavit (on August 2—just five days after he received the Proof of Death and the offer of Tonka's remains) he had no objective basis for believing that Tonka was still alive, had reason to believe that Tonka had long since died, and had a means of verifying his death. That he nonetheless chose to prevaricate before this Court in furtherance of PETA's claims for relief further erodes PETA's credibility.

In summary: PETA's material misrepresentations in its moving papers, and Mr. Goodman's material misrepresentations in his affidavits supporting PETA's moving papers, "[make] it impossible for th[is] Court now to believe a word [they] say" about any of Ms. Haddix's alleged violations of the Consent Decree or court orders. This alone justifies terminating sanctions here.

> 2. *Terminating Sanctions are Necessary Because Lesser Sanctions Will Fail to Prevent PETA From Using Material Misrepresentations Against Ms. Haddix in the Future*

Terminating sanctions are appropriate where lesser sections are unlikely to deter future misconduct. *Hill*, 1998 WL 1069117, at *4. For example, lesser sanctions would be ineffective where they "simply would place [the prevaricating parties] in the same position as if [they] had not committed misconduct." *Id.* In *Hill*, the court

11

rejected the plaintiff's claim that excluding the fabricated evidence would be sufficient: doing so would merely place him in the same position as if he had never fabricated evidence, and so would have minimal deterrent value. *Id.* Moreover, allowing him to proceed on other evidence would place the burden *on the defendant* to "attack[] [the plaintiff]'s credibility." Since this "would have little deterrent or punishment value and would impose an unfair burden on [the defendant]," terminating sanctions were necessary. *Id.*

Here, PETA has demonstrated that it is interested in persecuting Ms. Haddix. Were PETA actually concerned with Tonka, it would have jumped at the opportunity to test his remains to verify his death—as noted above, PETA's Supplement expressly stated that his remains could be used for that purpose. In fact, PETA spurned that opportunity, choosing instead to ask this Court to deprive Ms. Haddix of her physical liberty "until [she] . . . identif[ies] the specific location at which Tonka has been hidden." ECF No. 333 at 4. Since Tonka is dead and cremated, PETA is asking this Court to hand Ms. Haddix a de facto life sentence. Clearly, PETA's goal is to punish Ms. Haddix for conduct at odds with PETA's radical agenda. Since any lesser sanction would leave PETA free to continue persecuting Ms. Haddix—and place the burden on Ms. Haddix to disprove PETA's future prevarications—terminating sanctions are necessary.

Notably, PETA has previewed its next line of attack: in the Supplement, PETA claims that Mr. Goodman "was contacted by a whistleblower" who knows "an individual with personal knowledge" who "stated that Tonka is alive." ECF No. 337 ¶ 12. Incredibly, this eleventh-hour whistleblower also claimed that "Haddix has or

12

will soon have a baby chimpanzee." *Id.* Mr. Goodman helpfully clarifies that he spoke with this whistleblower on August 9, ECF No. 337-1 ¶ 7, *the day PETA filed the Supplement*.[5]

This is simply incredible: PETA would have this Court believe that, on the same day that Ms. Haddix caught PETA's lying to this Court (and on the same day the Supplement is filed), Mr. Goodman had the good fortune of receiving a phone call from a whistleblower. PETA would further have this Court believe that this whistleblower—whose name and other identifying information PETA, of course, withholds [6]—not only supported PETA's misrepresentations, but also reported *another* violation of the Consent Decree. *See* ECF No. 274 at 7 (enjoining Ms. Haddix "from owning and/or possessing any other chimpanzee(s) in the future."). Such serendipity would stretch the bounds of credulity under any circumstances. However, when considered in the context of PETA's known misrepresentations to this Court, these new allegations "reek[] so strongly of mendacity [that] the Court cannot ignore [them]." *Vogel*, 2013 WL 12166212, at *8.

In *Hill*, the plaintiff argued that terminating sanctions were inappropriate because the evidence he fabricated had only a tenuous nexus to some of his claims. 1998 WL 1069117, at *5. The court rejected this argument: because the fabricated

---

[5] Obviously, this branch of Mr. Goodman's declaration is at least double hearsay. Therefore, it is inadmissible. *See* FED. R. EVID. 802. *See also Transo Envelope Co. v. Murray Envelope Co.*, 227 F. Supp. 240, 242 (D.N.J. 1964) ("An affidavit which simply recites that the affiant has been 'apprised' of certain information, without more, is entitled to no weight on this motion.").

[6] Notably, PETA also failed to provide this Court with an affidavit either from the whistleblower or the "individual with personal knowledge."

13

evidence was central to some of his claims, his fraud on the court had "tainted the entire action." *Id.* Likewise, PETA's and Mr. Goodman's mendacity has tainted this entire action: Were PETA to put a face and a name to this purported whistleblower (or the "individual who has personal knowledge"), this Court could hardly take his or her word at face value. This is particularly so because the whistleblower parroted PETA's false claim that Tonka is still alive.

In summary: PETA and its counsel have already lied to this Court several times. They have made incredible claims about having discovered new evidence. Further, they clearly intend to continue persecuting Ms. Haddix. Because all the foregoing suggests that PETA will "continue [engaging in] deceptive conduct," terminating sanctions are necessary. *Anheuser-Busch, Inc. v. Nat. Beverage Distrib.*, 69 F.3d 337, 352 (9th Cir. 1995).

### C. This Court Has Authority to Modify the Consent Decree So as to Effectuate Terminating Sanctions

"The district court retains authority over a consent decree, including the power to modify the decree in light of changed circumstances." *McDonald v. Armontrout*, 908 F.2d 388, 390 (8th Cir. 1990). The Court of Appeals reviews modification of a consent decree for abuse of discretion. *Id.* Moreover, "a district court's resolution of a motion to modify is due greater deference when the changed circumstances justifying modification are of fact rather than law." *Id.* (citing *Sys. Fed'n No. 91, Ry. Emp. Dept., AFL-CIO v. Wright*, 364 U.S. 642, 648 (1961)).

Here, the changed circumstances are that this Court has been presented with clear and convincing evidence (indeed, almost irrefutable evidence) that PETA has

14

committed fraud on this Court. PETA did so specifically for the purpose of deceiving this Court to enter severe sanctions—an indefinite deprivation of her most basic physical liberty rights—against Ms. Haddix. Moreover, these changed circumstances are ones of fact, so this Court's modifications will be entitled to extra deference. Accordingly, it is well within this Court's authority to order the Consent Decree modified in such a way as to foreclose any further claims by PETA against Ms. Haddix.

### D. This Court Should Declare Tonka Deceased

Ms. Haddix has provided compelling evidence of Tonka's death. In addition to the affidavits of Ms. Haddix and Mr. Aswegen, ECF Nos. 338-2, 338-3, Dr. Talbot, Tonka's veterinarian, vividly described Tonka's rapidly declining health just ten days before Tonka's death. *See* ECF No. 317-2 ¶¶ 7–11. As noted above, PETA's ostensible concern for Tonka is merely a cover for persecuting Ms. Haddix. To foreclose further persecution, this Court should declare that Tonka is deceased.

**WHEREFORE**, Ms. Haddix respectfully requests that this Court enter an order:

1. Declaring that the chimpanzee Tonka is deceased, and has been deceased since May 30, 2021;

2. Declaring null and void any and all prior orders of this Court requiring Ms. Haddix to convey money to Counterclaim Plaintiffs;

3. Modifying Paragraphs Three, Six, and Eight of the Consent Decree entered by this Court on October 2, 2020, ECF No. 274, so as to eliminate any obligations Ms. Haddix currently has to Counterclaim Plaintiffs thereunder; and

4. Any and all further or other relief that this Court deems to be just and proper.

15

Date: August 20, 2021
     Los Angeles, California

                              Respectfully submitted,


                             /s/ John M. Pierce
                             John M. Pierce
                             **PIERCE BAINBRIDGE P.C.**
                             355 S. Grand Avenue, 44th Floor
                             Los Angeles, CA 90071
                             Tel: (213) 400-0725
                             Email: jpierce@piercebainbridge.com

                             *Attorneys for Counterclaim Defendant*
                             *Tonia Haddix*

**CERTIFICATE OF SERVICE**

      I hereby certify that, on August 20, 2021, the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTERCLAIM DEFENDANT TONIA HADDIX'S MOTION FOR TERMINATING SANCTIONS was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

                                      /s/ John M. Pierce
                                      John M. Pierce