# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) |
|     Plaintiffs and Counterclaim Defendants, | ) ) ) |
| v. | )    Case No. 4:16-cv-02163 |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) ) |
|     Defendants and Counterclaim Plaintiffs. | ) ) |

## COUNTERCLAIM PLAINTIFFS' OPPOSITION TO COUNTERCLAIM DEFENDANT TONIA HADDIX'S MOTION FOR TERMINATING SANCTIONS

Tonia Haddix's Motion for Terminating Sanctions [ECF No. 339 ("Motion")] is premised *exclusively* on a fatally flawed proposition—that (1) her husband's email that her counsel showed to Counterclaim Plaintiffs ("Plaintiffs") a week after her deadline ("Email") and (2) her counsel's suggestion that Plaintiffs submit a written request to have those ashes tested somehow proved Tonka's death and therefore should have been disclosed to the Court. As discussed at length in Plaintiffs' reply in support of their pending motion for an order to show cause [ECF No. 340],[1] the representations in the Email were obviously and factually impossible, Haddix's post-Motion attempts to cure that problem have fared no better, and Haddix has not provided a scintilla of actual evidence of Tonka's death. Plaintiffs were under no obligation to disclose a facially absurd and unreliable document to the Court.

---

[1] Plaintiffs incorporate their reply by reference, as Haddix's opposition to that motion relies on the same flawed and deceptive premise as the instant Motion.

Rather, Haddix's requests for relief make clear that this Motion is a desperate attempt to avoid her obligations under the Consent Decree and subsequent Court orders. Indeed, Haddix previously testified that she wanted to "get out of" and "cancel" the Consent Decree. [Transcript of TRO Hearing, at 31-7:14 (Mar. 25, 2021).] This baseless Motion is apparently the vehicle that her counsel has promoted to pursue that end.

"'A finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel and must be supported by clear, unequivocal and convincing evidence.'" *Superior Seafoods, Inc. v. Tyson Foods, Inc.*, 620 F.3d 873, 880 (8th Cir. 2010) (quoting *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 538 F.2d 180, 195 (8th Cir. 1976). "This narrow concept embraces 'only the species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.'" *United States v. Jones*, No. 4:05-CR-381, 2011 WL 13351817, at *2 (E.D. Mo. June 6, 2011) (quoting *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989)). Further, "the perpetrator of the fraud must possess a sufficient mental state. One list of essential elements requires the fraudulent conduct to be 'intentionally false, wilfully blind to the truth, or [ ] in reckless disregard for the truth.'" *Bowie v. Maddox*, 677 F. Supp. 2d 276, 279 (D.D.C. 2010) (quoting *Demjanjuk v. Petrovsky,* 10 F.3d 338, 348 (6th Cir. 1993)).

In *Greiner v. City of Champlin*, 152 F.3d 787, 788 (8th Cir. 1998), for example, the appellants alleged fraud on the court regarding appellee's withholding of a defendant officer's psychological report. The Eighth Circuit rejected the claim, finding that the appellants "have clearly not met th[e] standard" for fraud on the court because the report was not admissible to

prove that the officer acted in conformity with that character on the night in question and because the evidence of prior bad acts were already known to appellants. *Id.* at 789.

Further, in *Bowie v. Maddox,* the plaintiff claimed fraud on the court, alleging that the defendants submitted a fraudulent affidavit in his name in another case, lied about its authenticity, and this court then relied on the affidavit. 677 F. Supp. 2d at 278, 282. The court denied the claim on two separate grounds. First, the court held that the plaintiff did not provide clear and convincing evidence of conduct that rises to the level of fraud on the court. *Id.* at 282. Specifically with respect to "the fact that officers of the court were involved in some of the alleged misrepresentations," the court found that "[e]ven if they did make misrepresentations, their status as officers of the court is not enough to prove fraud on the court. Some form of intentional misconduct must be demonstrated." *Id.* The court's second reason for rejecting the plaintiff's claim of fraud was that the plaintiff had knowledge of alleged fraud and it did not prevent him from presenting his case fully and fairly. *Id.* at 285.

Here, Plaintiffs and their counsel made no misrepresentations to the Court regarding Haddix's failure to prove Tonka's death. Like in *Greiner*, the Email and accompanying suggestion that Plaintiffs should request to have the remains tested was not admissible evidence, and like both *Greiner* and *Bowie*, its contents were already known to Haddix, who had the opportunity to and did raise it in her response to Plaintiffs' motion. Further, as in *Bowie*, Haddix has failed to demonstrate any intentional misconduct by Plaintiffs or counsel. Plaintiffs have already described at length in their pleadings why they did not convey the Email to the Court in their motion—it nonsensically asserted that Tonka was cremated at temperatures that were physically impossible, it was sent by Haddix's husband (a fact that Mr. Pierce did not disclose), and Mr. Pierce requested that Plaintiffs' counsel retain the Email's "privilege" (a fact noticeably

3

absent from this Motion). [*See* ECF No. 340.] When Mr. Pierce demanded that Plaintiffs immediately withdraw their motion because they did not inform the Court of the Email, Plaintiffs' counsel understood that Mr. Pierce no longer expected the Email to remain "privilege[d]" and promptly informed the Court. [*Id.*]

In fact, Plaintiffs' disbelief was proven justified when Haddix acknowledged "significant" purported "clerical errors" in the Email and submitted a new affidavit from her husband attempting to address what was obviously impossible. [ECF No. 338-3.] She submitted this new evidence after Plaintiffs' filings at issue but before she filed this Motion, yet conspicuously fails to acknowledge in the Motion the change or the reason it was submitted.

Ironically, the instant Motion is also premised on Haddix's repeated misleading assertions to the Court that she offered Plaintiffs the opportunity to have certain remains tested. [Motion, at 3-5, 12.] As discussed in Plaintiffs' reply in support of their motion for an order to show cause, it is scientifically impossible for the testing that Haddix repeatedly proposes to provide any proof as to whether the remains belong to Tonka, as she now acknowledges that she has only ashes—despite representations to the contrary, and despite the fact that the cremation her husband described should have left substantial skeletal remains. [ECF No. 340, at 4-6.] The entire basis for the Motion appears to be fraudulent.

These circumstances are also in stark contrast to the single case on which Haddix relies for comparison, *Hill v. W. Publ'g Co.*, No. CIV 4-96-1032 JRT/T, 1998 WL 1069117 (D. Minn. Sept. 24, 1998). In *Hill*, the court entered terminating sanctions after finding clear and convincing evidence that Hill fabricated two documents that were central to his case. The court reasoned: "[D]ocuments J and K could not have been created before 1992, over six years after Hill alleged he received this documents. Hill testified under oath and in considerable detail that

4

he received and complained of these documents in 1985. The Court is aware of no evidence or explanation that would reconcile these patent inconsistencies." *Id.* at *4. The complete fabrication of core documents is the very type of misconduct fraud on the court is intended to sanction. In fact, even there, the court found that the Hill did *not* commit fraud on the court by submitting handwritten notes that counsel initially represented as Hill's, but that Hill later explained "are a transcription of his original notes and that he considers them to be his notes. He felt that his original notes were not sufficiently neat, so he had his friend transcribe them." *Id.* at *2, 4. While the court was suspicious of the conduct regarding the notes, it found that to be a "plausible explanation for the representations at issue" and therefore defendant "has not established by clear and convincing evidence that either Hill or his counsel intentionally misrepresented the truth about these notes to West or the Court." *Id.* at *4. Here, Plaintiffs submitted far more than a "plausible explanation" for omitting the Email and suggestion to request to have remains tested—the document was inadmissible, unreliable, and did not prove Tonka's death. Haddix's continued reference to the Email as "Proof of Death" does not make it so.

Haddix's requests for relief demonstrate that this Motion is merely a vehicle for her to attempt to avoid her obligations under the Consent Decree and subsequent Court orders. She transparently asks the Court to declare Tonka deceased following her abject failure to prove his death; to modify the Consent Decree to allow her to possess and breed chimpanzees and to enter or insert a body part into enclosures with chimpanzees; and to relieve her of the responsibility for Plaintiffs' fees and costs in relation to the Court's prior findings of her contempt. In fact, it appears that Haddix may disregard the Court's orders even if and when her Motion fails. In an interview published the same day as the Motion was filed, Haddix explicitly stated that she

5

would obtain chimpanzees now if she could find somewhere to obtain them. Denying the allegation that she had or would soon receive a baby chimpanzee, Haddix stated:

> "I can tell you there's no opportunities to get a chimp right now. There's only one breeder in the U.S. and she won't give one to me because she doesn't want heat from PETA."
>
> That said, "if I could get one, would I? Absolutely. 100 percent…. You mess with those chimps, I'm gonna be the biggest, craziest chimp lady. [Ms. Casey] had 42 chimps? I'll have 52 chimps."

Kelly Weil, *Missouri Monkey Mogul Accused of Faking Death of Famous Chimpanzee* (Aug. 20, 2021), https://www.thedailybeast.com/monkey-mogul-accused-of-faking-death-of-famous-buddy-chimpanzee-tonka.

      Finally, signaling Haddix's desire to avoid a hearing on Plaintiffs' pending motion, she remarkably attempts to preempt certain testimony from an unidentified potential future witness who may testify to the fact that Tonka is alive by circularly arguing that the "Court could hardly take his or her word at face value … because the whistleblower parroted PETA's false claim that Tonka is still alive." [ECF No. 399-1.] This, coupled with Haddix's failure to provide any actual proof of Tonka's death, her failure to even address why Ms. Casey said she did not know where Tonka was or whether he died nearly two full months after his alleged death, and her continuing admissions to the press that she has no intention of following the Court's orders, only further validate Plaintiffs' concern that Haddix has hidden Tonka in an attempt to prevent his transfer.

      Haddix's assertions that Plaintiffs lied to the Court and that the undersigned committed perjury are not well taken. In the short time since Mr. Pierce appeared on Haddix's behalf, Haddix has filed entirely baseless requests for emergency stays to the Eighth Circuit and the Supreme Court—both of which were summarily rejected—and now files an unfounded motion

6

alleging wrongful conduct (which is itself predicated on apparently false statements and affidavits and "proof" that does not exist and is scientifically impossible to obtain).

Plaintiffs respectfully urge the Court to deny Haddix's motion and require that she pay Plaintiffs' attorneys' fees incurred in responding to it.

Dated: September 1, 2021 						Respectfully submitted,

/s/ Jared Goodman
JARED GOODMAN (#1011876DC)
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90026
323.210.2266
Fax No: 213.484.1648
jaredg@petaf.org

POLSINELLI PC
JAMES P. MARTIN (#50170)
KELLY J. MUENSTERMAN (#66968)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com
*Attorneys for Defendants/
Counterclaim Plaintiffs*