# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et al., | ) ) ) |
| Plaintiffs and Counterclaim Defendants, | ) ) ) ) |
| v. | ) ) ) |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) ) |
| Defendants and Counterclaim Plaintiffs. | ) ) ) |

Case No. 4:16-cv-02163

## SUPPLEMENTAL DECLARATION OF JARED GOODMAN

Pursuant to 28 U.S.C. § 1746, I, Jared Goodman, declare the following to be true and correct to the best of my knowledge and belief:

1. I incorporate by reference my declaration filed on April 4, 2022, in support of Counterclaim Plaintiffs' Motion for Attorneys' Fees and Costs Incurred to Obtain Compliance with the Consent Decree [ECF No. 366-1].[1]

2. At the time of the July 2021 transfer, Center for Great Apes had capacity and intended to accept Tonka along with the six other chimpanzees—Candy, Connor, Crystal, Kerry, Mikayla, and Tammy. After Haddix secreted Tonka away, however, the sanctuary could not reserve that space indefinitely should Counterclaim Plaintiffs ("Plaintiffs") ever be able to locate Tonka and secure his transfer.

3. Plaintiff PETA and Center for Great Apes previously reached an agreement that does not require PETA to pay for the costs to care for any of the seven chimpanzees who the

---

[1] The declaration—executed and filed on April 4, 2022—was mistakenly dated April 4, 2021.

Court ordered transferred to that facility, relating to a previous financial gift to Center for Great Apes by the PETA Foundation. Pursuant to that agreement, PETA has not paid Center for Great Apes care costs for the chimpanzees who were transferred there in July 2021.

4. On June 1, 2022, promptly after Plaintiffs learned that Tonka was living in Haddix's basement and that he needed to be urgently removed from her custody before she could abscond with or kill him, Center for Great Apes no longer had the capacity to accept Tonka.

5. Instead, Plaintiffs were required to identify another accredited facility that had the space and capacity to care for Tonka. In light of the intricacies of chimpanzee social structures and the space and costs needed to appropriately care for them, there are very few such facilities. Plaintiffs identified Save the Chimps—a sanctuary accredited by the Global Federation of Animal Sanctuaries (GFAS)—as an appropriate facility to provide Tonka with expert care, and the only available GFAS-accredited facility that could home Tonka on short notice.

6. Tonka will remain at Save the Chimps at least until Center for Great Apes again has capacity to transfer him to that sanctuary. Center for Great Apes currently anticipates having that capacity by September 2022.

7. Whereas Center for Great Apes was not requiring Plaintiff PETA to pay for care costs for any of the chimpanzees, Save the Chimps requires reimbursement for their expenditures incurred for Tonka's transportation and continuing care.

8. Accordingly, Plaintiffs have been required to incur substantial expense in not only continuing to litigate Haddix's contempt, but also in relocating Tonka. The expenses reflected in

Plaintiffs' supplement and the attachments to this declaration would have been unnecessary if Haddix had allowed Tonka to be moved in July 2021 as required by the Court's orders.[2]

9. I keep detailed records of the work I completed on this case and created **Exhibit A** to this declaration, which is a true and correct copy of a supplement to my relevant time entries in relation to obtaining Tonia Haddix's compliance with the Consent Decree and the Court's orders of contempt. Specifically, this includes time entries with respect to Tonka's discovery and rescue.

10. I closely reviewed all invoices billed by Polsinelli in this matter before the invoices were approved for payment. After PETA was satisfied that the hours billed by Polsinelli were reasonable, it then paid the amounts due out of its own funds. **Exhibit B** to this declaration is composed of true and correct copies of Polsinelli invoices during the relevant period. Information in the invoices protected by the attorney-client and attorney work product privileges, or unrelated to Haddix, has been redacted.

11. PETA directly incurred and will incur expenses related to Tonka's discovery and rescue. PETA's finance department kept records of all expenses incurred in this matter, which I have reviewed. Attached here as **Exhibit C** is a Summary of Expenses, which includes the relevant expenses from PETA's finance records and those still to be paid to the sanctuary.

I declare under the penalty of perjury that the foregoing is true and correct.

July 8, 2022

Tillamook, OR                                    */s/ Jared Goodman*
                                                 Jared Goodman

---

[2] The sole expense in Plaintiffs' supplement that predates Tonka's discovery in Haddix's basement is .2 hours of Mr. Martin's time from April 4, 2022, incurred in relation to the preparation and filing of Plaintiffs' pending motion.