UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., *et al.*, | ) ) ) ) |
| Counterclaim Plaintiffs, | ) ) |
| v. | No. 4:16-CV-2163-CDP ) ) |
| TONIA HADDIX, | ) ) |
| Counterclaim Defendant. | ) ) |

**TONIA HADDIX'S RESPONSE TO COUNTERCLAIM PLAINTIFFS' MOTION AND SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES AND COSTS INCURRED TO OBTAIN COMPLIANCE WITH CONSENT DECREE**

Counterclaim Defendant Tonia Haddix ("Haddix"), by and through undersigned counsel, respectfully responds to Counterclaim Plaintiffs' People for the Ethical Treatment of Animals, Inc. ("PETA") and Angela Scott's (collectively, "Plaintiffs") Motion and Supplemental Motion for Attorneys' Fees and Costs Incurred to Obtain Compliance with Consent Decree. (*See* Docs. 365 and 379). For the following reasons, this Court should not award Plaintiffs the fees and costs they seek.

**I.      Relevant Background**

On October 2, 2020, the Parties entered into a Consent Decree which was approved by this Court. (*See* Doc. 274) (hereinafter, the "Decree").

The Decree generally addressed Haddix's possession of seven chimpanzees and required numerous actions of the Parties to the agreement. Among other things, the Decree provided that four of the chimpanzees were to be transferred to the Center for Great Apes (defined in the Decree as the "Sanctuary"). (*See* Doc. 274 at ¶ 1). The Decree expressly provided that once the four

chimpanzees were removed from Haddix's possession, all responsibility for their care shifted to PETA. (*See id.* at ¶ 1.9). The Decree further provided that if the transfer of the four chimpanzees was not consummated due to a default of Haddix, Plaintiffs would be entitled to fees and costs incurred in enforcing the Decree. (*See id.* at ¶ 1.8). The four chimpanzees were transferred without incident.

The Decree also provided that the three remaining chimpanzees were to remain in Haddix's possession as long as she complied with various requirements. (*See id.* at ¶ 2). The Decree expressly provided that if "any of the terms set forth in paragraphs 2.1 through 2.8 are not met within the timeframe required, ownership, possession, and custody of the Three Chimpanzees shall be transferred to the Sanctuary, in accordance with the same terms set forth with respect to the Four Chimpanzees in paragraphs 1.1 through 1.10 above." (*Id.* at ¶ 2.9). The Decree then provided, "[e]ach of the parties shall pay their own attorneys' fees, costs, and expenses associated with this lawsuit." (*Id.* at ¶ 7).

Subsequently, Plaintiffs asserted Haddix had violated the Decree in various respects (*see* Doc. 287) and this Court agreed.[1] (*See* Doc. 299) (holding Haddix in civil contempt for violating the Consent Decree). As such, this Court ordered Haddix to pay PETA "its reasonable attorney's fees and expenses incurred in the filing of *this motion*." (*Id.*) (emphasis added).

Thereafter, Plaintiffs asserted Haddix had failed to purge herself of contempt and remained in breach of the Decree. (*See* Doc. 303). This Court again agreed and entered a Second Order of Civil Contempt.[2] (Doc. 307). Therein, this Court concluded, pursuant to the Decree, that Haddix was required to forfeit possession of all seven chimpanzees. (*See id.*) (citing ¶ 2.9 of the Decree).

---

[1] Haddix represented herself *pro se* until recently. Undersigned counsel had no involvement with this case until very recently and is basing their understanding of what transpired primarily on the pleadings.
[2] *See id.*

2

And this Court expressly set out what Haddix would need to do in order to purge herself of contempt. (*See id.*). This included, *inter alia*, a coercive civil contempt sanction of $50.00 per day that Haddix remained in contempt. (*See id.*). This Order made no mention of Haddix being required to pay attorneys' fees or expenses. (*See id.*).

Thereafter, Plaintiffs filed a third motion alleging Haddix continued to fail to comply with this Court's Order and the Consent Decree. (Doc. 308). In response, this Court ordered Haddix to "pay PETA's reasonable costs and attorney's fees associated with their efforts to obtain compliance with the Consent Decree and Second Order of Civil Contempt."[3] (Doc. 309).

Plaintiffs then filed a fourth motion, contending Haddix remained in noncompliance. (*See* Doc. 333). Specifically, Plaintiffs argued that on July 28, 2021, when the chimpanzees were to be taken from Haddix, only 6 chimpanzees were present. (*See id.*). Plaintiffs noted Haddix had provided no proof that the missing chimpanzee, Tonka, had died. (*See id.*). This Court denied the motion. (Doc. 362).

On April 4, 2022, Plaintiffs filed a motion for attorneys' fees and costs incurred to obtain compliance with the Decree. (Doc. 366). In the motion, Plaintiffs noted that this Court had already ordered Haddix to pay PETA's fees and expenses incurred in the filing of its first motion for contempt (Doc. 299) and PETA's fees and expenses associated with efforts to obtain compliance with the Decree and the Second Order of Civil Contempt (Doc. 309). (*See* Doc. 366). Therein, Plaintiffs requested that this Court award $155,269.50 in attorneys' fees and $8,341.52 in expert witness fees and other costs. (*See id.*). These expert fees were purportedly necessary to combat the allegation that Tonka had been cremated. (*See id.*). This Court has not yet ruled on this motion.

On June 1, 2022, Plaintiffs filed a motion for a temporary restraining order and order to

---

[3] *See id*.

3

show cause based on the premise that Tonka was alive. (*See* Doc. 367). This Court granted the motion, concluding that Haddix was in material breach of the Decree and gave Plaintiffs authority to transfer Tonka to an accredited facility if Tonka could be safely relocated. (Doc. 371).

Plaintiffs thereafter filed a Notice of Transfer of Chimpanzee Tonka, noting that Tonka was examined on June 5, 2022 and arrived at Save the Chimps, an animal sanctuary, on June 6, 2022. (Doc. 374).

On July 8, 2022, Plaintiffs filed a supplement to their motion for attorneys' fees and costs. (Doc. 379). Therein, Plaintiffs noted the transfer of Tonka to Save the Chimps was completed on June 6, 2022. (*Id.* at ¶ 6). Plaintiffs noted further that the Center for Great Apes (where the other six chimpanzees had been transferred and would be cared for free of charge) no longer had space for Tonka, which necessitated his transfer to Save the Chimps which would not care for him free of charge. (*See id.* at ¶¶ 7–10). In the supplemental motion, Plaintiffs request an additional $24,535.50 in attorneys' fees and $40,721.37 in costs. (*Id.* at ¶ 11). All told, Plaintiffs seek a total award of $179,805.00 in fees and $49,062.90 in costs. (*Id.*).

**II.    Discussion**

Plaintiffs are simply not entitled to all of the fees and expenses that they seek. While this Court has already granted Plaintiffs' request for fees and costs associated with their first motion to hold Haddix in contempt (Doc. 299) and, as of June 30, 2021, Plaintiffs' request for fees and costs associated with their efforts to obtain compliance with the Decree and the Second Order of Civil Contempt (Doc. 309), Plaintiffs are now asking for far more than they are legally entitled to recover.

"A consent decree is a judicial act, and possesses the same force and character as a judgment rendered following a contested trial." *Siebring v. Hansen*, 346 F.2d 474, 477 (8th Cir.

1965) (citing *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932)). In interpreting consent decrees, this Court must "look to rules of contract interpretation." *United States v. Knote*, 29 F.3d 1297, 1299 (8th Cir. 1994) (citing *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 238 (1975); *United States v. City of Ft. Smith,* 760 F.2d 231, 233-34 (8th Cir. 1985)). That said, "noncompliance with a consent decree is enforceable by citation for contempt of court." *Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990, 993 (8th Cir. 2003) (quoting *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 518 (1986)). And "an award of *reasonable* attorney's fees and expenses incurred … in seeking to enforce the decree is a form of compensatory relief that is well within a district court's remedial discretion in civil contempt proceedings." *Jake's, Ltd., Inc. v. City of Coates*, 356 F.3d 896, 900 (8th Cir. 2004) (citing *United States v. Rue,* 819 F.2d 1488, 1495 (8th Cir. 1987) (emphasis added).

Where, as here, a court holds an individual in civil contempt, "it seeks only to 'coerc[e] the defendant to do' what a court had previously ordered him to do." *Turner v. Rogers*, 564 U.S. 431, 441–42 (2011) (quoting *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 442 (1911)). "And once a civil contemnor complies with the underlying order, he is purged of the contempt and is free." *Id.* at 442 (citing *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 633 (1988) (he "carr[ies] the keys of [his] prison in [his] own pockets") (internal quotation marks omitted)).

As a starting point, this Court looks "to rules of contract interpretation" when evaluating the Decree. *See Knote*, 29 F.3d at 1299 (citing *ITT Continental Baking Co.,* 420 U.S. at 238). In the Decree, the parties expressly contracted that, in the event Haddix breached her obligations set out therein, Plaintiffs' remedy was that the chimpanzees would be "transferred to the Sanctuary[.]" (*See* Doc 274 at ¶ 2.9). And here, this remedy was ordered by this Court and exercised by Plaintiffs as of June 6, 2022. (*See* Doc. 379 at ¶ 6). Therefore, as of June 6, 2022, Haddix was purged of

5

civil contempt pursuant to this Court's Orders as she no longer possessed any chimpanzees. (*See* Docs. 299; 307; 309; 372). Stated simply, now that Haddix does not have possession of any of the 7 chimpanzees, she is definitionally no longer in breach of the Decree or any of this Court's Orders.

Accordingly, as of June 6, 2022, Haddix's contractual obligations under the Decree were fully satisfied and, further, she had complied with this Court's underlying Orders—as such, she "is purged of the contempt and is free." *Turner*, 564 U.S. at 442.

Nonetheless, much of the fees and expenses Plaintiffs seek were incurred after June 6, 2022. Under both rules of contractual interpretation and the law governing civil contempt, Haddix should not be ordered to pay any fees or expenses incurred by Plaintiffs after this date, because Plaintiffs had obtained full compliance from Haddix under the terms of the Decree and the Court's orders. Review of the exhibits submitted in support of Plaintiffs' supplemental motion reveals that these post-June 6, 2022 fees and expenses total $37,953.84. (*See* Doc. 379-2; 379-3; 379-4).

Significantly, the largest category of these claimed expenses—$30,415.92—incurred by Plaintiffs after Haddix became compliant with both the Decree and the Orders of this Court consists of expenses purportedly related to transporting Tonka to the Save the Chimps facility. (*See* Doc. 379-4 at 2). Specifically, these expenses include: (1) "Cost of veterinary technician to accompany Mo. veterinarian conducting Tonka assessment pro bono"; (2) "Cost of PETA-purchased rescue supplies (snacks, drinks, supplies for Tonka and transport team per Save the Chimps request)"; (3) "Save the Chimps travel costs incurred for Tonka assessment and transport"; (4) "Save the Chimps equipment and supply costs for assessment, transport, and to care for Tonka for four months"; and (5) "Save the Chimps staff costs for assessment, transfer, and to care for Tonka for four months." (*See id.*). This Court should not order Haddix to cover these expenses for several reasons.

First, these costs were purportedly incurred after June 6, 2022 and are thus not something that Haddix should be required to pay pursuant to the law regarding civil contempt and the Decree regardless of what transpired. Second, the Decree expressly states that, upon Haddix's default, Tonka would be transferred to the Center for Great Apes, a facility which would not charge Plaintiffs for Tonka's care. As such, to the extent PETA transferred Tonka to a different facility, doing so is inconsistent with the Decree. And finally, the Decree indicates that once a chimpanzee is removed from Haddix's possession, all responsibilities shift to Plaintiffs. (*See* Doc. 274 at ¶ 1.9 ("After the [] Chimpanzees have been removed from the Festus facility, PETA or its designee shall be solely responsible for the transportation, custody, maintenance, and care, including but not limited to veterinary care."); *see also* Doc. 274 at ¶ 2.9 (noting that in the event Haddix breached the Decree, any remaining chimpanzee "shall be transferred to the Sanctuary, in accordance with the same terms set forth with respect to the Four Chimpanzees in paragraphs 1.1 through 1.10 above")). Because consent decrees are interpreted as contracts, Plaintiff should not be permitted to rewrite the Decree's terms after the fact in an attempt to recoup more than they are entitled to under the agreement.

Furthermore, fees and expenses must be "reasonable" to be compensable pursuant to orders of civil contempt. *See Jake's, Ltd., Inc.*, 356 F.3d at 900. As such, Haddix respectfully requests that this Court closely analyze the pre-June 6, 2022 time spent by Plaintiffs' counsel and determine whether all of the expenses incurred are, in fact, reasonable.

One particularly significant category of expense incurred by Plaintiffs during this time period is not reasonable: the retention of expert witnesses purportedly to disprove assertions regarding Tonka's cremation. (*See* Doc. 366 at 9). Specifically, Plaintiffs claim they received an email from an individual, Jerry Aswegan, stating that "he burned Tonka's remains on a burn pile

7

on his land in a fire that 'stayed at 165 to 170 for three hours and burner for four needless to say it did the job." (*See* Doc. 337 at ¶ 6). Without needing to consult with any expert witness, Plaintiffs immediately noted that "these representations are facially insufficient to cremate a body" (*Id.* at ¶ 6) and that "peer reviewed studies reflect that 400°C, significantly higher than Aswegan reported, is the normal temperature for even a simple campfire." (*Id.* at ¶ 7). Indeed, Plaintiffs even noted that a 16-pound turkey would need to be cooked for 3 hours at 325°F. (*Id.* at ¶ 10).

Nonetheless, Plaintiffs apparently retained expert witnesses to examine Aswegan's claim, agreed to pay them for their time, and spent significant time working with them and preparing their testimony which was never elicited. (*See, e.g.,* Doc. 366-2). Against this backdrop, these expenses are anything but "reasonable." As such, Plaintiffs should, at a minimum, be required to itemize and isolate the specific costs related to these entirely unnecessary expert witnesses (including both expenses and attorneys' fees associated with these witnesses) so that this Court can determine whether, in fact, these costs are reasonable.

Additionally, review of Plaintiffs' counsels' billing records reveals not insignificant time spent in connection with Eighth Circuit and United States Supreme Court matters related to the matter before this Court. However, fees and expenses associated with these separate matters should not be awarded. *See, e.g., BMO Harris Bank N.A. v. Alton Bean Trucking, Inc.*, No. 6:16-CV-6118, 2019 WL 1997477, at *2 (W.D. Ark. May 6, 2019) ("Plaintiff has cited no authority, and the Court is unaware of any, allowing a court to award a civil contempt compensatory sanction in the form of attorneys' fees and costs incurred outside of bringing a motion for civil contempt or in litigating a separate, but related, proceeding before another court. In the absence of authority authorizing a compensatory sanction of attorneys' fees and costs for litigation other than bringing a contempt motion, the Court declines to award Plaintiff attorneys' fees and costs outside of those associated

with Plaintiff reopening this case to file the March 5, 2019 contempt motion"). It is difficult to discern, with specificity, which fees and expenses relate to these separate proceedings but Plaintiffs should be required to remove any such requests from their demand for fees and costs in this case.

Finally, review of Plaintiffs' counsel's billing records reveals significant time and expenses associated with traveling to Haddix's facility that housed the chimpanzees and to the facilities that received the chimpanzees. (*See, e.g.*, Doc. 379-4). Even if certain, reasonable time spent travelling and related expenses for purposes of litigation may be compensable, Haddix is unaware of any legal authority—and Plaintiff's cite none—which would support the notion that attorneys, billing at hundreds of dollars per hour, can recoup time and travel expenses connected to personally traveling to see chimpanzees and to accompany them to a sanctuary in a different state. Because such time and expenses have nothing to do with the practice of law, this Court should decline Plaintiff's request in this capacity.

### III.  Conclusion

Based on the foregoing, Haddix respectfully requests that this Court deny, at least in part, Plaintiffs' Motion and Supplemental Motion for Attorneys' Fees and Costs Incurred to Obtain Compliance with Consent Decree as certain fees and expenses sought by Plaintiffs are not supported by the law or the facts in this case, and for such other and further relief as this Court deems just and proper under the circumstances.

/

/

/

/

/

       Respectfully submitted,

       **Margulis Gelfand, LLC**

       <u>/s/ Ian T. Murphy</u>
       JUSTIN K. GELFAND, #62265
       IAN T. MURPHY, #68289
       7700 Bonhomme Ave., Ste. 750
       St. Louis, MO 63105
       Telephone: 314.390.0234
       Facsimile: 314.485.2264
       justin@margulisgelfand.com
       ian@margulisgelfand.com
       *Counsel for Haddix*

## **Certificate of Service**

  I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all parties of record.

              */s/ Ian T. Murphy*
              JUSTIN K. GELFAND, #62265
              IAN T. MURPHY, #68289
              7700 Bonhomme Ave., Ste. 750
              St. Louis, MO 63105
              Telephone: 314.390.0234
              Facsimile: 314.485.2264
              justin@margulisgelfand.com
              ian@margulisgelfand.com
              *Counsel for Haddix*