## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **MISSOURI PRIMATE FOUNDATION,** et al., | ) ) ) | |
| **Plaintiffs and Counterclaim Defendants,** | ) ) ) ) | |
| **v.** | ) ) | **Case No. 4:16-cv-02163** |
| **PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al.,** | ) ) ) ) | |
| **Defendants and Counterclaim Plaintiffs.** | ) ) ) | |

**COUNTERCLAIM PLAINTIFFS' SIXTH MOTION FOR AN ORDER TO SHOW CAUSE WHY COUNTERCLAIM DEFENDANT TONIA HADDIX AND HER ACCOMPLICES SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATING THE CONSENT DECREE (ECF NO. 274), TRANSFER ORDER (ECF NO. 322), HEARING ORDER (ECF NO. 360), AND RESTRAINING ORDER (ECF NO. 371)**

**AND**

**COUNTERCLAIM PLAINTIFFS' MOTION FOR LEAVE TO SERVE DISCOVERY IN AID OF COUNTERCLAIM PLAINTIFFS' SIXTH MOTION FOR AN ORDER TO SHOW CAUSE WHY COUNTERCLAIM DEFENDANT TONIA HADDIX AND HER ACCOMPLICES SHOULD NOT BE HELD IN CIVIL CONTEMPT**

POLSINELLI PC
JAMES P. MARTIN (#50170)
7676 Forsyth Blvd., Suite 800
St. Louis, MO 63105
314.889.8000
Fax No: 314.231.1776
jmartin@polsinelli.com

ATTORNEYS FOR DEFENDANTS/
COUNTERCLAIM PLAINTIFFS

Date: October 30, 2024

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

I.      FACTUAL AND PROCEDURAL BACKGROUND ............................................ 2

        A.      The Consent Decree, Prior Contempt Motions, and Related Court Orders ............ 2

II.     LEGAL STANDARDS ........................................................................................ 11

III.    ARGUMENT ....................................................................................................... 12

        A.      Haddix Violated Numerous Court Orders. ........................................................ 12

        B.      Aswegan, Casey, and Viestra Violated the Transfer Order. ................................ 15

        C.      Plaintiffs Should Be Granted Leave to Serve Discovery to Gather Additional
                Evidence of the Conspiracy at Hand. ................................................................ 16

IV.     CONCLUSION .................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
No. 3:02-CV-0134, 2016 WL 7117933 (M.D. Pa. Dec. 7, 2016), modified on
reconsideration ....................................................................................................................16

*Cardionet, LLC v. Mednet Healthcare Techs., Inc.*,
146 F. Supp. 3d 671 (E.D. Pa. 2015) ("On August 19, 2015, the Court issued
an order to show cause granting CardioNet's request for discovery on the issue
of contempt and scheduling a contempt hearing for September 21 and 22,
2015") ...................................................................................................................................16

*Chicago Truck Drivers v. Brotherhood Labor Leasing*,
207 F.3d 500 (8th Cir. 2000) ...............................................................................................11

*Frew ex rel. Frew v. Hawkins*,
540 U.S. 431 (2004) ..............................................................................................................11

*FTC v. Neiswonger*,
494 F. Supp. 2d 1067 (E.D. Mo. 2007) ...............................................................................11

*Independent Fed'n of Flight Attendants v. Cooper*,
134 F.3d 917 (8th Cir. 1998) ...............................................................................................11

*Innovation Ventures, LLC v. Distrib., Inc.*,
No. SACV1200717ABEX, 2015 WL 5319815 (C.D. Cal. Apr. 29, 2015) ...........................16

*Interdynamics, Inc. v. Wolf*,
653 F.2d 93 (3d Cir. 1981) ...................................................................................................11

*Christina A. ex rel. Jennifer A. v. Bloomberg*,
315 F.3d 990 (8th Cir. 2003) ...............................................................................................11

*Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*,
478 U.S. 501 (1986) ..............................................................................................................11

*Mahers v. Hedgepeth*,
32 F.3d 1273 (8th Cir. 1994) ...............................................................................................11

*Siebring v. Hansen*,
346 F.2d 474 (8th Cir. 1965) ...............................................................................................11

*United States v. Armour & Co.*,
402 U.S. 673 (1971) ..............................................................................................................11

ii

*United States v. Swift & Co.*,
    286 U.S. 106 (1932)...........................................................................................11

**Statutes**

18 U.S.C..............................................................................................................11

**Other Authorities**

Fed. R. Civ. P.65(d) ....................................................................................11, 12

Fed. R. Civ. P. 65(d)(2)(C) ...............................................................................11

Counterclaim Plaintiffs People for the Ethical Treatment of Animals, Inc. ("PETA") and Angela Scott (together, "Plaintiffs"), by and through undersigned counsel, submits this memorandum in support of Plaintiffs' sixth motion for an order to show cause why Counterclaim Defendant Tonia Haddix and her accomplices should not be held in civil contempt (related request for leave to serve discovery).  In support thereof, Plaintiffs state and aver, as follows:

## PRELIMINARY STATEMENT

PETA is back at this Court, filing a sixth motion for an order to show cause, because of exceptional circumstances. Namely, the airing of a massively popular docuseries on HBO containing evidence establishing a *prima facie* case that Defendant Tonia Haddix, as well as other accomplices, engaged in a knowing conspiracy to suborn and commit perjury, and to violate several of this Court's orders. Haddix and her accomplices did so on full display to documentary filmmakers in an apparent effort to monetize their misconduct.

These efforts included, most notably, Haddix's thoroughly documented conspiracy to sedate and remove the chimpanzee Tonka before a court-ordered July 2021 transfer date. Despite this Court's written and oral directives to Haddix to maintain the confidentiality of the animal transfer dates and process, Haddix's disobedience resulted in this information being aired to a nationwide audience of millions. Haddix admits on camera that she and her husband sedated Tonka then took him to a hotel the night before the ordered transfer date. In Haddix's words, proudly disseminated to HBO's viewers, "I opted to go against the Court Order" and so "just took advantage . . . de[v]is[ing] a plan to say [Tonka] died."

The documentary also reveals extensive perjury. Among many examples, this includes Haddix and her husband Jerry Aswegan submitting knowingly false testimony to this Court that Tonka died and was cremated in May 2021.

1

As much as Plaintiffs and, presumably, this Court wish this matter to be fully resolved, it is not. The Endangered Species Act—both its substantive protections and its citizen suit provisions—cannot function as Congress intended, and in the manner this Court vindicated, under the shadow of such contempt going inadequately addressed. Haddix so publicly disobeying this Court and then profiting from her disobedience by sharing it with a national audience will only incentivize future defendants to engage in similar misconduct unless this Court decisively intervenes. Given these exceptional circumstances, this Court should set in motion a formal process by which those involved in effecting the contempt and perjury at issue can be held properly accountable.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Consent Decree, Prior Contempt Motions, and Related Court Orders

On September 16, 2020, after extensive negotiations, Plaintiffs, Counterclaim Defendant Tonia Haddix ("Defendant" or "Haddix"), and Counterclaim Defendants Casey and Missouri Primate Foundation agreed to a Consent Decree. On October 2, 2020, the Consent Decree was entered by the Court, which also retained jurisdiction over its enforcement. *See* ECF No. 274, ¶ 8.1. As relevant here, the Consent Decree states:

- "Contact Between Humans and Chimpanzees. Defendants are hereby enjoined from entering any enclosure with any chimpanzee, and from inserting any body part into an enclosure in which any chimpanzee is held, with the exception of circumstances during which a qualified veterinarian has chemically immobilized a chimpanzee." *Id*., ¶ 6.

Haddix quickly breached her obligations under the Consent Decree, resulting in Plaintiffs filing a Motion for an Order to Show Cause Why Counterclaim Defendant Tonia Haddix Should Not Be Held in Civil Contempt ("Contempt Motion") on January 29, 2021 (ECF No. 287). The Court ultimately found Haddix in contempt on April 8, 2021 (ECF No. 299), and ordered Haddix to, *inter alia*, specifically perform her obligations under the Consent Decree, submit a progress

report to the Court by April 26, 2021, reimburse PETA its motion fees and costs, and be fined $50 per day for each day following April 26, 2021, that she remained in contempt.

Haddix failed to comply, prompting PETA to then file a second Contempt Motion on March 19, 2021 (ECF No. 289). On June 1, 2021 (ECF No. 307), the Court again found Haddix in contempt, and ordered Haddix to, *inter alia*, forfeit the three chimpanzees the Consent Decree had initially allowed her to keep, file a declaration acknowledging her responsibilities under the Consent Decree and the Court's contempt orders, and be fined $50 per day for each day following June 2, 2021, that she remained in contempt.

Yet again, Haddix did not comply. Plaintiffs then filed a third Contempt Motion on June 10, 2021 (ECF No. 308). On June 30, 2021 (ECF No. 309), the Court again granted Plaintiffs' motion, ordering Haddix to, *inter alia*, comply with the Consent Decree and previous two contempt orders, as well as reimburse PETA its expenses related to the second Contempt Motion. Additionally, on July 14, 2021 (ECF No. 322), the Court issued a Transfer Order governing logistics, security, and other details for the transfer of the seven chimpanzees then in Haddix's custody to designated animal sanctuaries. As relevant here, the Transfer Order states:

- "Defendants, and any agents or other persons or entities under their direct or indirect control, are prohibited from moving, transferring, or relocating any chimpanzee other than as provided by the Court's Orders." *Id*., ¶ 1.

- "Defendants are prohibited from administering any sedation drug to any chimpanzee until the Transfer date except when required in the event of a medical or public safety emergency. In the event Defendants administer or cause a third-party to administer any drug to any of the chimpanzees between now and the day of the Transfer, Defendants shall notify Plaintiffs' counsel within twenty-four hours of such administration." *Id*., ¶ 6.

- "The recording of video (including via any surveillance cameras at the Festus property), taking of photographs, or monitoring by unmanned aerial vehicle (i.e., drone) of the Transfer is prohibited." *Id*., ¶ 7.

- "The time and date of the Transfer shall remain confidential, except as is necessary for Plaintiffs to effectuate the transfer of the chimpanzees; Defendants are prohibited from sharing the date and/or time of the transfer with any non-party." *Id*., ¶ 9.

Only six chimpanzees were transferred on the designated transfer day (July 28, 2021) because Haddix claimed the seventh chimpanzee, named "Tonka," had died weeks prior to the transfer date. After discovering evidence suggesting that Tonka was in fact still alive, Plaintiffs filed a fourth Contempt Motion on August 2, 2021 (ECF No. 333). The Court issued a Hearing Order on January 4, 2022 (ECF No. 360) that, *inter alia*, expressly prohibited recording of the contempt hearing to occur the following day. As relevant here, the Hearing Order stated:

- "Pursuant to Local Rule 13.02, all means of photographing, recording, broadcasting, and televising are prohibited in any courtroom, and in areas adjacent to any courtroom, except when authorized by the presiding judge. This includes proceedings ordered by the Court to be conducted by telephone or video." *Id.*

At the end of the contempt hearing on January 5, 2022 (ECF No. 362), the Court denied without prejudice Plaintiffs' motion after finding insufficient evidence that Tonka was still alive to warrant contempt sanctions against Haddix.

For much of Haddix's involvement in this case filmmakers had been capturing footage of Haddix for later incorporation into a documentary series that debuted on August 18, 2024, under the title *Chimp Crazy*, on HBO and the *MAX* streaming service. The *Chimp Crazy* filmmakers contacted PETA in May 2022 to provide PETA additional evidence that Haddix had indeed conspired to fake Tonka's death, which prompted PETA to file a fifth Contempt Motion on June 1, 2022 (ECF No. 367) concerning Haddix's and her husband Jerry Aswegan's ("Aswegan") perjury before this Court relating to their scheme to fake Tonka's death. The Court issued a temporary restraining order on June 2, 2022 (ECF No. 371) to allow PETA to arrange for Tonka to immediately be examined by a veterinarian and removed from Haddix's custody. As relevant here, that order stated:

- "Recording of video (including any surveillance cameras at the Property), taking of photographs, or monitoring by unmanned aerial vehicles (i.e., drone) of the examination and transfer is prohibited." *Id.*, ¶ 8.

Tonka was transferred from Haddix to a sanctuary on June 5, 2022. In an order dated June 10, 2022 (ECF No. 378), this Court granted PETA's request that the Court refer Haddix and Aswegan to the U.S. Attorney to be prosecuted for perjury, and held PETA's fifth Contempt Motion in abeyance until the U.S. Attorney makes a decision on the perjury referrals. The U.S. Attorney's Office has not yet announced any decision on whether it will prosecute Haddix and Aswegan, despite PETA having sent that Office a detailed letter dated July 26, 2024, explaining Haddix's misconduct as revealed in *Chimp Crazy*. *See* paragraph 5 of the Declaration of Brittany Peet, Esq., dated October 30, 2024 ("Peet Decl.).

Haddix's *Chimp Crazy* Appearances Evidence Additional Contumacious Conduct.

The *Chimp Crazy* documentary provides new evidence, including confessions from Haddix, of additional contumacious conduct by Haddix that has not been previously litigated:

- At approximately 46 minutes and 24 seconds into the first episode of *Chimp Crazy*, Haddix discloses the date and time of the chimpanzee transfer to the filmmakers, stating "We are just prepping the chimps for PETA to come on property to take possession of the chimps starting 8am tomorrow." Peet Decl., ¶ 8.

- At approximately 49 minutes and 46 seconds into the first episode of *Chimp Crazy*, members of the film crew can be seen installing cameras around the Missouri Primate Foundation property the day before the transfer date. *Id*., ¶ 9.

- At approximately 50 minutes and 16 seconds into the first episode of *Chimp Crazy*, Haddix can be seen showing a member of the film crew where each chimpanzee will be held on the morning of the transfer so the camera operators will know where to position each camera. *Id*., ¶ 10. Much of the remainder of the episode then shows footage captured on the transfer date. *Id*.

- At approximately 43 minutes and 32 seconds into the second episode of *Chimp Crazy*, Haddix, who participated in the contempt hearing of January 5, 2022, from her home via video conference, allows the film crew to record the contempt hearing. *Id*., ¶ 11.

- At approximately 3 minutes and 35 seconds into the third episode of *Chimp Crazy*, Haddix confesses "I opted to go against the Court Order." *Id*., ¶ 12.

- At approximately 6 minutes and 58 seconds into the third episode of *Chimp Crazy*, Haddix responds to the interviewer's question about where Tonka was when the other six chimpanzees were being transferred as follows: "Tonka was actually on the run with me.

[laughs] I mean literally on the run with me. Before PETA came and took the kids, Tonka had a massive stroke. I feel like God gave me that opportunity and I just took advantage. Basically we just demised [sic] a plan to say he died." *Id.*, ¶ 13.

- At approximately 8 minutes and 2 seconds into the third episode of *Chimp Crazy*, Haddix confesses "The night before PETA came and took the chimps after the film crew left. Jerry and I started preparations to get Tonka sedated. It took us til 3am. We went ahead and just went to a Holiday Inn 2.4 miles from the facility but we couldn't leave him in the trailer. We put him in the bathroom in case he peed. We're not gonna trash a hotel. I waited until I heard that PETA hit the facility. And then we just drove straight to Cy's." *Id.*, ¶ 14.

- At approximately 30 minutes and 59 seconds into the third episode of *Chimp Crazy*, Haddix proclaims "They can throw me in jail for a year. I don't care. I'm not obligated to anybody except this kid right here." *Id.*, ¶ 15.

- At approximately 8 minutes and 15 seconds into the fourth episode of *Chimp Crazy*, footage of the removal of Tonka from Haddix's home can be seen, including footage of PETA's counsels and law enforcement, audio of Tonka vocalizing as the rescue team worked to remove him from Haddix's basement, equipment set-up on the patio off Haddix's basement, veterinarians performing the exam, and PETA's counsels in Haddix's yard. *Id.*, ¶ 16.

- At approximately 53 minutes and 2 seconds into the fourth episode of *Chimp Crazy*, Haddix admits she was attacked[1] by a chimpanzee belonging to one of her friends after she went inside the chimpanzee's enclosure. *Id.*, ¶ 17.

*Chimp Crazy* Implicates Jerry Aswegan, Connie Casey, and Cy Viestra ("Cy" or "Viestra") as Accomplices.

On August 16, 2021, in opposition to Plaintiffs' fourth Contempt Motion for her failure to transfer Tonka with the six other remaining chimpanzees, Haddix filed a sworn declaration with the Court in which she states, "On May 30, 2021, Tonka died. On that same date, Jerry Aswegan cremated Tonka's body. After the cremation, he gave me Tonka's cremated remains." *See* ECF No. 338-2. That same day, Haddix's husband, Jerry Aswegan, submitted a sworn declaration describing how he "handle[d] the disposal of Tonka's body." *See* ECF No. 338-3. At paragraph 4

---

[1] Note however that despite her unequivocal admission in *Chimp Crazy*, Haddix denied she was ever attacked by a chimpanzee while being interviewed on the August 29, 2024, airing of the *Carrie & Tommy Podcast*. Peet Decl., ¶ 18.

of Aswegan's declaration, Aswegan testified "I am married to Ms. Haddix. Therefore, I regularly interact with her." *Id*. As previously mentioned, at approximately 8 minutes and 2 seconds into the third episode of *Chimp Crazy*, Haddix confessed that [Jerry] Aswegan helped her sedate and remove Tonka from the Missouri Primate Foundation. Peet Decl., ¶ 14.

At approximately 10 minutes and 13 seconds into the third episode of *Chimp Crazy*, the docuseries proxy director states that "[w]hen [Haddix] was trying to figure out where to take Tonka to, Connie Casey suggested Cy." *Id*., ¶ 19. Connie Casey is a defendant in this action.

At approximately 9 minutes and 20 seconds into the third episode of *Chimp Crazy*, Haddix states "Cy is a chimp guy, but I had never met him. I met him the day I dropped Tonka off. My best place was to pick somebody that had chimpanzees that I could blend Tonka in. And Cy was the perfect person because Cy had a male chimpanzee, Ricky. Ricky happened to die of liver failure so nobody would have known that was Tonka." *Id*., ¶ 20. At approximately 12 minutes and 8 seconds into the third episode of *Chimp Crazy*, Haddix explains "PETA didn't know the connection between Cy and I, so it was perfect. When we came to Cy's we were very careful. We would always be doing a transport someplace else. So they would've had to have followed us for many thousands of miles." *Id*., ¶ 21.

At approximately 11 minutes and 29 seconds into the third episode of *Chimp Crazy*, Cy admits "This was an opportunity for me to do something for someone that I would want done for me if I was in the same situation. I didn't know Tonia but I'd seen some of my own friends in Ohio lose their animals because they weren't willing to adjust to the new rules and regulations. Tonka was here for at least six months. Tonia drove here regularly, even if just for an evening." *Id.*, ¶ 22.

At approximately 14 minutes and 44 seconds into the third episode of *Chimp Crazy*, Cy responds "No" when asked by the proxy director "You were already in trouble with the law. Then

you helped Tonia defy a court order? Doesn't that worry you?" *Id.*, ¶ 23. Cy then goes on to say "I wasn't scared at all. I was prepared to be confronted by anybody." *Id.*

At approximately 15 minutes and 45 seconds into the third episode of *Chimp Crazy*, Cy and Haddix discuss, and even joke about, their grotesque scheme to exhume the severely decomposed corpse of another chimpanzee and pass that corpse off as Tonka's remains:

**Cy**:     "It was so important to me to help Tonia protect her relationship with Tonka so I said I've got Ricky out [laughing] there. What a better purpose for him to be part of this greater scheme of things. So, we dug him up [Haddix laughing in the background] but he was very much uhhh 80% decomposed. Now mind you, I had already removed his head. I did want to preserve his skull."

**Haddix**:     "When our house by the lake was ready, we went to go pick up Tonka. And Ricky. So here we had this chimp body in the back our truck with the fugitive [Tonka] going all the way from Ohio to Missouri and if we would've been stopped for any reason they would've thought they were human remains because they're so closely related with no head [laughing]."

**Cy**:     "Like a Jeffrey Dahmer thing." *Id.*, ¶ 24.

Cy, the then-operator of Union Ridge Wildlife Center in Ohio, has since been sentenced to nearly five years in prison after pleading guilty to felony counts of engaging in a pattern of corrupt activity, theft in office, and tampering with records, plus a misdemeanor count of dereliction of duty after he was caught stealing $287,500 of public funds when he served as his township's fiscal officer.

**Haddix's Attempts to Monetize Her *Chimp Crazy* Notoriety**

8

The speed and effectiveness with which Haddix has monetized her *Chimp Crazy* notoriety suggests that Haddix's intentionally making a spectacle of her disobedience of this Court was at least partly motivated by desires of fame and fortune, even if at the time Haddix did not fully appreciate[2] just how successful *Chimp Crazy* was likely to become. According to industry publications, *Chimp Crazy* is on pace to be the biggest docuseries at HBO in many years, surpassing 2.3 million viewers for its premiere episode in August of this year. Peet Decl., ¶ 4.

Even before *Chimp Crazy* aired, HBO and other media outlets promoted the debut of the docuseries by repeating Haddix's claim she is "the Dolly Parton of chimps." *Id.*, ¶ 3. Indeed, HBO specifically mentioned Haddix's self-proclaimed title in its July 16, 2024, press release announcing the debut of *Chimp Crazy*. *Id.*

Since the August 18, 2024, premiere of the docuseries, Haddix has apparently launched numerous ventures and made numerous media appearances seeking to capitalize on her fame. These include:

- An Etsy store selling merchandise and apparel (*see* https://www.etsy.com/shop/CocoDeCoeur last visited October 30, 2024);

- A personal website selling merchandise and apparel (*see* https://www.chimpcrazylady.com/ last visited October 30, 2024);

- A cameo profile selling personalized videos (*see* https://www.cameo.com/chimpcrazylady?srsltid=AfmBOor1MVahDxIfn2h_Uw2vu-2SU5lDajGTfIZtAT7If4GgjIohqY0T last visited October 30, 2024);

- Online fundraising via Patreon (*see* https://www.patreon.com/chimpcrazy/about? last visited October 30, 2024);

- Online fundraising via GiveSendGo (*see* https://www.givesendgo.com/chimpcrazy last visited October 30, 2024);

---

[2] *Chimp Crazy* suggests that because of the use of a proxy director, Haddix was unaware at the time of the contumacious conduct complained of herein that the filmmakers of the hit Netflix series *Tiger King* were in fact the same filmmakers documenting her.

- *Chimp Crazy* specific social media profiles (*see, e.g.*, https://www.instagram.com/chimpcrazylady/ and https://www.facebook.com/chimpcrazy?_rdr last visited October 30, 2024);

- Haddix's participation in a local news profile (*see* https://krcgtv.com/news/local/sunrise-beach-safari-owner-faces-legal-heat-following-hbos-chimpanzee-docuseries last visited October 30, 2024); and

- Haddix's participation in numerous podcasts. S*ee, e.g.*:

  - https://podcasts.apple.com/us/podcast/chimp-crazy-star-tonia-haddix/id1690183214?i=1000670630012 last visited October 30, 2024;

  - https://www.youtube.com/watch?v=OFdI92pjWgA last visited October 30, 2024;

  - https://play.listnr.com/podcast/carrie-and-tommy last visited October 30, 2024;

  - https://www.stlpr.org/show/st-louis-on-the-air/2024-09-04/peta-seeks-to-shut-down-chimp-crazy-stars-missouri-exotic-zoo last visited October 30, 2024;

  - https://www.youtube.com/watch?v=AaStk7frtbM last visited October 30, 2024;

  - https://www.youtube.com/watch?v=HlYP9s8_PJQ last visited October 30, 2024;

  - https://www.youtube.com/watch?v=F6QSfzVZQ1s last visited October 30, 2024; and

  - https://www.youtube.com/watch?v=cDmbHsss3pI&list=PLDScbAzC1YHCw9c2ve9ncy6v1TqWHRpS7&index=2 last visited October 30, 2024.

As but one example of just how much of a national celebrity Haddix has become as a result of her decision to allow a film crew to document her flagrant disobedience of this Court's orders, actress Jean Smart, who holds several awards including multiple Primetime Emmies and a Golden Globe, portrayed Haddix in a sketch parodying the "$100,000 Pyramid" game show during the season 50 premiere of *Saturday Night Live!* which aired on September 28, 2024 (*see* https://www.nbc.com/nbc-insider/watch-jean-smart-snl-monologue-sketches-september-28-premiere last visited October 30, 2024).

10

## II.    LEGAL STANDARDS

"Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms." *Mahers v. Hedgepeth*, 32 F.3d 1273, 1275 (8th Cir. 1994) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971)). "Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004). It is well-established that "[a] consent decree is a judicial act, and possesses the same force and character as a judgment rendered following a contested trial." *Siebring v. Hansen*, 346 F.2d 474, 477 (8th Cir. 1965) (citing *United States v. Swift & Co.*, 286 U.S. 106, 114, 115 (1932)).

"While a judge has the authority to enforce the terms of a consent decree, 'noncompliance with a consent decree is enforceable by citation for contempt of court.'" *Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990, 993 (8th Cir. 2003) (quoting *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 518 (1986)); *see also Interdynamics, Inc. v. Wolf*, 653 F.2d 93, 96-97 (3d Cir. 1981) ("A party violating a consent decree is therefore subject to the powers by which a court protects its judgments, including, most notably, the power of contempt under 18 U.S.C. [§] 401.").

A party seeking contempt must show by clear and convincing evidence that the alleged actors violated a decree or order of the Court. S*ee generally Chicago Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000) (citing *Independent Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917, 920 (8th Cir. 1998)).

A movant seeking contempt against a nonparty pursuant to Fed. R. Civ. P. 65(d)(2)(C) must show by clear and convincing evidence that the nonparty had actual notice of the court order and was in active concert or participation with the contumacious party. *FTC v. Neiswonger*, 494 F. Supp. 2d 1067, 1079 (E.D. Mo. 2007). "Personal service is not required under Rule 65(d). All

11

that is required in a contempt action is knowledge of the mere existence of the injunction; not its precise terms." *Id*. "Furthermore, direct evidence is not required to sustain the [movant's] burden of showing actual notice. Circumstantial evidence establishing "actual knowledge" may be derived from the parties' relationship . . ." *Id*. (internal citation and quotation omitted).

## III.    ARGUMENT

### A.    Haddix Violated Numerous Court Orders.

*Chimp Crazy* is filled with evidence sufficient to establish a *prima facie* case that Haddix violated numerous of this Court's orders, namely, the Consent Decree (ECF No. 274), Transfer Order (ECF No. 322), Hearing Order (ECF No. 360), and Restraining Order (ECF No. 371).

Haddix violated paragraphs 1, 6, 7, and 9 of the Transfer Order (ECF No. 322) by sedating and removing Tonka in advance of the transfer date, enabling recording of the transfer, and leaking the transfer date to the documentary filmmakers and potentially others. As relevant here, the Transfer Order states:

- "Defendants, and any agents or other persons or entities under their direct or indirect control, are prohibited from moving, transferring, or relocating any chimpanzee other than as provided by the Court's Orders." *Id*., ¶ 1.

- "Defendants are prohibited from administering any sedation drug to any chimpanzee until the Transfer date except when required in the event of a medical or public safety emergency. In the event Defendants administer or cause a third-party to administer any drug to any of the chimpanzees between now and the day of the Transfer, Defendants shall notify Plaintiffs' counsel within twenty-four hours of such administration." *Id*., ¶ 6.

- "The recording of video (including via any surveillance cameras at the Festus property), taking of photographs, or monitoring by unmanned aerial vehicle (i.e., drone) of the Transfer is prohibited." *Id*., ¶ 7.

- "The time and date of the Transfer shall remain confidential, except as is necessary for Plaintiffs to effectuate the transfer of the chimpanzees; Defendants are prohibited from sharing the date and/or time of the transfer with any non-party." *Id*., ¶ 9.

As indicated above, at approximately 8 minutes and 2 seconds into the third episode of *Chimp Crazy*, Haddix confesses that she and Aswegan sedated Tonka and then took him to a hotel the

night before the transfer date, in clear violation of paragraphs 1 and 6 of the Transfer Order. Additionally, at approximately 46 minutes and 24 seconds into the first episode of *Chimp Crazy*, Haddix discloses the date and time of the chimpanzee transfer to the filmmakers. Furthermore, at approximately 49 minutes and 46 seconds into the first episode of *Chimp Crazy*, members of the film crew can be seen installing cameras around the Missouri Primate Foundation property the day before the transfer date. And at approximately 50 minutes and 16 seconds into the first episode of *Chimp Crazy*, Haddix can be seen showing a member of the film crew where each chimpanzee will be held on the morning of the transfer so the camera operators will know where to position each camera. Again, much of the remainder of the episode then shows footage captured on the transfer date that would not have been captured but for Haddix's authorization of the filming.

Haddix also violated the Hearing Order (ECF No. 360), which states

- "Pursuant to Local Rule 13.02, all means of photographing, recording, broadcasting, and televising are prohibited in any courtroom, and in areas adjacent to any courtroom, except when authorized by the presiding judge. This includes proceedings ordered by the Court to be conducted by telephone or video." *Id*.

At approximately 43 minutes and 32 seconds into the second episode of *Chimp Crazy*, Haddix, who participated in the contempt hearing of January 5, 2022, from her home via video conference, allows the film crew to record the contempt hearing; in fact, most of the finale of the second episode of Chimp Crazy is footage of the contempt hearing of January 5, 2022, captured from Haddix's home while she participated in the hearing via video conference.

Finally, Haddix violated the Restraining Order by recording and enabling others to record the rescue of Tonka that occurred on June 5, 2022. Paragraph 8 of the Transfer Order states:

- "Recording of video (including any surveillance cameras at the Property), taking of photographs, or monitoring by unmanned aerial vehicles (i.e., drone) of the examination and transfer is prohibited." *Id*., ¶ 8.

13

However, at approximately 8 minutes and 15 seconds into the fourth episode of *Chimp Crazy*, footage of the removal of Tonka from Haddix's home can be seen.

Haddix violated paragraph 6 of the Consent Decree by entering into a chimpanzee enclosure. As relevant here, the Consent Decree states:

- "Contact Between Humans and Chimpanzees. Defendants are hereby enjoined from entering any enclosure with any chimpanzee, and from inserting any body part into an enclosure in which any chimpanzee is held, with the exception of circumstances during which a qualified veterinarian has chemically immobilized a chimpanzee." *Id*., ¶ 6.

At approximately 53 minutes and 2 seconds into the fourth episode of *Chimp Crazy*, Haddix admits she was attacked by a chimpanzee belonging to one of her friends after she went inside the chimpanzee's enclosure.

Although not surprising given Haddix's conduct throughout this case, *Chimp Crazy* reveals the truly astonishing extent to which Haddix disregarded multiple of this Court's orders. Moreover, the success of the docuseries, and Haddix's numerous efforts to monetize that success, suggests an aggravating circumstance for Haddix's contumacious behavior insofar as that behavior was at least in part motived by a desire to acquire income and influence by making a spectacle of and broadcasting her disobedience of this Court. As the self-proclaimed "Dolly Parton of chimps," Haddix has been extremely busy the last several months launching ventures and making media appearances to capitalize off the public's fascination with her very public and, to date, unpunished, complete disregard of this Court's directives.  Indeed, numerous media outlets and commentators have publicly inquired how Haddix has remained unpunished for the egregious misconducted depicted in *Chimp Crazy*. *See, e.g.*, "I Can't Believe This Person Isn't in Prison" https://www.jezebel.com/i-cant-believe-this-person-isnt-in-prison last visited October 30, 2024.

### B. Aswegan, Casey, and Viestra Violated the Transfer Order.

*Chimp Crazy* also contains evidence sufficient to establish a *prima facie* case that Aswegan, Viestra, and Casey aided and abetted Haddix's violation of the Transfer Order (ECF No. 322). The Transfer Order states in relevant part:

- "Defendants, and any agents or other persons or entities under their direct or indirect control, are prohibited from moving, transferring, or relocating any chimpanzee other than as provided by the Court's Orders." *Id*., ¶ 1.

- "Defendants are prohibited from administering any sedation drug to any chimpanzee until the Transfer date except when required in the event of a medical or public safety emergency. In the event Defendants administer or cause a third-party to administer any drug to any of the chimpanzees between now and the day of the Transfer, Defendants shall notify Plaintiffs' counsel within twenty-four hours of such administration." *Id*., ¶ 6.

As previously indicated, at approximately 8 minutes and 2 seconds into the third episode of *Chimp Crazy*, Haddix confesses that she and Aswegan sedated Tonka and then took him to a hotel the night before the transfer date. Peet Decl., ¶ 14. This conduct puts Aswegan too in violation of paragraphs 1 and 6 of the Transfer Order. Furthermore, Aswegan's marital relation to Haddix, combined with his knowing participation in a conspiracy to defraud this Court with indisputably perjured testimony (which this Court has already referred to the United States Attorney for criminal prosecution), create sufficient circumstantial evidence of his knowledge of the existence of the Transfer Order to warrant relief.

Additionally, the third episode of *Chimp Crazy* also implicates: (1) Casey for referring Haddix to Cy as someone who could help her hide Tonka and fake Tonka's death, and (2) Cy for helping Haddix hide Tonka and fake Tonka's death. This conduct puts Casey and Cy too in violation of paragraph 1 of the Transfer Order. As previously stated, Casey is a party to this litigation. At approximately 14 minutes and 44 seconds into the third episode of *Chimp Crazy*, Cy openly admitted to knowingly helping Haddix violate this Court's order (*see id*., ¶ 23), thus evidencing Cy's knowledge of the order.

**C.      Plaintiffs Should Be Granted Leave to Serve Discovery to Gather Additional Evidence of the Conspiracy at Hand.**

Once a *prima facie* showing of contempt has been made so as to justify issuance of an order to show cause, the Court may in its discretion authorize the movant to conduct discovery on the issue of contempt. *See, e.g.*, *Arlington Indus., Inc. v. Bridgeport Fittings, Inc*., No. 3:02-CV-0134, 2016 WL 7117933, at *4 (M.D. Pa. Dec. 7, 2016), ("Arlington's Motion for an Order to Show Cause will be granted. Additionally, Arlington's request for discovery will be granted"), modified on reconsideration to allow even more contempt discovery, No. 3:02-CV-0134, 2017 WL 1173928 (M.D. Pa. Mar. 29, 2017); *Innovation Ventures, LLC v. Distrib., Inc*., No. SACV1200717ABEX, 2015 WL 5319815, at *6 (C.D. Cal. Apr. 29, 2015) ("IV made a prima facie showing of contempt, prompting Judge Collins to issue an order to show cause on the subject, and discovery was entirely appropriate"); *Cardionet, LLC v. Mednet Healthcare Techs., Inc.*, 146 F. Supp. 3d 671, 681 (E.D. Pa. 2015) ("On August 19, 2015, the Court issued an order to show cause granting CardioNet's request for discovery on the issue of contempt and scheduling a contempt hearing for September 21 and 22, 2015").

Leave for Plaintiffs to conduct discovery is appropriate in this matter. First, discovery will allow for the efficient authentication of those portions of the *Chimp Crazy* episodes discussed herein, such as by subpoenas to the documentary filmmakers, or interrogatories and/or requests for admission seeking stipulations. Second, given Haddix's and her accomplices' propensity for dishonesty, allowing Plaintiffs to depose individuals prior to the contempt hearing will conserve judicial resources and promote a more efficient hearing. This is especially necessary given that in a recent podcast interview, as but one example, Haddix contradicted her claim in the fourth episode of *Chimp Crazy* that she had been attacked by a friend's chimpanzee after entering its enclosure. Peet Decl., ¶ 18.

16

Discovery directed at Haddix's husband Jerry Aswegan, and others involved in these schemes, will also clarify who exactly was knowingly involved in furthering perjury and the aforementioned violations of this Court's orders, and the nature of their involvement. For example, as referenced above, the first place Haddix and Aswegan took Tonka after hiding him in a hotel was a facility operated by a convicted felon, Cy. During his on-camera interview, Cy acknowledged that he was an accomplice to Haddix's violation of court orders. *Id*. ¶ 23. Cy also explained that he was involved in digging up the decomposing body of another male chimpanzee to pass off as Tonka's remains, in his words, "like a Jeffrey Dahmer thing." *Id*. ¶ 24. In this same episode, it was revealed that Haddix's co-defendant Casey is who suggested Cy to Haddix as someone who could help with the conspiracy. *Id*. ¶ 19. Discovery will also allow Plaintiffs to ascertain the precise date Aswegan and others became aware of this Court's orders.

In sum, further discovery will allow Plaintiffs to clarify and resolve these and other issues in advance of any court date to allow for a more efficient hearing, and for this Court to hold accountable all parties who knowingly aided and abetted the subversion of its authority.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion and require Haddix and her accomplices Jerry Aswegan, Cy Viestra, and Connie Casey to show cause why they should not be held in civil contempt for willfully defying this Court's orders; authorize Plaintiffs to conduct discovery on the issues of contempt and perjury; impose sanctions upon the contemnors as the Court deems appropriate; and require Haddix to pay Plaintiffs' costs and fees associated with the filing of this motion.

Date: October 30, 2024

Respectfully submitted,

POLSINELLI PC


By: /s/James P. Martin
     JAMES P. MARTIN (#50170)
     7676 Forsyth Blvd., Suite 800
     St. Louis, MO 63105
     314.889.8000
     Fax No: 314.231.1776
     jmartin@polsinelli.com

     AARON FRAZIER
     *(Pro Hac Vice pending)*
     Foundation to Support Animal
     Protection (PETA Foundation)
     501 Front Street
     Norfolk, VA 23510
     757.622.7382
     AaronF@PetaF.org

     ATTORNEYS FOR DEFENDANTS/
     COUNTERCLAIM PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 30, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served to counsel of record.

/s/ James P. Martin                            

19