UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., et al., | ) ) ) ) |
| Counterclaim Plaintiffs, | ) ) |
| v. | )    Case No. 4:16 CV 2163 CDP |
| TONIA HADDIX, | ) ) ) |
| Counterclaim Defendant. | ) |

## ORDER REQUESTING PROSECUTION
## FOR CRIMINAL CONTEMPT OF COURT

By this Order, the Court requests that the United States Attorney for the

Eastern District of Missouri prosecute counterclaim defendant Tonia Haddix

(hereinafter referred to as defendant) for criminal contempt of Court.  *See* Fed. R.

Crim. P. 42.

People for the Ethical Treatment of Animals, Inc. (PETA) sued Haddix and

others because they were housing seven chimpanzees in conditions that violated

the Endangered Species Act, 16 U.S.C. § 1540(g)(1)(A).  To summarize the

essential facts constituting the criminal contempt of Court:  defendant Tonia

Haddix has violated numerous orders of this Court and seeks to make a mockery of

the rule of law by admitting and boasting on television, on the internet, and on

other means of public communications, about her violations of the Court's orders;

she continues to publicize her acts of contempt; and she seeks to profit from her

acts of contempt.  More specifically:

1. Haddix and PETA entered into a Consent Decree, which the Court approved

   and entered on October 2, 2020 (ECF 274), in which Haddix agreed to

   surrender to PETA four of the seven chimpanzees so they could be

   transferred to the Center for Great Apes at a future date, while the other

   three chimpanzees were to be retained by Haddix under specified

   conditions.[1]  If Haddix failed to comply with the conditions of keeping the

   three chimpanzees remaining under her care, those would also be transferred

   to the sanctuary.  (ECF 274 at ¶ 2.9.)

   **Haddix failed to comply with her Court-ordered obligations under the
   Consent Decree by failing, among other things, to build the specified
   primadome and night houses** (ECF 274 at ¶ 2.1), **failing to hire an
   experienced chimpanzee caregiver** (*id.* at ¶ 2.8), **and failing to provide
   specified regular veterinary care** (*id.* at ¶ 2.10).

2. Because of Haddix's non-compliance (even after being held in civil

---

[1] The Consent Decree provided that until the Center for Great Apes was ready to receive
possession of the four chimpanzees, PETA would reimburse Haddix for her reasonable out-of-
pocket expenditures for the care of those chimpanzees, "upon submission of receipts."  Haddix
never provided the requisite receipts, but instead, from time to time, simply demanded various
amounts of money from PETA and threatened that if PETA did not pay she would stop caring
for those four animals.

contempt[2]), the Court on June 1, 2021, ordered that all seven chimpanzees be transferred to the sanctuary as soon as it was able to accommodate them. (ECF 307.)[3]  Haddix then publicly and falsely claimed that one of the chimpanzees, Tonka, had died.  (ECF 308-4.)  In an Order entered July 14, 2021, the Court set a transfer date for all seven of the chimpanzees.  (ECF 322, 323.)  Among other things, the Order specified that Haddix and people working with her were prohibited from moving or relocating any chimpanzee before the transfer (ECF 322 at ¶ 2), from administering any sedation drug to any chimpanzee until the transfer date except in limited circumstances (*id.* at ¶ 6), from recording any video or taking photographs of the transfer (*id.* at ¶ 7), and from "sharing the date and/or time of the transfer with any non-party" (*id.* at ¶ 9).[4]

**Haddix violated that Order by:**

**a) Moving chimpanzee Tonka from the premises before the scheduled**

---

[2] The Order of Civil Contempt (ECF 299) provided that Haddix could purge herself of the contempt by making good faith efforts to comply with her obligations under the Consent Decree. If Haddix failed to purge her contempt, the Order imposed a $50-per-day sanction for each day that she remained in contempt.

[3] This Second Order of Civil Contempt imposed additional sanctions of $50 per day for each additional day Haddix remained in contempt.

[4] These precautions were necessary because of Haddix's statements that she would not allow PETA to take the chimpanzees even if the Court ordered it; her attempts to use both the news media and social media to encourage her followers to get involved in the case; and her threats that if PETA tried to take the chimpanzees, it would have to "bring sheriffs and they're going to have to bring everything they can" and, further, that any attempt by PETA to take the chimpanzees "will not end nicely."  (ECF 308-3, 308-4.)

transfer and secreting him in various locations to avoid complying with the Order of transfer of all seven chimpanzees;

b) Sedating chimpanzee Tonka prior to the transfer date in the absence of a medical or public safety emergency or other lawful reason;

c) Sharing the date and time of the transfer with numerous people, including non-party members of the press and a documentary film crew with whom Haddix had secretly agreed to prepare a docuseries called *Chimp Crazy*;

d) Allowing the documentary film crew to video and audio record the transfer, by installing hidden cameras in and around the chimpanzee enclosures.

3.    PETA again sought civil contempt, alleging (correctly, as it turned out) that Haddix was lying about Tonka's death and was hiding him somewhere.  In Orders entered October 29, 2021, and December 8, 2021, the Court set PETA's motion for an in-person hearing on January 5, 2022.  (ECF 342, 352.)  The day before the hearing, Haddix filed a "pro se motion to notify of COVID exposure," claiming that she had been exposed to COVID and was having "cold-like" symptoms.  (ECF 359.)  In an Order entered that same date, January 4, 2022, the Court changed the in-person hearing to a video-hearing by Zoom. (ECF 360.)  That Order stated:  "Pursuant to Local Rule 13.02, all means of photographing, recording, broadcasting, and televising are prohibited . . . . This includes proceedings ordered by the Court to be conducted by telephone or video."  Additionally, during the January 5 hearing the Court stated, on the record:

- 4 -

I realize when I started this hearing I didn't do the normal warning that I always do, that we're supposed to do regarding the fact that we're doing this as a videoconference and to remind you all -- and there was a reminder when you logged in that shows up -- but to remind you all that recording or broadcasting of this proceeding is strictly forbidden, and you may not record it or broadcast it in any way, nor may anyone else who is listening to this.  And so there could be sanctions imposed if you were to violate that.

(ECF 376, Hrg. Tr. at p. 10, lines 5-13.)

**Haddix violated the written Order entered January 4, 2022, and the oral Order given on the record in Court on January 5, 2022, by allowing the documentary film crew to video and audio record the civil contempt hearing held on January 5, 2022.**

4.  On June 1, 2022, PETA filed an ex parte motion for Temporary Restraining Order (ECF 367) and filed with the Court an audio recording in which Haddix could be heard stating not only that Tonka was alive in her basement in Sunrise Beach, Missouri, but also that he was to be euthanized the next day, June 2, 2022.  (ECF 368.)  On that same date, June 1, 2022, the Court granted the motion and entered a Temporary Restraining Order (ECF 369, 371) allowing search of the premises, prohibiting Haddix from euthanizing Tonka, and allowing PETA to take possession of Tonka.  That Order prohibited any recording of the transfer by video or taking photographs and, further, prohibited Haddix from sharing the date and time of the transfer with any non-party.

**Haddix violated that Order not only by notifying the documentary film crew and others of the date and time of the transfer but also by allowing them to video record that transfer.**

5.   Haddix continues to promote the *Chimp Crazy* docuseries (which is available by streaming on HBO) by participating in various local and internet media interviews and podcasts, by publicly indicating that she will participate in future episodes of the docuseries, and by monetizing and attempting to monetize and profit from her contemptuous conduct listed above by launching business ventures including selling *Chimp Crazy* merchandise and engaging in online fundraising.

**Haddix's actions in publicizing her past contempt and encouraging others to broadcast and view the transfers and the Court's hearing violate the orders of transfer (ECF 322, 323) and the Court's orders regarding the video hearing (ECF 360, 376 at p. 10, l. 5-13).**

This Order provides notice to Haddix of the essential facts constituting the criminal contempt, as required by Rule 42(a)(1)(C), Fed. R. Crim. P., and constitutes the request that an attorney for the government prosecute the criminal contempt, as set out in Rule 42(a)(2).  If the United States Attorney agrees to prosecute the case, the Court will then set the time and place of the trial, allowing, of course, for the defendant to have a reasonable time to prepare a defense.  *See* Fed. R. Crim. P. 42(a)(1)(A), (B).  If the United States Attorney declines this request, the Court will appoint another attorney to prosecute the contempt.  *See* Fed. R. Crim P. 42(a)(2).

The Court was unaware of Haddix's more egregious violations of Court

orders until the release of the HBO series *Chimp Crazy* in August of 2024, and was

unaware of Haddix's continuing promotion of the docuseries and her attempts to

sell merchandise and otherwise profit from her contempt until PETA filed its most

recent motion for civil contempt. (ECF 392.) That motion remains pending, and

the Court has given Haddix additional time to respond to it. PETA also filed a

motion to compel Haddix's husband, Jerry Aswegan, to comply with a subpoena

(ECF 398), and that motion also remains pending. It is appropriate for the

criminal contempt matter to proceed while those motions are pending because the

purpose of criminal contempt is to punish Haddix's past violations. *Young v.*

*United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 801 (1987) (criminal

contempt is appropriate when "the end is punishment of past behavior.").

"Criminal contempt is a crime in the ordinary sense[.]" *Bloom v. Illinois*,

391 U.S. 194, 201 (1968); *Josephs v. Marzan,* Civ. No. 21-749 (JRT/DTS), 2024

WL 3904646 (D. Minn. Aug. 22, 2024). *See also* 18 U.S.C. § 401(3) (court has

power to punish contempt of its authority as disobedience or resistance to its lawful

writ, order, decree, or command). As a result, the initiation of criminal contempt

proceedings is a serious step that should not be taken lightly. *United States v.*

*Concord Mgmt. & Consulting LLC*, No. 18-CR-32-2 (DLF), 2019 WL 7758635, at

*5 (D.D.C. July 1, 2019) (citing *United States v. Koubriti*, 305 F. Supp. 2d 723,

756-57 (E.D. Mich. 2003)). "While a court has the authority to initiate a

prosecution for criminal contempt, its exercise of that authority must be restrained by the principle that only the least possible power adequate to the end proposed should be used in contempt cases." *Young*, 481 U.S. at 793-801 (cleaned up) (internal quotation marks omitted).

Criminal contempt is designed to vindicate the court's own authority, rather than to compensate private parties. *Brandt v. Gooding*, 636 F.3d 124, 135 (4th Cir. 2011). Courts "must and should have the broadest possible discretion to determine whether the conduct at issue is such that a finding of criminal contempt is necessary to vindicate its authority." *United States v. Lynch*, 952 F. Supp. 167, 172 (S.D.N.Y. 1997). *See also United States v. United Mine Workers of Am.*, 330 U.S. 258, 302 (1947) (criminal contempt proceedings "are imposed for the purpose of vindicating the court."). "The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and willfully refuses his obedience, does so at his peril." *United Mine Workers*, 330 U.S. at 303.

Before reaching for the criminal contempt power, "courts should be aware of the options available to them" given that there are "other means to maintain the dignity of the court," including fines, sanctions, or public reprimand. *In re Smothers*, 322 F.3d 438, 443 (6th Cir. 2003). Those other means have already

been attempted here.  In addition to its presently pending motion for contempt, PETA has filed five motions for civil contempt against Haddix, and the Court has twice held her in civil contempt.  (ECF 299, 307.)  Nothing in the Court record shows that Haddix paid the coercive fines imposed in each of those Orders of Civil Contempt.  The Court also ordered Haddix to pay PETA's attorneys' fees and expenses totaling $224,404.24 (ECF 386) and, additionally, has made numerous oral admonishments to her.  The Court has twice notified Haddix that it was referring her perjury to the United States Attorney.[5]  Haddix's perjury is a separate matter from this request to prosecute her for criminal contempt of Court.  None of the previous orders, sanctions, or warnings have deterred Haddix from her further contemptuous conduct.  It is clear to the Court that Haddix intends to continue bragging to the world about her previous contempt of this Court, and that she will not stop until serious consequences are imposed.  Her flagrant past violations warrant an order of criminal contempt.

"One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chicago Truck Drivers v. Brotherhood Lab. Leasing*, 207 F.3d 500, 504 (8th Cir. 2000).  Without the contempt power, "what the

---

[5] According to Haddix's latest motion for extension of time (ECF 399), there is an "ongoing federal criminal investigation."

- 9 -

Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *United Mine Workers*, 330 U.S. at 290 n.56 (quoting *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 450 (1911)).

Accordingly, upon due and thoughtful consideration, in view of Haddix's repeated and flagrant violations of several of this Court's written and oral orders specifically directed to her, her continuous public flaunting of her acknowledged disregard of the Court's orders, and her expressed willingness to violate Court orders, the Court requests, pursuant to Federal Rule of Criminal Procedure 42(a)(2), that the United States Attorney for the Eastern District of Missouri prosecute defendant Tonia Haddix for criminal contempt.

Accordingly,

**IT IS HEREBY ORDERED** that pursuant to Federal Rule of Criminal Procedure 42(a)(2), the Court formally requests that the United States Attorney for the Eastern District of Missouri prosecute defendant Tonia Haddix for criminal contempt.  Not later than **December 16, 2024**, the government shall file written notice informing the Court whether it accepts or declines this request.  Haddix's appearance on the charge(s), the conditions of her release, and the time and place of trial will be set by further order of the Court upon the government's notice of its decision on the Court's request to prosecute.

**IT IS FURTHER ORDERED** that the Clerk of Court shall transmit a copy

of this Order Requesting Prosecution for Criminal Contempt of Court to the United

States Attorney's Office, Eastern District of Missouri.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 22nd day of November, 2024.