UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., *et al.*, <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> TONIA HADDIX, <br><br> Counterclaim Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) No. 4:16-CV-2163-CDP |

### **TONIA HADDIX'S MOTION TO STAY CIVIL PROCEEDINGS**

Counterclaim Defendant Tonia Haddix ("Haddix"), by and through undersigned counsel, respectfully moves this Court to stay the civil proceedings pending resolution of the federal criminal investigation of Haddix in the United States District Court for the Eastern District of Missouri. A stay is also warranted as this Court has ordered the United States Attorney for the Eastern District of Missouri to consider prosecuting Haddix for criminal contempt of Court (Doc. 403) on the same bases that Counterclaim Plaintiffs request that Haddix be held in civil contempt (Doc. 392). The civil and criminal proceedings are so interrelated that Haddix cannot protect herself in the civil matter by selectively invoking her Fifth Amendment privilege and the overlap is such that simultaneous effective defense is simply not possible.

**I.      Relevant Background**

   A.     Consent Decree

On October 2, 2020, the Parties entered into a Consent Decree. (*See* Doc. 274) (hereinafter, the "Decree"). The Decree addressed Haddix's possession of seven chimpanzees and required various actions of the Parties to the agreement.

Among other things, the Decree provided that four of the chimpanzees were to be transferred to an animal sanctuary. (*See* Doc. 274 at ¶ 1). The Decree also provided that the three remaining chimpanzees were to remain in Haddix's possession as long as she complied with various requirements. (*See id.* at ¶ 2).

Subsequently, this Court concluded that Haddix violated the Decree in various respects and, ultimately, ordered Haddix to forfeit possession of all seven chimpanzees. (*See* Doc. 307).

Counterclaim Plaintiffs filed a motion noting that when the chimpanzees were retrieved from Haddix, only 6 were present. (*See* Doc. 333). And Counterclaim Plaintiffs noted Haddix had provided no proof that the missing chimpanzee, Tonka, had died. (*See id.*).

Counterclaim Plaintiffs filed a motion for a temporary restraining order and order to show cause on the grounds that Tonka was still alive. (*See* Doc. 367). This Court granted the motion, concluding that Haddix was in material breach of the Decree and gave Counterclaim Plaintiffs authority to transfer Tonka to an accredited facility. (Doc. 371).

Plaintiffs thereafter filed a Notice of Transfer of Chimpanzee Tonka, noting that Tonka was transferred to an animal sanctuary, on June 6, 2022. (Doc. 374).

      B.      <u>Motion for Civil Contempt and Written Requests that Haddix be Prosecuted</u>

On October 30, 2024, Counterclaim Plaintiffs filed a "motion for an order to show cause why Counterclaim Defendant Tonia Haddix and her accomplices should not be held in civil contempt[.]" (Doc. 392). The factual allegations included in support of the motion by Counterclaim Plaintiffs largely stem from what they characterize as "the airing of a massively popular docuseries on HBO containing evidence establishing a *prima facie* case that Defendant Tonia Haddix, as well as other accomplices, engaged in a knowing conspiracy to suborn and commit perjury, and to violate several of this Court's orders." (Doc. 392 at 1). Counterclaim

2

Plaintiffs expressly request that this Court "set in motion a formal process by which those involved in effecting the contempt and perjury at issue can be held properly accountable." (*Id.* at 2).

Additionally, Counterclaim Plaintiffs allege Haddix violated Orders of this Court concerning: the relocation of chimpanzees; administering sedation to chimpanzees; video recording of the transfer of chimpanzees; confidentiality of the date and time of the transfer of chimpanzees; and the recording of Court proceedings. (*See* Doc. 392 at 3-4).

In the motion, Counterclaim Plaintiffs note that on June 10, 2022, "this Court granted PETA's request that the Court refer Haddix and Aswegan to the U.S. Attorney to be prosecuted for perjury, and held PETA's fifth Contempt Motion in abeyance until the U.S. Attorney makes a decision on the perjury referrals." (Doc. 392 at 5) (citing Doc. 378). Counterclaim Plaintiffs then assert, the "U.S. Attorney's Office has not yet announced any decision on whether it will prosecute Haddix and Aswegan, despite PETA having sent that Office a detailed letter dated July 26, 2024, explaining Haddix's misconduct as revealed in *Chimp Crazy*." (*Id.*). Additionally, this Court sent the United States Attorney for the Eastern District of Missouri a letter dated September 17, 2024, expressly requesting that Haddix be investigated and, if appropriate, prosecuted for perjury.[1]

In the motion, Counterclaim Plaintiffs request that Haddix be required to show cause why she should not be held in civil contempt and to "authorize Plaintiffs to conduct discovery on the issues of contempt and perjury[.]" (Doc. 392 at 17).

At present, the United States Attorney's Office for the Eastern District of Missouri has confirmed to undersigned counsel that a criminal investigation is ongoing regarding possible allegations of perjury.

Haddix requested additional time to respond to Counterclaim Plaintiffs' motion or,

---

[1]Undersigned counsel was copied on the letter.

3

alternatively, to file a motion to stay the proceedings pending the resolution of the ongoing federal criminal investigation. (Doc. 399). This Court granted Haddix's request. (Doc. 400).

### C. Order Requesting Prosecution for Criminal Contempt of Court

On November 22, 2024, this Court entered an Order Requesting Prosecution for Criminal Contempt of Court. (Doc. 403). In the Order, this Court states, "Haddix has violated numerous orders of this Court and seeks to make a mockery of the rule of law by admitting and boasting on television, on the internet, and on other means of public communications, about her violations of the Court's orders[.]" (*Id.* at 1-2).

This Court concludes that Haddix has violated orders of the Court concerning: obligations set out in the Decree; moving and sedating Tonka before the transfer; sharing information concerning the transfer; allowing the transfer to be recorded by a documentary film crew; and recording a Court proceeding. (*See id.* at 1-6). Stated simply, this Court has concluded that criminal contempt proceedings are warranted for the same reasons Counterclaim Plaintiffs seek civil contempt.

This Court's Order requires the Government to file written notice, no later than December 16, 2024, informing this Court whether it will prosecute Haddix for criminal contempt. (Doc. 403 at 10).

### II. Based on the Present State of Affairs, a Stay of the Civil Proceedings is Appropriate

Haddix respectfully requests that this Court stay the civil proceedings pending resolution of the criminal proceedings against Haddix. The civil and criminal proceedings are so interrelated that Haddix cannot protect herself in the civil matter by selectively invoking her Fifth Amendment privilege and the matters so overlap that effective defense of both is simply not possible. Additionally, a stay of the civil proceedings is warranted as this Court has ordered the United

4

States Attorney for the Eastern District of Missouri to consider prosecuting Haddix for criminal contempt of Court (Doc. 403) on the same bases that Counterclaim Plaintiffs request that Haddix be held in civil contempt (Doc. 392).

This Court should stay the civil proceedings because Haddix will be unable to meaningfully respond to Counterclaim Plaintiffs' motion to show cause, to discovery requests Counterclaim Plaintiffs seek to propound, or to fully participate in her defense until the federal criminal proceedings are resolved. And this Court's request that Haddix be criminally prosecuted for the same reasons Counterclaim Plaintiffs seek civil contempt sanctions makes a stay of this proceeding even more warranted.

Given the substantial overlap in the subject matter and factual allegations in the civil and criminal matters, all responses to motions and/or discovery requests in the civil matter will invariably touch on matters that are directly at issue in the criminal proceedings. Consequently, any statements by Haddix in the civil proceeding will directly implicate her constitutional rights to due process and to be free from self-incrimination under the Fifth Amendment to the United States Constitution.

    A.    <u>Applicable Law</u>

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This right not only protects an individual from being called as a witness against herself in a criminal prosecution, but also privileges her from answering official questions that are put to her in any other proceeding, civil or criminal, formal or informal, when the answers might incriminate her in future criminal proceedings. *See Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973).

A Court may grant a stay of a pending civil action in order to avoid interfering with a

5

pending criminal investigation, *see, e.g., Lunde v. Helms,* 898 F.2d 1343, 1345 (8th Cir. 1990), or to preserve the ability of a defendant to assert her Fifth Amendment privilege in a pending criminal proceeding involving the same subject matter. *See, e.g., Turley v. United States,* 2002 WL 31097225 at *2 (W.D. Mo., August 22, 2002) (unpublished) ("The rationale behind such a stay is that a litigant should not be allowed to use the liberal discovery procedures applicable to a civil suit to avoid restrictions on criminal discovery and obtain documents he would not otherwise be entitled to for use in his criminal suit") (citing *Campbell v. Eastland,* 307 F.2d 478, 488 (5th Cir. 1962)).

A district court has "the inherent power to stay the proceedings of an action, so as to control [its] docket, to conserve judicial resources, and to provide for the just determination of cases which pend before [it]." *Armstrong v. Mille Lacs Cty. Sheriffs Dept.*, 112 F. Supp. 2d 840, 843 (D. Minn. 2000) (citing *Landis v. Am. Water Works & Elec. Co.*, 299 U.S. 248, 254-55 (1936)).

While the stay of civil proceedings pending the resolution of criminal proceedings is not always required, the "stay of a civil trial until factually related criminal proceedings are concluded is sometimes warranted." *Koester v. Am. Republic Invs., Inc.*, 11 F.3d 818, 823 (8th Cir. 1993). *See also United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action").

"[T]o warrant a stay, [the] defendant must make a strong showing either that the two proceedings are so interrelated that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege, or that the two trials will so overlap that effective defense of both is impossible." *Koester*, 11 F.3d at 823 (citing *Anglada v. Sprague*, 822 F.2d 1035, 1036-37 (11th Cir. 1987)). "In making this determination, a Court must consider the particular

6

circumstances, and the competing interests, that are involved in each case." *Fid. Nat'l Title Ins. Co. of New York v. Nat'l Title Res. Corp.*, 980 F. Supp. 1022, 1024 (D. Minn. 1997) (citing *Fed. Sav. and Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)).

"[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case." *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980). *Accord Kozlov v. Associated Wholesale Grocers, Inc.*, No. 4:10-CV-03211, 2011 WL 3320972, at *2 (D. Neb. Aug. 2, 2011); *S.E.C. v. Brow*n, No. CIV. 06-1213PAMJSM, 2007 WL 4192000, at *2 (D. Minn. July 16, 2007), *aff'd*, No. CIV. 06-1213JRTFLN, 2007 WL 4191998 (D. Minn. Nov. 21, 2007).

The Eighth Circuit has not identified specific factors for Courts to consider in making this decision. However, district courts in the Eighth Circuit have frequently applied the factors set forth by the Ninth Circuit in *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995). *See*, e.g., *Aldridge v. City of St. Louis, Missouri*, No. 4:18-CV-1677 CAS, 2020 WL 223928, at *3-4 (E.D. Mo. Jan. 15, 2020) (applying *Keating* factors); *White v. Feaman*, No. 4:18-CV-00518-NCC, 2018 WL 5831261, at *2 (E.D. Mo. Nov. 7, 2018) (same); *Edwards v. Thomas*, No. 4:19-CV-4018, 2020 WL 888538, at *3 (W.D. Ark. Feb. 24, 2020) (same). Under *Keating*, the court considers five factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2)

7

the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Keating*, 45 F.3d at 324-25.

      B.    <u>*Koester* Analysis</u>

As *Koester* notes, a "defendant must make a strong showing either that the two proceedings are so interrelated that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege, or that the two trials will so overlap that effective defense of both is impossible." *Koester*, 11 F.3d at 823 (citing *Anglada,* 822 F.2d at 1036-37).

Here, there can be no meaningful dispute that the two proceedings are entirely interrelated. Based on what has been communicated by the U.S. Attorney's Office, Haddix is very likely to face federal prosecution for allegedly committing perjury in the civil proceedings before this Court. Counterclaim Plaintiffs seek civil contempt sanctions against Haddix for allegedly committing perjury in the civil proceedings before this Court. (*See* Doc. 392 at 1) (Haddix "engaged in a knowing conspiracy to suborn and commit perjury"). And Counterclaim Plaintiffs expressly request in their motion authorization "to conduct discovery on the issues of contempt and perjury[.]" (*Id.* at 17).

Stated simply, Counterclaim Plaintiffs request that this Court hold Haddix in civil contempt and to permit discovery concerning her alleged perjury—the exact conduct for which she is very likely to face federal prosecution in which she is entitled to plead not guilty and to exercise the rights every criminal defendant has in the federal system.[2]

Haddix will have no choice but to invoke the Fifth Amendment privilege in the civil

---

[2] In this pleading, Haddix is in no way seeking to pre-litigate the merits of any possible criminal allegation and expressly reserves all of her rights.

8

proceedings to protect her rights in the criminal proceedings. This will, of course, result in adverse inferences in the civil case. *See, e.g., Mitchell v. United States*, 526 U.S. 314, 328 (1999) (recognizing "the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them, at least where refusal to waive the privilege does not lead automatically and without more to the imposition of sanctions" (quotation marks and citation omitted)); *Johnson v. Missouri Bd. of Nursing Adm'rs*, 130 S.W.3d 619, 631 (Mo. Ct. App. 2004) (finding that a party's "refusal to answer pertinent questions on Fifth Amendment grounds justified an inference that: (a) if she had answered truthfully, the answers would have been unfavorable to her; or (b) would have corroborated testimony given by the opposing side's witnesses on the subject matter of the questions") (citations omitted).

To be clear, it is settled law that "one of the Fifth Amendment's 'basic functions ... is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.'" *Grunewald v. United States,* 353 U.S. 391, 421 (1957) (quoting *Slochower v. Board of Higher Ed. of New York City,* 350 U.S. 551, 557-58 (1956)) (emphasis in original). "In *Grunewald,* we recognized that truthful responses of an innocent witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth" *Ohio v. Reiner*, 532 U.S. 17, 21 (2001). In other words, it is of no moment whether a person under investigation is innocent or guilty of criminal conduct; that person has a clear constitutional right to assert her Fifth Amendment privilege where she has a good faith basis to conclude that a truthful answer to a question may tend to incriminate her—even if she is actually innocent of any such crime. *Id*.

Further complicating matters, this Court has now expressly requested the Government to

9

prosecute Haddix for the additional conduct Counterclaim Plaintiffs contend justifies the imposition of civil contempt. (*See* Docs. 392 and 403). In other words, while Haddix is presently facing possible prosecution for perjury in connection with her alleged statements in this civil proceeding, the United States has now been ordered to expressly consider criminally prosecuting Haddix for all the other alleged actions set out in detail in the motion of Counterclaim Plaintiffs and in this Court's Order—all with the express understanding that this Court may apparently appoint a special prosecutor in the event the U.S. Attorney's Office for the Eastern District of Missouri does not initiate such a prosecution. (*See* Doc. 403 at 6).

The allegations involve the very same conduct encompassed by Counterclaim Plaintiffs' motion. As such, these matters are interrelated (arguably identical) and effective defense of both the criminal and the civil proceedings is impossible. Thus, this matter should be stayed pending resolution of any such criminal proceedings.

    C.    *Keating* Factors

The *Keating* factors also make clear that a stay is warranted.

    1.    *Counterclaim Plaintiffs' Interests*

While Counterclaim Plaintiffs "have a legitimate interest in the expeditious resolution of their case… These interests, however, are trumped by [Haddix's] interests in avoiding the quandary of choosing between waiving [her] Fifth Amendment rights or effectively forfeiting the civil case." *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995).

As it stands, the matters contemplated in the Decree have been resolved. The chimpanzees have been transferred to animal sanctuaries and Haddix has been ordered to pay Counterclaim Plaintiffs' significant costs associated with her previous non-compliance. In the pending motion,

10

Counterclaim Plaintiffs allege Haddix violated Orders of this Court concerning: the relocation of chimpanzees; administering sedation to chimpanzees; video recording of the transfer of chimpanzees; confidentiality of the date and time of the transfer of chimpanzees; and the recording of Court proceedings. (*See* Doc. 392 at 3-4). Furthermore, to the extent the documentary has any significance, PETA and its counsel in this very case were featured in the documentary and participated in on-camera interviews.

"There are two kinds of civil contempt: coercive and compensatory." *Coleman v. Espy*, 986 F.2d 1184, 1190 (8th Cir. 1993) (citing *Klett v. Pim,* 965 F.2d 587, 590 (8th Cir. 1992); *United States v. United Mine Workers of Am.,* 330 U.S. 258, 303-04 (1947)). "With coercive contempt penalties, the court issues sanctions such as fines or incarceration to force the offending party to comply with the court's order. With compensatory contempt, the court attempts to compensate the plaintiff for the damage that the offending party has caused by its contempt." *Id.* (citation omitted).

Here, the harms of which Counterclaim Plaintiffs complain appear to have ended and, therefore, coercive contempt appears inapplicable. As such, it appears Counterclaim Plaintiffs' demands are focused on additional compensation.

Counterclaim Plaintiffs' interest in additional compensation are trumped by Haddix's interests in avoiding the quandary of choosing between waiving her Fifth Amendment rights or effectively forfeiting the civil case. *See Trustees of Plumbers & Pipefitters Nat. Pension Fund*, 886 F. Supp. at 1140. Indeed, Haddix has already been ordered to pay hundreds of thousands of dollars to Counterclaim Plaintiffs. After the dust settles on Haddix's criminal proceedings, Counterclaim Plaintiffs may pursue their claims and there is no prejudice associated with such a delay.

2. *Burden on Haddix*

Haddix faces a substantial burden if this case is not stayed. "Any individual defendant who is forced to respond to discovery will be faced with the choice of whether to claim or waive the privilege against self-incrimination." *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 947 (N.D. Ill. 2008). Discovery may also "expose the basis of the defendant['s] criminal defense in advance of trial," *Crawford & Sons, Ltd. v. Besser*, 298 F. Supp. 2d 317, 319 (E.D.N.Y. 2004), further burdening Haddix's strategies and tactics.

And Counterclaim Plaintiffs will use Haddix's privilege invocation to prove her liability. While this is permitted by the law, "the question of whether it is fair does not yield the same answer in every case." *Chagolla*, 529 F. Supp. 2d at 947. As the *Chagolla* court explained:

> it is not at all rare for a person faced with criminal charges or a pending investigation to invoke the privilege even though he may have done nothing wrong, out of an abundance of caution prompted by a careful criminal defense lawyer. Though a person who claims the privilege in such circumstances and then has it used against him in a parallel civil case ordinarily is given the chance to explain his invocation of the privilege, the finer points of risk-aversion as it relates to criminal defense practice easily can be lost on lay jurors. A civil defendant in this situation who is effectively backed into a corner in which he has no viable choice but to claim the privilege is forced to face a significant risk of unfair prejudice that may be virtually impossible to remedy. This is, in the Court's view, a factor weighing in favor of a stay.

*Id.*

3. *Convenience of the Court*

Stays can "promote efficiency and avoid duplication as this Court and the parties would have the benefit of the transcripts and rulings in the criminal action." *Ruszczyk as Tr. for Ruszczyk v. Noor*, 349 F. Supp. 3d 754, 763 (D. Minn. 2018) (quoting *Crawford & Sons, Ltd. v. Besser*, 298 F. Supp. 2d 317, 319 (E.D.N.Y. 2004)). As in *Ruszczyk*, a stay here would conserve scarce judicial resources. There is substantial overlap between the anticipated criminal proceedings and discovery

12

produced in the criminal proceedings may likely be relevant to, and discoverable in, the civil proceeding. Moreover, as in *Ruszczyk*, the outcome of the criminal proceedings may "simplify the parties' positions in this matter, or even resolve some of the liability questions." *Id.* at 764.

### 4. *Interest of Non-Parties and the Public*

As noted *supra*, the main aims of the Decree have been accomplished at this point. As such, any interest of the public is negligible. The public also "has an interest in ensuring that the criminal process can proceed untainted by civil litigation." *Ruszczyk*, 349 F. Supp. 3d at 765 (quoting *Chagolla*, 529 F. Supp. 2d at 947). *See also State Farm Mut. Auto. Ins. Co. v. Healthcare Chiropractic Clinic, Inc.*, No. 15-CV-2527 (SRN/HB), 2016 WL 9307608, at *6 (D. Minn. Apr. 26, 2016) ("Courts around the country have recognized that 'the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant'") (quoting *Javier H. v. Garcia–Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003)).

Counterclaim Plaintiffs seek civil contempt against, and discovery from, certain non-parties. Haddix takes no position on whether this matter should be stayed as to these non-parties.

### III. Conclusion

Based on the foregoing, Haddix respectfully requests that this Court stay the civil proceedings pending resolution of any federal criminal proceedings against Haddix and for such other and further relief as this Court deems necessary and proper under the circumstances.

/

/

/

/

/

13

Respectfully submitted,

**Margulis Gelfand, LLC**

 _/s/ Justin K. Gelfand_
JUSTIN K. GELFAND, #62265
IAN T. MURPHY, #68289
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
ian@margulisgelfand.com
*Counsel for Haddix*

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all parties of record.

                                        */s/ Justin K. Gelfand*
                                        JUSTIN K. GELFAND, #62265
                                        IAN T. MURPHY, #68289
                                        7700 Bonhomme Ave., Ste. 750
                                        St. Louis, MO 63105
                                        Telephone: 314.390.0234
                                        Facsimile: 314.485.2264
                                        justin@margulisgelfand.com
                                        ian@margulisgelfand.com
                                        *Counsel for Haddix*