UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION et al., | ) ) ) |
| Plaintiff and Counter Defendants, | ) ) |
| v. | ) ) ) |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC. et al., | ) ) ) ) |
| Counter Claimants, | ) ) ) |
| v. | ) ) ) |
| TONIA HADDIX | ) ) |
| Counter Defendant. | ) |

Case No. 4:16-cv-02163-SRC

**Memorandum & Order**

The Court held Jerry Aswegan—the husband of Tonia Haddix—in civil contempt for not complying with the Court's April 2025 order.  Doc. 427 at 6 (The Court cites to page numbers as assigned by CM/ECF.).  The Court also awarded Counterclaimants their fees and costs incurred in (i) filing their motion to compel, (ii) filing their motion for a show-cause order, and (iii) serving Aswegan with various documents as ordered by the Court in its April, June, and July 2025 orders.  *Id.*  The Court now considers Counterclaimants' unopposed fee application.  *See* doc. 429.

**I.    Background**

The Court has recited the procedural history of Aswegan's noncompliance on numerous occasions, *see* docs. 422 at 1–3, 425 at 1–2, 427 at 1–3, and so does not provide a blow-by-blow account here.  But as relevant, Counterclaimants served Aswegan with a subpoena duces tecum

1

in June 2023.  Doc. 398 at 3; *see* doc. 398-3 at 2.  After Aswegan did not respond to the subpoena, Counterclaimants, in November 2024, filed a motion to compel Aswegan's compliance.  *See* doc. 398.  After holding a status conference in March 2025, doc. 421, the Court entered an order in April 2025, granting in part and denying in part Counterclaimants' motion to compel, doc. 422 at 5–6.  Specifically, the Court "compel[led] Aswegen to, no later than April 30, 2025, respond to Counterclaimants' subpoena." *Id.* at 5.  At the time, the Court "decline[d] Counterclaimants' request to order Aswegan to pay their costs and fees associated with the filing of their motion"; but, the Court noted that, "[i]n the event Aswegan fail[ed] to comply with th[e] order, the Court may revisit its decision, again upon proper motion." *Id.*  Counterclaimants then served a copy of that order and their subpoena on Aswegan.  Doc. 423 at 1; doc. 423-1 at 2.

Aswegan did not heed the Court's April 2025 order, so Counterclaimants requested that the Court enter a show-cause order.  Doc. 424 at 7.  In June 2025, the Court granted Counterclaimants' motion and issued a show-cause order.  Doc. 425.  As part of the show-cause order, the Court ordered Aswegan to, no later than June 26, "show cause why the Court should not impose contempt sanctions against him, including but not limited to, fines and the reimbursement of Counterclaimants' attorneys' fees and costs incurred in the filing of their motion to compel and motion for a show-cause order." *Id.* at 4 (citations omitted).

Following the Court's June show-cause order, Counterclaimants served Aswegan with a copy of the Court's April 2025 order, the Court's June 2025 show-cause order, and Counterclaimants' subpoena.  Doc. 426 at 1; *see* doc. 426-1 at 2–3 (indicating personal service on June 10, 2025).  After Aswegan did not respond to the Court's June 2025 show-cause order, the Court held Aswegan in civil contempt for his failure to comply with the Court's April 2025 order.  Doc. 427 at 6.  And the Court awarded Counterclaimants their fees and costs incurred in

2

(i) filing their motion to compel, (ii) filing their motion for a show-cause order, and (iii) serving Aswegan with various documents as ordered by the Court in its April, June, and July 2025 orders. Doc. 427. Counterclaimants timely filed their fee application, outlining their fees and costs incurred in completing these tasks. Doc. 429.

To date, Aswegan still has not entered an appearance in this case, and no counsel has entered on his behalf. *See* doc. 422 at 2 (noting that, based on the parties' representations at the March 2025 status conference, "Aswegan did not and does not have counsel"); *see also* doc. 424-4 at 3 ("[M]aybe I need to get a lawyer . . . ."). And so, Counterclaimants' fee application lies unopposed.

## II.   Attorneys' fees and costs

### A.   Legal standard

"In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). "Under this 'American Rule,' [courts] follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'" *Id.* (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)).

One recognized exception from the general practice: a court's civil-contempt orders may include the payment of the moving party's attorneys' fees and expenses. *See Kehm v. Proctor & Gamble Mfg. Co.*, 724 F.2d 630, 630–31 (8th Cir. 1984) (per curiam) (affirming lower court's award of attorneys' fees to moving party in civil-contempt proceedings); *Greater St. Louis Constr. Laborers Welfare Fund v. Town & Country Masonry & Tuckpointing, LLC*, No. 4:13–cv–696–JAR, 2013 WL 5436645, at *2 (E.D. Mo. Sept. 27, 2013) (granting moving party's

3

request for attorneys' fees and costs incurred in bringing a motion for contempt); *see also* doc. 299 at 5 (holding Haddix in civil contempt and ordering her to pay $50 per day while in contempt and Counterclaimants' attorneys' fees and expenses incurred in filing the motion for contempt).

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court held that courts awarding attorney's fees must consider: (1) whether an award is appropriate; and (2) the value of the services rendered as determined by the "lodestar" method. *See id.* at 433. The lodestar is calculated by determining the number of hours reasonably expended on the case and multiplying them by the applicable hourly market rate for the relevant legal services. *Id.*

The lodestar method "is meant to produce 'an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.'" *League of Women Voters of Mo. v. Ashcroft*, 5 F.4th 937, 939 (8th Cir. 2021) (emphasis omitted) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). The lodestar method enjoys a "strong presumption" of reasonableness, although "that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554. The Court begins by following the lodestar method, which multiplies the number of hours reasonably expended on the case by the hourly market rate for the relevant legal services.

**B.     Reasonable fees**

According to Counterclaimants' fee application, though other attorneys worked on this matter, they "only seek reimbursement for the attorney time of Mr. Frazier, Mr. Martin, and Mr. Campbell." Doc. 429 at 2. Frazier graduated from Cornell Law School in 2013, and he has

4

practiced law for the past 12 years. Doc. 429-3 at ¶¶ 4, 12. He is a senior litigation counsel for the PETA Foundation, which provides legal and other services to PETA. *Id.* at ¶¶ 5–6. In this position, Frazier represents PETA in both federal and state courts "in a manner consistent with full-time litigation counsel." *Id.* at ¶ 7. Before working for the PETA Foundation, he worked as an associate in a commercial litigation practice at the law firm of Harris Beach PLLC. *Id.* at ¶ 10. Frazier billed at an hourly rate of $425.00. *Id.* at ¶ 13.

Martin graduated from law school 27 years ago. Doc. 429-1 at ¶ 4. He is a shareholder of Polsinelli PC. *Id.* at ¶ 5. Martin billed at an hourly rate of $790.00 during 2024, and at $870.00 during 2025. *Id.* at ¶ 18. Campbell graduated from law school 40 years ago and is also a shareholder of Polsinelli PC. *Id.* at ¶ 6. He billed at an hourly rate of $880.00. *See id.* at ¶ 19.

While Counterclaimants did not support the reasonableness of their hourly rates, *see Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (explaining that "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line" with the relevant market rate), and while Aswegan failed to oppose Counterclaimants' fee application at all, "a district court may rely on its own experience and knowledge of prevailing market rates," in its determination. *Woodward v. Credit Serv. Int'l Corp.*, 132 F.4th 1047, 1056 (8th Cir. 2025) (cleaned up) (citing *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005)). Having carefully reviewed Counterclaimants' declarations, *see* docs. 429-1, 429-3, as well as the provided billing statements, *see* docs. 429-2, 429-4, the Court concludes that the proposed hourly rates for Frazier, Martin, and Campbell are reasonable. Accordingly, when calculating the lodestar, the Court uses the rates set forth in the billing statements.

5

C. **Reasonably expended hours**

The Court next determines the number of hours reasonably expended on the case. "[A]ny fees must be 'reasonably expended,' so that services that were redundant, inefficient, or simply unnecessary are not compensable." *See Jenkins ex rel. Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir. 1997) (quoting *Hensley*, 461 U.S. at 434). The prevailing party must submit documentation to establish the amount of the requested attorneys' fees; must exercise "billing judgment"; and must be mindful that "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary." *Hensley*, 461 U.S. at 433–34. (citation omitted).

Frazier states that he spent 21.9 hours in 2024 and 2025 on this matter. *See* doc. 429-4 at 3. And by the Court's count, Martin spent 5.3 hours in 2024 and 6.5 hours in 2025, and Campbell spent 1.8 hours in 2025 on this matter. *See* doc. 429-2. The Court also notes that "in an effort to reduce expenses, Mr. Frazier—being significantly less expensive than Mr. Martin and Mr. Campbell—was primarily responsible for researching and drafting Counterclaimants' enforcement motions against Aswegan." Doc. 429 at ¶ 4.

Having carefully reviewed Frazier's and Martin and Campbell's billing statements, the Court finds that they spent a reasonable amount of time addressing this matter.

The Court therefore awards the following attorneys' fees:

| Timekeeper | Year | Hours | Rate | Amount |
|---|---|---|---|---|
| Martin (JD 1998) | 2024 | 5.3 | $790.00 | $4,187.00 |
| Frazier (JD 2013) | 2024-2025 | 21.9 | $425.00 | $9,307.50 |
| Campbell (JD 1985) | 2025 | 1.8 | $880.00 | $1,584.00 |
| Martin (JD 1998) | 2025 | 6.5 | $870.00 | $5,655.00 |
| | | | | $20,733.50 |

D. **Appropriateness of the award**

The Court finds an attorneys' fees award of $20,733.50 is appropriate. Counterclaimants incurred attorneys' fees solely due to Aswegan's conduct or lack thereof in this matter. And

6

Counterclaimants reduced costs by seeking reimbursement only for the attorney time of Frazier, Martin, and Campbell, as well as by having Frazier primarily responsible for the bulk of the legal work. Therefore, the Courts finds the attorneys' fees award appropriate.

### E.   Costs

And having carefully reviewed Counterclaimants' billing statements, which document shipping costs of $103.78, doc. 429-2 at 6, the Court awards the same, per its July 2025 order. *See* doc. 427 at 6 (awarding costs incurred in enforcing compliance with the subpoena).

### F.   Other matters

Having ruled on this motion, the parties have no pending motions before the Court. The Court notes that Counterclaimants filed a memorandum in support, doc. 432, but no corresponding motion.

## III.   Conclusion

Accordingly, the Court grants Counterclaimants' [429] motion for attorneys' fees and costs incurred in obtaining Aswegan's compliance with the subpoena, and awards Counterclaimants $20,837.28 in attorneys' fees and costs. Aswegan must pay the full award to Counterclaimants within seven days of the entry of this order. If Aswegan cannot pay the full award within that time, he must post bond for the full amount of the award within seven days of this order and pay the full award within 30 days of this order.

So ordered this 21st day of October 2025.

_SLR. CR_
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE